IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,**<br><br>**Plaintiff,**<br><br>v.<br><br>**WELTMAN, WEINBERG & REIS CO., L.P.A.,**<br><br>**Defendant.** | Civil Action No. 1:17-cv-00817<br><br>Judge Donald C. Nugent |

# ANSWER

For its answer to the Complaint, Defendant Weltman, Weinberg & Reis Co., L.P.A. ("WWR") states as follows:

## INTRODUCTION

1. WWR makes no response to this paragraph, which consists solely of legal conclusions.

2. Denied.

## JURISDICTION AND LEGAL AUTHORITY

3. WWR makes no response to this paragraph, which consists solely of legal conclusions.

4. WWR makes no response to the legal conclusions of this paragraph. It admits that WWR does business in the Cleveland, Ohio area. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

## PARTIES

5. WWR makes no response to this paragraph, which consists solely of legal conclusions. WWR avers that, on September 3, 2014, it received a Civil Investigative Demand ("CID") from the Consumer Financial Protection Bureau (the "Bureau") dated August 27, 2014. The CID notified WWR that the Bureau was investigating its practices. WWR further avers that, over the next two-and-a-half years, WWR cooperated with the Bureau, providing over a hundred thousand pages of documents, over a million recordings, and the testimony of two WWR attorney shareholders: WWR's Compliance Officer and the Managing Shareholder of its Consumer Collections Business Unit. On May 26, 2016, the Bureau provided WWR with a Notice and Opportunity to Advise. On November 15, 2016, at the Bureau's request, WWR and the Bureau entered into a putative Tolling Agreement that purports to suspend the running of any unexpired statute of limitations from November 15, 2016 until May 15, 2017.

6. Admitted. WWR further avers that it has existed and provided legal services and debt collection services to its clients for over 80 years. WWR avers it currently employs 67 attorneys in nine offices located in Cleveland, Ohio; Brooklyn Heights, Ohio; Columbus, Ohio; Cincinnati, Ohio, Pittsburgh, Pennsylvania; Philadelphia Pennsylvania; Detroit, Michigan; Chicago, Illinois; and Fort Lauderdale, Florida. WWR's attorneys routinely appear in state and federal courts in these jurisdictions.

7. WWR admits that it regularly collects or attempts to collect consumer debts, including debts from credit cards, installment loan contracts, mortgage loan deficiencies, and student loans. WWR further admits that it collects such debts on behalf of original creditors and debt buyers. WWR avers that these are not the only types of debts it collects. To the extent not specifically admitted, WWR denies the allegations of this paragraph.

8. WWR makes no response to this paragraph, which consists solely of legal conclusions.

**STATEMENT OF FACTS**

9. Admitted.

10. WWR admits that it attempts to collect credit card, installment loan, mortgage loan, and student loan debts, among various other types of debt, on behalf of its clients. WWR avers these debts are not "alleged," but are actual debts. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

11. As the Bureau has not identified a particular debt among the "alleged debts" that are the subject of this paragraph and this Complaint, and as WWR collects both consumer and commercial debt on behalf of its clients, WWR has no way of knowing the primary purpose for which a particular debt was incurred and, therefore, denies paragraph 11 for lack of knowledge.

12. WWR avers that it is owned and managed by attorneys who properly train and supervise their non-attorney staff, consistent with Ohio Rule of Professional Conduct 5.3. WWR further admits and avers that in working with its clients, WWR attorneys and management evaluate client portfolios, including the type of accounts and the collections that the client would like WWR to engage in, and determine the minimum level of documentation available from the client in order for WWR to represent the client and collect on that client's debts. Generally, clients have available and/or provide necessary information about each debt such as: a signed copy of any contract, if there is a contract issue; whether an attorney is involved in the matter; whether the debtor has filed for bankruptcy or is deceased; whether there is already a judgment in place on a particular matter; and what collection efforts have already been made. Before a debt is placed with WWR, attorneys in conjunction with WWR's management conduct a strategic review of the new client's portfolio to determine whether there are any issues or

concerns. This typically includes looking at a subset of individual accounts to determine the age of the accounts, how many times they have been placed in collections, whether the debtors are represented by counsel, the last payment date, whether the debt is time-barred, and whether the debtors may be subject to bankruptcy protection. After placement, but still before WWR engages in collections activities, WWR performs a systematic "scrub" process for bankruptcy, military service, and date of death information, among other things. Once data provided by the client is loaded into WWR's computer system, it is tested through the electronic data interchange ("EDI") to ensure that all of the data point formats are correct and appropriate. WWR attorneys help develop and participate in the creation of WWR policies, procedures and training materials. The Board of Directors comprised of attorney shareholders approves all of WWR's policies, procedures, and training materials. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

13. WWR incorporates its response to paragraph 12 as if fully restated here.

14. WWR admits and avers that after its attorneys and/or management have conducted their initial review of the client's portfolio during the on-boarding process and once the "scrubs" have been completed in accordance with WWR's processes, collection activities commence, usually through a letter which includes the validation language as required by the FDCPA that is generated from a template that is created and approved by WWR attorneys. Generally, letters are printed by a third-party vendor from such an attorney-approved template; moreover, for small or unique clients, an attorney may create unique letters in house. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

15. WWR admits and avers that, if debtors do not respond to an initial contact letter, WWR sometimes sends follow-up letters to those debtors as allowed by law. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

16. WWR incorporates its response to paragraph 14 as if fully restated here. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

17. WWR admits and avers that since at least November 15, 2013, its letters have been printed on WWR letterhead, which truthfully identifies WWR by name and identifies the firm as a law firm with the phrase "Attorneys At Law." A true and accurate copy of an initial contact letter depicting the specific characteristics of the letterhead is attached hereto as **Exhibit A**. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

18. WWR admits and avers that since at least November 15, 2013, other than in certain circumstances, its letters include a type-face signature that reads: "Weltman, Weinberg & Reis Co., L.P.A." Except in certain circumstances, no attorney signed WWR's initial letters, and no letter represented that an attorney had reviewed a debtor's file. A representative sample of WWR's typical signature appears in **Exhibit A**. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

19. WWR admits and avers that WWR's form initial contact letters typically include a detachable payment remittance slip indicating that payments should be sent to Weltman, Weinberg & Reis Co., L.P.A., and provide a mailing address. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

20. WWR denies that it utilized the language in paragraph 20 in any initial contact letter since November 15, 2013. WWR admits that it has used the language in paragraph 20

since November 15, 2013 in limited circumstances. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

21. WWR admits and avers that prior to July 2013, it utilized the language stated in paragraph 21 in some letters. A representative sample of the language used prior to July 2013 appears in **Exhibit B**. WWR has not used that version of the FDCPA required Mini-Miranda disclosure on letters since July 2013. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

22. WWR admits and avers that prior to July 2013, it utilized the language stated in paragraph 22 in some initial contact letters. A representative sample of the language used prior to July 2013 appears in **Exhibit B**. WWR has not used that statement since July 2013. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

23. WWR incorporates its response to paragraph 12 as if fully restated here.

24. WWR incorporates its response to paragraph 12 as if fully restated here.

25. WWR admits and avers that since at least November 15, 2013, its letters generally do not include superfluous language that informs debtors about judgments WWR attorneys have not made. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

26. Denied.

27. WWR admits and avers that it is law firm that provides debt collection services to its clients. Its personnel truthfully represent themselves to be associated with WWR, a law firm. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

28. WWR admits and avers that it has sent over a million letters to its clients' debtors since November 15, 2013. WWR further admits and avers that, since November 15, 2013, debtors that WWR properly contacted have made payments on the debts they owed to WWR's

clients. In many of these matters, a lawsuit was not necessary. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

29. Admitted.

30. WWR admits that calls are generally handled by non-attorney collectors. WWR admits and avers that these collectors are part of a WWR department that has been referred to as "Pre-Legal" or "Agency" at various times. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

31. WWR admits and avers that some debtors call WWR after receiving a letter. How these calls are routed depends on the caller's request. If a caller does not specifically request to speak to a WWR lawyer (by name or by asking to speak to a lawyer), the call is typically handled by a non-attorney collector. Under some circumstances, the collector may request a payment. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

32. Admitted. WWR avers that the language quoted in paragraph 32 was not used to notify debtors that WWR was a law firm, but to serve as WWR's Mini-Miranda warning that it was a debt collector seeking to collect a debt as required by the FDCPA. WWR further avers that the version of the Mini-Miranda warning set forth in paragraph 32 has not been in use since July 2013.

33. WWR admits and avers that it is law firm that provides debt collection services to its clients. Its personnel truthfully represent themselves to be associated with WWR, a law firm. WWR is unable to evaluate the accuracy or truthfulness of the allegations about "sample statements" made during telephone calls because there is no identifying information about the

calls that would allow WWR to identify the call or calls at issue. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

34. WWR is unable to evaluate the accuracy or truthfulness of the allegations about "sample statements" made during telephone calls because there is no identifying information about the calls that would allow WWR to identify the call or calls at issue. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

35. WWR is unable to evaluate the accuracy or truthfulness of the allegations about "sample statements" made during telephone calls because there is no identifying information about the calls that would allow WWR to identify the call or calls at issue. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

36. Denied.

## **COUNT I – FDCPA LETTERS**

37. The responses to the allegations in paragraphs 1-28 are incorporated by reference.

38. WWR admits and avers that since at least November 15, 2013, its letters have been printed on WWR letterhead, which truthfully identifies WWR by name and identifies the firm as a law firm with the phrase "Attorneys At Law." Since at least November 15, 2013, except in unique circumstances, its letters include a type-face signature that reads: "Weltman, Weinberg & Reis Co., L.P.A." A true and accurate copy of a sample letter depicting the specific characteristics of the letterhead and WWR's typical signature is attached hereto as **Exhibit A**. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

39. Denied.

40. Denied.

41. Denied.

### COUNT II – CFPA LETTERS

42. The responses to the allegations in paragraphs 1-28 are incorporated by reference.

43. Denied.

### COUNT III – CFPA LETTERS

44. The responses to the allegations in paragraphs 1-28 are incorporated by reference.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

### COUNT IV – FDCPA TELEPHONE COMMUNICATIONS

49. The responses to the allegations in paragraphs 1-13 and 29-36 are incorporated by reference.

50. WWR admits that it has placed calls to and responded to phone inquiries from debtors regarding WWR's debt collection activities. To the extent not specifically admitted, WWR denies the allegations in this paragraph.

51. Denied.

52. Denied.

53. Denied.

### COUNT V – CFPA TELEPHONE COMMUNICATIONS

54. The responses to the allegations in paragraphs 1-13 and 29-36 are incorporated by reference.

55. Denied.

## COUNT VI – CFPA TELEPHONE COMMUNICATIONS

56. The responses to the allegations in paragraphs 1-13 and 29-36 are incorporated by reference.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

                \*                \*                \*

61. To the extent not specifically admitted, each and every allegation in the Complaint is denied.

## AFFIRMATIVE DEFENSES

62. The structure of the Bureau violates Article II of the Constitution by limiting the President's power of removal.

63. The Bureau's interpretation of the CFPA and FDCPA violates the Due Process Clause by retroactively enforcing rules not in effect at the time WWR communicated with debtors.

64. The Bureau's claims infringe on the equal protection rights of WWR and its clients by imposing requirements on debt collectors that are also law firms that are not applicable to other debt collectors. There is no rational basis for such a requirement. The claims, therefore, violate the Fifth Amendment.

65. To the extent the Complaint seeks relief for events that are beyond the applicable statute of limitations, the claims are barred and should be dismissed.

66. The Complaint fails to state a claim upon which relief can be granted.

67. The response to paragraph 6 is incorporated by reference. To the extent the Complaint seeks relief based on the legal work WWR performs on behalf of its clients, the claims are excluded by 12 U.S.C. § 5517(a)(1).

68. The responses to paragraphs 12, 14, 17, 18, 25, and 38 are incorporated by reference. WWR further avers that it has procedures in place to ensure compliance with the law. To the extent the Complaint alleges violations of the FDCPA based on unintentional errors by WWR despite the procedures that are in place to avoid such errors, the claims are barred by bona fide error, 15 U.S.C. § 1692k(c).

69. The statements WWR made to debtors are true and non-material, as no debtor would change his decision to pay or not pay a debt he owed based on WWR's true statements regarding its identity.

70. WWR's statements were made in compliance with the FDCPA, the CFPA, and the Ohio Rules of Professional Conduct.

71. The Bureau's claims are barred by additional defenses, which WWR reserves the right to assert during the course of this litigation.

Dated: June 12, 2017                                   Respectfully submitted,


                                                       s/ James R. Wooley
                                                       James R. Wooley  (0033850)
                                                       Tracy K. Stratford  (0069457)
                                                       Katie M. McVoy  (0080860)
                                                       JONES DAY
                                                       North Point
                                                       901 Lakeside Avenue
                                                       Cleveland, OH  44114.1190
                                                       Telephone:    216.586.3939
                                                       Facsimile:    216.579.0212
                                                       Email:        jrwooley@jonesday.com
                                                                     tkstratford@jonesday.com
                                                                     kmmcvoy@jonesday.com

                                                       Attorneys for Defendant
                                                       Weltman, Weinberg & Reis Co., L.P.A.

# CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2017, I electronically filed the foregoing Answer with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Anthony Alexis
Deborah Morris
Michael G. Salemi
Sarah Preis
Rebeccah Watson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer Financial Protection Bureau

s/ James R. Wooley
One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.