**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WELTMAN, WEINBERG & REIS CO., L.P.A.,**<br><br>**Defendant.** | **Civil Action No. 1:17-cv-00817**<br><br>**Judge Donald C. Nugent** |

# MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

**Page**

Table of Authorities ..........ii
Statement of the Issues to Be Decided..........iv
Summary of the Argument ..........1
I. Allegations in the Pleadings.......... 2
A. WWR Reviews Its Debt Portfolios.......... 2
B. WWR Sends Truthful Letters to Debtors.......... 2
1. Letters used since November 15, 2013.......... 3
2. Letters used before November 15, 2013.......... 4
C. WWR Makes Truthful Statements During Telephone Calls to Debtors.......... 4
D. The Bureau's Investigation.......... 5
II. Argument.......... 5
A. Background on the FDCPA and CFPA.......... 5
B. The Complaint Does Not Give Notice of the Claims and the Grounds on Which they Rest.......... 7
1. Standard for a motion for judgment on the pleadings.......... 7
2. The Bureau's allegations do not give sufficient notice of the claims.......... 8
C. The statutes of limitations bar claims based on conduct before November 15, 2013.......... 10
D. The Complaint Fails on the Merits.......... 11
1. Use of an individual attorney's signature—not a law firm's—may mislead.......... 11
2. *Sheriff v. Gillie* allows a debt collector to truthfully identify itself.......... 14
3. WWR's letters are not misleading (Counts I, II, and III).......... 15
4. Identifying the debt collector as a law firm during a telephone call is not enough to mislead the least sophisticated consumer (Counts IV, V, and VI).......... 19
III. Conclusion.......... 20

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 8

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996)........ 12, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 7, 10

*Blaxill v. Arrow Fin. Servs., LLC*, No. 5:10-CV-04520 JF (PSG) 2011 WL 1299350 (N.D. Cal. Apr. 4, 2011) ........ 9

*Burnett v. Mortgage Electronic Registration Systems, Inc.*, 706 F.3d 1231 (10th Cir. 2013)........ 9

*Bytwerk v. Mary Jane Elliot, P.C.*, No. 1:12-cv-876, 2013 WL 150461 (W.D. Mich. Jan. 14, 2013) ........ 17

*C.F.P.B. v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342 (N.D. Ga. 2015)........ 6

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ........ 8, 12, 13, 16

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 363 (6th Cir. 2011) ........ 8

*F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014)........ 6

*Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504 (6th Cir. 2009)........ 6, 8, 19

*Forgey v. Kitchel*, No. 3:11-CV-341-JD, 2012 WL 6160497 (N.D. Ind. Dec. 7, 2012) ........ 10

*Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091 (6th Cir. 2015) ........ 15

*Goldberg v. Wintston & Morrone, P.C.*, No. 95 Civ. 9282 (LAK), 1997 WL 139526 (S.D.N.Y. Mar. 26, 1997) ........ 17

*Gorman v. Wolpoff & Abramson, LLP*, 370 F. Supp. 2d 1005 (N.D. Cal. 2005)........ 10

*Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133 (E.D.N.Y. 2006) ........ 6

*McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296 (6th Cir. 2016)........ 7

*Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913 (N.D. Ohio 2011)........ 7, 8, 16

*Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009)........ 8, 18

*Neff v. Schlee & Stillman, LLC*, No. 16-cv-10555, 2016 WL 4264203 (E.D. Mich. Aug. 12, 2016) ........ 9

*Ostrander v. Accelerated Receivables*, No. 07-CV-827C, 2009 WL 909646 (W.D.N.Y. Mar. 31, 2009) ........ 19

*Raab v. Nationwide Collections Agencies, Inc.*, No. 1:12-CV-64, 2013 WL 53760 (W.D. Mich. Jan. 3, 2013) ........ 9, 10

*Sheriff v. Gillie*, --- U.S. ---, 136 S. Ct. 1594 (2016) ........ 5, 14, 15, 16

*Smith v. Computer Credit, Inc.*, 167 F.3d 1052 (6th Cir. 1999), ........ 8

*Vitullo v. Mancini*, 684 F. Supp. 2d 464 (E.D. Va. 2011) ........ 8

*Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009). ........ 18

*Walker v. Shermeta, Adams, & Von Allmen, P.C.*, No. 13-14932, 2014 WL 11309742 (W.D. Mich. Apr. 25, 2014) ........ 9

*Wendel v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, ---Fed. Appx. ---, 2017 WL 1507448 (2d Cir. April 27, 2017) ........ 14

*Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914 (N.D. Ohio 2009) ........ 7

*Williams v. CitiMortgage, Inc.*, 498 F. App'x 532 (6th Cir. 2012) ........ 7

*Woods v. Oxford Law, LLC*, No. 2:13-6467, 2015 WL 778778 (S.D.W.V. Feb. 24, 2015) ........ 20

<u>Statutes</u>

12 U.S.C. § 5336 ........ 11

12 U.S.C. § 5564 ........ 10

15 U.S.C. § 1692e ........ 11, 12, 15, 18

15 U.S.C. § 1692k ........ 10

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Consumer Financial Protection Bureau's (the "Bureau") Complaint fails to give notice of the claims against Weltman, Weinberg & Reis Co., L.P.A. ("WWR") and the grounds on which those claims rest.

2. Whether the Bureau's Complaint fails to state a claim because a law firm acting as a debt collector does not violate the Fair Debt Collections Practices Act ("FDCPA") or Consumer Financial Protection Act ("CFPA") by truthfully identifying itself as a law firm in its communications with debtors.

## SUMMARY OF THE ARGUMENT

Weltman, Weinberg & Reis Co., L.P.A. ("WWR") is a Cleveland-based, national law firm employing 67 attorneys. Among the services WWR's attorneys provide, WWR collects debts for its clients. WWR's employees identify themselves as WWR employees in their communications with debtors. This motion puts a simple legal question to the Court: do people who ***truthfully*** identify themselves as working for a law firm deceive the hypothetical "least sophisticated consumer" into believing they are attorneys? The answer is: of course not. And, for that reason, this case should end before it goes any further.

While the Complaint is devoid of any detail, the premise appears to be that the least sophisticated consumer thinks that ***every person*** at a law firm is an attorney and, thus, every communication from a law firm is from an attorney; but that premise is no more reasonable than assuming that every person who works for a court is a judge, or every person who works for a hospital is a doctor. The Consumer Financial Protection Bureau's (the "Bureau") Complaint does not state a claim unless ***truthfully*** identifying oneself as affiliated with a law firm when communicating with a debtor is ipso facto deceptive without direct attorney involvement.[1] That theory of deception is absent from the text—and is inconsistent with the spirit—of the Fair Debt Collection Practices Act ("FDCPA") and the Consumer Financial Protection Act ("CFPA"). That theory of deception is also not found in the rules promulgated by the Bureau. Put bluntly, the idea that actionable deception can consist of a truthful statement that does nothing more than identify a law firm offends common sense. This case should be dismissed.

[1] Though not apparent from the Complaint, WWR's attorneys have developed and oversee extensive processes to ensure that its debt collection activities comply with federal and state law, as well as the ethical requirements of the states in which its attorneys practice. To the extent that this case survives this Rule 12(c) motion, WWR will present evidence of attorney involvement and supervision and expects to prevail on the facts.

## I. ALLEGATIONS IN THE PLEADINGS

### A. WWR REVIEWS ITS DEBT PORTFOLIOS

Some of WWR's clients retain the firm to assist them in collecting consumer debts. Prior to sending letters or making telephone calls to any debtors, WWR reviews debt portfolios on which the firm will attempt to collect for its clients. (Answer at ¶ 12.) That review is extensive. It involves attorneys and non-attorneys (*id.* at ¶ 13) and includes discussing the age of the debts and prior collection efforts with the client (*id.* at ¶ 12); examining individual accounts (*id.* at ¶ 13); reviewing whether an attorney has been involved on the debtor's behalf (*id.* at ¶ 12); identifying whether a judgment has been entered on any debt (*id.*); researching whether the debtor has filed for bankruptcy, is deceased, or is subject to the Service Member Civil Relief Act (*id.*); and determining the minimum level of documentation needed to collect the type of debt at issue (*id.*).

### B. WWR SENDS TRUTHFUL LETTERS TO DEBTORS

After WWR completes its review of a particular debt portfolio and resolves any issues uncovered by that review, it may send "demand letters" that are "printed on the Firm's letterhead." (Compl. ¶ 17.) At some time during the previous six years, "some" of these unidentified letters stated that WWR is a law firm. (*Id.* ¶¶ 20-22.) It is. (*Id.* ¶ 6.)

The Complaint does not attach any letter; set forth the full content of any letter; or identify a date on which any letter was sent, the debtor to whom any letter was sent, or the client for whom WWR was collecting. In its most fulsome paragraphs, the Complaint purports to recite single sentences from unidentified letters. While this has left WWR unable to conclusively determine the Complaint's factual foundation, WWR has identified two form letters it believes are at issue. One form letter that is referenced (Compl. ¶¶ 21, 22) was not used after November 14, 2013. (Answer ¶¶ 21-22.) Another form letter has been used since November 15,

2013. (Answer ¶ 17.)

**1. <u>Letters used since November 15, 2013</u>.**

The form letter referenced in the Complaint that WWR used after November 15, 2013 clearly states on the first page that WWR is "a debt collector attempting to collect this debt." (Ex. A to Answer.) This "initial contact letter" also informs debtors of their rights under the FDCPA (*id.*), complying with the FDCPA's requirements. 15 U.S.C. § 1692e(11).

Consistent with the FDCPA's requirement that a debt collector use its "true name," 15 U.S.C. § 1692e(14), and the Ohio Rules of Professional Conduct 7.1's and 7.5's requirement that a law firm identify itself as such, WWR includes its name on its letterhead. (*Id.*)[2] While the Complaint makes much of the fact that beneath WWR's name is the phrase "ATTORNEYS AT LAW" in "bold type" (Compl. ¶ 17), the descriptor "Attorneys at Law" is in approximately the same size font as the body of the letter.


WELTMAN, WEINBERG & REIS Co., LPA
ATTORNEYS AT LAW
*Over 80 Years of Service.*
323 W. Lakeside Ave. Ste. 200 Cleveland, OH 44113-1009
(216) 335-5387 (877) 330-9586
Mon-Thurs 8am-9pm, Fri 8am-5pm, & Sat 8am-12pm EST

(*Id.*) Nothing in the letters identifying WWR is alleged to be false in any way, nor are the letters alleged to omit required disclosures or seek debts that are not owed.

WWR's initial contact letters are not signed by an attorney. They are signed by the law firm: "Weltman, Weinberg & Reis Co., L.P.A." (*Id.*) No letter states that any attorney has

[2] This obligation applies even when a law firm employs non-attorneys to send communications on the firm's behalf. Rule 5.3 imposes a duty to establish procedures that ensure delegated duties are completed in accordance with the ethics rules. Ohio Rule of Prof. Conduct 5.3(a)-(c). Thus, regardless of whether a law firm's letters or telephone calls originate with an attorney or non-attorney, the law firm is ethically required to identify itself as a law firm.

reviewed a debtor's file or has reached any conclusions about the debt. (*Id.*) None of the initial contact letters sent since November 15, 2013 threatens legal action. (*Id.*)

### 2. <u>Letters used before November 15, 2013</u>.

While the Complaint does allege that letters referred to "possible legal action" and stated that "[t]his law firm is a debt collector" and "this law firm has been retained to collect the outstanding balance due," these particular statements are true. Since November 15, 2013, none of these statements has appeared in WWR's initial contact letters. (Answer ¶¶ 20-22 & Ex. B.)

## C. WWR MAKES TRUTHFUL STATEMENTS DURING TELEPHONE CALLS TO DEBTORS

The Complaint also alleges that WWR made debt collection telephone calls during the period 2011-2017. (*Id.* ¶ 29.) The Complaint does not allege that WWR made these phone calls at inconvenient times, improperly contacted debtors at work, made an unnecessary number of telephone calls, violated debtor privacy during the phone calls, or otherwise harassed debtors. As was the case with the letters, the Complaint does not identify the date on which any telephone call was made, the time the call was made, the debtor who received the call, the WWR employee who made the call, or even the WWR client on whose behalf WWR was collecting. Instead, the Complaint provides three contextless "sample statements" from one or more telephone calls and a sentence from unidentified "training materials and collection scripts." (*Id.* ¶¶ 32-33.) The longest "sample" is eight words. (*Id.*) Because of the scant factual allegations, WWR has not been able to identify any particular telephone call to which the Complaint might refer.

The statements about which the Bureau complains are:

- "This law firm is a debt collector attempting to collect this debt for our client and any information will be used for that purpose." (Compl. ¶ 32.)
- "WWR 'was the largest collection law firm in the United States.'" (*Id.* ¶ 33.)

- "[A]n account was forwarded to 'the collections branch of our law firm.'" (*Id.*)
- "[T]he account has been 'placed here with our law firm.'" (*Id.*)

None of these statements are alleged to be false.

### D. THE BUREAU'S INVESTIGATION

On August 27, 2014, the Bureau issued a civil investigative demand ("CID"), notifying WWR that it was investigating WWR's practices. (Answer ¶ 5.) Over the next two years, WWR cooperated, providing over a hundred thousand pages of documents, over a million recordings, and testimony from its two of its shareholder attorneys: WWR's Compliance Officer and the Managing Shareholder of its Consumer Collections Business Unit. (*Id.*) On May 26, 2016, the Bureau provided WWR with a Notice and Opportunity to Respond and Advise. (*Id.*) On November 15, 2016, at the Bureau's request, WWR and the Bureau entered into a putative Tolling Agreement that purports to suspend the running of any unexpired statute of limitations from November 15, 2016 until May 15, 2017. (*Id.*) The Bureau filed the Complaint on April 17, 2017. (D.E. 1.)

## II. <u>ARGUMENT</u>

### A. BACKGROUND ON THE FDCPA AND CFPA

Congress enacted the FDCPA in response to reports of abusive practices by third-party collectors of consumer debts. *Sheriff v. Gillie*, --- U.S. ---, 136 S. Ct. 1594, 1598 (2016). In so doing, Congress aimed not only "to eliminate abusive debt collection practices" and "protect consumers," but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). The FDCPA was not enacted to excuse consumers who amass unpaid debt. "In other words, § 1692e bars debt collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts." *Gillie*, 136 S. Ct. at 1603.

Unfortunately, some plaintiffs and regulators refuse to acknowledge what the FDCPA acknowledges: when consumers owe debt, legitimate debt collectors can and should recover that debt. As a result, a "cottage industry" of "professional plaintiffs" has emerged, challenging actions that are wholly divorced from the "widespread and serious national problem of abuse that the Senate observed in adopting" the FDCPA. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2009) (internal quotation marks and citation omitted). "The statute need not be applied in this manner." *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 139 (E.D.N.Y. 2006) (*cited approvingly by Lamar*, 503 F.3d at 510-11). Instead, a proper understanding of the FDCPA should point courts "towards a common sense appraisal" of the communication at issue. *Id.* To guarantee the balance between consumer protection and legitimate debt collection, then, courts must "give life to the admonition that the standards are intended to protect collectors against bizarre or idiosyncratic interpretations of collection notices" and apply the statute "with some circumspection." *Lamar*, 503 F.3d at 510-11 (*quoting Jacobson*, 434 F. Supp. 2d at 139).

Passed as part of the Dodd-Frank Act, the CFPA prohibits "any unfair, deceptive, or abusive practice" regarding consumer products or services. 12 U.S.C. § 5336. According to the Bureau's own interpretation, the standard under § 5536(a)(1)(B) of the CFPA "is the same as the standard under § 5(a) of Federal Trade Commission Act . . . , which prohibits unfair or deceptive acts or practices in or affecting commerce." *C.F.P.B. v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1369–70 (N.D. Ga. 2015) (internal citation omitted). When determining whether a representation is likely to mislead a consumer under the FTC Act (and, correspondingly, the CFPA), courts apply a "reasonable consumer" standard. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 31 (6th Cir. 2014). While the standard is the "reasonable

consumer" under the CFPA rather than the "least sophisticated consumer" used in the FDCPA, the analysis—and the dangers—are otherwise the same. Because the Bureau does not allege an independent basis for its CFPA claims against WWR, but rests those claims on the same conduct it alleges violates the FDCPA, this brief addresses the claims together under FDCPA standards.

## B. THE COMPLAINT DOES NOT GIVE NOTICE OF THE CLAIMS AND THE GROUNDS ON WHICH THEY REST

### 1. Standard for a motion for judgment on the pleadings.

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the familiar standard applicable to motions to dismiss under Rule 12(b)(6). *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 918 (N.D. Ohio 2011). The court must "construe the complaint in the light most favorable to the plaintiff," but it need not "accept conclusions of law or unwarranted inferences cast in the form of factual allegations." *Id.* The court may consider documents attached to an answer "if the documents are 'referred to in the plaintiff's complaint and are central to [the plaintiff's] claims without converting the motion into one for summary judgment." *McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296, 298 (6th Cir. 2016); *see also Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 936 (N.D. Ohio 2009) (a plaintiff "with a legally deficient claim" may not "survive a motion to dismiss simply by failing to attach a dispositive document"). "When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (internal quotation omitted). Construing the pleadings and documents as described, a claim should be dismissed if it fails to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," it demands more of the plaintiff than "'an unadorned, the-

defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 556. That means that there must be enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 363, 369 (6th Cir. 2011) (*quoting Iqbal*, 556 U.S. at 677).

**2. The Bureau's allegations do not give sufficient notice of the claims.**

In determining whether a plaintiff has stated a claim for misleading or false conduct under the FDCPA, the Sixth Circuit has applied the "least sophisticated consumer" standard. This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor," *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999), but it does not create a free-for-all. The standard "preserv[es] a quotient of reasonableness, prohibiting 'frivolous misinterpretations or nonsensical interpretations of being led astray.'" *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) (*citing Lamar*, 503 F.3d at 514). "The least sophisticated consumer 'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Michael*, 825 F. Supp. 2d at 919 (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)).

Because the least sophisticated consumer is presumed to have reviewed a communication in its entirety, *Miller*, 561 F.3d at 595 (*citing Lamar*, 503 F.3d at 510), the "least sophisticated consumer" test requires a court to evaluate a communication as a whole, "not sentence-by-sentence." *Vitullo v. Mancini*, 684 F. Supp. 2d 464, 472 (E.D. Va. 2011). Thus, a court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369, without having the full communication at its disposal. This

means that, even at the pleading stage, a court should review the entire communication with the debtor in order to determine whether a complaint sufficiently pleads a violation of the FDCPA or CFPA. *See, e.g.*, *Neff v. Schlee & Stillman, LLC*, No. 16-cv-10555, 2016 WL 4264203, at *4-5 (E.D. Mich. Aug. 12, 2016) (in ruling on a motion to dismiss, holding that "the document is to be read as whole to determine if it misleads, deceives, or suggests falsehoods"); *Walker v. Shermeta, Adams, & Von Allmen, P.C.*, No. 13-14932, 2014 WL 11309742, at *4 (W.D. Mich. Apr. 25, 2014) (reviewing entire communication in determining whether plaintiff stated an FDCPA claim).

Moreover, a claim for violation of the FDCPA or CFPA should, at a minimum, identify the debt, the specific dates notices were provided or phone calls were made, and the content of the communications. *Blaxill v. Arrow Fin. Servs., LLC*, No. 5:10-CV-04520 JF (PSG) 2011 WL 1299350, at *4 (N.D. Cal. Apr. 4, 2011); *Raab v. Nationwide Collections Agencies, Inc.*, No. 1:12-CV-64, 2013 WL 53760, at *1 (W.D. Mich. Jan. 3, 2013); *Crawford v. Senex Law, P.C.*, No. 3:16-CV-00073, 2017 WL 1743880, at *6 (N.D. Cal. May 3, 2017). "[A] litany of diverse and vague alleged acts . . . with zero details or concrete examples" will not suffice. *Burnett v. Mortgage Electronic Registration Systems, Inc.*, 706 F.3d 1231,1240 (10th Cir. 2013).

The Bureau does not provide any complete letter to support its letterhead claims; it does not identify a single debtor who received a letter, list a date on which a letter was sent, or identify the debt or the client on whose behalf WWR was working. It cherry picks single sentences. (Compl. ¶¶ 21-23.) The sole paragraph specifying the contents of the allegedly misleading phone calls that could have taken place after November 15, 2013 provides, in its entirety:

> 33. Even after July 2013, at times collectors continued to refer to Weltman as a law firm during calls with debtors. Sample statements made to

> debtors by collection agents that referred to Weltman's law firm status included that Weltman was the "largest collection law firm in the United States," an account was forwarded to "the collections branch of our law firm," and that the account has been "placed here with our law firm."

(*Id.*) None of the allegations indicate "when [WWR] communicated with [any debtor] in connection with the debt, nor do they identify the contents of those communications in order to support that the provisions of the FDCPA were not followed." *Forgey v. Kitchel*, No. 3:11-CV-341-JD, 2012 WL 6160497, at *7 (N.D. Ind. Dec. 7, 2012).

Moreover, each of the statements allegedly made by the WWR employee (or employees) in letters or telephone calls is true. The Complaint does not allege that they are not. Without context, how is the Court to make any determination that these otherwise true statements are likely to mislead debtors? It cannot. The Bureau simply "has not alleged sufficient factual content to allow the Court to draw the reasonable inference that the Defendant has made any misrepresentations in its communications." *Raab*, 2013 WL 53760, at *3. The Bureau "has not alleged sufficient factual matter to nudge its claim across the line from conceivable to plausible." *Id.* (*citing Twombly*, 550 U.S. at 570).[3]

The Complaint does not comply with Rule 8 and should be dismissed on this basis alone.

## C. THE STATUTES OF LIMITATIONS BAR CLAIMS BASED ON CONDUCT BEFORE NOVEMBER 15, 2013

The statute of limitations for actions under the CFPA is three years. 12 U.S.C. § 5564(g)(1). The statute of limitations for the FDCPA is one year. 15 U.S.C. § 1692k(d). With the application of the tolling agreement and using the longer of the two limitations periods for purposes of this motion, the Bureau may only bring claims based on conduct that postdates

[3] Moreover, WWR cannot truthfully admit or deny the allegations. It quite simply "cannot be expected to craft a responsive pleading when [plaintiff] fails to allege the date or contents of even one call that [defendant] allegedly made." *Gorman v. Wolpoff & Abramson, LLP*, 370 F. Supp. 2d 1005, 1013 (N.D. Cal. 2005), *rev'd in part on other grounds*, 594 F.3d 1147 (9th Cir. 2009).

November 15, 2013.

The vagaries of the Complaint make it difficult to determine what conduct the Bureau claims occurred before November 15, 2013, with two notable exceptions. The initial demand letter described in paragraphs 21-22 of the Complaint is dated April 2013. (Answer ¶¶ 21-22 & Ex. B.) To the extent the Bureau's claims are based on this 2013 letter, those claims are time-barred. And paragraph 32 references a practice and policy that is alleged to have ended no later than July 2013. To the extent the Bureau's claims are based on that practice and policy, those claims are time-barred as well.

## D. THE COMPLAINT FAILS ON THE MERITS

The Complaint fares no better on the merits. The crux of the Complaint is that, by identifying itself as a law firm, WWR "misrepresent[s] that ***attorneys*** at the firm have reviewed the consumer's file and determined that the consumer owes the amount demanded." (Compl. ¶ 26 (emphasis added).) The Bureau alleges that this behavior violates section 1692e(3)'s specific prohibition against non-attorneys making the "false representation or implication that any individual is an attorney or that any communication is from an attorney," 15 U.S.C. § 1692e(3), and violates the FDCPA's and CFPA's general, catch-all provisions prohibiting false or deceptive collection practices. 15 U.S.C. § 1692e(10); 12 U.S.C. § 5336.

The question here is simple: does a communication that is ***not*** signed or made by an attorney, that does ***not*** state any analysis has been done by an attorney regarding a consumer's debt, but that ***does*** truthfully identify the communicator as a law firm acting as a debt collector, mislead the least sophisticated consumer into believing an attorney reviewed his file? The answer is no.

### 1. <u>Use of an individual attorney's signature—not a law firm's—may mislead</u>.

Section 1692e(3) prohibits non-attorneys from representing that they are attorneys or

implying that a communication comes from an attorney when it does not. 15 U.S.C. § 1692e(3). Since the mid-1990s, courts have followed the Second and Seventh Circuits' decisions in *Clomon v. Jackson* and *Avila v. Rubin* and held that section 1692e(3) prohibits attorneys from selling their signatures and letterhead to non-attorney debt collectors to use in mass mailings.

In *Clomon*, Philip Jackson served as part-time general counsel for a debt collection agency. 988 F.2d at 1316. The agency issued letters to debtors on "P.D. Jackson, G.C., Attorney-at-Law" letterhead. *Id.* Each letter bore the signature line "P.D. Jackson, Attorney-at-Law, General Counsel, NCB Collection Services," and a facsimile of Jackson's actual signature. *Id.* at 1317. NCB also included a variety of phrases in the body of the letter that indicated Jackson had personally reviewed the particulars of the debtor's case: "[b]ased on the information made available to us, we must recommend;" "I am suggesting we take the appropriate measures provided under the law;" and, "Acting as General Counsel for NCB Collection Services, I have told them that they can lawfully undertake collection activity to collect your debt." *Id.* at 1317, 1320. "In short, the collection letters would have led many consumers, and certainly the least sophisticated consumer, to believe that an attorney had personally considered the debtor's case before the letters were sent." *Id.* Jackson had no personal involvement in the plaintiff's case. *Id.* at 1317. The Second Circuit found the letters to be misleading.

In *Avila*, Albert Rubin owned two businesses, a debt collection agency called the Van Ru Credit Corporation and a law firm called Rubin & Associates. 84 F.3d 222, 224 (7th Cir. 1996). Rubin & Associates existed primarily to send debt collection letters "to delinquent debtors urging them to pay their debts." *Id.* Neither Rubin nor the single other attorney at Rubin & Associates actually litigated any cases. *Id.* The plaintiff received three letters on Rubin &

Associates letterhead, each of which included the signature line "Albert G. Rubin" and bore a mechanically reproduced facsimile of his signature. *Id.* at 225. While Rubin reviewed the letter template, he had no involvement in the review of plaintiff's file.

The Court found that Rubin had "a cozy relationship with the 'referring' collection agency," but exercised no judgment in deciding whether letters should be sent. *Id.* at 228-29. Rubin's signature, however, would mislead the least sophisticated consumer to believe that Rubin had been personally involved. "A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent. That's the essence of the connotation that accompanies the title of 'attorney.'" *Id.* at 229. The problem was that "Albert G. Rubin, acting *as* an attorney, was not the real 'source' of the letters in this case." *Id.* at 230. A separate debt collection agency was. Further supporting the court's conclusion was the fact that "Albert G. Rubin & Associates, Ltd.," is a collection agency, not a law firm at all in any real sense of the term. . . . No attorney working in the 'law firm' ever files a lawsuit or goes to court on behalf of a client." *Id.*

In both *Clomon* and *Avila*, the letters were not just issued on ***law firm*** letterhead, they were signed by ***individual attorneys***. In *Clomon*, the suggestion of attorney involvement was heightened by statements indicating the attorney was "acting as General counsel" and told his client to act. *Clomon*, 988 F.2d at 1317 In *Avila*, the misrepresentation was enhanced because, not only did an attorney not send the letter, but the law firm identified on the letterhead had no involvement in the letter and did not even provide legal services. *Avila*, 84 F.3d at 229.

Of particular import is the fact that the *Clomon* court found that "***absen[t] language to the contrary***," an attorney signature coupled with language suggesting attorney review implied that the attorney had, in fact, formed an opinion about the debtor's individual case. *Clomon*, 988

F.2d at 1321 (emphasis added). Based on this language, courts across the country began to require that debt collectors using individual attorney signatures include disclaimers notifying debtors that no attorney reviewed their files. *See, e.g.*, *Wendel v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, ---Fed. Appx. ---, 2017 WL 1507448 (2d Cir. April 27, 2017) (individual attorney can sign a debt collection letter without reviewing file so long as the letter includes a disclaimer making clear the sender is not acting as an attorney). As a result, despite the absence of any statutory authority or any rule from the FTC or the Bureau requiring a disclaimer, court-ordered disclaimers became the norm for debt collection letters signed by ***attorneys***.

Now the Bureau wants to take this practice one step further. Rather than encouraging Congress to amend the FDCPA or using its rulemaking authority,[4] the Bureau asks this Court to act by judicial fiat to mandate superfluous disclaimer language on every communication from a ***law firm*** to a debtor.

**2. *Sheriff v. Gillie* allows a debt collector to truthfully identify itself.**

The Supreme Court's recent decision in *Sheriff v. Gillie* makes clear that the Bureau's request goes too far. In *Gillie*, two defendant law firms were retained as special counsel by the Ohio Attorney General to collect debts on behalf of the State. 136 S. Ct. at 1599. At the Attorney General's request, both firms used Ohio Attorney General letterhead to send "milquetoast" letters (letters identical in flavor to those sent here) requesting that the debtors resolve their debts. *Id.* The letters made clear that they were from debt collectors attempting to collect a debt and were signed by the attorneys sending them, identifying the attorneys as special counsel to the Attorney General. *Id.* The debtors sued, claiming special counsel misrepresented

[4] In fact, the Bureau has not even suggested making this a requirement in its own rules. In its Outline of Proposals Under Consideration published on July 28, 2016, the Bureau does not propose a rule requiring a disclaimer regarding attorney involvement in communications made by law firms. *Available at http://files.consumerfinance.gov/f/documents/20160727_cfpb_Outline_of_proposals.pdf*.

that the communications were "authorized, issued, or approved" by a State in violation of 15 U.S.C. § 1692e(9). The Sixth Circuit found that use of Ohio Attorney General letterhead was confusing and misleading to consumers. *Id.* (*citing Gillie v. Law Office of Eric A. Jones, LLC* (hereinafter "*Law Office of Eric A. Jones*"), 785 F.3d 1091, 1097-98 (6th Cir. 2015)).

In a unanimous decision authored by Justice Ginsberg, the Supreme Court reversed. Citing approvingly to Judge Sutton's dissent, the Supreme Court found nothing misleading about letters whose letterhead "accurately describes the relevant legal entities," had a signature block that truthfully represented the relationship between the Attorney General and special counsel, included a "conspicuous notation that the letter is sent by a debt collector," and, as a whole, alerted the debtor to "both the basis for the payment obligation and the official responsible for enforcement of debts." *Id.* at 1600.

The Court rejected the plaintiffs' allegations that the use of Ohio Attorney General letterhead intimidated them. "Section 1692e bars debt collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts." *Id.* at 1603. Moreover, "'neither of the milquetoast letters [received by debtors] . . . threatens criminal prosecution, civil penalties, or any action whatsoever.'" *Id.* (*quoting Law Offices of Eric A. Jones*, 785 F.3d at 1116-17 (Sutton, J., dissenting)).

**3. <u>WWR's letters are not misleading (Counts I, II, and III)</u>.**

While *Gillie* has some factual differences, its premise is dispositive: the "specter of consumer confusion" is insufficient to state a claim under the FDCPA, *Gillie*, 136 S. Ct. at syllabus; and letterhead that "accurately conveys" the identity of the sender is "[n]ot fairly described as 'false or misleading.'" *Id.* at 1598.

As was true of the letters in *Gillie*, a document on WWR letterhead, "it is no doubt true, gives the impression that it comes from" WWR. *Law Offices of Eric A. Jones*, 785 F.3d at 1115

(Sutton, J., dissenting) (*cited approvingly by Gillie*, 136 S. Ct. 1594). But those "dunning letters ***do*** come from" WWR. *Id.* "The FDCPA is not sensibly read to require" WWR to "obscure that reality." *Gillie*, 136 S. Ct. at 1603. WWR's letterhead and signature "accurately describe[] the relevant legal entit[y]." *Id.* at 1600.[5]

Nor is there anything in WWR's letters that implies any ***individual attorney*** was involved. WWR's letters do not indicate that an attorney has reviewed the debtor's file or made "suggestions" regarding how the particular debt should be handled. *Clomon*, 988 F.2d at 1317, 1320. Perhaps most importantly, WWR's letters are not signed by an attorney. They are signed by the same law firm that evaluated the portfolio, scrubbed the debtor's file, and sent the letter acting as a debt collector.

This Court hit the nail on the head in *Michael*. In that case, a debtor received a letter from a law firm seeking to collect a debt. The letter was not signed by an attorney, but instead was signed "Javitch, Block & Rathbone, LLP." *Michael*, 825 F. Supp. 2d at 916. The letter was on law firm letterhead, but it did "not threaten litigation or otherwise give the impression of impending litigation." *Id.* at 922. While the letter did include a disclaimer, that fact need not have been dispositive in that case. Instead, as this Court wrote, "[t]he mere fact that a letter is written on law firm letterhead does not violate the FDCPA." *Id.* The question is what "the least sophisticated debtor, reading the letter," would understand the ***law firm's*** involvement to have been, and whether that understanding is inconsistent with the facts. *Id.* at 921.

A debtor reading a letter from WWR would get the impression that the collection letter was a communication from a debt collector that also happens to be a law firm. "[T]his impression [is] not false. Defendant is a law firm." *Bytwerk v. Mary Jane Elliot, P.C.*, No. 1:12-

[5] Unlike the "law firm" in *Avila*, WWR is a legitimate law firm that actively litigates in Ohio and many other states. *Avila*, 84 F.3d at 230. (Answer ¶ 6.)

cv-876, 2013 WL 150461, at *4 (W.D. Mich. Jan. 14, 2013). The debtor may also get the impression that the ***firm*** conducted some type of evaluation, an impression the Complaint itself admits is true. (Compl. ¶¶ 7, 12-13); *see Goldberg v. Wintston & Morrone, P.C.*, No. 95 Civ. 9282 (LAK), 1997 WL 139526, at *5 (S.D.N.Y. Mar. 26, 1997) (holding that letter signed by attorney to collect debt that had been reviewed by the attorney's law firm was not *per se* misleading). What is not present in any of WWR's letters is a sense that an ***attorney***—rather than a ***law firm***—is involved in the debt collection. That is a distinction that matters.

Even the least sophisticated consumer knows that not every employee of a law firm is an attorney. One need look no further than any one of the dozens of legal shows on television to see non-attorneys at work. From Matlock's indispensible investigator, Conrad McMasters, to L.A. Law secretary Roxanne Melman, from Suits' paralegal Rachel Zane, to the Practice's receptionist Lucy Hatcher, television is replete with non-attorneys at law firms doing important work under the supervision of the attorneys at their firms. Advertisements for paralegal courses reinforce this image, touting that their graduates "[m]anage cases while providing support to attorneys"[6] "perform[] a variety of tasks around a legal office, including . . . drafting documents,"[7] and "[p]erform legal tasks"[8] through "direct client contact" or "research-based

---

[6] Advertisement for Bryant & Stratton Paralegal course, *available at http://www.bryantstratton.com/lp/index.cgi?d=pleg&c=cleveland&s=UNBRANDED&skw=%20Paralegal%20Studies&kw=%2Bparalegal%20%2Bstudies&mkwid=4cK1wCvI_dc&pcrid=76460496853&cpag=Paralegal+Studies&cpca=%5BS-Cleveland%5D+Paralegal+AAS+-+Broad&cpao=121&pmt=b&i=SEM&gclid=CJLuusnk8tMCFZNMDQodjcwFvA*.

[7] Advertisement for Stautzenberger College paralegal course, *available at http://www.beginsc.com/paralegal/brecksville?gclid=CNSjl-nk8tMCFc9MDQodGYMGfA*.

[8] Advertisement for National Paralegal College, *available at https://nationalparalegal.edu/ Associates.aspx*.

approach[es]."[9]

Given the wealth of information that exists about non-attorneys who perform key roles at law firms, the least sophisticated consumer would have to have his head in the sand to believe that every communication from a law firm is from an attorney. But, "[t]he 'unsophisticated consumer' isn't a dimwit." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). Since even the "least sophisticated consumer" is presumed to have "rudimentary knowledge" about the world and is "capable of making basic logical deductions and inferences," *id.* (internal citations and quotation marks omitted), the least sophisticated consumer can distinguish between a law firm and an attorney, just as he can distinguish between a doctor and nurse or a judge and a law clerk. To interpret WWR's letterhead with nothing more as individualized attorney involvement removes the "quotient of reasonableness" and becomes idiosyncratic. *Miller*, 561 F.3d at 592. WWR's letters are not misleading.

And there should be no question that the non-attorneys at WWR are properly supervised. The Ohio Rules of Professional Conduct, which govern WWR as a law firm, require that its attorneys "ensure that the firm . . . has in effect measures giving reasonable assurance that [its non-attorneys'] conduct is compatible with the professional obligations of the lawyer." Ohio Rule of Prof. Conduct 5.3(a). Given WWR's ethical obligations, any letter coming from WWR ***as a law firm*** is sent with attorney oversight, as even the Complaint suggests, removing any specter of misrepresentation that requires a disclaimer.

In fact, requiring WWR to include a disclaimer under these circumstances undermines one of the three principal purposes of the FDCPA: to ensure that debt collectors who are acting lawfully are not competitively disadvantaged. 15 U.S.C. § 1692(e). When no reasonable person

[9] Advertisement for Marian College paralegal studies degree, available at *http://www.marian.edu/academics/marian's-Adult-Programs/landing/paralegal-studies-degree?gclid=CI6doJvm8tMCFRpXDQod5akCuw*.

could view WWR's letters as having been sent by an individual attorney who reviewed the file, a disclaimer that no individual attorney was involved is superfluous and an added burden on debt collection law firms that non-law-firm debt collectors do not have to bear. As courts have found in other circumstances, "[t]o require debt collectors to include such language goes beyond the plain language of the statute and favors the consumer at the debt collector's expense." *Lamar*, 503 F.3d at 510.

Statute and public policy dictate that the Court reject the Bureau's attempt to legislate by lawsuit. WWR's letters are not misleading and do not require any disclaimer. Counts I, II, and III should be dismissed.

**4. Identifying the debt collector as a law firm during a telephone call is not enough to mislead the least sophisticated consumer (Counts IV, V, and VI).**

Assuming the Bureau could bring a claim based on a single phrase uttered during a phone call without any indication of the context of the call, that phrase is not enough to state a claim for misleading or false communications under the FDCPA or CFPA. As a reminder, the entirety of the Bureau's claims regarding WWR's phone calls is that sometimes debt collectors identified WWR as a law firm. Courts considering similar circumstances have found that such statements do not mislead debtors as a matter of law. For instance, in *Ostrander v. Accelerated Receivables*, the plaintiff spoke to "Diana," an employee of a debt collection agency, who stated that she worked in the legal department. No. 07-CV-827C, 2009 WL 909646, at *1 (W.D.N.Y. Mar. 31, 2009). The court rejected plaintiff's claim that this statement misled him into believing "Diana" was an attorney. "Even applying the 'least sophisticated consumer' standard, it cannot be said that by simply stating that she worked in the 'legal department,' defendant Diana Doe gave a 'false representation or implication' that she was an attorney at law or that the communication was from an attorney." *Id.* at *6. *See also Woods v. Oxford Law, LLC*, No. 2:13-6467, 2015 WL

778778, at *9 (S.D.W.V. Feb. 24, 2015) (rejecting plaintiff's claim that a non-attorney debt collector calling from a law firm "misleadingly identified itself as an attorney's office" because the law firm was not bar certified in the plaintiff's state). For this reason, Counts IV, V, and VI should be dismissed.

## III. CONCLUSION

For the reasons set forth above, defendant, Weltman, Weinberg & Reis Co., L.P.A., respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: June 12, 2017

Respectfully submitted,

s/ James R. Wooley

James R. Wooley (0033850)
Tracy K. Stratford (0069457)
Katie M. McVoy (0080860)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
Email: jrwooley@jonesday.com
tkstratford@jonesday.com
kmmcvoy@jonesday.com

Attorneys for Defendant
Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this case has not yet been assigned to a case management track. This dispositive motion, however, is no more than 20 pages in length, and, therefore, it would conform to the page limitation for standard track cases set forth in Local Rule 7.2(f).

s/ James R. Wooley
One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2017, I electronically filed the foregoing Motion for Judgment on the Pleadings with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Anthony Alexis
Deborah Morris
Michael G. Salemi
Sarah Preis
Rebeccah Watson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer
Financial Protection Bureau

s/ James R. Wooley
One of the Attorneys for Weltman, Weinberg &
Reis Co., L.P.A.