**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff<br><br>v.<br><br>Weltman, Weinberg & Reis Co., L.P.A.,<br><br>Defendant. | Civil Action No. 1:17-cv-00817<br><br>Judge Donald C. Nugent |

**OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS


Table of Authorities ..... ii

Statement of Issues to be Decided ..... iv

Summary of the Argument Presented ..... 1

Factual Allegations ..... 2

Standard ..... 3

Argument ..... 4

I. The Bureau's FDCPA Claims are Well-Pled ..... 4

A. WWR's Letters Falsely Imply That an Attorney Has Formed a Professional Judgment That the Consumer Owes the Debt. ..... 5

B. WWR Attorneys Were Not Meaningfully Involved in Sending Demand Letters. ..... 8

C. The Bureau Has Also Plausibly Alleged that WWR Violated the FDCPA During Collection Calls with Consumers. ..... 9

II. The Bureau's CFPA Claims Are Also Well-Pled. ..... 10

III. WWR Has Ample Notice of the Bureau's Claims and its Attempt to Impose Heightened Pleading Requirements Lacks Merit. ..... 13

IV. None of WWR's Other Arguments Demonstrates that it is Clearly Entitled to Judgment as a Matter of Law. ..... 14

A. WWR's Statute of Limitations Arguments do not Entitle it to Judgment on the Pleadings. ..... 14

B. The Fact that WWR's Letters Were Signed By A Law Firm, Not an Individual Attorney, is a Distinction Without a Difference. ..... 16

C. Although *Sheriff v. Gillie* is Inapposite, its Holding is Consistent with the Bureau's Allegations. ..... 18

D. WWR's "Public Policy" Argument Does not Entitle it to Judgment in its Favor. ..... 19

E. WWR's Professional Obligations Do Not Justify Its Conduct ..... 20

Conclusion ..... 20

# TABLE OF AUTHORITIES

## Cases


*Avila v. Rubin,* 84 F.3d 222 (7th Cir. 1996) .................. 2, 7
*Bard v. Law Offices of Harold E. Scherr, P.C.*, No. 13–cv–1411, 2014 WL 2610894 (E.D.N.Y. June 6, 2014) .................. 10
*Bear v. Delaware Cty, Ohio,* No. 2:14-CV-43, 2015 WL 1954451 (S.D. Ohio Apr. 28, 2015) .................. 14
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................. 4
*Berry v. DOL*, 832 F.3d 627 (6th Cir. 2016) .................. 4
*Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001) .................. 4, 9, 12
*Bytwerk v. Mary Jane Elliott, P.C.*, No. 1:12-CV-876, 2013 WL 150461 (W.D. Mich. Jan 14, 2013) .................. 17
*CFPB v. Frederick J. Hanna & Assocs.*, 114 F. Supp. 3d 1342 (N.D. Ga. 2015) .................. 13, 15
*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) .................. 11
*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) .................. 7, 9, 20
*Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173 (D. Minn. 2011) .... 16
*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) .................. 3
*Dupuy v. Weltman, Wienberg [sic] & Reis Co., 442 F. Supp. 2d 822 (N.D. Cal. 2006)* .. 5, 14
*Erickson v. Pardus*, 551 U.S. 89 (2007) .................. 13
*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) .................. 3
*FTC v. Cyberspace.Com LLC*, 453 F.3d 1196 (9th Cir. 2006) .................. 11
*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) .................. 11
*FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993 (N.D. Ind. 2000) .................. 12
*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) .................. 17
*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005) .................. 6, 16, 17
*Jones v. Dufek*, 830 F.3d 523 (D.C. Cir. 2016) .................. 19
*Keys v. Humana*, 684 F.3d 605 (6th Cir. 2012) .................. 13
*Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433 (6th Cir. 2008) 4, 7
*Koch v. FTC*, 206 F.2d 311 (6th Cir. 1953) .................. 12
*Lesher v. Law Offices of Mitchell N. Kay*, 650 F.3d 993 (3d Cir. 2011) .................. 5, 7
*Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913 (N.D. Ohio 2011) .......17
*Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86 (E.D.N.Y. 2009) .................. 9, 12
*Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) .................. 5, 8
*Ostrander v. Accelerated Receivables,* No. 07-CV-827C, 2009 WL 909646 (W.D.N.Y. Mar. 31, 2009) .................. 10
*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353 (E.D.N.Y. 2005) .................. 16
*Sheriff v. Gillie*, 136 S. Ct. 1594 (2016) .................. 18

*Sizler v. Stanek Vinyl Windows Corp.*, No. 1:14 CV 1774, 2015 WL 559682, (N.D. Ohio Sept. 21, 2015) .......... 4
*Woods v. Oxford Law, LLC*, No. CIV.A. 2:13-6467, 2015 WL 778778 (S.D. W. Va. Feb. 24, 2015) .......... 10
*Young v. Citicorp Retail Servs., Inc.*, No. CIV. 3:95CV1504, 1997 WL 280508 (D. Conn. May 19, 1997), *aff'd*, 159 F.3d 1349 (2d Cir. 1998) .......... 19

**Statutes**

12 U.S.C. § 5481(12)(H) .......... 4
12 U.S.C. § 5531(a) .......... 1
12 U.S.C. § 5536(a)(1) .......... 1, 4, 15
12 U.S.C. § 5564 .......... 1, 4, 14
12 U.S.C. § 5565 .......... 1
15 U.S.C. § 1692(e) .......... 19
15 U.S.C. § 1692e(10) .......... 1, 4
15 U.S.C. § 1692e(3) .......... 1, 4
15 U.S.C. § 1692k(d) .......... 15
15 U.S.C. § 1692*l*(b)(6) .......... 15

**Other Authorities**

ABA Comm. on Ethics and Prof'l Responsibility, ABA Informal Op. 1368 (July 15, 1976) .......... 20
Merriam-Webster, https://www.merriam-webster.com/dictionary/law%20firm. (last visited July 11, 2017) .......... 5
N.J. Sup. Ct. Advisory Comm. on Prof'l Ethics, N.J. Eth. Op. 48 (May 30, 2012) .......... 20

**Rules**

Fed. R. Civ. P. 8(a)(2) .......... 13

## Statement of Issues to be Decided

1. The Fair Debt Collection Practices Act (FDCPA) prohibits debt collectors from falsely representing or implying that a communication is "from an attorney." The Consumer Financial Protection Act of 2010 (CFPA) prohibits violations of the FDCPA and deceptive acts or practices. Has the Bureau stated a claim upon which relief can be granted under these statutes in alleging that Weltman, Weinberg & Reis Co., L.P.A. (WWR) engaged in deceptive practices by highlighting its status as a law firm in demand letters and collection calls, implying that an attorney was involved in reviewing the consumer's debt, even though at the time of the communications it was only acting as a debt collector and attorneys at the law firm typically had not reviewed consumers' files or other information that would enable them to form a professional judgment about the validity of the subject debts?

2. Does the Bureau's Complaint meet the liberal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure?

3. Construing the allegations in a light most favorable to the Bureau, has WWR shown that the Bureau cannot prove any set of facts that would entitle it to relief and that WWR is entitled to judgment as a matter of law?

4. If the court believes that the Bureau's claims are insufficiently pled, should the Court grant the Bureau leave to amend in lieu of entering judgment so that the case can be considered on the merits?

## Summary of the Argument Presented

Since July 21, 2011, WWR sent over a million letters demanding payment to consumers on its law firm letterhead, which stated "ATTORNEYS AT LAW" in the header and listed the firm's name in the signature block. When WWR sent such letters, typically no attorney had reviewed the consumer's file to confirm that the debt was valid or otherwise formed a professional judgment that the consumer owed the debt in question. WWR's letters never informed consumers that no attorney had reviewed the file. This practice violated both the FDCPA, which prohibits falsely representing or implying that any communication is from an attorney, and the CFPA, which prohibits deceptive acts or practices in connection with debt collection. 15 U.S.C. § 1692e(3), (10) (1996); 12 U.S.C. §§ 5531(a), 5536(a)(1), 5564, 5565 (2010). Similarly, since July 21, 2011 WWR has identified itself as a law firm during collection calls with consumers and made other statements implying that attorneys at the firm had reviewed the consumer's account and formed a professional judgment that the consumer owed the debt when typically no such review had occurred. This also violated the FDCPA and the CFPA.

WWR argues that its letters and calls did not violate the FDCPA or the CFPA because, according to WWR, it truthfully represented that it is in fact a law firm and was attempting to collect a debt. But what WWR fails to explain – and what dooms its motion – is that the FDCPA and the cases interpreting it make it abundantly clear that a collection letter violates the FDCPA when it is sent on law firm letterhead and purports to be from a law firm where no attorney has meaningfully reviewed the consumer's account. The least sophisticated consumer, getting such a letter "knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the

consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). That is why if a debt collector "wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*

Nothing in WWR's motion for judgment on the pleadings or its answer casts any doubt on the viability of the Bureau's claims or shows that WWR is entitled to judgment. The Bureau's allegations set forth plausible claims under the FDCPA and the CFPA that meet Rule 8's liberal notice requirements. WWR's motion either ignores or misconstrues the case law in this area as well as the applicable statute of limitations. Accordingly, this Court should deny WWR's Motion for Judgment on the Pleadings. Alternatively, if this Court finds any pleading deficiencies, the Bureau respectfully requests leave to amend its complaint.

## Factual Allegations

In pre-litigation collection communications with consumers, WWR highlighted its status as a law firm, even though WWR attorneys typically have not reviewed consumers' accounts and the firm is acting only as a debt collector. Compl. ¶¶ 17-24, 27, ECF No. 1. Since January 21, 2011, WWR has sent over a million demand letters on its Firm letterhead, which states the name of the firm and the phrase "ATTORNEYS AT LAW" at the top of the first page. Compl. ¶¶ 17, 18, 28. At times since July 21, 2011, WWR's form demand letters included the following language:

- "Failure to resolve this matter may result in continued collection efforts against you or possible legal action by the current creditor to reduce this claim to judgment."

- "This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose."
- "Please be advised that this law firm has been retained to collect the outstanding balance due and owing on this account."

Compl. ¶¶ 20-22. When WWR sends these letters, typically no attorney at the firm has reviewed consumers' account files or any other individual account information to make sure that sending the letter is appropriate because, for example, the debt is due and owing. *Id.* ¶¶ 23-24. Yet WWR did not inform consumers that no attorney at the firm had reviewed the specifics of the consumer's debt or otherwise make it clear that WWR had not engaged in the legal review that one would expect from a law firm, and was instead only acting as a debt collector. *Id.* ¶¶ 25, 27.

Similarly, WWR has attempted to collect debts from consumers through collection calls handled by non-attorney collectors in its "Pre-Legal" Department. Compl. ¶¶ 29-30. From at least July 21, 2011 through as late as July 2013, it was WWR's practice and policy to identify itself as a law firm during those calls, although its collectors continued to refer to WWR as a law firm and make other statements implying attorney review after that time, even though typically no such review had occurred. *Id.* ¶¶ 30-36.

## Standard

A motion for judgment on the pleadings is considered using the same standard of review as a Rule 12(b)(6) motion. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). In evaluating a 12(b)(6) or 12(c) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Factual allegations must be enough to raise a right to

relief above the speculative level . . ..” *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The inquiry is “not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint.” *Sizler v. Stanek Vinyl Windows Corp.*, No. 1:14 CV 1774, 2015 WL 559682, at *1 (N.D. Ohio Sept. 21, 2015) (citation omitted). Although the court’s review is essentially limited to the complaint, which must be construed in favor of the Bureau, materials attached to a motion to dismiss may be considered “if they are referred to in the complaint and are central to the claim.” *See Berry v. DOL*, 832 F.3d 627, 637 (6th Cir. 2016).

## Argument

### I. The Bureau’s FDCPA Claims are Well-Pled.

The FDCPA prohibits debt collectors from creating “[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney.” 15 U.S.C. § 1692e(3) (1996).[1] It also broadly prohibits “[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.” *Id.* § 1692e(10).[2] A collection communication can be deceptive under § 1692e if it is “open to more than one reasonable interpretation, at least one of which is inaccurate.” *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008) (citations omitted). In determining whether a

[1] Counts I, II, IV, and V relate to the FDCPA. Violations of the FDCPA are also separate violations of the CFPA. 12 U.S.C. §§ 5481(12)(H); 5536(a)(1)(A); 5564 (2010). Separate and apart from WWR’s violation of the FDCPA, Counts III and VI allege that WWR engaged in deceptive acts or practices in violation of the CFPA, and are not predicated on an FDCPA violation. Those CFPA claims are addressed in Section II below.

[2] Because the Bureau’s claims under § 1692e(10) are based on the same facts as its § 1692e(3) claim and are overlapping in nature, these claims are discussed together. *See also Boyd v. Wexler*, 275 F.3d 642, 644 (7th Cir. 2001) (explaining that a § 1692e(10) violation frequently accompanies a violation of a more specific 1692e(3) provision) (citations omitted).

statement is false, deceptive, or misleading under the FDCPA, courts in this Circuit evaluate the representation objectively from the standpoint of the "least sophisticated consumer." *See id.* at 438-39 (citations omitted). This standard "protects all consumers, the gullible as well as the shrewd[,]" and "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (citations omitted).

### A. WWR's Letters Falsely Imply That an Attorney Has Formed a Professional Judgment That the Consumer Owes the Debt.

Numerous courts have recognized that a letter from an attorney or a law firm (which literally means "a group of lawyers who work together as a business")[3] implies that an attorney "has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action." *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002) (citations omitted); *see also Lesher v. Law Offices of Mitchell N. Kay*, 650 F.3d 993, 1002-03 (3d Cir. 2011) (law firm's letters violated 1692e because the least sophisticated debtor may reasonably believe an attorney had reviewed his file and determined that he was a candidate for legal action). For example, in *Dupuy v. Weltman, Wienberg [sic] & Reis Co.*, the court considered whether similar versions of WWR's demand letters, which were printed on firm letterhead, stated that WWR was a law firm attempting to collect on "this debt" or "this account," and were signed by individuals whose titles were not listed, potentially violated the FDCPA. 442 F. Supp. 2d 822, 825-26 (N.D. Cal. 2006). The court noted that the letters did not indicate that the signatories were non-attorneys and did not include a statement that an attorney was not

[3] Merriam-Webster, https://www.merriam-webster.com/dictionary/law%20firm. (last visited July 11, 2017).

involved in the matter. *Id*. The court denied WWR's motion to dismiss, holding it was "reasonable for the recipient to infer an attorney was involved, and certainly the least sophisticated debtor would infer that an attorney was involved." *Id.* (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364-65 (2d Cir. 2005)). Here too, the Bureau has adequately alleged that WWR's demand letters imply that WWR attorneys had formed a professional judgment that the consumer's debt was due and owing prior to sending a demand letter. *See* Compl. ¶¶ 14, 17-22, 25-26, 38-39, 45.

According to WWR, it does not violate the FDCPA for a law firm to send dunning letters on its letterhead, which includes the phrase "ATTORNEYS AT LAW," without informing consumers that no attorney had actually reviewed the consumer's account because the least sophisticated consumer would understand that law firms employ non-lawyers, so a letter from a law firm might not be from an attorney. Mot. for J. on the Pleadings 16-17, ECF No. 7. In support of this argument, WWR relies not on case law, but instead on television characters and paralegal advertisements that it argues compel this Court to hold – at the pleading stage and as a matter of law – that the least sophisticated consumer would conclude that a letter from a "law firm" was, in fact, from a non-attorney and that no attorney had reviewed the consumer's account. *See* Mot. 17-18. WWR's "Matlock" defense cannot overcome the significant case law recognizing the impact of sending demand letters on attorney letterhead, particularly without any clarification regarding the role of attorneys. *See supra*. Other than its reliance on television characters and paralegal ads, WWR offers no support for its position that the least sophisticated consumer would understand that a letter from a "law firm" is actually from a department of that firm that operates purely as a debt collection agency and typically does not perform any individualized attorney review of the debts it is

collecting. A collection letter that is subject to more than one reasonable interpretation, at least one of which is inaccurate, can be deceptive. *Kistner*, 518 F.3d at 441. Here, it is a reasonable inference – and certainly one that the least sophisticated consumer would likely draw – that a creditor who sends accounts to a law firm is seeking legal services and that the law firm is therefore acting in a legal capacity.

Nor do the factual distinctions between this case and *Avila* or *Clomon* mean that WWR's demand letters did not imply that an attorney had reviewed the consumer's debt. *See* Mot. 11-14 (discussing *Avila* and *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)). According to WWR, the reasoning behind *Avila* and *Clomon* should not apply here because WWR's letters were sent on law firm letterhead and signed by a law firm rather than by an individual attorney. *E.g.*, Mot. 13. But several courts have applied the reasoning in *Clomon* and *Avila* to demand letters sent by law firms. For example, in *Lesher*, the Third Circuit held that demand letters offering a settlement printed on firm letterhead (but not signed by any attorney) violated § 1692e. 650 F.3d at 1002-03 (3d. Cir. 2011). Relying on *Clomon* and *Avila*, the court held that "it was misleading and deceptive for the Kay Law Firm to raise the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in its legal capacity when it sent the letters." *Id.* at 1003. This logic applies even more forcefully here, because WWR's letters more strongly implied attorney review than those in *Lesher*, for example by sometimes referring to "possible legal action . . . to reduce this claim to judgment."[4] *See* Compl. ¶20.

---

[4] To be clear, the Bureau's claims are not based solely on the initial demand letters that WWR refers to in its motion and that it attached to its Answer. WWR sent other initial demand letters as well as follow up demand letters that WWR did not refer to in its motion but that also violate the FDCPA. The letters WWR attached to its Answer

Accordingly, the Bureau has adequately alleged that WWR's demand letters falsely imply to consumers that attorneys had reviewed their accounts and formed a professional judgment about the debt. *See* Compl. ¶¶ 14, 17-22, 25-26, 38-39, 45.

### B. WWR Attorneys Were Not Meaningfully Involved in Sending Demand Letters.

The Bureau has further alleged that WWR's representations regarding attorney involvement were false or misleading because WWR attorneys "generally have not reviewed a corresponding consumer's individual account file to reach a professional judgment that sending the letter is appropriate because, for example, the information in the letter is accurate and the debt is due and owing." Compl. ¶ 23.

This allegation must be taken as true at this stage and, even if that were not the case, WWR has tellingly failed to admit or deny this and several of the Bureau's specific allegations regarding WWR's lack of attorney involvement in reviewing consumers' debts prior to WWR sending demand letters or placing collection calls. *Compare* Compl. ¶¶ 13, 23, 24 *and* Answer ¶¶ 12, 13, 23, 24, ECF No. 6. For example, in response to the Bureau's allegation that, when WWR sends demand letters, WWR attorneys have generally "not reviewed a corresponding consumer's individual account file to reach a professional judgment that sending the letter is appropriate," Compl. ¶ 23, WWR incorporated its response to *another* allegation that is not responsive to this allegation. Answer ¶ 23.

Courts have consistently held in this context that, to avoid misrepresenting attorney involvement, an attorney must engage in some review of the validity of the

---

nonetheless further imply that the firm has reached a professional judgment that the consumer owes the subject debt, for example by stating that the "law firm has been retained to collect the outstanding balance due and owing on this account" and stating that "you owe the amount listed above." *See, e.g.*, Answer Ex. B.

particular letter recipient's debt. *See Nielsen,* 307 F.3d at 638 (concluding that attorney's review was not meaningful under the FDCPA because he had not made an "independent, professional assessment of the delinquency and validity of any debt, he did not select the debtors to whom a letter would be sent, and he did not make any assessment as to whether a debt was a candidate for legal action"); *Boyd v. Wexler*, 275 F.3d 642, 646 (7th Cir. 2001) (reversing summary judgment due to fact question on attorney review); *Miller v. Upton, Cohen & Slamowitz,* 687 F. Supp. 2d 86, 96-98 (E.D.N.Y. 2009) (discussing need for attorney review of underlying debtor information and identifying particular documentation that attorney should have reviewed in that case); *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) (holding impression of attorney involvement was false and misleading where attorney did not review each debtor's file, among other things). Because the Bureau has alleged that WWR attorneys typically do not review individual consumers' accounts *at all* before sending demand letters, it has plausibly alleged that WWR attorneys were not meaningfully involved in sending pre-litigation demand letters. Thus the Bureau's FDCPA and related claims state claims upon which relief can be granted.

### C. The Bureau Has Also Plausibly Alleged that WWR Violated the FDCPA During Collection Calls with Consumers.

WWR's non-attorney collectors inaccurately implied that attorneys at the firm had formed an independent professional judgment that the debtor owed a particular debt when, during collection calls, those collectors told consumers they were calling from a law firm. Specifically, it was WWR's "practice and policy" to identify itself as a law firm in collection calls with consumers from July 21, 2011 through July 2013, and at times collectors continued to refer to WWR as law firm after that period during such

calls. Compl. ¶¶ 32, 33. Yet during collection calls, WWR's non-attorney collectors typically did not inform consumers that an attorney had not reviewed their account information or formed an independent professional judgment about the debt. *Id.* ¶ 35. For the reasons set forth in Part I.A-B, this misrepresented the actual level of attorney involvement. Counts IV and V therefore state claims upon which relief can be granted. *See Bard v. Law Offices of Harold E. Scherr, P.C.*, No. 13–cv–1411, 2014 WL 2610894, *3 (E.D.N.Y. June 6, 2014) (denying motion to dismiss claim that prerecorded call from law firm violated § 1692e(3) and (10)).

WWR largely bases its arguments related to collection calls on two cases, neither of which is on point. *Ostrander* involved whether identifying oneself as calling from the "Legal Department" of a non-law firm was sufficient to imply meaningful attorney involvement. *See Ostrander v. Accelerated Receivables*, No. 07-CV-827C, 2009 WL 909646, at *1, *6 (W.D.N.Y. Mar. 31, 2009). And *Woods* did not involve any claims of lack of meaningful attorney involvement. *See Woods v. Oxford Law, LLC*, No. CIV.A. 2:13-6467, 2015 WL 778778, at *9 (S.D. W. Va. Feb. 24, 2015).[5] Thus neither case weighs in favor of granting WWR's motion.

## II. The Bureau's CFPA Claims Are Also Well-Pled.

The Bureau has also alleged that WWR engaged in deceptive acts or practices in violation of the CFPA by misrepresenting the level of attorney involvement in its demand letters and collection calls. Compl. ¶¶ 14-36; 42-48; 54-60. Some courts

[5] In *Woods* the court declined to grant the plaintiffs' motion for default judgment on their § 1692e(3) claim, which did not allege a lack of meaningful attorney involvement. *Id*. at *9. Rather, the plaintiffs argued it was misleading for the defendant to identify itself as an attorney's office because it was not licensed in West Virginia. *Id*. Because the plaintiffs had not actually alleged in their complaint that the collectors were not licensed attorneys in West Virginia, the defendant's default did not establish that fact as true and the court could not conclude that the law firm violated § 1692e(3). *Id*.

addressing deception claims under the CFPA have looked to precedent involving claims for deception under Section 5 of the Federal Trade Commission Act. *See CFPB v. Gordon*, 819 F.3d 1179, 1192-93 n.7 (9th Cir. 2016) (acknowledging that CFPA's prohibition on deceptive practices mirrors language in the FTC Act and applying FTC Act standard to CFPA claims). Under that standard, a deception claim involves the following elements: "(1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. 2014) (citations omitted). The Bureau's Complaint alleges each of these elements. Compl. ¶¶ 17-22, 32-36, 40, 47, 59. For the reasons set forth above, the Bureau's allegations identify specific communications and allege that these representations were misleading because WWR attorneys had not meaningfully reviewed consumers' accounts. The Bureau has adequately alleged that these representations are material, as they have the potential to influence consumers to pay debts that they would not have otherwise. *See* Compl. ¶¶ 47, 59; *cf. FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (representation "is material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product'") (citation omitted). Counts III and VI thus meet the pleading requirements of Rule 8.

WWR's primary argument in opposition to the CFPA deception claims is that because WWR is a law firm, identifying itself as one was truthful and could not have been deceptive under the CFPA. Mot. 1-3, 10-11. The fact that WWR is a law firm does not permit it to misrepresent the level of attorney involvement in its debt collection communications. It is well-established under FDCPA case law that sending demand

letters on attorney letterhead and/or signed by an attorney or law firm can be misleading because it inaccurately implies that an attorney has reviewed a consumer's account when no such review occurred. *See supra*., Section I.A. Indeed, a debt collection letter that is "literally 'from' an attorney" (or that purports to be from a group of attorneys, as do WWR's) can be misleading if the letter appears likely to deceive consumers through overstating the level of attorney involvement in a debtor's case. *See Miller v. Upton, Cohen & Slamowitz,* 687 F. Supp. 2d 86, 94-95 (E.D.N.Y. 2009) (citation omitted); *Boyd v. Wexler*, 275 F.3d 642, 644 (7th Cir. 2001) (where demand letter was signed by a law firm, explaining that a lawyer violates § 1692e(3) by sending a demand letter that he has not reviewed since "his lawyer's letterhead then falsely implies that he has reviewed the creditor's claim") (citation omitted). That same conclusion applies to the CFPA's prohibition against deceptive acts or practices. Indeed, courts have long held that a truthful representation can also be deceptive under the Section 5 of the FTC Act. *Cf. Koch v. FTC*, 206 F.2d 311, 317 (6th Cir. 1953) (reasoning that "the mere fact that words and sentences may be literally and technically true does not prevent their being framed so as to mislead or deceive") (citation omitted); *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993, 1009-10 (N.D. Ind. 2000) (explaining that "deception may be by innuendo rather than outright false statements" and acknowledging that words and sentences that are "literally and technically true" can still be misleading) (citations omitted). Simply put, WWR's status as a law firm does not inoculate all statements relating to that status from liability under the FDCPA or the CFPA or give it license to misrepresent the level of attorney involvement in the consumer's debt. Thus the Bureau's CFPA deception claims (Counts III and VI) are well-pled.

## III. WWR Has Ample Notice of the Bureau's Claims and its Attempt to Impose Heightened Pleading Requirements Lacks Merit.

The Bureau's allegations set forth plausible claims for relief and provide sufficient notice to WWR. Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Keys v. Humana,* 684 F.3d 605, 608 (6th Cir. 2012) (citing *Erickson v. Pardus,* 551 U.S. 89, 93 (2007). WWR's assertion that the Bureau is required to "identify the debt, the specific dates notices were provided or calls were made, and the content of those communications" or identify debtors, specific dates on which letters were sent, or the client on whose behalf WWR was working lacks legal support and would have absurd results in the context of a government enforcement action that alleges millions of violations. *See* Mot. at 9; *cf. CFPB v. Frederick J. Hanna & Assoc.*, 114 F. Supp. 3d 1342, 1371-74 (N.D. Ga. 2015) (declining to impose heightened pleading requirements of Rule 9(b) to FDCPA and CFPA claims against a law firm debt collector). Not surprisingly, none of the cases cited by WWR indicate that the Bureau's allegations should be subject to such heightened pleading requirements or that the Bureau was *required* to attach the entirety of any communication in order to state a claim. *See* Mot. 9.

Here, the Bureau has identified specific statements in WWR's demand letters and calls that were deceptive (Compl ¶¶ 17, 18, 20, 21, 22, 32, 33) and explained why those statements were false or misleading (*id.* at ¶¶ 23-27, 35-36). The Bureau has alleged that this language was included in millions of demand letters since July 21, 2011. Comp. ¶ 28; *see also* Answer ¶¶ 17-22, ¶ 28. Similarly, the Bureau alleged, and WWR admitted,

that it was WWR's practice for at least two years to identify itself as a law firm during collection calls, a practice that was memorialized in training materials and scripts. Compl. ¶ 32; *see also* Answer ¶ 32. The Bureau has also identified sample statements after this time where WWR made similar misrepresentations. Compl. ¶ 33. And the Bureau has alleged that WWR did not communicate to consumers in its demand letters or collection calls that WWR attorneys had not reviewed the consumer's file or formed an independent professional judgment about the subject debt. *See id.* ¶¶ 25, 35. The Bureau's allegations provide more than enough factual content to put WWR on notice of the claims. *See, e.g., Dupuy*, 442 F. Supp. 2d at 825-26.

Finally, even if the Court believes that the Bureau must plead additional facts to meet Rule 8's pleading requirements, then the Bureau respectfully requests leave to amend in lieu of entering judgment in WWR's favor. *See Bear v. Delaware Cty, Ohio*, No. 2:14-CV-43, 2015 WL 1954451 at *2 (S.D. Ohio Apr. 28, 2015) (discussing Supreme Court and Sixth Circuit precedent indicating that requests for leave to amend should only be denied in narrow circumstances and granting leave to amend).

## IV. None of WWR's Other Arguments Demonstrates that it is Clearly Entitled to Judgment as a Matter of Law.

### A. WWR's Statute of Limitations Arguments do not Entitle it to Judgment on the Pleadings.

WWR has failed to show that any of the Bureau's claims should be dismissed at the pleadings stage as time-barred. Under the CFPA, no action may be brought "more than 3 years after the date of *discovery* of the violation to which an action relates." 12 U.S.C. § 5564(g) (emphasis added). Here, WWR does not argue that the Bureau brought its CFPA claims more than three years after the Bureau *discovered* those violations. Instead, WWR mistakenly equates the date of "discovery" with the date of the violation.

As a result, WWR incorrectly concludes that the violations WWR committed more than three years (plus the period tolled under the tolling agreement) prior to the filing of the complaint are time-barred. *See* Mot. 10-11. And even if WWR was correct that the CFPA's statute of limitations is a three-year accrual statute of limitations – and it is not – this would still not entitle WWR to judgment on the pleadings. Even under WWR's misreading of the CFPA, WWR acknowledges that the Bureau's claims relating to the violations WWR committed after November 15, 2013 are timely. Mot. 10-11.

Regarding the Bureau's FDCPA claims, WWR has likewise not established that it is clearly entitled to judgment as a matter of law. Citing 15 U.S.C. § 1692k(d), WWR argues that a one year statute of limitations applies to the Bureau's FDCPA claims. Mot. 10. First, WWR's violations of the FDCPA are separate violations of the CFPA, 12 U.S.C. § 5536(a)(1)(A). Thus Counts II and V assert violations of the CFPA based on WWR's violations of the FDCPA. *See* Compl. ¶¶ 43, 55. Those Counts are therefore governed by the CFPA's three year discovery-based statute of limitations. So, even if a one-year statute of limitations applied to the Bureau's FDCPA claims (Counts I and IV), that would not warrant judgment on the pleadings given that all of the other Counts arise under the CFPA. *See CFPB v. Frederick J. Hanna & Assocs.*, 114 F. Supp. 3d 1342, 1380 (N.D. Ga. 2015) (discussing potential limitations period for Bureau's FDCPA claims and declining to rule on whether a one-year or three-year statute of limitation applied, reasoning that any such ruling would not impact discovery given that the CFPA claims were not time-barred and were based on the same conduct as the FDCPA claims). Second, the one-year statute of limitations set forth in section 1692k pertains to private consumer lawsuits against debt collectors, and does not apply to the instant government enforcement action. The Bureau's claims arise under an entirely different section, 15

U.S.C. § 1692*l*(b)(6), and WWR fails to articulate why the one-year statute of limitations should apply to Counts I and IV.

**B. The Fact that WWR's Letters Were Signed By A Law Firm, Not an Individual Attorney, is a Distinction Without a Difference.**

WWR relies heavily on the fact that its demand letters were signed by the law firm, and not an individual attorney, in arguing for judgment on the pleadings. *See* Mot. 11-14. As discussed in Part I, the Bureau has alleged that WWR's demand letters and calls create the impression that an attorney has reviewed the consumer's file and formed a professional judgment that the consumer owes the subject debt and that the debt is collectible. And this conclusion is not, as WWR claims, an expansion "by judicial fiat" of the FDCPA. *See* Mot. 14. On the contrary, courts have frequently held that collection letters signed by a law firm violate the FDCPA where no attorney was meaningfully involved in reviewing the debt. *See, e.g.*, *Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173, 1178-79 (D. Minn. 2011) (concluding that letter signed by law firm violated § 1692e(3) where none of the firm's attorneys had meaningfully reviewed the debtor's file before sending the letter); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353, 360-61 (E.D.N.Y. 2005) (holding plaintiffs sufficiently alleged that letter from law firm misrepresented level of attorney involvement where subject letter was "signed" by a law firm, not an individual person).

WWR also misconstrues the case law on disclaimers of attorney involvement in debt collection letters, inaccurately suggesting that cases holding that collection letters without disclaimers violated the FDCPA were limited to letters signed by individual attorneys. Mot. 13-14. That is not the case. For example, in *Greco*, the Second Circuit considered demand letters signed by a law firm and acknowledged that "a letter sent on

law firm letterhead, *standing alone*, does represent a level of attorney involvement to the debtor receiving the letter." 412 F.3d at 364 (emphasis in original). The court noted that this can be misleading "if the attorney or firm had not, in fact, engaged in [the] implied level of involvement." *Id.*; *see also Gonzalez v. Kay*, 577 F.3d 600, 606-07 (5th Cir. 2009) (reversing dismissal of complaint where letter was printed on law firm letterhead, was not signed, and had a disclaimer printed on the back of the letter). Rather, these cases demonstrate that demand letters sent on law firm letterhead that purport to be from a law firm can carry the same implication of attorney involvement as letters signed by an individual attorney.

Indeed, none of the cases cited by WWR indicates that letters signed by law firms should be held to a different standard than letters signed by individual attorneys. This Court's decision in *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913 (N.D. Ohio 2011), is of no help to WWR. In that case, this Court held that a letter that explicitly notified the recipient that no attorney had reviewed the account did not violate the FDCPA. *Id.* at 922-23. In reaching this conclusion, this Court followed *Greco* and acknowledged that an attorney can send a debt collection letter without being meaningfully involved "so long as that letter includes disclaimers that should make clear . . . that *the law firm* or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." *Id.* at 922 (quoting *Greco,* 412 F.3d at 364 (emphasis added)). Contrary to WWR's suggestion (Mot. 16), the use of a disclaimer that "properly disclaim[ed] attorney involvement" was key to this Court's holding in *Michael*. WWR's reliance on *Bytwerk v. Mary Jane Elliott, P.C.*, is similarly misplaced. That case was decided at summary judgment, and there was no dispute that attorneys at the firm "personally review[ed] every debt that [was] placed in [its] office" before

sending a collection letter signed by the law firm. No. 1:12-CV-876, 2013 WL 150461, at *4 (W.D. Mich. Jan 14, 2013). Thus WWR's argument that a communication from a law firm cannot be misleading as to the level of an attorney's involvement does not provide a basis for granting judgment on the pleadings.

### C. Although *Sheriff v. Gillie* is Inapposite, its Holding is Consistent with the Bureau's Allegations.

WWR incorrectly argues that the Supreme Court's recent decision in *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016), gives it carte blanche to identify itself as a law firm in communications with consumers because WWR is in fact a law firm. Mot. at 14-15. In *Sheriff*, the Supreme Court held that it was not deceptive for special counsel to convey that they were collecting debts on behalf of the state and that the Attorney General is the state's debt collector. 136 S. Ct. at 1601-02. The Court did not address § 1692e(3)'s prohibition against misrepresenting that a communication is from an attorney and explicitly restricted its opinion regarding the identity of the sender to the circumstances of "special counsel" acting on behalf of state attorneys general. *Id*. at 1601 n.5 ("We address here only 'special counsel.' The considerations relevant to that category may not carry over to other debt-collector relationships.").

In holding that the subject letters were not deceptive, the Court reasoned that the FDCPA did not require special counsel to "obscure" the "reality" of their relationship with the state. *Id.* at 1603. The Bureau's claims are completely consistent with this holding. Here, the Bureau challenges WWR's debt collection practices that misrepresent the relevant legal reality, namely that although the account has been referred to a law firm, no attorney has reviewed that consumer's file or exercised his or her independent professional judgment that the particular consumer's debt is due. *Sheriff* does not

provide a basis for granting judgment on the pleadings, nor does it undermine the Bureau's claims.

### D. WWR's "Public Policy" Argument Does not Entitle it to Judgment in its Favor.

WWR complains that informing consumers about the true circumstances of their debt – namely that no attorney had reviewed the specifics of the consumer's debt – would place "an added burden on debt collection law firms that non-law-firm debt collectors do not have to bear." Mot. 19. This argument does not entitle it to judgment in its favor. One of the purposes of the FDCPA is to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. 15 U.S.C. § 1692(e). Permitting WWR to exploit its status as a law firm when it attempts to collect debts that its attorneys have not meaningfully reviewed would competitively disadvantage non-law firm debt collectors, as well as law firm debt collectors who meaningfully review debts they attempt to collect or clearly communicate to consumers that no such review has occurred.

Although WWR does not articulate why truthfully informing consumers that no attorney had reviewed the consumer's debt would be a "burden," its primary focus on any burden associated with providing an accurate disclaimer is misplaced. Certainly, several circuits have held that a prominent and clear disclaimer can make clear that a law firm or attorney was not acting as an attorney at the time it sent the letter. *See Jones v. Dufek*, 830 F.3d 523, 527 (D.C. Cir. 2016) (citations omitted). But WWR overlooks the fact that if its attorneys engage in a meaningful review of each debt it attempts to collect, then the law firm could identify itself as a law firm and have nothing to disclaim. Accordingly, WWR's "public policy" argument provides no basis for granting judgment

on the pleadings. *Cf. Young v. Citicorp Retail Servs., Inc.*, No. CIV. 3:95CV1504, 1997 WL 280508, at *6 (D. Conn. May 19, 1997), *aff'd*, 159 F.3d 1349 (2d Cir. 1998) (acknowledging that requiring attorney debt collectors to personally review a debtor's file could disrupt collection practices and increase collection costs but reasoning that such concerns "cannot override the requirements of the FDCPA."); *Clomon*, 988 F.2d at 1321 ("No mass mailing technique is permissible – regardless of how effective it might be – if that technique constitutes a false, deceptive, or misleading communication.").

### E. WWR's Professional Obligations Do Not Justify Its Conduct.

Although WWR asserts that the Ohio Rules of Professional Conduct obligate it to identify itself as a law firm (Mot. 3), those rules cannot be read to permit law firms to imply that they have formed a professional judgment about the validity of a debt when a firm attorney has not reviewed the particular circumstances of a debtor's account. *Cf.* ABA Comm. on Ethics and Prof'l Responsibility, ABA Informal Op. 1368 (July 15, 1976) (opining that proposed mass mailing of collection letters prepared under attorney's supervision but which the attorney had not personally reviewed was improper); N.J. Sup. Ct. Advisory Comm. on Prof'l Ethics, N.J. Eth. Op. 48 (May 30, 2012) (recognizing that when a law firm sends a collection letter, a debtor has reason to believe that an attorney had evaluated the claim, and discussing difference between lawyers acting in a "lawyer capacity" and in a "lay debt collector" capacity).

## Conclusion

For the reasons set forth above, WWR's Motion for Judgment on the Pleadings should be Denied. In the alternative, the Bureau respectfully requests leave to amend its complaint in lieu of the Court entering judgment on the pleadings.

Dated: July 12, 2017

Respectfully submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau

ANTHONY ALEXIS
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

s/ Sarah Preis

Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov
Rebeccah Watson
Phone: (202) 435-7895
Facsimile: (202) 435-9346
Email: rebeccah.watson@cfpb.gov

*Enforcement Counsel*

**Certificate of Compliance**

I hereby certify that this case has been assigned to the standard track. Pursuant to LR 7.2(f), this Opposition to Motion for Judgment on the Pleadings adheres to the 20 page limitation set for memoranda relating to dispositive motions in standard track cases.

s/ Sarah Preis

Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov

**Certificate of Service**

I hereby certify that on July 12, 2017, a copy of foregoing Opposition to Motion for Judgment on the Pleadings was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

s/ Sarah Preis

Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov