**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WELTMAN, WEINBERG & REIS CO., L.P.A.,**<br><br>**Defendant.** | **Civil Action No. 1:17-cv-00817**<br><br>**Judge Donald C. Nugent** |

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. *GILLIE* CONFIRMS THE ORIGINAL PURPOSE OF THE FDCPA ..... 1

1. The purpose of the FDCPA and the perversion of that purpose ..... 1

2. *Gillie* sets the record straight ..... 5

3. *Gillie* is dispositive ..... 8

B. THE BUREAU'S ARGUMENTS FAIL, EVEN WITHOUT *GILLIE* ..... 9

1. The Bureau's FDCPA and CFPA claims fall together ..... 9

2. The Bureau's arguments about attorney involvement are not relevant ..... 10

3. Law firm letterhead does not represent (or misrepresent) attorney involvement ..... 10

(a) Sixth Circuit precedent requires dismissal of the Bureau's Complaint ..... 10

(b) The Bureau conflates lawyer signatures with law firm letterhead ..... 12

4. Some of the Bureau's claims are time-barred ..... 15

C. THE BUREAU SHOULD NOT BE GRANTED LEAVE TO AMEND ..... 16

III. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abels v. JBC Legal Group*,
428 F. Supp. 2d 1023 (N.D. Cal. 2005) ....................13

*Avila v. Rubin*,
84 F.3d 222 (7th Cir. 1996) ....................3, 7

*Bard v. Law Offices of Harold E. Scherr, P.C.*,
No. 13-cv-1411 (CBA(VMS), 2014 WL 2610894 (E.D.N.Y. June 6, 2014) ....................3

*Bishop v. Lucent Techs, Inc.*,
520 F.3d 516 (6th Cir. 2008) ....................15

*Boyd v. Wexler*,
275 F.3d 642 (7th Cir. 2001) ....................13, 14

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993)....................14

*Dupuy. Dupuy v. Weltman, Weinberg & Reis Co., L.P.A.*,
442 F. Supp. 2d 822 (N.D. Cal. 2006) ....................13

*Fed. Home Loan Mortgage Corp. v. Lamar*,
503 F.3d 504 (6th Cir. 2009) ....................2

*FTC v. Think Achievement Corp.*,
144 F. Supp. 2d 993 (N.D. Ind. 2000) ....................6

*Gillie v. Law Offices of Eric A. Jones, LLC*,
785 F.3d 1091 (6th Cir. 2015) (*reversed by Gillie*, 136 S. Ct. at 1603) ....................5, 6, 7

*Greco v. Trauner, Cohen & Thomas, L.L.P.*,
412 F.3d 360 (2d Cir. 2005)....................14

*Huff v. FirstEnergy Corp.*,
972 F. Supp. 2d 1018 ....................16

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*,
518 F.3d 433 (2008)....................11

*Koch v. FTC*,
206 F.2d 311 (6th Cir. 1953) ....................................................................................6

*Lesher v. Law Offices of Mitchell N. Kay*,
650 F. ...................................................................................................................13, 14

*Michael v. Javitch, Block & Rathbone, LLP*,
825 F. Supp. 2d 913 (N.D. Ohio 2011)...................................................................11

*Miller v. Javitch, Block & Rathbone*,
561 F.3d 588 (6th Cir. 2009) (*quoting Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ....................................................................................12

*Miller v. Upton, Cohen & Slamowitz*,
687 F. Supp. 2d 86 (E.D.N.Y. 2009) ...................................................12, 13, 14

*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2d Cir. 2003)....................................................................................14

*Nielson v. Dickerson*,
307 F.3d 623 (7th Cir. 2002) ...............................................................................2, 13

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
369 F. Supp. 2d 353 (E.D.N.Y. 2005) ......................................................................4

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
601 F.3d 505 (6th Cir. 2010) ..................................................................................16

*Sheriff v. Gillie*,
136 S. Ct. 1594 (2016)...................................................................................... passim

*Sierra Club v. Pena*,
915 F. Supp. 1381 (N.D. Ohio 1996)......................................................................16

*Smith v. Weltman, Weinberg & Reis Co., L.P.A.*,
No. 3:16-cv-1333-NJR-SCW, 2017 WL 2345600 (S.D. Ill. May 30, 2017)..........................12

**STATUTES**

15 U.S.C. § 1692e .......................................................................................... passim



NAI-1502866092v2

**OTHER AUTHORITIES**

Meriam-Webster, https://www.merriam-webster.com/dictionary/milquetoast (last visited July 19, 2017) ... 3

Ohio Rule of Prof. Conduct 5.3(a)-(c) ... 9

S. Rep. 95-382 ... 1, 5

Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 500097-2 (Dec. 13, 1988) ... 2

# I. INTRODUCTION

The Consumer Financial Protection Bureau's (the "Bureau") legal theory in this case is simple: A law firm that identifies itself as a law firm—in a letter or in a phone call—is liable for misleading the debtor into thinking an unidentified ***lawyer*** is going to sue him. The debtor's knees get to knocking, claims the Bureau. (Opposition to Mtn. for Judgment on the Pleadings, "Opp. Br.," ECF No. 10, at 1.) The debtor, who would not have otherwise paid this debt, immediately changes his course of action and pays. (*Id.* at 11.) Why? According to the Bureau, the debtor "knows the price of poker has just gone up." (*Id.* at 1, *quoting Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996)).

That simple theory is wrong, having been rejected by the Supreme Court just last year. *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016). *Gillie* makes clear that a true communication—even one that causes a consumer to fear the consequences of his debts—is not actionable. Old cases from other circuits do not survive the Supreme Court's decision to reverse a Sixth Circuit opinion that relies on the same cases and logic on which the Bureau relies. This case and the legal theory on which it is based should not survive either.

# II. ARGUMENT

## A. *GILLIE* CONFIRMS THE ORIGINAL PURPOSE OF THE FDCPA

### 1. The purpose of the FDCPA and the perversion of that purpose.

The Fair Debt Collection Practices Act ("FDCPA") was passed to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. 95-382. As part of that regulatory scheme, Congress passed § 1692e to eliminate "false, deceptive, or misleading" practices. 15 U.S.C. § 1692e. While § 1692e sets forth a noncomprehensive list of communications that are actionable, that list does not remove the fundamental requirement that, to be actionable, a

communication must be ***false***, ***deceptive***, or ***misleading***. *Id.*

Relevant here is the prohibition on "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Drafters included that provision to address "letter[s] from a 'Pre-Legal Department,' where no legal department exists" and creditors "falsely us[ing] an attorney's name rather than [their] own." Staff Commentary on the FDCPA, 53 Fed. Reg. 500097-2 (Dec. 13, 1988). Nowhere in the legislative history or the FDCPA itself is there any mention that law firms should not truthfully identify themselves or involve staff in the debt collection process. In fact, the drafters of the FDCPA explicitly recognized that "[a]n ***attorney*** may use a computer service to send letters on his own behalf." *Id.* (emphasis added).

While the FDCPA did, in fact, help stem the tide of harassing, abusive, and deceptive debt collection practices, overly liberal interpretations by certain courts led to an unintended side effect. As Weltman, Weinberg & Reis Co., L.P.A. ("WWR") set forth in its opening brief, a "cottage industry" of "professional plaintiffs" emerged, challenging actions of debt collectors that are wholly divorced from the "widespread and serious national problems of abuse that the Senate observed in adopting" the FDCPA. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2009). This cottage industry even found a foothold in cases brought under § 1692e(3).

Early cases brought under § 1692e(3) focused on the real problems identified by Congress: lawyers selling their letterhead to non-lawyer debt collectors and fictitious "pre-legal" departments with no legal department to take over. *See, e.g.*, *Nielson v. Dickerson*, 307 F.3d 623, 637 (7th Cir. 2002) (finding a violation of § 1692e(3) where the creditor was "paying for the marquee value of [the lawyer's] name rather than his professional assistance in the collection

of debts"). Aggressive plaintiffs' lawyers and courts that were not sufficiently careful, however, produced a small subset of cases that went too far, finding that certain innocuous communications from a law firm were deceptive. One of the most egregious examples is relied upon by the Bureau. In *Bard v. Law Offices of Harold E. Scherr, P.C.*, the defendant law firm left a prerecorded message that said, simply,

> This message is for Hanna Bard; if you are not Hanna Bard, you should not listen to the rest of this message; this is the Law Office of Harold E. Scherr, a firm which engages in the collection of debt; please call me toll free at 8008588736.

No. 13-cv-1411 (CBA)(VMS), 2014 WL 2610894, at *1 (E.D.N.Y. June 6, 2014). Despite the fact that the message did not say it was from a lawyer, threaten legal action, or even say that Hanna Bard owed a debt that the firm was seeking to collect, the court held that the voicemail misrepresented attorney involvement in the collection process. *Id.* at *3.

Emboldened by these outlier cases, the Bureau asks the Court to further pervert the purposes of the FDCPA and find that any communication that mentions a law firm is "misleading" unless it has a detailed disclaimer. Focusing on the oft-cited language from *Avila* that a letter from a lawyer will get a debtor's "knees knocking" because he "knows the price of poker has just gone up," 84 F.3d at 229, the Bureau asks this Court to hold that the least sophisticated consumer is so unthinking and naive that the mere sight of law firm letterhead will mislead him to do anything he is told.

The problem is that the Bureau's supposition—which it asks the Court to adopt as a matter of law—does not reflect reality. As case after case has shown, debtors do not respond

with knocking knees when law firms send milquetoast[1] communications to them. For instance, in *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, upon which the Bureau relies, the debtor received not one, but ***five*** communications from a law firm, one of which threatened that the law firm would "request authority to commence legal action against [the debtor] for the full amount of the outstanding debt." 369 F. Supp. 2d 353, 356 (E.D.N.Y. 2005). Did Ms. Reade-Alvarez—recognizing the "price of poker has gone up"—react by immediately paying her debt? No. She ignored all five letters and sued the debt collector. *Id.* at 356.

And what would happen here if the Bureau put a debtor on the stand who was asked "did you pay a debt you otherwise would not have paid?" An honest debtor would have to say no. The Bureau alleges that WWR sent out "over a million demand letters on its Firm letterhead" and made uncounted collections calls in which "its collectors continued to refer to WWR as a law firm." (Compl., ECF No. 1, ¶¶ 17-18, 28, 29-36.) While the Bureau claims WWR's (admittedly true) representation that it is a law firm "ha[s] the potential to influence consumers to pay debts that they would not have otherwise" (Opp. Br., ECF No. 10 at 11), the Bureau does not allege a single instance in which an actual, real-life debtor has been misled by WWR letterhead, paid a debt he otherwise would not have paid because he was afraid of WWR, or paid a debt he did not owe. The Bureau's specter of consumer confusion and intimidation is nothing but that: a

[1] The term "milquetoast" refers to the 1920s comic strip character, Caspar Milquetoast, and has come to mean "timid, meek, or unassertive." Meriam-Webster, https://www.merriam-webster.com/dictionary/milquetoast (last visited July 19, 2017). A quick review of the letters WWR attached to its answer makes clear that they are "so milquetoast," Caspar himself would not be moved by them.



**Caspar Milquetoast**

specter.

**2. *Gillie* sets the record straight.**

The Supreme Court has never endorsed a reading of § 1692e(3) that would permit a lawsuit based on a law firm's use of accurate letterhead identifying itself as such. And, in 2016, it made clear that cases that twist literally true, wholly accurate letterhead and signatures to provide debtor redress when there should be none are wrongly decided. At issue in *Gillie* was § 1692e(9), which prohibits communications that "simulate or . . . falsely represent" that they are "authorized, issued, or approved by any court, official, or agency of the United States or any State." 15 U.S.C. § 1692e(9). That provision is particularly relevant to this Court's interpretation of § 1692e(3), because § 1692e(9) was passed for the same reason as § 1692e(3): preventing debt collectors from "impersonating public officials and attorneys." S. Rep. 95-382.

Plaintiff, Pamela Gillie, received a debt collection letter from attorney Eric A. Jones, who was serving as special counsel to the Ohio Attorney General. *Gillie v. Law Offices of Eric A. Jones, LLC*, 785 F.3d 1091, 1096 (6th Cir. 2015) (hereinafter "*Law Offices of Eric A. Jones*") (*reversed by Gillie*, 136 S. Ct. at 1603). The letter was on Ohio Attorney General letterhead and signed "Eric A. Jones Outside Counsel for the Attorney General's Office." *Id.* Ms. Gillie joined with a second plaintiff, and together they sued Mr. Jones and another lawyer serving as special counsel to the Ohio Attorney General, claiming letters on Attorney General letterhead were deceptive. While the district court granted the defendants summary judgment, the Sixth Circuit took Ms. Gillie's bait, finding, "[a]n inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives." *Id.* at 1105 (internal citation omitted). Making the same arguments the Bureau makes here, the Sixth Circuit noted, "Intimidation is at the heart of this case." *Id.*

The Sixth Circuit found:

- That the "description by special counsel of their relation to the OAG" is "accurate" does not preclude liability under the FDCPA. *Id.* at 1109 (*citing*, among others, *McMillan v. Collection Profs., Inc.*, 455 F.3d 754, 761 (7th Cir. 2006) ("[I]n some cases the literal truth may convey a misleading impression.")). (*Compare with* Opp. Br., ECF No. 10, at 12, arguing that even though a debt collection letter is "'literally "from" an attorney,'" it is still misleading (*quoting Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 94-95 (E.D.N.Y. 2009).)[2]
- A letter that "tends to send a mixed signal is inherently confusing when it fails to include language that clarifies its meaning." *Law Offices of Eric A. Jones*, 785 F.3d at 1108. (*Compare with* Opp. Br., ECF No. 10, at 16-17, arguing that a disclaimer is required to prevent consumer confusion.)
- Use of the letterhead is "intended to induce a higher rate of repayment by intimating the State of Ohio is in fact sending the letter, which may lead the naive consumer to prioritize this debt above all others for no good reason." *Law Offices of Eric A. Jones*, 785 F.3d at 1108. (*Compare with* Opp. Br., ECF No. 10, at 19 and 1-2, claiming that WWR is "exploit[ing] its status as a law firm" in order to "strike fear in the heart of the consumer.")

[2] The cases the Bureau cites about "literal truth" do not support its position because the actionable statements in those cases were not literally true. For instance, in *Koch*, one of the misleading statements over which the Federal Trade Commission sued was that a drug cured cancer—not "***a***" cancer, "***all***" cancer. *Koch v. FTC*, 206 F.2d 311, 317 (6th Cir. 1953) (while noting that some of the "words or sentences may be literally or technically true," the evidence demonstrated that "the representations were misleading and deceptive as to the identity of the diseases claimed to have been cured as well as to the effectiveness of the claimed cure"); *see also FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993 (N.D. Ind. 2000) (finding that defendants intentionally misled consumers into believing they could obtain a job at the postal service for a $46.95 registration fee).

Finally, just as the Bureau does in the opening paragraphs of its brief, the Sixth Circuit glommed onto *Avila* and expounded that "when the letter is opened and the least sophisticated consumer perceives the name of the Attorney General . . . the least sophisticated consumer may believe that '***the price of poker has just gone up***.'" *Law Offices of Eric A. Jones*, 785 F.3d at 1108 (*quoting Avila*, 84 F.3d at 222) (emphasis added). (*Compare with* ECF No. 10 at 1-2, quoting same portion of *Avila*.)

In short, the Sixth Circuit's exposition in *Law Offices of Eric A. Jones* is no different than the Bureau's arguments here. As the 8-0 Supreme Court decision written by Justice Ginsburg found, "The Sixth Circuit raises the specter of consumer confusion and the risk of intimidation from special counsel's use of the Attorney General's letterhead, but its exposition is unconvincing." *Gillie*, 136 S. Ct. at syllabus. The same is true of the Bureau's arguments.

*Gillie* makes clear that stationery that "accurately describes the relevant legal realities" is not actionable—the FDCPA does not transform such accurate letterhead into a "'false,' 'deceptive,' or 'misleading' action[] under statute." *Law Offices of Eric A. Jones*, 785 F.3d at 1114 (Sutton, J., dissenting) (*cited approvingly by Gillie*, 136 S. Ct. at 1603). "A document with the Attorney General's letterhead, it is no doubt true, gives the impression that it comes from the Attorney General. But special counsel's dunning letters ***do*** come from the Attorney General." *Id.* at 1115. In fact, the stationery has no choice but to identify the relevant legal entities: the FDCPA is clear that "[a] debt collector may not lie about his institutional affiliation." *Id.* The Supreme Court did not hold, or even suggest, that the use of the Attorney General's letterhead misled Ms. Gillie into believing that the Attorney General himself had reviewed her debt.

As to the threat of intimidation, "§ 1692e bars debt collectors from deceiving and misleading consumers; it does not protect consumers from fearing the actual consequences of

their debts." *Gillie*, 136 S. Ct. at 1603. Where special counsel sends "milquetoast letters" under its name and Attorney General letterhead, special counsel "merely clarifies" to whom the debt is owed (the State of Ohio) and who is collecting the debt (the Ohio Attorney General through special counsel). *Id.* "The FDCPA is not sensibly read to require special counsel to obscure that reality." *Id.*

**3. *Gillie* is dispositive.**

As set forth more fully in WWR's opening brief, *Gillie* is dispositive. The "specter of consumer confusion" is insufficient to state a claim under the FDCPA, *id.* at syllabus; and letterhead that "accurately conveys" the identity of the sender is "[n]ot fairly described as 'false or misleading.'" *Id.* at 1598.

The Bureau concedes that WWR is a law firm. (Compl., ECF No. 1, at ¶ 6.) The Bureau has not alleged that the ***firm***—as opposed to an individual lawyer—does not conduct a review of debt before sending out debt collection letters. (*Id.* at ¶¶ 12-13, describing WWR's intake process.) The Bureau does not claim that individual lawyers sign WWR's letters. (*Id.* at ¶ 18, "'Weltman, Weinberg & Reis Co., L.P.A. appears in type-face in the signature line of nearly all of Weltman's demand letter templates.") Nor does it maintain that WWR tries to collect debts that are not due and owing, threatens actions that it cannot take, or in any other way harasses or intimidates debtors. The Bureau claims one thing: WWR identifies itself as a law firm. That statement is true.[3]

Given these facts, the Bureau's argument that *Gillie* is inapposite falls flat. The Bureau begins by sanctimoniously claiming that WWR believes *Gillie* gives it "carte blanche to identify

[3] The other statements on which the Bureau relies, such as informing debtors that WWR may take legal action, are barred by the statute of limitations. But, even if they were not, they are also true because WWR can and does pursue legal action. The Bureau does not allege otherwise.

itself as a law firm." (Opp. Br., ECF No. 10, at 18.) In fact, *Gillie* has nothing to do with WWR's "carte blanche" to identify itself as a law firm. WWR is, in fact, a law firm. And, the FDCPA itself and the Ohio Rules of Professional Conduct not only give WWR "carte blanche" to use its true name and identify itself as a law firm, but require it to do so. 15 U.S.C. § 1692e(14); Ohio Rule of Prof. Conduct 5.3(a)-(c).

Nor can the Bureau's claim stand that its Complaint is "completely consistent" with *Gillie's* holding that "the FDCPA did not require special counsel to 'obscure' the 'reality' of their relationship with the state." (Opp. Br., ECF No. 10, at 18.) That is exactly what the Bureau wants WWR to do. The legal reality is that WWR is a law firm. The firm conducted a review of consumer debt and determined it had enough information to pursue collection. (Compl., ECF No. 1, at ¶¶ 12-13.) Based on that review, WWR sought to collect the debt. Because of the specter of consumer confusion regarding ***lawyer*** (versus non-lawyer employee) involvement, the Bureau asks WWR to obscure the legal reality that it is a law firm. *Gillie* prohibits that.

*Gillie* also disposes of the Bureau's argument regarding public policy. (Opp. Br., ECF No. 10, at 19.) The Bureau alleges that WWR is trying to "exploit its status as a law firm" when it attempts to collect debts as a law firm rather than a debt collection agency. But, just as in *Gillie*, WWR's "milquetoast letters"—which include required FDCPA disclosures regarding WWR's status as a ***debt collector***—do not "threaten criminal prosecution, civil penalties, or any action whatsoever." *Gillie*, 136 S. Ct. at 1603. Thus, WWR is not exploiting its status as a law firm. Because it clearly identifies itself as a debt collector attempting to collect a debt, WWR should not be required to include additional disclaimer language that non-law firm debt collectors do not.

## B. THE BUREAU'S ARGUMENTS FAIL, EVEN WITHOUT *GILLIE*

### 1. **The Bureau's FDCPA and CFPA claims fall together.**

While the Bureau includes a separate section of argument regarding its CFPA claims, that section relies almost exclusively on FDCPA cases and other cases that were decided long before the CFPA—or the Bureau—existed. The factual basis of the FDCPA and CFPA claims are identical, and the Bureau argues that it has pleaded violations of the CFPA based on FDCPA cases. (Opp. Br., ECF No. 10, at 12, referring to FDCPA portion of brief and citing FDCPA cases decided before the CFPA was enacted.) Thus, WWR continues to address the claims together for simplicity.

**2. The Bureau's arguments about attorney involvement are not relevant.**

The Bureau spends several pages of its brief arguing that WWR attorneys were not meaningfully involved in sending demand letters. (Opp. Br., ECF No. 10, at 8-9.) While WWR disagrees with this characterization, the fact is that, for purposes of this motion, these specific allegations are not relevant: the law firm of WWR is meaningfully involved in the process of sending out the demand letters. Thus, under *Gillie*, letters on WWR letterhead signed "Weltman, Weinberg & Reis Co., L.P.A." are accurate and true, not deceptive, false or misleading.[4]

**3. Law firm letterhead does not represent (or misrepresent) attorney involvement.**

**(a) Sixth Circuit precedent requires dismissal of the Bureau's Complaint.**

While *Gillie* is the clearest path, the Court need not rely on it to dispose of the Bureau's less-than-well-pled Complaint. Fundamental to the Bureau's argument is the belief that, by doing nothing other than identifying itself as a law firm (which it is), WWR "impl[ied] that an attorney was involved in reviewing the consumer's debt" and had "formed a professional judgment that the consumer owed the debt." (Opp. Br. at iv, 1; *see also id.* at 3, 10.) The Bureau

[4] WWR does not respond separately to the Bureau's argument that it has provided ample notice of its claims. WWR's opening brief coupled with the repeated references in other argument sections in this brief show how completely the Bureau has failed to provide notice of its claims.

does not cite a single case from the Sixth Circuit or any district court within this Circuit that so holds. The Bureau's refusal to cite to opinions from this Circuit—and courts within its boundaries—is understandable. Those cases doom the Complaint.

The Sixth Circuit's leading "attorney letterhead" case is *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433 (6th Cir. 2008). Unlike here, in addition to sending his letters on law firm letterhead, Mr. Margelefsky required that payment be sent to an actual attorney at his firm. *Id.* at 440. Because of the reference to the individual attorney, the Sixth Circuit could not determine as a matter of law whether the letter was misleading, and sent the question to a jury. *Id.* at 441. By so doing, the Sixth Circuit recognized the significance of referring to an individual attorney, rather than a law firm.

And while the Bureau argues that this Court's opinion in *Michael* is inapposite because the letter in that case included a disclaimer, the Court's reasoning is spot on. The Court stated that "[t]he mere fact that a letter is written on law firm letterhead does not violate the FDCPA. The question is whether the least sophisticated debtor, reading the letter, would understand that the law firm has not reviewed the specific facts of the case." *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 921 (N.D. Ohio 2011). Implicit in that statement is recognition that, for a ***law firm*** signature to be misleading, the ***law firm***—not an ***attorney***—must have failed to review the specific facts of the case. Here, the Complaint admits that WWR reviews debts. (Compl., ECF No. 1, at ¶¶ 12-13.)

Nor did this Court accept plaintiff's argument that "'the least sophisticated consumer—despite any disclaimer—will reasonably assume that Michael Collins [the letter's signatory] . . . is, in fact, a lawyer.'" *Id.* at 923-24. That finding is consistent with WWR's "Matlock Defense," which it whole-heartedly continues to endorse. The least sophisticated consumer has probably

seen Matlock or a show like it—and he knows that persons other than lawyers work at law firms. While WWR may need to cite to television shows and paralegal course advertisements to make this point, the least sophisticated consumer is far more familiar with television shows and community college advertisements than he is with court opinions from the Eastern District of New York or the District of Minnesota.

Nor can the Bureau successfully contend with the Sixth Circuit's holding in *Miller v. Javitch, Block & Rathbone* that a statement that is "'false in some technical sense'" is not actionable unless it is likely to actually mislead a consumer into taking some action he otherwise would not have taken. 561 F.3d 588, 596 (6th Cir. 2009) (*quoting Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009)). In other words, a misstatement must be material. *See Smith v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:16-cv-1333-NJR-SCW, 2017 WL 2345600, at *2 (S.D. Ill. May 30, 2017) ("Dismissal is appropriate where it is apparent from a reading of the [debt collection] letter that not even a significant fraction of the population would be misled by it."). The sole allegation in the Complaint regarding materiality is, "This practice was material because it had the potential to influence consumers to pay an alleged debt when they would have not otherwise." (Compl., ECF No. 1, at ¶¶ 47, 59.) The Bureau does not identify a single instance of a consumer paying a debt he otherwise would not have, despite its claims that WWR sent out more than a million collection letters and made innumerable phone calls. In short, the Bureau's claims of materiality are conclusory, and *Miller* demands the Complaint be dismissed.

**(b) The Bureau conflates lawyer signatures with law firm letterhead.**

Having ignored the Sixth Circuit's and this Court's opinions, the Bureau then conflates law firms with lawyers, arguing first that "[n]umerous courts [in other jurisdictions] have recognized that a letter from an attorney or law firm . . . implies that an attorney 'has reached a



NAI-1502866092v2

considered, professional judgment that the debtor is delinquent and a candidate for legal action,'" and, later, that FDCPA case law establishes that "letters on attorney letterhead and/or signed by an attorney or law firm can be misleading because it implies that an attorney has reviewed a consumer's account." (Opp. Br., ECF No. 10, at 5, *quoting Nielson v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002) and 12.) But a law firm is not a lawyer. Nor is a lawyer a law firm.

In the very *Nielson* case the Bureau cites, an individual lawyer signed the letter. 307 F.3d at 628. So, too, in the *Miller* case relied upon by the Bureau, a *lawyer* signed the dunning letter. *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 90 (E.D.N.Y. 2009) ("The letter was hand-signed by UCS attorney and partner Mitchell Slamowitz."). The same is true of *Dupuy*. *Dupuy v. Weltman, Weinberg & Reis Co., L.P.A.*, 442 F. Supp. 2d 822, 825-26 (N.D. Cal. 2006). There, the signatories to the letters did not include their titles, but those signatories were lawyers. *Id.* at 825 n.2. These cases are inapposite.

While the letters in *Lesher* and *Boyd* were signed by a law firm, the Third and Seventh Circuits never considered the argument that this was a distinction with a difference, relying heavily on cases that included ***lawyer*** signatures. *Lesher v. Law Offices of Mitchell N. Kay*, 650 F.ed 993 (3d Cir. 2011); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001). Moreover, *Lesher's* claim that use of a law firm title "raise[s] the specter of potential legal action" has been explicitly rejected by other courts. *See*, *e.g.*, *Dupuy*, 442 F. Supp. 2d at 826 ("The use of law firm letterhead has been found insufficient by itself to imply a threat of litigation.") (*citing Veillard v. Mednick*, 24 F. Supp. 2d 863, 867 (N.D. Ill. 1998); *Abels v. JBC Legal Group*, 428 F. Supp. 2d 1023, 1028 (N.D. Cal. 2005). And in *Boyd*, at least one of the letters included the following rather ridiculous threat:

> YOU ARE ABOUT TO BE TREATED IN A MANNER THAT WILL CAUSE YOU TO THINK TWICE BEFORE YOU WRITE ANOTHER WORTHLESS

> CHECK. OUR CLIENT HAS INSTRUCTED THAT WE NOTIFY YOU THAT YOU ARE GOING TO BE SUED UNLESS REPAYMENT IS FORTHCOMING AT ONCE.

*Boyd*, 275 F.3d at 645. Neither of those cases is dispositive.

Nor is *Greco*, upon which *Lesher* relies, dispositive. In *Greco*, a law firm sent a collection letter on its letterhead and signed with the law firm's name. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005). The Second Circuit held that the letter did not violate the FDCPA because it included a disclaimer that no attorney had reviewed the plaintiff's file. *Id.* at 361. In holding that the disclaimer relieved Trauner, Cohen & Thomas of any liability, the Second Circuit stated, "In *Miller* and *Clomon*, we established that a letter sent on law firm letterhead, standing alone, does represent a level of attorney involvement to the debtor receiving the letter." *Id.* at 364. Not only did no one argue that there was a distinction between a lawyer signature and law firm letterhead, the *Greco* court's statement misrepresents the holdings in *Miller* and *Clomon*, which actually held that ***attorney*** signatures indicate attorney involvement. *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) (holding that "use of [lawyer] Jackson's letterhead ***and signature*** on the collection letters was sufficient to give the least sophisticated consumer the impression that the letters were communications from an attorney") (emphasis added); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003) ("'The use of an ***attorney's signature*** implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent.'") (*quoting Clomon*, 988 F.2d at 1321) (emphasis added).

Thus, none of the cases on which the Bureau relies lend support to its claim that law firm letterhead, standing alone, implies attorney involvement.

4. **Some of the Bureau's claims are time-barred.**

The Bureau also claims that WWR "mistakenly equates the date of 'discovery' with the date of the violation." (Opp. Br., ECF No. 10, at 14.) Not so. The Complaint repeatedly references communications sent "since at least July 21, 2011." (Compl., ECF No. 1, at ¶¶ 9, 20, 21, 22, 32.) "Under these circumstances, it is not enough for plaintiff[] to argue that the complaint, because it is silent as to when [it] first acquired actual knowledge, must be read in the light most favorable to [it] . . . ." *Bishop v. Lucent Techs, Inc.*, 520 F.3d 516, 520 (6th Cir. 2008). When, as here, "it affirmatively appears from the face of the complaint that the time for bringing the claim has passed, the plaintiff cannot 'escape the statute [of limitations] by saying nothing.'" *Id.* (*quoting Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744-45 (6th Cir. 1992)). Should the Bureau have wanted to plead claims beyond the statute of limitations based on the discovery rule, it was required to plead facts relating to that discovery. *Id.* It has not done so.

Furthermore, as in *Bishop*, it is "inexplicable" why—even after the issue was brought to its attention—the Bureau has "steadfastly refused to identify when [it] did acquire the needed actual knowledge" of WWR's alleged violations. *Id.* at 521. Nor has the Bureau requested leave to plead facts showing that it discovered WWR's time-barred alleged misdeeds during the statutory period, a particularly surprising oversight given the fact that it has requested leave to amend its complaint to attempt to correct other deficiencies. *See id.* at 521 (criticizing plaintiffs for failing "to request leave to amend so as to affirmatively allege the date when each plaintiff acquired the relevant knowledge").

Finally, while the Bureau challenges the one-year statute of limitations WWR says applies to FDCPA claims, it has not provided an alternative statute of limitations. This is not surprising, given that the only statute of limitations included in the FDCPA is one year.

The Bureau's CFPA claims based on communications made before November 2013 are barred, and its FDCPA claims based on communications made before November 2015 are barred.

## C. THE BUREAU SHOULD NOT BE GRANTED LEAVE TO AMEND

While it is true that the Bureau's Complaint is hopelessly devoid of any detail—and could be dismissed on this basis alone—there is no need for the Court to grant the Bureau leave to amend. "[L]eave to amend should be denied if the amendment . . . would be futile." *Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1042 (alteration in original) (*quoting Carson v. U.S. Office of Special Counsel*, 633 F.3d 487 (6th Cir. 2011)); *Sierra Club v. Pena*, 915 F. Supp. 1381, 1387 (N.D. Ohio 1996) (a motion to amend "should be denied where the amendment . . . would be futile"). Here, the simple truth is that WWR's communications are not misleading as a matter of law. Even if the Bureau attached hundreds of WWR's communications to an amended complaint, *Gillie* would still be the law, and those communications would all be true. Given this, there is no need for this Court to consider another complaint that would be dismissed immediately. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) ("'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'") (*quoting Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

# III. <u>CONCLUSION</u>

For the reasons set forth above and in its Motion for Judgment on the Pleadings, defendant, Weltman, Weinberg & Reis Co., L.P.A., respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: July 26, 2017

Respectfully submitted,

s/ Katie M. McVoy

James R. Wooley (0033850)
Tracy K. Stratford (0069457)
Katie M. McVoy (0080860)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
Email: jrwooley@jonesday.com
tkstratford@jonesday.com
kmmcvoy@jonesday.com

Attorneys for Defendant
Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief on a dispositive motion is no more than 20 pages in length, and, therefore, conforms to the page limitation for standard track cases set forth in Local Rule 7.2(f).

s/ Katie M. McVoy
One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2017, I electronically filed the foregoing Reply in Support of Motion for Judgment on the Pleadings with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Anthony Alexis
Deborah Morris
Michael G. Salemi
Sarah Preis
Rebeccah Watson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer
Financial Protection Bureau

s/ Katie M. McVoy

One of the Attorneys for Weltman, Weinberg & Reis, Co., L.P.A.