**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,** | ) ) ) | **CASE NO. 1:17 CV 817** |
| **Plaintiff,** | ) ) | |
| v. | ) ) ) | **JUDGE DONALD C. NUGENT** |
| **WELTMAN, WEINBERG & REIS CO., L.P.A.,** | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Judgment on the Pleadings filed by Defendant, Weltman, Weinberg & Reis Co., L.P.A. ("WWR") on June 12, 2017. (Docket #7.)

**I.      Procedural History.**

On April 17, 2017, Plaintiff, Consumer Financial Protection Bureau ("the Bureau"), filed its Complaint against WWR asserting violations of Sections 807(3), 807(10) and 814(b)(6) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(3), (10) and 1692(l(b)(6), and Sections 1031(a), 1036(a)(1), 1054 and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1), 5564 and 5565.  The Bureau alleges that WWR engaged in unlawful collection activities by misrepresenting the level of attorney

involvement in demand letters it sent and calls it made to consumers requesting payment. Specifically, the Bureau states as follows:

  9. Since at least July 21, 2011, the Firm has regularly collected or attempted to collect debts on behalf of original creditors and debt buyers.

* * *

  14. As part of its debt collection efforts, Weltman sends letters to consumers requesting payment ("demand letters").

  15. If a consumer does not respond to an initial demand letter, then Weltman frequently sends a follow-up demand letter reiterating its request for payment or offering to settle the debt for a reduced amount.

  16. The vast majority of the time, Weltman generates these demand letters through an automated process. Specifically, consumer account information provided by Weltman's clients is populated into a form letter template and printed by a third-party vendor.

  17. Weltman's demand letters are printed on the Firm's letterhead, which states "WELTMAN, WEINBERG & REIS Co., LPA" at the top of the first page, and directly underneath the Firm's name, "ATTORNEYS AT LAW." In almost all versions of this template, the name of the Firm and the phrase "ATTORNEYS AT LAW" are in bold type.

  18. "Weltman, Weinberg & Reis Co., L.P.A." appears in type-face in the signature line of nearly all of Weltman's demand letter templates.

  19. Weltman's form letters typically include a detachable payment remission slip indicating that payments should be sent to Weltman, Weinberg & Reis Co., L.P.A., and provide a mailing address.

  20. Since at least July 21, 2011, some of Weltman's form letters have included the following language: "Failure to resolve this matter may result in continued collection efforts against you or possible legal action by the current creditor to reduce this claim to judgment."

  21. Since at least July 21, 2011, Weltman's form letters have also sometimes included the following language: "This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose."

  22. Since at least July 21, 2011, at times some form letters stated:

-2-

"Please be advised that this law firm has been retained to collect the outstanding balance due and owing on this account."

23. When Weltman sends demand letters, Weltman attorneys generally have not reviewed a corresponding consumer's individual account file to reach a professional judgment that sending the letter is appropriate because, for example, the information in the letter is accurate and the debt is due and owing.

24. In most cases, Weltman attorneys do not review any individual account information or any other aspects of a consumer's file before Weltman sends a demand letter.

25. None of the subject demand letters include any disclaimer notifying consumers that an attorney has not reviewed the consumer's file or formed an independent professional judgment about the subject debt.

26. Weltman's demand letters misrepresent that attorneys at the firm have reviewed the consumer's file and determined that the consumer owes the amount demanded, when in fact no such review has occurred.

27. Rather, at the time a consumer receives a demand letter, Weltman is acting as a collection agency.

28. Weltman has sent millions of demand letters to consumers since July 21, 2011. Consumers have paid millions of dollars after Weltman sent a given demand letter but before Weltman filed any related collection lawsuit.

29. In addition to sending demand letters, Weltman also attempts to collect debts through outbound telephone calls to consumers.

30. These calls are generally handled by non-attorney collectors who are part of Weltman's "Pre-Legal" Department.

31. In addition, consumers sometimes call Weltman after receiving a demand letter from Weltman, and are routed to these collectors. During these inbound calls, the collectors similarly request payment on the consumer's alleged debt.

32. From at least July 21, 2011 through as late as July 2013, it was Weltman's practice and policy to identify Weltman as a law firm during these collection calls. Some training materials and collection scripts instructed Weltman collectors to tell consumers: "This law firm is a debt collector attempting to collect this debt for our client and any information will be used for that purpose."

-3-

      33.    Even after July 2013, at times collectors continued to refer to Weltman as a law firm during calls with consumers. Sample statements made to consumers by collection agents that referred to Weltman's law firm status included that Weltman was the "largest collection law firm in the United States," an account was forwarded to "the collections branch of our law firm," and that the account has been "placed here with our law firm."

      34.    When such calls occurred, however, Weltman attorneys generally had not reviewed a corresponding consumer's individual account file to reach a professional judgment regarding whether the consumer owed the debt.

      35.    Consumers were typically not cautioned that an attorney had not reviewed their account information or formed an independent professional judgment about the subject debt.

      36.    Weltman's statements to consumers during collection calls implied that attorneys at the firm reviewed the consumer's file and determined that the consumer owed the amount demanded, when in fact no such review had occurred.

(Complaint at pp. 3-6.)

In its Motion for Judgment on the Pleadings, WWR argues the allegations set forth in the Complaint are insufficient to state claims for violations of the FDCPA and/or CFPA; that claims based on conduct before November 13, 2013 are barred by the applicable statutes of limitation; and, that the Complaint otherwise fails on the merits because the communications at issue were truthful and not misleading to the least sophisticated consumer.

The Bureau filed its Brief in Opposition to WWR's Motion for Judgment on the Pleadings on July 12, 2017. (Docket #10.) The Bureau argues that its FDCPA and CFPA claims are sufficiently pled; that the letters and calls at issue falsely imply that an attorney has formed a professional judgment that the consumer owes the debt; that WWR attorneys were not meaningfully involved in the communications at issue; and, that none of the other arguments raised by WWR (including statute of limitations, merits-based and public policy/professional

obligation arguments) demonstrate that WWR is entitled to judgment.

WWR filed its Reply Brief on July 26, 2017. (Docket #13.)

**II.     Standard of Review.**

The Sixth Circuit reviews motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) under the *de novo* standard applicable to motions to dismiss under Rule 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n. 1 (6th Cir. Ohio 1988). Correspondingly, the standard of review used by a district court to rule on a motion for judgment on the pleadings is the same as the standard used to rule on Rule 12(b)(6) motions. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. Tenn. 1998).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

-5-

doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001). It is with this standard in mind that the instant Motion must be decided

**II.    Discussion.**

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Likewise, the CFPA prohibits "any unfair, deceptive, or abuse practice" regarding consumer products or services. 12 U.S.C. § 5336.

FDCPA violations are analyzed through the lens of the "least sophisticated consumer," whereas a "reasonable consumer" standard applies to CFPA claims. *Gionis v. Javitch, Block, Rathbone, LLP,* 238 Fed. App'x 24, 28 (6th Cir. Ohio 2007) (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. Ohio 1992)); *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d

-6-

611, 631 (6th Cir. Ohio 2014). The least sophisticated consumer standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.,* 167 F.3d 1052, 1054 (6th Cir. Ohio 1999) (internal quotation omitted). The least sophisticated consumer test "serves a dual purpose: 'it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.'" *Gionis,* 238 Fed. App'x 24, 28 (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2nd Cir. 1993)).

Although the "least sophisticated consumer" standard is a lower standard, it "'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509-10 (6th Cir. Ohio 2007) (quoting *Wilson v. Quadramed Corp*., 225 F.3d 350, 354-44 (3rd Cir. N. J. 2000). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon*, 988 F.2d 1314, 1219.

Counts I and IV allege violations of the FDCPA with regard to the letters and phone calls made by WWR to debtors. 15 U.S.C. § 1692e, titled "False or misleading representation," provides in pertinent part as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

* * *

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

The mere fact that a letter is written on law firm letterhead does not violate the FDCPA. Rather, the question is whether the least sophisticated debtor, reading the letter, would understand that the law firm has not reviewed the specific facts of the case. *Greco v. Trauner*, 412 F.3d 360 (2nd Cir. 2005). The Court in *Greco* explained the requirements of the FDCPA relative to representations of attorney communication as follows:

> One cannot, consistent with FDCPA, mislead the debtor regarding meaningful "attorney" involvement in the debt collection process. But it does not follow that attorneys may participate in this process only by providing actual legal services. In fact, attorneys can participate in debt collection in any number of ways, without contravening the FDCPA, so long as their status as attorneys is not misleading. Put another way, our prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as a attorney within the collection process, so long as that letter includes disclaimers that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

*Greco*, 412 F.3d at 364.

The Parties do not dispute that Defendant truthfully identified itself as a law firm. However, the question is whether WWR sufficiently clarified that it was not acting as an attorney in connection with sending the debt collection letters or making the debt collection phone calls, so as not to mislead. The Bureau includes allegations that the communications were rife with references to the "law firm" and threaten the possibility of legal action in the event the debt was not satisfied. With no disclaimer that would make it "clear to even the 'least

sophisticated consumer' that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney," the Bureau alleges the communications were false and/or deceptive. Construing the facts set forth in the Complaint in the light most favorable to the Bureau, accepting its factual allegations as true, and drawing all reasonable inferences in favor of the Bureau, the Court finds the Bureau has sufficiently pled its FDCPA claims.

Likewise, the Bureau's CFPA claims, Counts II, III, V and VI, are pled sufficiently to withstand dismissal. The Complaint sufficiently alleges a material representation, likely to mislead a reasonable consumer. *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192-93 n.7 (9th Cir. Cal. 2016); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. Ohio 2014). As set forth above, the question is not simply whether WWR truthfully identified itself, but whether WWR's communications failed to sufficiently identify or accurately convey WWR's role in the debt collection process so as not to be deceptive or misleading. Construing the facts set forth in the Complaint in the light most favorable to the Bureau, accepting its factual allegations as true, and drawing all reasonable inferences in favor of the Bureau, the Court finds the Bureau has sufficiently pled its CFPA claims.

The Parties disagree as to the applicable statutes of limitation. WWR argues that a one-year statute of limitations applies to claims brought pursuant to the FDCPA; that a three-year statute of limitations applies to claims brought pursuant to the CFPA; and, that the statutes of limitation began to run on the date of the alleged violation. The Bureau argues that the CFPA's three-year statute of limitations applies to all of its claims, whether brought pursuant to the FDCPA or CFPA, arguing that the one-year FDCPA statute of limitations applies only to claims brought by consumers. Further, the Bureau argues that the language of the CFPA provides that a

claim must be brought within three years of the date of discovery of the violation to which an action relates, not the date of the actual violation.

>12 U.S.C. § 5564(g) provides as follows.
>
>(g) Time for bringing action
>
>(1) In general
>
>Except as otherwise permitted by law or equity, no action may be brought under this title more than **3 years after the date of discovery of the violation** to which an action relates.
>
>(2) Limitations under other Federal laws
>
>>(A) In general
>>
>>An action arising under this title does not include claims arising solely under enumerated consumer laws.
>>
>>(B) Bureau authority
>>
>>**In any action arising solely under an enumerated consumer law, the Bureau may commence, defend, or intervene in the action in accordance with the requirements of that provision of law, as applicable.**
>>
>>(C) Transferred authority
>>
>>In any action arising solely under laws for which authorities were transferred under subtitles F and H, the Bureau may commence, defend, or intervene in the action in accordance with the requirements of that provision of law, as applicable.

12 U.S.C. § 5564(g) (emphasis added).

Pursuant to the plain language of the statute, the Bureau's CFPA claims are subject to a three-year statute of limitations, which began to run when the Bureau discovered the facts constituting the violation. With regard to the Bureau's FDCPA claims, at least one Federal

Court has theorized that based on the express language of the CFPA and given the fact that the Bureau's action does not arise "solely under an enumerated consumer law," but rather under both the CFPA and the FDCPA, that the CFPA's three-year statute of limitations applies to both the FDCPA and CFPA claims. *See Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs.*, 114 F. Supp. 3d 1342, 1380 (N.D. Ga. July 14, 2015). In *Frederick J. Hanna*, the Georgia District Court noted that "a survey of case law across the country has revealed little that is helpful to resolving the statute of limitations question" where the Bureau's Complaint alleged claims under both the FDCPA and the CFPA. The Court looked to another case, *Fed. Trade Comm'n. v. CompuCredit*, Case No. 1:08 CV 1976, at *10 (N.D. Ga. Oct. 8, 2008), for guidance. In *CompuCredit* – a case in which the Federal Trade Commission ("FTC") brought claims under both the FDCPA and the FTC Act – the Court rejected application of the FDCPA's one-year statute of limitations, reasoning that the Bureau was not a "consumer" for purposes of the FDCPA and, therefore, that the one-year statute of limitations applicable to FDCPA claims brought by consumers was inapplicable. However, because the alleged violations of the FDCPA were "deemed and unfair or deceptive act or practice" in violation of the FTC Act, the Court in CompuCredit decided the FTC Act's three-year statute of limitations should apply. *Id.*

Ultimately, the Court in *Frederick J. Hanna* reserved ruling on the statute of limitations issue (the case was later disposed of by a Consent Judgment) and stated as follows.

> As the Court rejects the "no limitations period" argument, the Court is left at this point with two possibilities: limiting the Defendants' potential liability to conduct occurring within one year of the filing of this lawsuit, or reaching back a full three years for liability purposes. Either way, however, no claim in this action will be completely foreclosed on statute of limitations grounds. And as a practical matter, it makes little difference at this stage of litigation whether a one-year or three-year statute of limitations applies. The Bureau's CFPA claims under 12

-11-

> U.S.C. § 5536(a), which are not time-barred, are based on the same conduct as the FDCPA claims and thus support the same discovery. The CFPA claims reach back to conduct occurring on July 21, 2011, (supra note 20), one week shy of three years from the date this case was filed on July 14, 2014. Thus, a decision between the one- and three-year limitations period would do little to narrow the scope of discovery. Given the uncertainty regarding the appropriate statute of limitations to apply here, and the real possibility that other courts at the district or appellate level will in the next year address similar statute of limitations issues involving this relatively new agency and its enforcement power, the Court declines at this time to rule on this issue so as to consider further judicial developments that may be of assistance. Defendants may reassert the statute of limitations defense on summary judgment or in light of relevant circuit court decision developments.

*Frederick J. Hanna*, 114 F. Supp. 3d 1342, at *1380-81.

The Court finds the reasoning in *CompuCredit* to be persuasive. However, much like *Frederick J. Hanna*, no claim in this action will be completely foreclosed on statute of limitations grounds and all claims are based on the same conduct and thus support the same discovery. Accordingly, the Court will reserve ruling on the statute of limitations at this time and the Parties may revisit the statute of limitations on summary judgment if appropriate.

## Conclusion

For the foregoing reasons, the Motion for Judgment on the Pleadings filed by Defendant, Weltman, Weinberg & Reis Co., L.P.A. (Docket #7) is DENIED.

IT IS SO ORDERED.

                                         s/Donald C. Nugent
                                        DONALD C. NUGENT
                                        United States District Judge

DATED: September 28, 2017