**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WELTMAN, WEINBERG & REIS CO., L.P.A.,**<br><br>**Defendant.** | **Civil Action No. 1:17-cv-00817-dcn**<br><br>**Judge Donald C. Nugent**<br><br>**Magistrate Judge William H. Baughman, Jr.** |

**MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

STATEMENT OF ISSUES TO BE DECIDED ..... vi

I. SUMMARY OF THE ARGUMENT ..... 1

II. THE UNDISPUTED FACTS ..... 2

III. THE SUMMARY JUDGMENT STANDARD ..... 8

IV. ARGUMENT ..... 9

A. THE CFPB'S CLAIMS ARE TIME-BARRED ..... 9

1. The putative tolling agreement is unenforceable for lack of consideration ..... 9

2. The FDCPA's one-year statute of limitations bars claims under the FDCPA ..... 10

3. The CFPB's CFPA claims are also time-barred ..... 13

B. THE CFPB'S CLAIMS FAIL UNDER *SHERIFF v. GILLIE* ..... 16

C. THE UNDISPUTED FACTS SHOW THAT THE CFPB IS NOT ENTITLED TO RESTITUTION OR DISGORGEMENT DAMAGES ..... 19

V. CONCLUSION ..... 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Avila v. Rubin*,
84 F.3d 222 (7th Cir. 1996) ....................17

*Buletko v. FleetCor Techs., Inc.*,
No. 5:07CV2017, 2008 WL 11377782 (N.D. Ohio May 20, 2008) ....................9

*Bytwerk v. Mary Jane Elliot, P.C.*,
No. 1:12-cv-876, 2013 WL 150461 (W.D. Mich. Jan. 14, 2013) ....................18, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................8

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993) ....................17, 18

*Consumer Financial Protection Bureau v. Accrediting Council for Independent Colleges & Schools*, 854 F.3d 683 (D.C. Cir. 2017) ....................1

*Consumer Financial Protection Bureau v. CashCall, Inc.*,
No. 15-07522-JFW, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ....................19, 20

*Consumer Financial Protection Bureau v. ITT Educational Services, Inc.,*
219 F. Supp. 3d 878 (S.D. Ind. 2015) ....................11

*Cox v. Kentucky Dep't of Transp.*,
53 F.3d 146 (6th Cir. 1995) ....................8

*Dana Ltd. v. Aon Consulting, Inc.*,
984 F. Supp. 2d 755 (N.D. Ohio 2013) ....................9

*Daniels v. Solomon & Solomon, P.C.*,
No. 17-0757, 2017 WL 3675400 (E.D. Pa. Aug. 25, 2017) ....................19

*DelCostello v. International Brotherhood of Teamsters*,
462 U.S. 151 (1983) ....................12

*Durthaler v. Accounts Receivable Mgmt., Inc.*,
854 F. Supp. 2d 485 (S.D. Ohio 2012) ....................12

*Fed. Trade Comm'n v. CompuCredit Corp.,*
No. 1:08-CV-1976, 2008 WL 8762850 (N.D.Ga. Oct 8, 2008) ....................10

*Gabelli v. SEC*,
568 U.S. 442 (2013)....................13

*Gillie v. Law Office of Eric A. Jones, LLC*,
785 F.3d 1091 (6th Cir. 2015),
*rev'd by Sheriff v. Gillie*, 136 S. Ct. 1594 (2016) ....................16, 17, 18

*Goldberg v. Wintston & Morrone, P.C.*,
No. 95 Civ. 9282 (LAK), 1997 WL 139526 (S.D.N.Y. Mar. 26, 1997)....................19

*Goodson v. Bank of Am., N.A.*,
600 F. App'x 422 (6th Cir. 2015) ....................13

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D. N.Y. 1984) ....................14

*Johnston v. MidFirst Bank*,
No. 5:14-CV-466, 2015 WL 5175147 (N.D. Ohio Sept. 3, 2015)....................8, 12

*Maloy v. Phillips*,
64 F.3d 607 (11th Cir. 1995) ....................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................8

*Mattson v. U.S. West Comm'cns Inc.*,
967 F.2d 259 (8th Cir. 1992) ....................12

*Merck & Co. v. Reynolds,*
559 U.S. 633 (2010)....................13

*Moorer v. U.S. Bank N.A.*,
No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan. 29, 2018) ....................18

*Sheriff v. Gillie,*
136 S. Ct. 1594 (2016)....................2, 16, 17, 18, 19

*United States v. Bertie Ambulance Service, Inc.*,
No. 2:14-cv-53, 2015 WL 5916691 (E.D.N.C. Oct. 8, 2015)....10

*Weiss v. Regal Collections*,
385 F.3d 337 (3d Cir. 2004)....10

**RULES**

Fed. R. Civ. P. 56(a) ....8

Fed. R. Civ. P. 30(b)(6)....20

Ohio R. Prof. Conduct 4.3 ....16

Ohio R. Prof. Conduct 7.1 ....16

Ohio R. Prof. Conduct 7.5 ....16

**STATUTES**

12 U.S.C. § 5564(g) ....13

12 U.S.C. § 5564(g)(1) ....9

15 U.S.C. § 1607....11

15 U.S.C. § 1640....11

15 U.S.C. § 1640(e) ....11

15 U.S.C. § 1692e(11) ....5

15 U.S.C. § 1692e(14) ....16

15 U.S.C. § 1692g(a)(1)-(5)....5

15 U.S.C. § 1692k(c) ....11

15 U.S.C. § 1692k(d) ....9, 10, 11, 12

15 U.S.C. § 1692*l*....10, 11

28 U.S.C. § 1658(b) ....13

**OTHER AUTHORITIES**

Restatement (Second) of Agency § 272 (1958) ............ 15

Restatement (Second) of Agency § 276 (1958) ............ 15

**STATEMENT OF ISSUES TO BE DECIDED**

1. Are the claims brought under the Consumer Financial Protection Act barred by the three-year statute of limitations when the plaintiff had knowledge of its claims no later than 2013 but filed suit in 2017?

2. Are the claims brought under the Fair Debt Collection Practices Act barred by the one-year statute of limitations where the allegedly violative practice took place in 2011 and the plaintiff filed suit in 2017?

3. Could an unsophisticated consumer reasonably be misled into thinking that a lawyer reviewed her account when the letter sent to her does not make any reference to any individual attorney or otherwise state that a lawyer reviewed the account after the Supreme Court's decision in *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)?

## I. SUMMARY OF THE ARGUMENT

Defendant Weltman, Weinberg & Reis Co., LPA is a law firm that truthfully identifies itself as a law firm when it collects debts on behalf of its clients. This lawsuit alleges that those truthful communications mislead consumers in writing and phone calls because a Weltman attorney does not review every individual account before those communications take place. This lawsuit challenges that practice as a practice. No specific consumer has been harmed or misled.

The plaintiff here is the Consumer Financial Protection Bureau ("CFPB"), a federal agency created in 2010 by Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act. *Consumer Financial Protection Bureau v. Accrediting Council for Independent Colleges & Schools*, 854 F.3d 683, 688 (D.C. Cir. 2017). Title X of the Dodd-Frank Act, known as the Consumer Financial Protection Act ("CFPA"), vests the CFPB with "broad 'rulemaking, supervisory, investigatory, adjudicatory, and enforcement authority.'" *Id.* (citations omitted). Although the CFPB has broad authority to issue rules governing the collection of consumer debt, it has not issued any rules that require law firms to review individual accounts before communicating with consumers. Rather than issue guidance for the benefit of those trying to comply with the law, the CFPB brings this lawsuit as regulation by litigation under the CFPA and the Fair Debt Collection Practices Act ("FDCPA").

The CFPB's efforts should fail here for many reasons, two of which are raised in this motion. ***First***, the CFPB's claims are time-barred. The CFPA and FDCPA are subject to three- and one-year statutes of limitations, respectively. The CFPB has or should have known about Weltman's practices since as early as 2011 and no later than 2013. This case was filed in 2017, well beyond the limitations periods. ***Second***, the legal theory that truthful, milquetoast communications can be misleading has been dismantled by the Supreme Court's decision in

*Sheriff v. Gillie*, 136 S. Ct. 1594, 1603 (2016). As the undisputed facts demonstrate, Weltman's letters are truthful and imply nothing more than the reality that the letter is sent from a law firm retained to collect a debt.

On each of these independent grounds, summary judgment is appropriate here.

## II. THE UNDISPUTED FACTS

Weltman is a nearly ninety-year old law firm headquartered in Cleveland, Ohio that focuses on creditors' rights. The firm is owned by its 26 shareholders (all of whom are attorneys) and managed by a Board of Directors, consisting of five of Weltman's most experienced shareholders. (Declaration of Eileen Bitterman, ¶ 5 ("Bitterman Decl.), Exhibit A hereto.) Weltman recognizes and embraces the importance of fulfilling its legal and ethical obligations under the requirements of stringent federal and state law governing debt collection. To that end, Weltman maintains a robust compliance management program operated through a Compliance Audit Department that is headed by an attorney shareholder with a staff including attorneys and with the capability of drawing upon the expertise of attorneys throughout the firm. (Deposition of Eileen Bitterman ("Bitterman Dep.") 17:5-18, 43:5-11, 170:25-173:4, 184:13-186:16, 237:20-238:9.)[1] Among the many services Weltman provides to its clients is collection of debts related to consumer credit legal obligations.

The Complaint focuses on one type of consumer debt collection—what Weltman refers to as "agency collection." These collections entail higher file volumes for large clients, many of which are heavily regulated financial institutions. (Bitterman Decl., ¶ 6.) Because Weltman is a law firm, all of its practices, processes, and procedures are designed and implemented under the constant supervision of experienced Weltman attorneys. (Bitterman Dep. 68:24-70:15, 237:20-238:9.) Not only are these practices, processes, and procedures consistent with the demands of

[1] Excerpts and exhibits from Ms. Bitterman's deposition are attached as Exhibit B.

the firm's sophisticated clients, but they must also adhere to the legal and ethical obligations of attorneys. (*Id.* at 170:25-173:4.) Moreover, Weltman's standard operating procedures are extensive, documented in writing, and evolve with changes in law and regulation. (*Id.*; Bitterman Decl., ¶ 7.)

In the agency collection context, Weltman begins its file evaluation and handling process with a series of conversations with the client. (Bitterman Dep. 48:2-50:11.) In those conversations, Weltman attorneys and staff evaluate the characteristics of the accounts for which collection services are sought to make recommendations to the client about the appropriate collection activity. (*Id.* at 48:2-50:11, 60:21-61:11.) During those discussions, Weltman requests examples of background documentation relating to the files. (*Id.* at 48:2-12, 68:24-69:18, 71:22-74:25.) Weltman's attorneys are recognized experts in debt collection; what they ask to review is based upon their professional judgment and the specific issues that relate to the types of files being handled. For example, the handling of credit card matters involving a written contract or debt on an account could involve attorney analysis and evaluation of the terms and conditions that govern the credit card, the application that was provided to obtain the card, the last payment date on the account, and the availability of monthly account statements. (*Id.* at 74:5-24.) To identify any issues or concerns, the firm reviews a subset of accounts when a new client places a debt portfolio. (*Id.* at 81:22-84:2.) And an attorney from the Compliance Audit Department is always brought into conversations to address compliance issues at the outset. (*Id.* at 59:17-22, 61:7-11.) If the client maintains individual customer account information electronically and can provide it to Weltman electronically (an "electronic placement"), Weltman's information technology support staff works with the client to facilitate electronic data transfers and test the data. (*Id.* at 89:4-92:15.)

Weltman's attorneys, and staff supervised by attorneys, will continue to collect information from the client, review documentation, and test data until they are satisfied that the files are appropriate for collection. (*Id.* at 68:24-70:15, 72:21-74:24, 79:2-80:9, 89:6-90:5, 90:24-92:1, 101:12-104:1, 118:7-119:15.) When that process is completed, the electronic data is loaded and a series of electronic "scrubs" take place both before collection activity is undertaken and throughout the collection process. (*Id.* at 89:4-90:15, 112:16-113:13, 128:5-129:25.) Weltman's scrubs, designed by attorneys in accordance with governing law, identify bankruptcies, deaths, military service, and potential statute of limitations issues, because a "hit" on an account immediately affects the handling of that account based on the information that is received. (*Id.* at 112:16-113:13, 114:5-115:7.)

After Weltman has concluded this preliminary evaluation, an initial demand letter is generated from a template. (*Id.* at 90:24-91:21, 133:17-135:8.) The template is prepared by attorneys and approved by Weltman's Compliance Audit Department. (*Id.* at 130:5-133:4.) That initial demand letter is calculated to advise the putative debtor that (1) the debt has been placed with Weltman for collection and (2) that the consumer has specific rights under the FDCPA. (*Id.* at 130:9-132:3, 137:11-18, Ex. 11.) This demand letter is sent on Weltman letterhead to accurately convey the facts that Weltman is a law firm that has been retained to collect the putative debt; no more, no less. The letter does not state that an attorney has reviewed the particular circumstances of the account, it does not mention any potential legal action, and it is not even signed by an attorney.

The template reads,[2] in its entirety:

[2] An earlier version of this template, in effect no later than November 2013, read: "This law firm is a debt collector attempting to collect this debt for our client and any information will be used for that purpose." (Bitterman Dep. 146:8-21.)

> Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above. As of the date of this letter you owe the amount listed above. Therefore, it is important that you contact us at [phone number] to discuss an appropriate resolution for this matter.
>
> This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose. Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume the debt is valid. If you notify us in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to you. If you request in writing within the thirty (30) day period, we will provide you with the name and address of the original creditor if different from the current creditor.
>
> Thank you for your attention to this matter.
>
> Sincerely,
>
> Weltman, Weinberg & Reis Co., L.P.A.

(Bitterman Dep. 137:11-18, Ex. 11.) Most of the content of the letter comes from the FDCPA. The first two sentences provide the information required by 15 U.S.C. § 1692g(a)(1) and (2). The disclosure in the next paragraph that the communication is from a debt collector is nearly identical to the language of 15 U.S.C. § 1692e(11), and the rest of that paragraph contains the exact language required by § 1692g(a)(3)-(5). The only two sentences that are not required disclosures ask the recipient to contact Weltman and thank the recipient. The letter is milquetoast by design.

Following this letter, Weltman non-attorney staff may attempt to contact the debtor by phone. (Bitterman Dep. 181:7-14.) These representatives are trained to deal with debtors professionally, politely, and above all in full compliance with federal and state laws. (*Id.* at 184:13-186:16.) Non-attorneys are prohibited from identifying themselves as attorneys but may

identify Weltman as a law firm. (*Id.* at 188:8-189:10.) Weltman's policies mandate truthfulness in all communications with debtors, such that, if asked, those policies require its representatives to truthfully respond that Weltman is a law firm. (*Id.* at 188:8-189:10, 194:17-24.)

Weltman's reputation for creditors' rights representation has earned the trust of large clients in the private and public sectors for many years. Indeed, on July 1, 2009, Richard Cordray, the CFPB's former director, signed a certificate appointing Alan Weinberg of Weltman as Special Counsel to the Ohio Attorney General to collect debts for the State of Ohio. (Deposition of Richard Cordray ("Cordray Dep."), 46:20-47:17, Ex. B.)[3] The process to obtain that appointment was a rigorous one, involving an 80-page response to a Request for Qualifications. (*Id.* at 55:8-20, Ex. C; Bitterman Decl., ¶ 9, Att. 1.) Weltman's response included the names and curriculum vitae of each Weltman attorney that would assist in collecting debts, a "description of the scope of any past representation as Special Counsel," and a description of Weltman's experience and expertise in debt collection. (Cordray Dep. Ex. C at §§ II.8.a, Attachment 2; Bitterman Decl., Att. 1.)

When he made his appointment, Mr. Cordray knew Weltman well. He knew that Weltman specialized in "high volume placements," made "innovative use of technology" in its debt collection work, and had a non-attorney staff that was more than nine times the size of its attorney staff. (Cordray Dep. Ex. C at §§ II.3, 8(a)-(b).) Weltman truthfully represented to Mr. Cordray that, with approximately 100 attorneys, it attempted to collect nearly 730,000 debts in 2008. (*Id.* at 69:23-70:13, 73:7-20, Ex. C. at § II.8(a)-(b).) Mr. Cordray was aware that non-attorney collectors worked the files in tandem with Weltman's attorneys. (*Id.*) Following the same rigorous appointment process, Mr. Cordray appointed Mr. Weinberg again in 2010. (Cordray Dep. 79:13-82:11, Ex. D, Ex. E.) And during the years Mr. Weinberg and Weltman

[3] Excerpts and exhibits from Mr. Cordray's deposition are attached as Exhibit C.

collected debts on Mr. Cordray's behalf, their performance was reviewed quarterly by Mr. Cordray's office under a policy mandating "[nothing] less than complete respect for the rights and reasonable expectations of the public." (Cordray Dep. 85:17-86:5, 88:5-90:5, 92:7-93:24, Ex. F at §§ 5, 19.)

During the representation, Mr. Cordray required that Mr. Weinberg use Ohio Attorney General letterhead to collect the State's debts. (*Id.* 111:22-113:4, Ex. I; Bitterman Decl. ¶¶ 10-12, Att. 2.) Mr. Cordray's name and the title "Ohio Attorney General" were centered in large font, and the letterhead provided the website for the Ohio Attorney General. (*Id.*) Each letter advised that Mr. Weinberg was acting for "Richard Cordray, Attorney General of Ohio, for purposes of collecting the above account balance due and owing to the State of Ohio." (*See, e.g.*, *id.*) The letters required that payment be made to "the State of Ohio." (*See id.*) None of the letters advised the recipient that Mr. Cordray had not reviewed the recipient's file prior to the letter being sent on his letterhead.

After serving as Ohio Attorney General, Mr. Cordray was appointed chief of the CFPB's enforcement team in January 2011 and then its director in 2012. (Cordray Dep. 8:14-9:7.) One of the CFPB's functions is to accept and investigate consumer complaints. The CFPB began accepting complaints in 2011 and uses the complaint data "to do a better job supervising companies, enforcing federal consumer financial laws and writing rules and regulations."[4] Since July 2011, Weltman has sent over four million collection letters. (<u>Exhibit D</u> hereto, Weltman's Responses to CFPB's Amended Interrog. No. 2; <u>Exhibit E</u> hereto, Feb. 2, 2018 Letter.) And since 2011, the CFPB has received only about 500 complaints that in any way reference Weltman, a ratio of about one complaint for every 8,000 letters. (Bitterman Decl., ¶ 13.) In

[4] *See, e.g.*, https://www.consumerfinance.gov/data-research/consumer-complaints/ (accessed Feb. 23, 2018).

those 500 complaints and the investigation leading to and discovery taken in this lawsuit, the CFPB ***has not identified even one consumer who was harmed*** by Weltman's practice of identifying itself as a law firm. (Exhibit F hereto, CFPB's Second Supp. Interrog. Responses at 15-16 (responding to Interrog. No. 11).)

Among the 500 complaints received by the CFPB relating to Weltman, two are significant here. The first was received on May 10, 2012 (Bitterman Decl., ¶ 14, Att. 3) and the second in October 2013 (*Id.* at Att. 5). Both complaints attached collection letters on Weltman's standard letterhead identifying the firm as "Attorneys at Law." The earlier letter specifically identified Weltman as a law firm. The CFPB's response to that letter, dated August 29, 2012, stated (1) the CFPB "take[s] consumer complaints very seriously"; (2) "complaints inform us about business practices that may pose risk to consumers and assist the CFPB's supervisory, enforcement, and rulemaking responsibilities"; and (3) a "Specialist in Consumer Response reviewed your complaint based on the federal consumer financial protection laws within the CFPB's authority." (*Id.* at Att. 4.)

## III. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In response to a properly supported motion for summary judgment, the non-movant must offer "specific facts showing that there is a genuine issue [of material fact] for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Those specific facts "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *Johnston v. MidFirst Bank*, No. 5:14-CV-466, 2015 WL 5175147, at *3 (N.D. Ohio Sept. 3, 2015) (quoting

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995)).

## IV. ARGUMENT

### A. THE CFPB'S CLAIMS ARE TIME-BARRED.

The CFPB has known or should have known about Weltman's practice of identifying itself as a law firm since no later than 2013, if not earlier. The CFPB waited four years or longer to file this suit. The FDCPA's one-year and the CFPA's three-year statutes of limitation bar the CFPB's claims. 15 U.S.C. § 1692k(d); 12 U.S.C. § 5564(g)(1). Summary judgment should be granted.

#### 1. The putative tolling agreement is unenforceable for lack of consideration.

As an initial matter, during the CFPB's investigation, it asked Weltman to sign a putative Tolling Agreement that purports to suspend the running of any unexpired statute of limitations from November 15, 2016 until May 15, 2017. (Bitterman Decl., Att. 6.) Consistent with Weltman's cooperation throughout the investigation, Weltman did what the CFPB asked. (*Id.* at ¶ 15.)

The CFPB's tolling agreement, however, is not enforceable. A tolling agreement is a contract, and like any contract, it must be supported by consideration.[5] *See Buletko v. FleetCor Techs., Inc.*, No. 5:07CV2017, 2008 WL 11377782, at *5 (N.D. Ohio May 20, 2008) ("Ohio law is clear that gratuitous promises are not enforceable as contracts, because there is no consideration." (citation omitted)).

There is no consideration to support the Tolling Agreement. The CFPB did not agree to delay litigation of this matter, forego any cause of action, or forego any legal right. Weltman

[5] The Tolling Agreement does not specify governing law, but consideration is the essence of a contract under every state's law, so no choice of law analysis is needed. *See Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 766 (N.D. Ohio 2013) ("[I]f two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply.").

received nothing in exchange for tolling the limitations period, as reflected in the agreement itself, which does not reference any exchange of consideration. The Tolling Agreement is thus not an enforceable contract and it should be disregarded. *United States v. Bertie Ambulance Service, Inc.*, No. 2:14-cv-53, 2015 WL 5916691 (E.D.N.C. Oct. 8, 2015) (granting summary judgment where tolling agreement lacked consideration because government failed to perform its obligations under the agreement).

The relevant date for the statute of limitations analysis is the date the Complaint was filed: April 17, 2017.

**2. The FDCPA's one-year statute of limitations bars claims under the FDCPA.**

The FDCPA is subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d). In its Order on Weltman's motion for judgment on the pleadings, the Court observed without deciding that the reasoning of *Fed. Trade Comm'n v. CompuCredit Corp.*, No. 1:08-CV-1976, 2008 WL 8762850, at *10 (N.D.Ga. Oct 8, 2008) may suggest that the CFPA's three-year limitations period applies to cases that the CFPB brings under the FDCPA. (ECF #19 at 11-12.)

Respectfully, *CompuCredit* misreads the FDCPA. The Magistrate Judge in *CompuCredit* summarily concluded that § 1692k(d) applies to actions brought by "consumers" and not the government. 2008 WL 8762850, at *10 (citing *Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004)). There is no statutory basis for that distinction. Section 1692k is titled "Civil Liability," and subsection (d) of that statute states that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). There is no "consumer" versus "government agency" distinction. Nor does the *Weiss* case upon which *CompuCredit* primarily relied support such a distinction. In that case, the court observed only that different *remedies* are available for private litigants under § 1692k and for government agencies under § 1692*l*. *Weiss*, 385 F.3d at 341.

Another court recently considered this issue and rejected the reasoning of *CompuCredit*. In *Consumer Financial Protection Bureau v. ITT Educational Services, Inc.*, the CFPB brought claims arising under both the CFPA and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* 219 F. Supp. 3d 878 (S.D. Ind. 2015). The defendant argued that the TILA claim was governed by the section of the TILA providing, similarly to § 1692k(d), that "any action under this section may be brought . . . within one year from the date of the occurrence of the violation." *Id.* at 922 (quoting 15 U.S.C. § 1640(e)). The CFPB countered that its case was not subject to that limitations provision, since a different section of the statute, 15 U.S.C. § 1607, gave the CFPB authority to enforce the TILA and did not provide for a limitations period. *Id.*

The *ITT* court rejected the CFPB's argument. The court found "no persuasive evidence that 15 U.S.C. § 1640 governs only *private* civil actions," noting that "[t]he provision itself does not exclude actions in which a government agency is a plaintiff[.]" *Id.* (emphasis in original). The *ITT* court further reasoned that "Congress demonstrated its concern that a creditor not face limitless liability in terms of time by setting a one-year statute of limitations for the filing of civil suits under TILA." *Id.* (quotation omitted). Congress's concerns, the court held, apply in any case, whether that case is brought by a private litigant or the government, and may yet apply "with still greater force" when the government is the plaintiff. *Id*. at 923. Given the materially identical limitations provisions under the TILA and the FDCPA, the *ITT* court's reasoning applies equally here.

What's more, FDCPA § 1692k(c), which immediately precedes subsection (d)'s limitations provision, provides that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows . . . that the violation was not intentional and resulted from a bona fide error[.]" That language gives rise to the "bona fide error" defense,

which shields a debt collector from liability in certain circumstances. *See Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F. Supp. 2d 485, 494 (S.D. Ohio 2012). The CFPB has not argued—and to Weltman's knowledge no court has held—that the bona fide error defense is inapplicable in actions brought by the CFPB, even though that defense arises, like the limitations provision, under § 1692k rather than under § 1692*l*. Nowhere in the FDCPA did Congress express an intent to hamstring debt collectors, when they are faced with the full weight of the government's authority, by depriving them of § 1692k's affirmative defenses. It follows that the best reading of the FDCPA is that these protections apply in all cases, such that § 1692k(d)'s one-year limitations period applies to the CFPB's FDCPA claims here.

Even if § 1692k(d) did not expressly apply, it would be wrong to apply the CFPA's three-year limitations period. *CompuCredit* ignored the Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983). When no federal statute of limitations expressly applies to a suit, the Court does not "ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source." *Id.* Here, that source is the FDCPA itself, which already provides a statute of limitations. Under *DelCostello*, this Court should apply the one-year limitations period under § 1692k(d), even if it finds that the provision is not expressly applicable to suits brought by the CFPB.

"[T]he plain language of § 1692k(d) provides that the statute of limitations begins to run at the moment the alleged violation occurs, without regard to when the plaintiff gained knowledge of the cause of action." *Johnston*, 2015 WL 5175147, at *6. *Accord Mattson v. U.S. West Comm'cns Inc.*, 967 F.2d 259, 261 (8th Cir. 1992); *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995). Here, the CFPB alleges that the violation goes back to 2011, more than five

years before the Complaint was filed. (*E.g.*, Compl. ¶ 32). Its claims under the FDCPA are too late.

**3. The CFPB's CFPA claims are also time-barred.**

The CFPA's three-year limitations period is subject to the discovery rule. 12 U.S.C. § 5564(g). "Under the discovery rule, 'accrual is delayed until the plaintiff has 'discovered' his cause of action.'" *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 430 (6th Cir. 2015) (quoting *Gabelli v. SEC*, 568 U.S. 442, 449 (2013)). In *Merck & Co. v. Reynolds*, the Supreme Court addressed a statute, like the CFPA, that provided that the statute of limitations is triggered by "the discovery of the facts constituting the violation." 559 U.S. 633, 638 (2010) (quoting 28 U.S.C. § 1658(b)). That statutory language means that a claim accrues when a plaintiff "first knows or with due diligence should know" a violation has occurred, placing a burden on the government to act with reasonable diligence to discover a violation. *Id.* at 646; *see also Gabelli*, 568 U.S. at 449 (a cause of action 'is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered" (quoting *Merck*)). Thus, the CFPB's CFPA claims accrued when it had actual or constructive knowledge of the facts sufficient to bring its causes of action.

The CFPB's causes of action do not depend on any particular communication to any particular consumer in any particular context. Rather, it is Weltman's practice of truthfully identifying itself as a law firm in communications to consumers that allegedly violates the law, since, the CFPB argues, that practice does not involve prior attorney review of the circumstances of each consumer's account. (Compl. at ¶¶ 14, 16-26, 32-36.) Put differently, the CFPB's case relies on the singular practice—which the CFPB itself says dates back to 2011—of Weltman identifying itself as a law firm in form or template communications when an attorney has not been "meaningfully involved" in making the communication. All of the claims under the CFPA

are time-barred because the undisputed record shows that the CFPB discovered or, with the exercise of reasonable diligence, should have discovered its causes of action as early as 2011 and no later than 2013. It filed this case in 2017, late by at least a year.

The CFPB discovered, or should have discovered, its claims on August 29, 2012, after it received and investigated a complaint involving Weltman's collection practices that provided the CFPB with Weltman's letters. (Bitterman Decl., Att. 3, Att. 4.) The collection letters attached to that complaint included letters that (1) used Weltman's standard letterhead identifying the firm as "Attorneys at Law"; (2) stated that "this law firm represents our client on the above referenced matter"; and (3) notified the consumer that "[t]his law firm is a debt collector attempting to collect this debt for our client and any information will be used for that purpose." (*Id.* at Att. 3.) In other words, the letters contained exactly the type of language that the CFPB claims violates the law. And the CFPB's response, dated August 29, 2012, confirms it had reviewed Weltman's letters for compliance by August 2012. (*Id.* at Att. 4.) The CFPB had yet another opportunity to review and investigate following a complaint in October 2013 that included a Weltman letter. (*Id.* at Att. 5.) In short, based on the CFPB's review and analysis of these letters in mid-2012 and October 2013, the CFPB had actual knowledge of the basis for its causes of action no later than October 2013, more than three years before it filed this lawsuit.

The CFPB acquired knowledge of the facts underlying its claims in another way: the knowledge of its former director, Richard Cordray, is imputed to it. Imputation of knowledge within the government follows traditional agency law. *See In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 796 (E.D. N.Y. 1984). Under the Restatement, "[e]xcept for knowledge acquired confidentially, the time, place, or manner in which knowledge is acquired by a servant or other agent is immaterial in determining the liability of his principal because of it."

Restatement (Second) of Agency § 276 (1958); *see also* Restatement (Second) of Agency § 272 (1958) ("[T]he liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information."). Thus, the knowledge Mr. Cordray acquired as Ohio Attorney General is imputed to the CFPB here.

The record shows that Mr. Cordray was familiar with Weltman's practices long before he personally authorized the CFPB to sue the firm. (Cordray Dep. 9:19-10:3.) While serving as Attorney General, he twice retained a Weltman shareholder to collect the State's debt using Weltman's attorneys and staff using the very same processes and procedures that the CFPB now claims violate the law. (*See supra* Section II.)

Mr. Cordray also required Weltman to use his own letterhead to collect debts. Weltman drafted those collection letters and, after approval by the firm's Compliance Audit Department, the letters were provided to and approved by Mr. Cordray's office for compliance with the law. (Bitterman Dep. 255:12-256:15; Cordray Dep. 111:22-113:4, Ex. I.) Those letters are materially indistinguishable from the letters the CFPB claims are misleading. Mr. Cordray's name and position were featured prominently, and the letters referred to "attorneys" or "counsel" nine times. (*See* Cordray Dep. Ex. I.) No letter advised consumers that Mr. Cordray had not reviewed the particular circumstances of the consumer's account, even though Mr. Cordray did not review consumer accounts before a letter went out bearing his name. (*Id.* 122:22-124:23, Ex. I.)

In sum, the CFPB is charged with Mr. Cordray's knowledge of Weltman's specific collection practices and the collection letters that Weltman sent to consumers on Mr. Cordray's behalf. That knowledge dates back to 2011 when Mr. Cordray assumed his role at the CFPB.

The CFPB therefore had or should have discovered its causes of action in 2011, six years before it filed this case, or by 2012 when it investigated a complaint that included Weltman's letters, and certainly no later than 2013 when it received another Weltman letter attached to a consumer complaint. Thus, this lawsuit, filed more than three years after the CFPB discovered the facts underlying its claims, is barred by the statute of limitations. On this basis alone, summary judgment should be granted.

**B. THE CFPB'S CLAIMS FAIL UNDER *SHERIFF V. GILLIE*.**

The FDCPA *requires* Weltman to identify itself by its true name in communications with consumers, 15 U.S.C. § 1692e(14), and the Ohio Rules of Professional Conduct *require* Weltman to identify itself as a law firm. *See* Rule 4.3 (prohibiting attorneys from holding themselves out as disinterested); Rules 7.1 and 7.5 (prohibiting attorneys from using misleading professional designations). The CFPB's claims suggest that by complying with these requirements, Weltman misleads consumers. Weltman's milquetoast letters accurately convey the identity of the sender—the law firm—and say little more than is required by the FDCPA. Under *Sheriff v. Gillie*, there is no claim here.

In *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091 (6th Cir. 2015), *rev'd by Sheriff v. Gillie*, 136 S. Ct. 1594 (2016), the Sixth Circuit reviewed an order granting summary judgment for the defendant law firm debt collector accused of sending misleading letters to consumers because of the letterhead that was used. The Ohio Attorney General had retained the law firm as "special counsel" to collect the State's debts, much as Mr. Cordray had retained Weltman in years past, and required the law firm to use the Attorney General's letterhead in communicating with consumers. The defendant moved for summary judgment and the Sixth Circuit articulated the questions before it as (1) "whether an unsophisticated consumer could reasonably be misled into thinking she was being contacted by the Ohio Attorney General due to

an independent contractor's use of OAG letterhead" and (2) "[i]f she could, we must also determine whether there is a genuine dispute of material fact as to any confusion that could be created by this debt collection practice under the particular circumstances of this case." *Id.* at 1106. The Sixth Circuit determined that using the Attorney General's letterhead could be misleading and remanded the case for a jury to determine whether the letters were actually confusing to the least sophisticated consumer, over Judge Sutton's dissent. *Id.* at 1110.

In reaching its decision, the Sixth Circuit relied on *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), which relies on *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993). *Clomon*, *Avila*, and their progeny stand for the proposition that when an attorney signs a letter on law firm letterhead, the consumer is misled into believing the attorney reviewed the consumer's account. Invoking *Avila*, the Sixth Circuit in *Gillie* concluded that using the Ohio Attorney General's letterhead was misleading because it suggested the letter was from the Ohio Attorney General.

In a unanimous decision authored by Justice Ginsberg, the Supreme Court reversed. Citing Judge Sutton's dissent, the Supreme Court found nothing misleading about letters whose letterhead "accurately describes the relevant legal entities," had a signature block that truthfully represented the relationship between the Attorney General and special counsel, included a "conspicuous notation that the letter is sent by a debt collector," and, as a whole, alerted the debtor to "both the basis for the payment obligation and the official responsible for enforcement of debts." 136 S. Ct. at 1601. Because the Supreme Court decided the first question, *i.e.*, whether an unsophisticated consumer could reasonably be misled, in the negative, and no fact relevant to that inquiry was disputed, the Court held that the district court had properly entered summary judgment in the law firm's favor. 136 S. Ct. at 1603 n.7.

While *Gillie* has some factual differences, its premise is dispositive: the entirely

speculative "specter of consumer confusion" is insufficient to state a claim under the FDCPA, *Gillie*, 136 S. Ct. at syllabus; and letterhead that "accurately conveys" the identity of the sender is "[n]ot fairly described as 'false or misleading.'" *Id.* at 1598. At least one court has recognized this to be *Gillie*'s mandate. *See Moorer v. U.S. Bank N.A.*, No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan. 29, 2018) (following *Gillie* and dismissing claim that law firm's use of its letterhead was misleading when it was acting as in a "debt collector's capacity"). This Court should follow that precedent.

As was true of the letters in *Gillie*, a document on Weltman letterhead, "it is no doubt true, gives the impression that it comes from" Weltman. 785 F.3d at 1115 (Sutton, J., dissenting) (cited approvingly by *Gillie*, 136 S. Ct. 1594). But those "dunning letters do come from" Weltman. *Id.* "The FDCPA is not sensibly read to require" Weltman to "obscure that reality." *Gillie*, 136 S. Ct. at 1603. Weltman's letterhead and signature "accurately describe[] the relevant legal [entity]." *Id.* at 1600.

Nor is there anything in Weltman's letters that implies any individual attorney was involved. Weltman's letters do not indicate that an attorney has reviewed the debtor's file or made "suggestions" regarding how the particular debt should be handled. *Clomon*, 988 F.2d at 1317, 1320. Weltman's letters explicitly say that the letter is from a "debt collector." Perhaps most importantly, Weltman's letters are not signed by an attorney. They are signed by the entity that evaluated the portfolio, scrubbed the debtor's file, and sent the letter acting as a debt collector.

A debtor reading a letter from Weltman would get the impression that the collection letter was a communication from a debt collector that also happens to be a law firm. "[T]his impression [is] not false. Defendant is a law firm." *Bytwerk v. Mary Jane Elliot, P.C.*, No. 1:12-

cv-876, 2013 WL 150461, at *4 (W.D. Mich. Jan. 14, 2013). The debtor may also get the impression that the firm conducted some type of evaluation, an impression the Complaint itself admits is true. (Compl. ¶¶ 7, 12-13); *see Goldberg v. Wintston & Morrone, P.C.*, No. 95 Civ. 9282 (LAK), 1997 WL 139526, at *5 (S.D.N.Y. Mar. 26, 1997) (holding that letter signed by attorney to collect debt that had been reviewed by the attorney's law firm was not per se misleading). What is not present in any of Weltman's letters is a sense that an attorney—rather than a law firm—is involved in the debt collection. That is a distinction that matters. *See, e.g.*, *Daniels v. Solomon & Solomon, P.C.*, No. 17-0757, 2017 WL 3675400, at *4 (E.D. Pa. Aug. 25, 2017) (appeal pending).

Weltman's letters are not false and, under *Gillie*, they are not misleading. And *Gillie*'s reasoning likewise applies to any collection calls in which a non-attorney collector truthfully identified Weltman as a law firm. Because an unsophisticated consumer could not reasonably be misled by Weltman's letters or calls, summary judgment is appropriate here. *Gillie*, 136 S. Ct. at 1603 n.7 (holding that the district court properly granted summary judgment).

## C. THE UNDISPUTED FACTS SHOW THAT THE CFPB IS NOT ENTITLED TO RESTITUTION OR DISGORGEMENT DAMAGES

Even if the CFPB were able to prove that Weltman violated the CFPA (and it cannot), it cannot prove that restitution or disgorgement is an appropriate remedy here, nor can it prove the amount that represents Weltman's alleged "unjust gains." Summary judgment should be granted as to the CFPB's request for restitution and disgorgement.

Restitution and disgorgement are available remedies for violating the CFPA, and the CFPB bears the burden of proving the amount of the defendant's unjust gains. *Consumer Financial Protection Bureau v. CashCall, Inc.*, No. 15-07522-JFW, 2018 WL 485963, at *11 (C.D. Cal. Jan. 19, 2018). Here, however, the CFPB cannot establish any unjust gains. At the

close of discovery, the CFPB produced a witness for deposition, pursuant to Rule 30(b)(6), to testify about the CFPB's calculation of the "ill-gotten gains" that it was seeking as damages in the Complaint. Speaking for the CFPB, the witness conceded that he did not know what portion of revenue was "ill-gotten." In his words: "I have no idea if it is all ill gotten or partly ill gotten." (Deposition of M. Heidari at 21:22-23.)[6] Because the CFPB has admitted that it does not know whether any of Weltman's gains were unjust, the CFPB cannot sustain its burden of proof. Weltman is entitled to summary judgment on the CFPB's request for restitution and disgorgement. *CashCall*, 2018 WL 485963, at *14.

## V. CONCLUSION

The CFPB's claims are time-barred and, in any event, meritless under *Gillie*. The Court should enter summary judgment in Weltman's favor.

[6] Excerpts from Mr. Heidari's deposition are attached as Exhibit G.

Dated: February 23, 2018

Respectfully submitted,

s/ Ryan A. Doringo

James R. Wooley (0033850)
Tracy K. Stratford (0069457)
Ryan A. Doringo (0091144)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
Email: jrwooley@jonesday.com
tkstratford@jonesday.com
radoringo@jonesday.com

Attorneys for Defendant
Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this dispositive motion is no more than 20 pages in length, and, therefore, it conforms to the page limitation for standard track cases set forth in Local Rule 7.1(f).

s/ Ryan A. Doringo

One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2018, I electronically filed the foregoing Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Sarah Preis
Zol Rainey
Rebeccah Watson
Jehan Patterson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer
Financial Protection Bureau

s/ Ryan A. Doringo

One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.