**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 1:17 CV 817 |
| Plaintiff, | Judge Donald C. Nugent |
| v. | Magistrate Judge William H. Baughman, Jr. |
| WELTMAN, WEINBERG & REIS CO., L.P.A., | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

STATEMENT OF ISSUES TO BE DECIDED ........ v

SUMMARY OF THE ARGUMENT PRESENTED........ 1

I. STATEMENT OF FACTS IN OPPOSITION TO WWR'S MOTION FOR SUMMARY JUDGMENT ........ 1

A. The Tolling Agreement Between WWR and the Bureau........ 1

B. The Ohio Attorney General's Appointment of a WWR Shareholder as Special Counsel........ 2

C. WWR's Consumer Collections Business Unit........ 2

1. WWR's "Agency Collections" Unit........ 2

2. WWR's Legal Services ........ 3

II. ARGUMENT........ 4

A. WWR Fails to Show that the Applicable Statute of Limitations Bars the Bureau's Claims........ 4

1. The FDCPA one-year statute of limitations does not bar the Bureau's FDCPA claims (Counts I and IV). ........ 5

2. WWR has not established that the Bureau discovered WWR's CFPA violations more than three years prior to filing suit (Counts II, III, V, and VI). ........ 8

a. Receipt of two unverified consumer complaints does not constitute "discovery" of WWR's violations........ 9

b. Any knowledge former Director Cordray obtained as Ohio Attorney General failed to trigger the statute of limitations on the Bureau's claims. ........ 11

3. The Bureau's claims are timely even without the Tolling Agreement, but, in any event, that agreement is enforceable........ 12

B. *Sheriff v. Gillie* Does Not Foreclose the Bureau's Claims........ 15

C. The Bureau May Seek Disgorgement. ........ 19

CONCLUSION........ 20

# TABLE OF AUTHORITIES

**Cases**

*4934, Inc. v. D.C. Dep't of Employment Servs.*, 605 A.2d 50 (D.C. 1992) .................................. 14

*Badaracco v. C.I.R.*, 464 U.S. 386 (1984) ........................................................................... 8

*Buletko v. FleetCor Techs., Inc.*, No. 5:07CV2017, 2008 WL 11377782 (N.D. Ohio May 20, 2008) .................................................................................................................. 14

*Bullard v. Curry–Cloonan*, 367 A.2d 127 (D.C. 1976) ................................................................ 14

*Bytwerk v. Mary Jane Elliott, P.C.*, No. 1:12-CV-876, 2013 WL 150461 (W.D. Mich. Jan. 14, 2013) .................................................................................................................. 18

*Collins v. Woodworth*, 109 F.2d 628 (6th Cir. 1940) .................................................................. 13

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. CV1507522JFWRAOX, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ........................................................................................... 20

*Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ..................................... 19

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017) ........................................................... 9, 10, 11

*Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 1:17-cv-817, 2017 WL 4348916 (N.D. Ohio Sept. 29, 2017)....................................................... 10, 16, 17

*Consumer Fin. Prot. Bureau v. ITT Educational Services, Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) .................................................................................................................... 7

*Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173 (D. Minn. 2011) ............. 18

*Corley v. United States*, 556 U.S. 303 (2009).................................................................... 6

*Daniels v. Solomon & Solomon, P.C.*, No. 17-0757, 2017 WL 3675400 (E.D. Pa. Aug. 25, 2017) .................................................................................................................. 18

*Doe v. Case W. Reserve Univ.*, No. 1:17 CV 414, 2017 WL 3840418 (N.D. Ohio Sept. 1, 2017) .................................................................................................................. 15

*Fowler v. Johnson*, No. CV 17-11441, 2017 WL 6540926 (E.D. Mich. Dec. 21, 2017) ............. 11

*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011).................................................... 20

*FTC v. CompuCredit Corp.*, No. 1:08-CV-1976-BBM-RGV, 2008 WL 8762850 (N.D. Ga. Oct. 8, 2008) ........ 4, 6, 7

*FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006) ........ 19

*Goldberg v. Winston & Morrone, P.C.*, No. 95 CIV. 9282 (LAK), 1997 WL 139526 (S.D.N.Y. Mar. 26, 1997) ........ 18

*Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433 (6th Cir. 2008) ... 10, 17, 18

*Kokesh v. SEC*, 137 S. Ct. 1635, 1640-42 (2017) ........ 7

*Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993 (3d Cir. 2011) ........ 17

*Lucas Ford, LLC v. Ford Motor Credit Co.*, No. 3:09CV451, 2011 WL 1831739 (N.D. Ohio May 12, 2011) ........ 15

*Mathis v. St. Alexis Hosp. Assoc.*, 99 Ohio App.3d 159 (1994) ........ 14

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ........ 11

*Michalak v. LVNV Funding, LLC*, 604 F. App'x. 492 (6th Cir. 2015) ........ 8

*Moorer v. U.S. Bank, N.A.*, No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan. 29, 2018) ........ 16

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ........ 6

*Qiu Yun Chen v. Holder*, 715 F.3d 207 (7th Cir. 2013) ........ 11

*SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) ........ 20

*SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215 (D.C. Cir. 1989) ........ 19

*SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211 (E.D. Mich. 1991), *aff'd*, 12 F.3d 214 (6th Cir.1993) ........ 19, 20

*SEC v. Save The World Air Inc.*, No. 01 Civ. 11586(GBD)FM, 2005 WL 3077514 (S.D.N.Y. Nov. 15, 2005) ........ 19

*SEC v. Secure Capital Funding*, Civ. No. 11–916, 2014 WL 1716226 (D.N.J. Apr. 29, 2014) .. 20

*Sheriff v. Gillie*, 136 S. Ct. 1594 (2016) ........ iv, 1, 16, 17

*Source Assocs., Inc. v. Valero Energy Corp.*, 273 F. App'x 425 (6th Cir. 2008) ........ 13

*Thompke v. Fabrizio & Brook, P.C.*, 261 F. Supp. 3d 798 (E.D. Mich. 2017) ........ 16

*Union Oil Co. of California v. Terrible Herbst, Inc.*, 331 F.3d 735 (9th Cir. 2003) .................... 13

*United States v. Bertie Ambulance Serv., Inc.*, No. 2:14-CV-00053-F, 2015 WL 5916691 (E.D.N.C. Oct. 8, 2015) .................... 14

*United States v. Halliburton Energy Servs., Inc.*, No. CIV. A. H-07-3795, 2009 WL 3260540 (S.D. Tex. Oct. 9, 2009) .................... 14

*Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004) .................... 6

**Statutes**

12 U.S.C. § 5481(12)(H) .................... 4
12 U.S.C. § 5481(14) .................... 4
12 U.S.C. § 5536(a)(1)(A) .................... 4
12 U.S.C. § 5561(5) .................... 8
12 U.S.C. § 5564(a) .................... 5
12 U.S.C. § 5564(g)(1) .................... 4, 6, 7, 8, 11
15 U.S.C. § 1692e(14) .................... 19
15 U.S.C. § 1692k(a) .................... 5
15 U.S.C. § 1692k(d) .................... 5, 6
15 U.S.C. § 1692*l*(b)(6) .................... 5, 6
15 U.S.C. § 1692*l*(c) .................... 6

**Other Authorities**

Merriam-Webster, https://www.merriam-webster.com/dictionary/law%20firm .................... 18
Restatement (Second) of Contracts § 90(1) (1981) .................... 15

## STATEMENT OF ISSUES TO BE DECIDED

1) Has WWR met its burden of establishing that it is entitled to summary judgment in its favor on the grounds that the Bureau's claims are time-barred?

2) Are any of the Bureau's claims barred by *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016), which was expressly limited to demand letters sent by "special counsel" and did not involve claims for misrepresenting the level of attorney involvement under § 1692e(3) or e(10) of the Fair Debt Collection Practices Act or the Consumer Financial Protection Act of 2010?

3) Has WWR presented any evidence to dispute the Bureau's entitlement to disgorgement should it prevail on its claims that would warrant summary judgment in favor of WWR?

## SUMMARY OF THE ARGUMENT PRESENTED

WWR fails to show that the Bureau's claims are time-barred or otherwise fail in light of *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016). WWR's argument that the Fair Debt Collection Practices Act's ("FDCPA") statute of limitations applies to the Bureau's FDCPA claims ignores the relevant text of that statute and the Consumer Financial Protection Act of 2010 ("CFPA"), and WWR also fails to present undisputed evidence establishing that the Bureau "discovered" WWR's violations more than three years prior to filing this action. WWR also resurrects its argument from its earlier dispositive motion that *Sheriff v. Gillie* precludes the Bureau's claims. That argument has not become more persuasive with time, and should be rejected again. Finally, WWR has failed to sustain its burden of showing that the Bureau may not seek disgorgement. At best, any genuine dispute concerning the amount of disgorgement should be resolved at trial. Accordingly, WWR's motion should be denied.

## I. STATEMENT OF FACTS IN OPPOSITION TO WWR'S MOTION FOR SUMMARY JUDGMENT[1]

### A. The Tolling Agreement Between WWR and the Bureau

In late 2016, the Bureau and WWR (through its outside counsel) negotiated a Tolling Agreement. Preis Decl. ¶¶ 2-6.[2] WWR's Compliance Officer, Eileen Bitterman, signed that agreement. WWR Mot. for Summ. J. ("Mot."), ECF No. 45, Ex. A, Attach. 6. In that agreement, WWR stipulated and agreed, among other things, that the running of any applicable unexpired

[1] WWR asserts many facts that are either irrelevant and/or not supported by evidence in the record. Although the Bureau disputes some of these facts, it does not address them here as they are not material to WWR's Motion for Summary Judgment.

[2] The Bureau redacted certain settlement-related information that is not relevant to WWR's motion from the correspondence attached to this declaration, but can provide an unredacted copy to the Court if that would be helpful.

statute of limitations for the Bureau's claims "shall be suspended from November 15, 2016 to May 15, 2017 (the 'Tolling Period')." *Id*. at ¶ 1. The agreement Ms. Bitterman signed further provides that, if WWR raised any statute of limitations defense, the Bureau and WWR "expressly agree that the Tolling Period is excluded for purposes of calculating the statute of limitations or delay period." *Id*. The Bureau proposed, and WWR agreed to, the Tolling Agreement while the parties were engaging in pre-complaint settlement negotiations that took place between roughly November 2016 and until shortly before the Bureau filed this lawsuit on April 17, 2017. Preis Decl. ¶¶ 7-8.

### B. The Ohio Attorney General's Appointment of a WWR Shareholder as Special Counsel

In 2009 and 2010, Ohio Attorney General Richard Cordray appointed, among other debt collectors, WWR shareholder Alan Weinberg as special counsel to collect the State of Ohio's debts. Ex. 1, Cordray Dep. 18:9-19[3]. The State of Ohio's debts were collected by a different WWR unit using different demand letters than the WWR unit and form demand letters at issue in this action. *See* Ex. 2, Pona Dep. 209:7-20; 211:12-16; Ex. 1, Cordray Dep. 113:5-21.

### C. WWR's Consumer Collections Business Unit

#### 1. WWR's "Agency Collections" Unit

Among other relief, the Bureau seeks disgorgement of ill-gotten revenue, in an amount to be determined at trial. ECF No. 1, ¶¶ 9-10. In discovery, the Bureau disclosed that it will seek revenue generated from pre-litigation collections by WWR's "Agency Collections Unit," a sub-

[3] Deposition transcripts will be cited as "Witness Name Dep. page #" and the exhibits will include relevant excerpts. Full citations to deposition testimony are included in the exhibit list.

unit[4] of WWR's Consumer Collections Business Unit, which handles consumer debt collection. Ex. 3, Heidari Dep. 31:17-22; Ex. 4, Bitterman Dep. 18:12-16; 29:19-30:12; 33:13-18; WWR's Resp. to Aug. 27, 2014 CID, Interrog. 18 (Sept. 30, 2014), ECF No. 44, Ex. 12.

In discovery, the Bureau sought documents related to revenue generated by the Agency Collections unit. Ex. 3, Heidari Dep. 36:18-25. Since as early as 2016, WWR has had the capability to specifically track revenue generated by the Agency Collections Unit. Ex. 4, Bitterman Dep. 34:2-6. At the time WWR deposed the Bureau's Rule 30(b)(6) witness, WWR had produced financial documentation for only 2016. Ex. 3, Heidari Dep. 36:9-17.

**2. WWR's Legal Services**

WWR sends form demand letters and engages in collection calls with consumers nationwide. Ex. 4, Bitterman Dep. 162:12-20; Def.'s Resp. to Interrog. 2(d) (Feb. 2, 2018), ECF No. 44, Ex. 10. In addition to these non-legal services, WWR also files collection lawsuits, although it does so in only seven states. *See* Ex. 5, WWR's Resp. to Aug. 27, 2014 CID, Interrog. 7 (Sept. 30, 2014) (relevant excerpts included). Accounts flagged for litigation are re-assigned from Agency Collections to other units for evaluation. Ex. 6, Bitterman Inv. Hr'g 23:23-24:7; 28:1-8 (describing suit audits and Legal Collections). Not all clients authorize WWR to file collection lawsuits, and WWR does not always recommend litigation if a debt remains unpaid. *See* Ex. 7, Tommer Dep. 94:25-96:3. If WWR forwards the account to an outside law firm, then that law firm initiates collection by sending another initial demand letter from that law firm. Ex. 4, Bitterman Dep. 164:2-21; 166:7-12.

[4] This sub-unit has previously been referred to as "Front-End" and "Pre-Legal." *See* Ex. 4, Bitterman Dep. 34:2-6.

## II. ARGUMENT

### A. WWR Fails to Show that the Applicable Statute of Limitations Bars the Bureau's Claims.

Lost in WWR's statute of limitations arguments is that the Bureau has asserted claims both under the FDCPA (Counts I and IV), as well as separate claims under the CFPA for the same FDCPA violations (Counts II and V). *See* ECF No. 1, ¶¶ 37-43, 49-55. In particular, counts II and V allege violations of 12 U.S.C. § 5536(a)(1)(A), which makes it unlawful for "any covered person" to "commit any act or omission in violation of a Federal consumer financial law," such as the FDCPA. 12 U.S.C. § 5536(a)(1)(A); *see also* 12 U.S.C. § 5481(12)(H), (14) (identifying the FDCPA as a "Federal consumer financial law"). Thus, because Defendant is a "covered person,"[5] its FDCPA violations also constitute violations of § 5536(a)(1)(A) of the CFPA. Therefore, even if the Bureau's FDCPA claims were governed by a one-year statute of limitations—and for the reasons explained below, they are not—nothing changes. There is no dispute that the CFPA claims based on the exact same conduct are governed by the CFPA's three-year discovery-based statute of limitations in 12 U.S.C. § 5564(g)(1). So while WWR spends several pages telling the Court it was wrong to find the reasoning in *CompuCredit* persuasive, Mot. at 10-13, this argument gets WWR nowhere. *FTC v. CompuCredit Corp.*, No. 1:08-CV-1976-BBM-RGV, 2008 WL 8762850 (N.D. Ga. Oct. 8, 2008). WWR violated the FDCPA, and those FDCPA violations amount to CFPA violations under 12 U.S.C. § 5536(a)(1)(A). And even WWR agrees that the Bureau may bring its CFPA claims within three years of discovering WWR's violations. Mot. 13. The Bureau did so here. The Court should

[5] As the Bureau's motion for summary judgment established, there is no dispute that WWR is a "covered person." ECF No. 44 at 3, 9-10. The Bureau respectfully refers the Court to that discussion.

reject WWR's statute of limitations arguments, as well as WWR's attempt to invalidate its Tolling Agreement with the Bureau.

### 1. The FDCPA one-year statute of limitations does not bar the Bureau's FDCPA claims (Counts I and IV).

WWR's argument that the FDCPA's one-year statute of limitation applies to the Bureau's FDCPA claims rests on an FDCPA provision that has no application here. Specifically, WWR argues that § 1692k(d) of the FDCPA imposes a one-year statute of limitations on the Bureau's claims. Mot. 10. But the Bureau's FDCPA claims are brought pursuant to a different section providing that the Bureau "shall" enforce compliance with the FDCPA pursuant to subtitle E of the CFPA, 15 U.S.C. § 1692*l*(b)(6). Subtitle E of the CFPA, in turn, is the source of the Bureau's authority to commence civil actions in federal court against "any person [who] violates" the FDCPA. *See* 12 U.S.C. § 5564(a).

Reading the entirety of §§ 1692k and 1692*l* makes clear that the FDCPA provides different mechanisms for enforcing liability in consumer lawsuits and for enforcing *compliance* by the government. Thus, the limitations period under § 1692k(d) does not govern the Bureau's claims. Section 1692k(a) provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person" for specified damages. 15 U.S.C. § 1692k(a). Those damages are outlined in the subparagraphs of § 1692k(a), and provide for their award to individual plaintiffs. *See* 15 U.S.C. § 1692k(a)(1)-(2) (referring to "actual damage[s] sustained," "in the case of any action by *an individual*," and "class action[s]", respectively) (emphasis added). None of these provisions contemplates awards to the government in an enforcement action. Section 1692k(d) further provides that actions may be brought "to enforce any liability created by this subchapter…." 15 U.S.C. § 1692k(d). That the provision for enforcement of liability under § 1692k(d) does not apply to the Bureau's action is

confirmed by the FDCPA's mandate that the Bureau "shall" enforce "*compliance* with any requirements imposed under this subchapter," 15 U.S.C. § 1692*l*(b)(6) (emphasis added). "Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012) (citations omitted). Indeed, at least one court has recognized that "§ 1692k(d) applies only to actions by 'consumers' against 'debt collectors.'" *CompuCredit*, 2008 WL 8762850, at *10 (citations omitted).[6] WWR's argument that § 1692k(d) applies to the Bureau's action ignores this statutory framework and should be rejected.[7] *See Corley v. United States*, 556 U.S. 303, 314 (2009) (holding that statutory constructions that render any part of a statute "inoperative or superfluous, void or insignificant" are to be avoided) (citations omitted).

WWR complains that this reading could leave Bureau enforcement actions of the FDCPA without a governing limitations period and that the Court would therefore have to "borrow" the one-year limitations period from the FDCPA. *See* Mot. 12. This is wrong for two reasons. First, the three-years-from-discovery statute of limitations in the CFPA, 12 U.S.C. § 5564(g)(1), could apply. The FDCPA provides that for the purpose of the Bureau's enforcement of the FDCPA, a violation of the FDCPA "shall be deemed" to be a violation of the CFPA, 15 U.S.C. § 1692*l*(c), and the Bureau must bring an action to enforce a violation of the CFPA no more than three years after the date of discovery of the violation to which an action relates, 12 U.S.C. § 5564(g)(1).

[6] *See also Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004) (recognizing that § 1692k(a) provides damages remedies for private plaintiffs while § 1692*l* provides for government enforcement, including remedies), *as amended* (Oct. 22, 2004), and *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

[7] WWR argues that § 1692k(d) must provide the applicable statute of limitations, because otherwise it would not have the bona fide error defense available to it under in § 1692k(c). Mot. 11-12. Whether this affirmative defense could apply is not relevant to determining whether this defense applies to address whether § 1692k(d) applies to a Bureau enforcement action brought under § 1692*l*(b)(6).

The reasoning of at least one case suggests that this means that the CFPA three-year discovery-based statute of limitations applies to the Bureau's FDCPA claims as well. *See CompuCredit*, 2008 WL 8762850, at *10 (holding that similar provision deeming FDCPA violation to be violation of FTC Act indicated that "the statute of limitations applicable" to FTC's FDCPA claims "is that provided under the FTC Act"). Second, even if the CFPA's three-year statute of limitations did not apply, the Bureau's FDCPA claims here—which seek to recover penalties and disgorgement —would still be governed by the limitations period established by 28 U.S.C. § 2462, which provides that, unless a statute provides otherwise, "an action … for the enforcement of any civil fine, penalty, or forfeiture … shall not be entertained unless commenced within five years from the date when the claim first accrued." *See also Kokesh v. SEC*, 137 S. Ct. 1635, 1640-42 (2017) (holding that statute of limitations in 28 U.S.C. § 2462 applies to claims for disgorgement). Neither of these limitations periods would bar the Bureau's claims in this case.

WWR's reliance on *Consumer Financial Protection Bureau v. ITT Educational Services, Inc.*, 219 F. Supp. 3d 878, 922-23 (S.D. Ind. 2015), in arguing that the Bureau's FDCPA claims are time-barred is misplaced. Mot. 11. The *ITT* court presumed that one of two provisions of the Truth in Lending Act (TILA) furnished the statute of limitations applicable to the Bureau's claims. 219 F. Supp. 3d at 921-22. Accordingly, it did not "reject[]" the reasoning of *CompuCredit*. Mot. 11. In concluding that the Bureau's TILA claim was subject to the one-year statute of limitations period for civil liability under 15 U.S.C. § 1640(e) rather than the absence of any statute of limitations under 15 U.S.C. § 1607, the court relied on distinct aspects of TILA that are not present here. *See ITT*, 219 F. Supp. at 922-23 (citing § 1640's allowance for

government intervention in civil suits and its interpretation of guidance from other regulators on enforcement actions under § 1607). Its reasoning is therefore not persuasive or instructive here.

Finally, even assuming for the sake of argument that the one-year FDCPA limitation applies, the Bureau's FDCPA claims are not time-barred. WWR's violations continue to this day—there is no evidence that it changed its practices to either disclose to consumers that no attorney has reviewed their accounts or to have attorneys actually conduct that review. At a minimum, the Bureau can still proceed with FDCPA claims dating back to November 15, 2015 (one year prior to the tolling period in the parties' Tolling Agreement). *See* Mot. Ex. A, Attach. 6; *see also Michalak v. LVNV Funding, LLC*, 604 F. App'x. 492, 493 (6th Cir. 2015) (explaining that each dunning letter may constitute a separate violation of the FDCPA). WWR is therefore not entitled to summary judgment in its favor as to Counts I and IV.

**2. WWR has not established that the Bureau discovered WWR's CFPA violations more than three years prior to filing suit (Counts II, III, V, and VI).**

The CFPA provides that "no action may be brought under [the CFPA] more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). A "violation" is "any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law." 12 U.S.C. § 5561(5). The Court must strictly construe this statute of limitations in favor of the Bureau. *See Badaracco v. C.I.R.*, 464 U.S. 386, 391-92 (1984). Here, WWR argues that the Bureau "discovered" WWR's violations based on the Bureau's receipt of two unverified consumer complaints that attached WWR form demand letters in 2012 and 2013. *See* Mot. 14. WWR also argues that the Bureau "acquired knowledge of the facts underlying its claims" through Richard Cordray, former Director of the Bureau and, before

that, former Ohio Attorney General. Mot. 14. Neither argument is supported by the facts or law and WWR is not entitled to summary judgment in its favor.

**a. Receipt of two unverified consumer complaints does not constitute "discovery" of WWR's violations**.

WWR argues the Bureau "discovered" WWR's violations on August 29, 2012, after a Bureau employee responded to a consumer complaint *or* upon receipt of a second complaint mentioning WWR in October 2013, more than three years prior to filing suit against WWR. *See* Mot. 14. But this thin factual record fails to show that the Bureau discovered WWR's violations in either August 2012 or by October 2013.

Another court interpreting the CFPA's discovery-based limitations provision recently rejected a virtually identical argument. *See Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS, 2017 WL 3948396, at *10 (N.D. Cal. Sept. 8, 2017), *appeal pending*. In *Nationwide*, the defendants argued that the CFPA's statute of limitations began to run when the Bureau received a consumer complaint alleging that defendants engaged in misleading marketing practices. *Id*. The court rejected this argument explaining that "[t]he notion that mere receipt of a consumer complaint can trigger the statute of limitations as against [the Bureau] is unsupported by any authority and would be unworkable." *Id*. The court held that, for the statute of limitations period to begin running, the Bureau would have had to have sufficient facts to file suit. *See id.* at *10, n.22. The court explained that if the Bureau had rushed into court "with a complaint based on no information other than the consumer complaint . . . it would have been a clear violation of Rule 11." *Id*. Likewise, here, receipt of two unverified consumer complaints mentioning WWR and attaching WWR's demand letters does not constitute "discovery" of WWR's violations under the CFPA. The Bureau could not have filed a complaint

against WWR based on those consumer complaints and, as the *Nationwide* court concluded, "[p]lainly the statute was not yet running."[8] *See id*.

WWR's reliance on the Bureau's receipt of two WWR demand letters through those consumer complaints also reflects a fundamental misunderstanding of the nature of its violations. WWR did not violate the FDCPA or CFPA by identifying itself as a law firm in its dunning letters. *See* Mot. 13. Rather, as this Court recognized, "the question is whether WWR sufficiently clarified that it was not acting as an attorney in connection with sending the debt collection letters or making the debt collection phone calls, so as not to mislead" consumers. *Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 1:17-cv-817, 2017 WL 4348916, at *5 (N.D. Ohio Sept. 29, 2017); *see also Kistner v. Law Offices of Michael P. Margelefsky LLC,* 518 F.3d 433, 440-41 (6th Cir. 2008). In other words, there are two parts to WWR's violations—conveying to consumers that an attorney was involved in their account *and* the corresponding lack of meaningful attorney involvement. Nothing in the two consumer complaints or the attached form demand letters shows the Bureau "discovered" (or even that it could have discovered) the discrepancy between WWR's representations and the actual non-involvement of WWR attorneys through these two consumer complaints.

WWR also mischaracterizes the Bureau's August 29, 2012, response to the first consumer complaint as providing confirmation that the Bureau had "reviewed WWR's letters for compliance." *See* Mot. 14. This is false. The Bureau's response letter made clear that it was not making "a determination with respect to the validity of [the consumer's] complaint." Mot., Ex.

[8] Indeed, the August 2012 consumer complaint was actually directed at WWR's creditor client rather than at WWR itself. WWR redacted its client name from the consumer complaint it filed in support of its motion, *see* Mot., Ex. A, Attach. 3, obscuring the fact that the consumer was actually complaining about the creditor rather than WWR.

A, Attach. 3. This response is consistent with the fact that the Bureau does not opine on the legality of underlying practices when it handles consumer complaints.[9]

WWR briefly suggests that even if the Bureau did not "discover" WWR's FDCPA violations through those two consumer complaints, the Bureau had "an opportunity to review and investigate" based on the receipt of WWR's form demand letters. Mot. 14. Although WWR appears to argue that the Bureau therefore had "constructive knowledge" of the violations, the CFPA does not allow for the statute of limitations period to run at some earlier point before actual discovery by the Bureau. *See* Mot. 13; 12 U.S.C. § 5564(g)(1). Similarly, WWR's reliance on *Merck & Co. v. Reynolds* is misplaced. Mot. 13. Even under *Merck & Co*., which involved a different statute and was not a government enforcement action, the "opportunity to review and investigate" is not equivalent to "discovering" a violation. *See* 559 U.S. 633, 653 (2010); *see also Nationwide*, 2017 WL 3948396, at *10. Thus, WWR fails to show that the Bureau "discovered" WWR's CFPA violations in August 2012 or October 2013.

**b. Any knowledge former Director Cordray obtained as Ohio Attorney General failed to trigger the statute of limitations on the Bureau's claims.**

WWR's contention that Mr. Cordray's knowledge of WWR's "practices"—allegedly acquired in 2009 and 2010 when he appointed WWR attorney Alan Weinberg as special counsel to collect the State of Ohio's debt—is imputed to the Bureau for statute of limitations purposes also fails. WWR has not shown that any knowledge Mr. Cordray acquired as the Ohio Attorney

---

[9] S*ee generally*, Ex. 8, Consumer Response Annual Report, Consumer Financial Protection Bureau (March 2017), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201703_cfpb_Consumer-Response-Annual-Report-2016.PDF. The Court may take judicial notice of undisputed information posted to government websites. *Fowler v. Johnson*, No. CV 17-11441, 2017 WL 6540926, at *3 (E.D. Mich. Dec. 21, 2017) (citing *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013)).

General and before the Bureau existed has any relation to the facts that give rise to the claims in this action. There is no dispute that the debts that WWR collected on behalf of the State of Ohio were collected by a different WWR unit using different demand letters[10] than the agency collection unit and form demand letters at issue in this action. *See* Ex. 2, Pona Dep. 209:7-20; 211:12-16; Ex. 1, Cordray Dep. 113:5-21. In other words, Mr. Cordray would have learned of *different* practices relating to a *different* WWR unit when he was Ohio Attorney General. There is no evidence that Mr. Cordray came to the Bureau with any knowledge from his time as the Ohio Attorney General of either the language WWR used in the form demand letters sent to consumers by WWR's agency collection unit at issue in this action or the lack of meaningful attorney involvement in that unit.[11]

**3. The Bureau's claims are timely even without the Tolling Agreement, but, in any event, that agreement is enforceable.**

Because WWR fails to show that the Bureau "discovered" WWR's violations more than three years before filing suit or are otherwise time-barred, the Bureau's claims are timely and there is no need to look to the parties' Tolling Agreement. However, to the extent the Court needs to reach the Tolling Agreement, WWR's arguments for invalidating the arms-length

[10] Those Ohio Attorney General demand letters were on Ohio Attorney General letterhead (not WWR's letterhead), prominently featured Mr. Cordray's name and position, were signed by Mr. Weinberg (as opposed to the law firm), and included completely different language than the language in the letters at issue in this action. *See* Mot. 15; Ex. 1, Cordray Dep. Exs. I, J.

[11] WWR cites its 2009 submission in response to the Ohio Attorney General's Office Request for Qualifications for Special Counsel characterizing WWR's business as "high volume" as support for its assertion that Mr. Cordray therefore knew that non-attorneys were involved in the WWR's collections process. Mot. 6 (citing Cordray Dep. Ex. C at §§ II.3, 8(a)-(b)). Putting aside the fact that the record fails to support such an inference, the fact that non-attorneys may be involved in WWR's collections process has no relevance to the question whether attorneys review individual accounts and form a professional judgment about individual debts before WWR sends demand letters to consumers. In any event, WWR's 2009 submission does not discuss the nature of any review performed by attorneys in the WWR unit at issue in this case.

agreement signed by its own Compliance Officer fail for two reasons. *See* Mot., Ex. A, Attach. 6. First, the Tolling Agreement is supported by valid consideration, even if there is no express recitation of that consideration in the body of the agreement. Second, even if there were no consideration—and there was—WWR is estopped from arguing that the statute of limitations was running during the period the Tolling Agreement covered.

WWR's primary argument is that the Tolling Agreement does not expressly reference the exchange of any consideration. *See* Mot. 10. However, explicit contractual language spelling out consideration is not required for consideration to exist.[12] *See Source Assocs., Inc. v. Valero Energy Corp*., 273 F. App'x 425, 427 (6th Cir. 2008) (holding that consideration "need not be expressed and may be inferred from the terms and obvious import of the contract.") (citations and internal quotations omitted); *Union Oil Co. of California v. Terrible Herbst, Inc.*, 331 F.3d 735, 741 (9th Cir. 2003) (overturning District Court's invalidation of a tolling agreement for lack of consideration because one party's "implied promise" can be consideration "as readily as an explicit promise") (citations omitted). In *Union Oil*, the parties' tolling agreement did not mention consideration, nor did it contain an explicit promise to forbear litigation. *Id.* at 741-42. But the Ninth Circuit held that consideration existed because one party agreed to waive a statute of limitations defense in return for the other party's implied forbearance of a claim. *Id.* Ohio courts likewise consistently hold that a "promise to forbear pursuit of a legal claim can be

[12] Indeed, consideration may not be necessary for a valid tolling agreement. The Sixth Circuit has noted that statutes of limitation "may be waived without consideration, by express contract or by necessary implication." *Collins v. Woodworth*, 109 F.2d 628, 629-30 (6th Cir. 1940) (citations omitted).

sufficient consideration to support a contract."[13] *Mathis v. St. Alexis Hosp. Assoc.*, 99 Ohio App.3d 159, 164 (1994) (citations omitted).

These principles make clear that the Tolling Agreement is enforceable. Here, WWR expressly agreed that the period covered by the Agreement would not count towards the running of any applicable unexpired statutes of limitation. Mot., Ex. A, Attach. 6, ¶ 1. The context in which the parties negotiated that Tolling Agreement makes clear this agreement was in exchange for the Bureau's prolonging the time available to negotiate settlement and delaying litigation—the Bureau sent a proposed tolling agreement to WWR's outside counsel at the onset of pre-complaint settlement negotiations. Preis Decl. ¶¶ 2, 7; Ex. 9. After incorporating suggested edits from WWR's outside counsel, the parties entered into the Tolling Agreement in December 2016, and the Bureau filed suit in April 2017 after unsuccessful settlement negotiations. Preis Decl. ¶¶ 2-4, 5, 6, 8; Ex. 9. WWR undoubtedly obtained some benefit through entering this Agreement, which enabled WWR to forestall litigation and explore the possibility of settlement for several months. *See United States v. Halliburton Energy Servs., Inc.*, No. CIV. A. H-07-3795, 2009 WL 3260540, at *13 (S.D. Tex. Oct. 9, 2009) (noting that "consideration for the tolling agreement existed in the opportunity to forestall litigation and facilitate settlement negotiations.").[14]

---

[13] This analysis does not change if the Court were to apply District of Columbia law. "[T]he forbearance of a cause of action advanced in good faith, which is neither absurd in fact nor obviously unfounded in law, constitutes good and valuable consideration." *Bullard v. Curry–Cloonan*, 367 A.2d 127, 131 (D.C. 1976) (citations omitted); *accord 4934, Inc. v. D.C. Dep't of Employment Servs.*, 605 A.2d 50, 54 (D.C. 1992).

[14] Neither of the two cases WWR cites alter this result. *See* Mot. 9, 10. In *United States v. Bertie Ambulance Serv., Inc.*, No. 2:14-CV-00053-F, 2015 WL 5916691, at * 6 (E.D.N.C. Oct. 8, 2015), the court held that the government's breach of the contract entitled the defendant to rescission; it did not opine on the validity of the consideration. And in *Buletko v. FleetCor Techs., Inc.*, No. 5:07CV2017, 2008 WL 11377782, at *5 (N.D. Ohio May 20, 2008), the court did not call into question the consideration at issue here.

Alternatively, if the Court holds that there was not adequate consideration, then WWR should be held to its agreement under the principle of promissory estoppel. *Lucas Ford, LLC v. Ford Motor Credit Co.*, No. 3:09CV451, 2011 WL 1831739, at *6 (N.D. Ohio May 12, 2011) ("[P]romissory estoppel can serve as a substitute for consideration in contract formation."). Under Ohio law, promissory estoppel requires: "(1) a clear and unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance was injured as a result of the reliance on the promise." *Doe v. Case W. Reserve Univ*., No. 1:17 CV 414, 2017 WL 3840418, at *13 (N.D. Ohio Sept. 1, 2017) (citations omitted); *see also* Restatement (Second) of Contracts § 90(1) (1981) (promise reasonably inducing action or forbearance "is binding if injustice can be avoided only by enforcement of the promise"). WWR clearly and unambiguously agreed to toll the statute of limitations and promised that it would not argue that the statute of limitations was running from November 15, 2016, through May 15, 2017. Mot., Ex. A, Attach. 6, ¶ 1. The Bureau relied on the Tolling Agreement, spending several months on an effort to reach a settlement and delaying the filing of this lawsuit. *See* Preis Decl. ¶¶ 7-8. WWR cannot credibly argue that the Bureau's reliance on its promise was not reasonable and foreseeable—WWR surely understood that parties entering tolling agreements will rely on those agreements if litigation ensues. Permitting WWR to back out of its agreement now would be detrimental to the Bureau because it would increase the risk that some claims could be deemed time-barred. Having enjoyed the benefit of the Tolling Agreement to the Bureau's detriment, WWR should not be permitted to renege on its promise.

### B. *Sheriff v. Gillie* Does Not Foreclose the Bureau's Claims.

According to WWR, *Sheriff v. Gillie* was a sea change in enforcement of the FDCPA's prohibitions on deceptive debt collection tactics, implicitly reversing ample case law holding law firms liable for misrepresenting the level of attorney involvement in collections communications. One of the primary flaws in this argument is that *Sheriff* did not involve claims under §§ 1692e(3) or 1692e(10)—the provisions on which the Bureau bases its claims—or otherwise consider whether demand letters from a law firm are false or misleading when there was no meaningful attorney involvement. *See Sheriff v. Gillie,* 136 S. Ct. 1594 (2016). And WWR neglects to mention that courts post-*Sheriff*, including this one, have permitted claims to go forward under the FDCPA where plaintiffs have alleged that a law firm misrepresented the level of attorney involvement. *See, e.g., Weltman,* 2017 WL 4348916, at *3-7; *Thompke v. Fabrizio & Brook, P.C.*, 261 F. Supp. 3d 798, 808-09 (E.D. Mich. 2017).[15]

The *Sheriff* Court expressly limited its analysis to "special counsel" acting on behalf of a state attorney general, explaining that "considerations relevant to that category may not carry over to other debt-collector relationships." 136 S. Ct. at 1601 n.5. The Court held that the use of the Attorney General's letterhead in demand letters sent by special counsel accurately conveyed the relationship between those two entities and was therefore not "false . . . or misleading" in violation of § 1692e. *Id*. at 1600-01. Specifically, the Court held those demand letters did not misrepresent that the letters were "authorized, issued, or approved by a State" or use a name other than special counsel's "true name" in violation of § 1692e(9) or e(14), respectively. *Id*. at 1601-02 (internal quotations and citations omitted).

---

[15] WWR fails to identify a single case holding that *Sheriff* forecloses the Bureau's FDCPA claims. The lone case upon which WWR relies, *Moorer v. U.S. Bank, N.A.*, involved claims by a *pro se* plaintiff who did not explicitly allege a § 1692e(3) violation. No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan. 29, 2018). The court did not address whether attorneys were meaningfully involved in sending the subject demand letters. *Id*.

In contrast to the questions before the Court in *Sheriff*, the Bureau does not allege that WWR misrepresented its relationships with its clients. Rather, the crux of the Bureau's claims is that WWR's letters imply they are from an attorney when no attorney is meaningfully involved in the consumer's account. *See Weltman*, 2017 WL 4348916, at *5; *see also Kistner,*518 F.3d at 440 (explaining that if the letter gave the impression it was from an attorney, that impression was false based on attorney's actual involvement). *Sheriff* does not alter this analysis.

Recycling an argument from its failed motion for judgment on the pleadings, WWR asserts that *Sheriff* means it is not required to "obscure [the] reality" that the letters are "from" a law firm. Mot. 18 (citing *Sheriff*, 136 S. Ct. at 1603); *compare* Mot. 18-19, *with* ECF No. 7, Mot. for J. on the Pleadings at 14-15. This argument does not entitle it to summary judgment for at least two reasons. First, while it is true that the *Sheriff* Court held that the debt collector in that case did not have to "obscure" the "reality" that the debt was owed to the State and the Attorney General is the State's debt collector, *Sheriff*, 136 S. Ct. at 1603, the Bureau's claims do not conflict with this holding. WWR's letters imply an attorney has reviewed the consumer's file and determined that the collection action was warranted. *See, e.g. Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1003 (3d Cir. 2011). The relevant "reality" obscured by WWR's letters is that WWR's internal debt collection agency has handled the consumer's account, that no attorney is involved in collecting that account, and that frequently no attorney will ever be involved in collecting that account since WWR files collection litigation in only seven states.

Second, this is another attempt to argue that letters signed by law firms[16] are different from letters signed by individual attorneys. The case law does not support WWR on this point,

[16] A "law firm" is literally a "group of lawyers who work together as a business." Merriam-Webster, https://www.merriam-webster.com/dictionary/law%20firm (last visited Mar. 19, 2018).

which recognizes that this is a distinction without a difference. *See Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173, 1178 n.6 (D. Minn. 2011). None of the cases cited by WWR helps its argument. *Bytwerk v. Mary Jane Elliott, P.C.*, No. 1:12-CV-876, 2013 WL 150461, at *2 (W.D. Mich. Jan. 14, 2013), did not involve misrepresentations about meaningful attorney involvement in violation of § 1692e(3) and (10), but rather an allegation that the letter caused confusion by simultaneously identifying the defendant as a debt collector and a law firm. *Bytwerk* is also factually distinguishable, as there the defendant provided evidence that an attorney personally reviewed every debt. *Id.* at *4. In *Goldberg v. Winston & Morrone, P.C.,* No. 95 CIV. 9282 (LAK), 1997 WL 139526, at *5 (S.D.N.Y. Mar. 26, 1997), the court simply held there was a triable issue of fact regarding the law firm's review; it does not support granting summary judgment to WWR. And *Daniels v. Solomon & Solomon, P.C.*, is inapposite, as there the demand letter did not identify the collector as a law firm or make references to attorneys, in contrast to the letters at issue here. No. 17-0757, 2017 WL 3675400, at *4 (E.D. Pa. Aug. 25, 2017) (explaining that letter was not signed by an attorney and did not discuss attorney or law firm review), *appeal pending*; *see also Kistner*, 518 F.3d at 439 (distinguishing case involving letters on "P & C" letterhead that did not state "Attorney at Law" or provide other indication it was from an attorney or law firm).

Finally, WWR's attempt to justify its practices based on other provisions of the FDCPA and the Ohio Rules of Professional Conduct is also unavailing. Mot. 16. While § 1692e(14) of the FDCPA requires WWR to use its "true name" in collection efforts, that section does not require WWR to state "ATTORNEYS AT LAW" at the top of its letters and to warn consumers that the communication is from a law firm. 15 U.S.C. § 1692e(14). None of the Rules of Professional Conduct WWR cites prevent it from truthfully making clear to consumers that,

although WWR is a law firm, no attorney has reviewed their account. And neither the FDCPA nor the Rules of Professional Conduct prohibits WWR attorneys from reviewing consumers' accounts before WWR sends firm-signed form demand letters.

### C. The Bureau May Seek Disgorgement.[17]

The sole basis for WWR's argument that the Bureau cannot seek disgorgement is that the Bureau's Rule 30(b)(6) witness could not, at the time of his deposition and based on partial financial records, determine whether all of the revenue listed in WWR's financial statements was ill-gotten. Mot. 20. WWR misunderstands the Bureau's burden of proof with respect to disgorgement.

In enforcement actions where the government seeks disgorgement, courts apply a two-step burden-shifting framework for calculating the amount of disgorgement relief.[18] *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 67 (2d Cir. 2006). First, the Bureau must show that the disgorgement calculation "reasonably approximated" WWR's unjust gains. *Id.* (citations omitted).[19] The burden then shifts to WWR to show that the figure is inaccurate. *Id.* (citations

---

[17] Though WWR also moved for summary judgment arguing that the Bureau cannot obtain restitution, that argument is moot. The Bureau confirmed in discovery that it is not seeking restitution.

[18] Courts have recognized that FTC Act case law is instructive when interpreting and applying the CFPA. *See, e.g*, *Consumer Fin. Prot. Bureau v. Gordon,* 819 F.3d 1179, 1195 (9th Cir. 2016) (applying two-step burden-shifting framework for calculating restitution awards under the FTC Act), *cert. denied*, 137 S. Ct. 2291 (2017).

[19] *See also SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 215 (E.D. Mich. 1991) (explaining government must "prove *only* an amount of disgorgement reasonably approximate of the benefits or profits causally connected to the violation.") (emphasis in original) (citations omitted), *aff'd*, 12 F.3d 214 (6th Cir.1993); *see also SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989) (holding that "property *causally related* to the wrongdoing" at issue is subject to disgorgement) (emphasis added); *SEC v. Save The World Air Inc.*, No. 01 Civ. 11586(GBD)FM, 2005 WL 3077514, at *17 (S.D.N.Y. Nov. 15, 2005) (requiring only a "reasonable approximation of the profits amassed through the fraudulent conduct") (citations omitted).

omitted)*; see also SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) (citations omitted); *accord SEC v. Secure Capital Funding*, Civ. No. 11–916, 2014 WL 1716226, at *1-2 (D.N.J. Apr. 29, 2014). Courts have recognized that precisely measuring disgorgement can be a near-impossible task, particularly when illegal profits are commingled with legal profits, and resolve doubts concerning the determination against the defendant. *SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 (E.D. Mich. 1991) (citations omitted); *FTC v. Bronson Partners, LLC,* 654 F.3d 359, 369 (2d Cir. 2011). It is undisputed that over the applicable period, a unit within WWR's Consumer Collection Business Unit (alternately known as the "Pre-legal" or "Agency" unit) generated revenue from WWR's demand letter and collection call services. Ex. 4, Bitterman Dep. 33:13-18; 34:2-6. Here, the Bureau's Rule 30(b)(6) witness testified that the Bureau is seeking disgorgement of revenues earned in connection with amounts collected by that unit. Ex. 3, Heidari Dep. 31:17-22. If WWR disagrees that this is a reasonable approximation of its ill-gotten gains, it is free to offer evidence at trial regarding what amount, if any, was not ill-gotten and should therefore be excluded from the disgorgement calculation. But it is not entitled to summary judgment on the issue of disgorgement.[20]

**CONCLUSION**

For the reasons stated above, WWR's Motion for Summary Judgment should be denied.

[20] The Bureau did not seek disgorgement in the lone case WWR cites in support of its disgorgement argument. *See* Mot. 19-20 (relying on *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. CV1507522JFWRAOX, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018)).

Dated: March 23, 2018

Respectfully submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau

KRISTEN A. DONOGHUE
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

/s/ Sarah Preis

Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov
Zol D. Rainey
Phone: (202) 435-9483
Facsimile: (202) 435-9346
Email: zol.rainey@cfpb.gov
Rebeccah G. Watson
Phone: (202) 435-7895
Facsimile: (202) 435-9346
Email: rebeccah.watson@cfpb.gov
Jehan A. Patterson
Phone: (202) 435-7264
Facsimile: (202) 435-9346
Email: jehan.patterson@cfpb.gov

*Enforcement Counsel*

**Certificate of Compliance**

I hereby certify that this case has been assigned to the standard track. Pursuant to LR 7.1(f), this Memorandum in Opposition to Defendant's Motion for Summary Judgment adheres to the 20-page limitation set for memoranda relating to dispositive motions in standard track cases.

/s/ Sarah Preis

Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov

**Certificate of Service**

I hereby certify that on March 23, 2018, a copy of the foregoing Memorandum in Opposition to Defendant's Motion for Summary Judgment and supporting papers was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Sarah Preis

Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov