**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WELTMAN, WEINBERG & REIS CO., L.P.A.,**<br><br>**Defendant.** | **Civil Action No. 1:17-cv-00817-dcn**<br><br>**Judge Donald C. Nugent**<br><br>**Magistrate Judge William H. Baughman, Jr.** |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

STATEMENT OF ISSUES TO BE DECIDED .......... iv

I. SUMMARY OF THE ARGUMENT .......... 1

II. THE CFPB'S STATEMENT OF MOSTLY UNDISPUTED FACTS IS INCOMPLETE .......... 1

A. WELTMAN ENGAGES IN THOROUGH EVALUATION OF THE DEBTS IT IS RETAINED TO COLLECT .......... 1

III. THE SUMMARY JUDGMENT STANDARD .......... 6

IV. ARGUMENT .......... 6

A. BACKGROUND ON THE FDCPA AND CFPA .......... 7

B. THE CFPB HAS NOT ESTABLISHED THAT WELTMAN VIOLATED THE FDCPA OR THE CFPA .......... 8

1. Weltman's Letters Do Not Imply Individual Attorney Involvement Under *Sheriff v. Gillie* .......... 9

2. Weltman's Lawyers Are Sufficiently Involved .......... 12

3. The CFPB's Putative Expert Declaration Does Not Trump The Supreme Court's Holding in *Gillie* .......... 14

V. CONCLUSION .......... 17



NAI-1503555542v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993)....15

*Consumer Fin. Protection Bureau v. Frederick J. Hanna & Assocs., P.C.*,
114 F. Supp. 3d 1342 (N.D. Ga. 2015)....8

*Daniels v. Solomon & Solomon, P.C.*,
No. 17-0757, 2017 WL 3675400 (E.D. Pa. Aug. 25, 2017)....11

*Hagy v. Demers & Adams*,
882 F.3d 616 (6th Cir. 2018)....12

*E.E.O.C. v. Dial Corp.*,
No. 99 C 3356, 2002 WL 31061088 (N.D. Ill. Sept. 17, 2002)....16

*Fed. Home Loan Mortgage Corp. v. Lamar*,
503 F.3d 504 (6th Cir. 2007)....7, 8

*Fed. Trade Comm. v. E.M.A. Nationwide, Inc.*,
767 F.3d 611 (6th Cir. 2014)....8

*Gillie v. Law Office of Eric A. Jones, LLC*,
785 F.3d 1091 (6th Cir. 2015)....9, 10

*Jacobson v. Healthcare Fin. Servs., Inc.*,
434 F. Supp. 2d 133 (E.D.N.Y. 2006),
*aff'd in part, vacated in part* 516 F.3d 85 (2d Cir. 2008)....7

*Michael v. Javitch, Block & Rathbone, LLP*
825 F. Supp. 2d 913 (N.D. Ohio 2011)....15

*Miller v. Javitch, Block & Rathbone, LLP*,
561 F.3d 588 (6th Cir. 2009)....15

*Miller v. Upton, Cohen & Slamowitz*,
687 F. Supp. 2d 86 (E.D.N.Y. 2009)....13

*Miller v. Wolpoff & Abramson, LLP*,
321 F.3d 292 (2d Cir. 2003)....................12

*Moorer v. U.S. Bank NA*,
No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan 29, 2018) ....................11

*Sheriff v. Gillie*,
--- U.S. ---, 136 S. Ct. 1594 (2016).................... *passim*

*Smith v. Computer Credit, Inc.*,
167 F.3d 1052 (6th Cir. 1999) ....................15

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014)....................6

**RULES**

Fed. R. Civ. P. 56(a) ....................6

Fed. R. Evid. 702 ....................15

**STATUTES**

12 U.S.C. § 5336....................8

12 U.S.C. § 5536(a)(1)(B) ....................8

15 U.S.C. § 1692(e) ....................7

15 U.S.C. § 1692e(3) ....................9, 12

15 U.S.C. § 1692e(11) ....................5

15 U.S.C. § 1692g(a)(1)....................5

15 U.S.C. § 1692g(a)(2)....................5

15 U.S.C. § 1692g(a)(3)-(5)....................5

## STATEMENT OF ISSUES TO BE DECIDED

1. Could an unsophisticated consumer reasonably be misled into thinking that a lawyer reviewed her account when a collection letter sent to her does not make any reference to an individual attorney or otherwise state that a lawyer reviewed the account after the Supreme Court's decision in *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)?

2. Should partial summary judgment on Counts I, II, and III be granted when the CFPB has failed to point to any specific instance in which Weltman lawyers did not exercise professional judgment before Weltman sent a collection letter to a consumer?

## I. SUMMARY OF THE ARGUMENT

The Consumer Financial Protection Bureau's ("CFPB") motion asks this Court to rule that Weltman, Weinberg & Reis Co., LPA ("Weltman") violates the law every time it sends a letter to a consumer on its firm letterhead. There is no law for this proposition. And no court has gone so far. To the contrary, even the cases the CFPB cites in support of its motion repeatedly caution that whether a particular letter is misleading depends on the facts specific to that letter. The only cases that dispense with the facts are cases that conclude that a letter is not misleading as a matter of law. At the top of that list is *Sheriff v. Gillie*, the Supreme Court's recent decision that rejected as a matter of law the notion that truthful letterhead was misleading.

The CFPB's motion for partial summary judgment should be denied.

## II. THE CFPB'S STATEMENT OF MOSTLY UNDISPUTED FACTS IS INCOMPLETE

Though most of the facts the CFPB recites are undisputed, the picture the CFPB attempts to paint is incomplete. Viewed in their entirety, the facts are fatal to the CFPB's argument.[1]

As an initial matter, the record contradicts certain of the "facts" on which the CFPB relies. The CFPB's characterization of Weltman's interaction with its clients as nothing more than "high-level conversations" that do not include general review and discussion of individual accounts is simply untrue, if not self-contradictory. (*Compare* ECF 44-1 (Memorandum in Support of Motion for Partial Summary Judgment) ("CFPB Mot.") ¶ 8 (no review of individual accounts) *with* ¶ 10 (review of individual accounts).)

### A. WELTMAN ENGAGES IN THOROUGH EVALUATION OF THE DEBTS IT IS RETAINED TO COLLECT

As the record makes plain, Weltman's client onboarding process is robust. In the agency

[1] A more complete recitation of the factual background is set forth in Weltman's Motion for Summary Judgment. Weltman confines its discussion of facts in this brief to those that are necessary to correct or complete the "facts" relied upon by the CFPB, but incorporates by reference those facts set forth in ECF No. 45.

collection context, Weltman begins its file evaluation and handling process with a series of conversations with the client. (Deposition of Eileen Bitterman ("Bitterman Dep.")[2] at 48:2-50:11, 60:21-61:6; Deposition of David Head ("Head Dep.")[3] at 138:22-140:22; Deposition of Charles Pona ("Pona Dep.")[4] at 60:1-61:2.) The conversations are held between Weltman's lawyers, who are experts in debt collection, and clients seeking debt collection services. Weltman's lawyers use their professional judgment to determine what information they want from their clients and what documents they want to review and have available based on the context. (Bitterman Dep. at 68:24-74:24, 77:10-80:9, 102:13-103:10.) These professional judgments are made to assess whether the debts at issue are valid and owed to the client, to allow Weltman to recommend collection and legal strategy to its client, and to confirm the client is providing sufficient information to Weltman. (Bitterman Dep. at 48:2-50:11, 68:24-74:24, 77:10-80:9, 102:13-103:10.) There is no "one-size-fits-all" checklist or process because the process is an interactive and ongoing one, driven by the client's needs and Weltman's legal evaluation. (Bitterman Dep. at 60:21-61:6, 68:19-23, 72:21-73:4, 74:5-24, 79:19-80:9; Deposition of David Tommer ("Tommer Dep.")[5] at 63:5-64:14.)

For example, a client might retain Weltman for services relating to a portfolio of unpaid credit card debt. Because these portfolios are typically originated through the same financial institution, they are subject to consistent terms and conditions that apply to accounts in the portfolio. (Declaration of Eileen Bitterman ("Bitterman Decl.") (Exhibit 5 hereto) at ¶ 7; *see also* Bitterman Dep. at 26:24-27:13, 74:5-24; Pona Dep. at 70:18-71:11; Tommer Dep. at 57:17-59:4, 66:12-67:2; Head Dep. at 58:10-60:6, 65:2-68:1, 84:7-20, 149:20-151:21.) The accounts

---

[2] Excerpts and exhibits from the deposition of Eileen Bitterman are attached as Exhibit 1.

[3] Excerpts from the deposition of David Head are attached as Exhibit 2.

[4] Excerpts from the deposition of Charles Pona are attached as Exhibit 3.

[5] Excerpts from the deposition of David Tommer are attached as Exhibit 4.

were opened using a similar application format. (Bitterman Decl. at ¶ 7.) The statements provided by the creditor are in similar formats. (*Id.*) The relevant variable for each account is the history of charges and payments. (*Id.*; *see also* Bitterman Dep. at 26:24-27:13, 74:5-24; Pona Dep. at 70:18-71:11; Tommer Dep. at 57:17-59:4, 66:12-67:2; Head Dep. at 58:10-60:6, 65:2-68:1, 84:7-20, 149:20-151:21.) Once Weltman's lawyers have reviewed the portfolio documents and discussed them with the client, they or staff supervised by lawyers look at a subset of individual accounts to confirm their understanding of the nature of the debts and verify specific information provided by the client. (Bitterman Dep. at 77:10-80:9, 82:11-14, 102:13-104:4.) This review might generate follow-up analysis; conversations with the client may occur. (Bitterman Dep. at 60:21-61:6, 78:15-80:9; Tommer Dep. at 101:11-102:17, 103:14-105:13.) Weltman's lawyers can and do exercise their professional judgment to not undertake collection activities on particular accounts or groups of accounts after discussion and analysis. (Bitterman Dep. at 82:11-84:1, 89:4-91:21, 102:13-104:4, 112:16-115:7; Tommer Dep. 51:1-52:16, 57:11-59:4, 63:4-64:14, 117:22-118:17.)[6]

Though the last paragraph is just an example, the collaborative process between Weltman's lawyers and clients takes place for every portfolio that is placed with Weltman. (Bitterman Dep. at 77:10-78:19, 81:9-18, 82:11-14, 99:5-102:19; Pona Dep. at 77:2-23, 151:8-24.) As discussed, what that process entails and what is reviewed depends on the specific portfolio circumstances, as Weltman's lawyers exercise their professional judgments. The CFPB does not identify any particular account or type of account or particular client on which it bases its claims. Nor does it identify a single instance of harm or potential harm to a debtor or even a

[6] The CFPB asserts that Weltman "frequently closes [a collection account] or ceases collection activity pending further instruction from the client" if Weltman determines that the putative debtor is "in bankruptcy, deceased, or active military." (CFPB Mot. at 5-6.) It cites testimony for that proposition, curiously omitting the question and the beginning of the answer on which it relies. On that omitted page (Exhibit 6 hereto) is testimony that explains that it is lawyers who may exercise judgment to determine what the protocol will be if a putative debtor has certain characteristics and lawyers who may exercise that judgment on a case-by-case basis.

class of debtors. So Weltman cannot here focus on any particular circumstance. As a general matter, Weltman's lawyers routinely review and base their professional judgments on the following information, data points, and documents available from the client before debt collection activities begin, though they have discretion to review more or less, based on the circumstances: loan agreements, promissory notes, applications, terms and conditions, payment history, monthly statements, and judgments. (Bitterman Decl. at ¶¶ 5-6; Bitterman Dep. at 26:24-27:13, 74:5-24; Pona Dep. at 70:18-71:11; Tommer Dep. at 57:17-59:4, 66:12-67:2; Head Dep. at 58:10-60:6, 65:2-68:1, 84:7-20, 149:20-151:21.) Weltman also asks that its clients provide upon request any specific documentation identified by Weltman that supports the matter the Firm is servicing, which will likewise vary based on the nature of the services provided. (*Id.*)

To be clear, a Weltman lawyer does not, and indeed need not, review every document associated with every specific account in order to understand potential legal issues within a given portfolio. (*See* CFPB Mot. Ex. 13 at 7.) Weltman's lawyers instead rely on the interactive and ongoing process described above to make professional judgments about groups of accounts that share certain characteristics that are central to the potential legal issues relevant to the portfolio in question.

It is only after this process is completed to the satisfaction of Weltman that an initial demand letter is sent to a putative debtor to advise that (1) the debt has been placed with Weltman for collection and (2) that the consumer has specific rights under the FDCPA. (Bitterman Dep. at 130:9-132:3, 137:11-18, Ex. 11.) This demand letter is sent on Weltman letterhead to accurately convey the facts that Weltman is a law firm that has been retained to collect the putative debt as a debt collector; no more, no less. The letter does not state that an attorney has reviewed the particular circumstances of the account, it does not mention any

potential legal action, and it is not even signed by an attorney.

The template reads,[7] in its entirety:

> Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above. As of the date of this letter you owe the amount listed above. Therefore, it is important that you contact us at [phone number] to discuss an appropriate resolution for this matter.
>
> This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose. Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume the debt is valid. If you notify us in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to you. If you request in writing within the thirty (30) day period, we will provide you with the name and address of the original creditor if different from the current creditor.
>
> Thank you for your attention to this matter.
>
> Sincerely,
>
> Weltman, Weinberg & Reis Co., L.P.A.

(Bitterman Dep. 137:11-18, Ex. 11.) Most of the content of the letter is required by and comes from the FDCPA. The first two sentences provide the information required by 15 U.S.C. § 1692g(a)(1) and (2). The disclosure in the next paragraph that the communication is from a debt collector is nearly identical to the language of 15 U.S.C. § 1692e(11), and the rest of the paragraph contains the exact language required by § 1692g(a)(3)-(5). The only two sentences that are not required disclosures ask the consumer to contact Weltman and thank the consumer. The letter is clear and to the point by design to comply with applicable law and Weltman's

[7] An earlier version of this template, in effect no later than November 2013, read: "This law firm is a debt collector attempting to collect this debt for our client and any information will be used for that purpose." (Bitterman Dep. 146:8-21.)

internal policies and procedures.[8]

Subsequent communications, including letters, vary based on response from the consumer, the client's needs, and Weltman's judgment about appropriate action. (Tommer Dep. at 22:2-6, 25:21-26:22, 123:24-124:2; Bitterman Dep. at 21:20-22:3, 147:8-148:2, 159:15-160:7.) Weltman lawyers oversee, as part of their Compliance Management System, trained non-lawyer staff, who are engaged in ongoing communications with debtors and consult with the non-lawyer staff on individual accounts throughout the collection process. (CFPB Mot. Ex. 14 at 220:23-221:25;[9] Bitterman Dep. at 32:15-20, 170:25-173:4, 184:13-185:17; Tommer Dep. at 44:4-21, 81:13-20, 126:9-15; Pona Dep. at 30:1-7; Head Dep. at 50:4-12.) Subsequent written communications are reviewed and approved by Weltman lawyers. (Bitterman Dep. at 130:5-133:4, 159:15-160:20.)

## III. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks omitted). In making that determination, all evidence must be "viewed in the light most favorable" to the opposing party. *Id.* at 1865.

## IV. ARGUMENT

The CFPB cannot show on any set of facts that it is entitled to judgment as a matter of

---

[8] Though Weltman's letter, in accordance with § 1692g, notifies consumers that they have 30 days to dispute a debt in writing, it is Weltman's practice to accept and respond to verification requests, whether made orally or in writing, at any time during the collection process. Bitterman Decl. at ¶ 8.

[9] The CFPB cites this testimony for the "fact" that Weltman does not assign lawyers to collect a Debt unless a lawsuit has been filed. But, as shown above, Weltman's lawyers are involved in the debt collection process long before a lawsuit is ever filed. Further, as even the testimony cited by the CFPB explains, lawyers are assigned to the collections floor where they interact directly and routinely with non-lawyer staff who are communicating with debtors. (CFPB Mot. Ex. 14, 221:14-25.)

law. Its motion for partial summary judgment should be denied.

**A. BACKGROUND ON THE FDCPA AND CFPA**

Congress enacted the Fair Debt Collection Practices Act ("FDCPA) in response to reports of abusive practices by third-party collectors of consumer debts. *Sheriff v. Gillie*, --- U.S. ---, 136 S. Ct. 1594, 1598 (2016). In so doing, Congress aimed not only "to eliminate abusive debt collection practices" and "protect consumers," but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). The FDCPA was not enacted to excuse consumers who amass unpaid debt. "In other words, § 1692e bars debt collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts." *Gillie*, 136 S. Ct. at 1603.

Unfortunately, some plaintiffs and regulators refuse to acknowledge what the FDCPA acknowledges: when consumers owe debt, legitimate debt collectors can and should be able to undertake reasonable and legally appropriate steps to recover that debt. As a result, a "cottage industry" of "professional plaintiffs" has emerged, challenging actions that are wholly divorced from the "widespread and serious national problem of abuse that the Senate observed in adopting" the FDCPA. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) (internal quotation marks and citation omitted). "The statute need not be applied in this manner." *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006) (*cited approvingly by Lamar*, 503 F.3d at 510-11), *aff'd in part, vacated in part*, 516 F. 3d 85 (2d Cir. 2008). Instead, a proper understanding of the FDCPA should point courts "towards a common sense appraisal" of the communication at issue. *Id.* To guarantee the balance between consumer protection and legitimate debt collection, then, courts must "give life to the admonition that the standards are intended to protect collectors against bizarre or idiosyncratic interpretations

of collection notices" and apply the statute "with some circumspection." *Lamar*, 503 F.3d at 510-11 (*quoting Jacobson*, 434 F. Supp. 2d at 139).

Passed as part of the Dodd-Frank Act, the Consumer Financial Protection Act ("CFPA") prohibits "any unfair, deceptive, or abusive practice" regarding consumer products or services. 12 U.S.C. § 5336. According to the Bureau's own interpretation, the standard under § 5536(a)(1)(B) of the CFPA "is the same as the standard under § 5(a) of Federal Trade Commission Act . . . , which prohibits unfair or deceptive acts or practices in or affecting commerce." *C.F.P.B. v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1369–70 (N.D. Ga. 2015) (internal citation omitted). When determining whether a representation is likely to mislead a consumer under the FTC Act (and, correspondingly, the CFPA), courts apply a "reasonable consumer" standard. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 631 (6th Cir. 2014). While the standard is the "reasonable consumer" under the CFPA rather than the "least sophisticated consumer" used in the FDCPA, the analysis—and the dangers—are otherwise the same. Because the CFPB concedes that its CFPA claims are based on nothing more than the conduct it alleges violates the FDCPA (CFPB Mot. at 10), this brief addresses the claims together under FDCPA standards.

## B. THE CFPB HAS NOT ESTABLISHED THAT WELTMAN VIOLATED THE FDCPA OR THE CFPA.

The CFPB's sole argument is that Weltman's letters are misleading because Weltman sends those letters on firm letterhead, which accurately identifies Weltman as a law firm. That argument is made in connection with Counts I, II, and III of the Complaint, all of which allege that Weltman's letters are misleading and create liability under the FDCPA and CFPA. The truthful identification of Weltman as a law firm is misleading, according to the CFPB, because it implies that an individual attorney had some involvement in sending the letter. This, the CFPB

claims, violates the FDCPA's prohibition against the false "implication . . . that any communication is from an attorney." 15 U.S.C. § 1692e(3). This argument is wrong on the law and facts.

### 1. Weltman's Letters Do Not Imply Individual Attorney Involvement Under *Sheriff v. Gillie*

Nothing in Weltman's letters expressly states that a lawyer reviewed the individual debtor's account. There is no lawyer identified in the letter. No lawyer signs the letter. The CFPB relies entirely in its motion on the fact that Weltman sends letters on its letterhead and identifies itself, truthfully, as a law firm. Citing cases decided long before *Gillie*, and ignoring that case altogether, the CFPB argues that the use of law firm letterhead *alone* is enough to create the impression that a lawyer was involved in sending the individual letter. (CFPB Mot. at 12-13.) But *Gillie* changed the landscape.

*Gillie* makes clear that a milquetoast letter on law firm letterhead does nothing more than identify the letter's sender. In *Gillie*, two defendant law firms were retained as special counsel by the Ohio Attorney General to collect debts on behalf of the State. 136 S. Ct. at 1599. At the Attorney General's request, both firms used Ohio Attorney General letterhead to send "milquetoast" letters (letters identical in format to those sent here) requesting that the debtors resolve their debts. *Id.* at 1603. The letters made clear that they were from debt collectors attempting to collect a debt and were signed by the attorneys sending them, identifying the attorneys as special counsel to the Attorney General. *Id.* The debtors sued, claiming special counsel misrepresented that the communications were "authorized, issued, or approved" by a State in violation of 15 U.S.C. § 1692e(9). The Sixth Circuit found that use of Ohio Attorney General letterhead was confusing and misleading to consumers. *Id*. at 1602. (*citing Gillie v. Law Office of Eric A. Jones, LLC* (hereinafter "*Law Office of Eric A. Jones*"), 785 F.3d 1091,

1097-98 (6th Cir. 2015)).

In a unanimous decision authored by Justice Ginsberg, the Supreme Court reversed. The Supreme Court found nothing misleading about letters whose letterhead "accurately describes the relevant legal realities," had a signature block that truthfully represented the relationship between the Attorney General and special counsel, included a "conspicuous notation that the letter is sent by a debt collector," and, as a whole, alerted the debtor to "both the basis for the payment obligation and the official responsible for enforcement of debts." *Id.* at 1600-01.

The Court rejected the plaintiffs' allegations that the use of Ohio Attorney General letterhead intimidated them. "[Section] 1692e bars debt collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts." *Id.* at 1603. Moreover, "'neither of the milquetoast letters [received by debtors] . . . threatens criminal prosecution, civil penalties, or any action whatsoever.'" *Id.* (*quoting Law Offices of Eric A. Jones*, 785 F.3d at 1116-17 (Sutton, J., dissenting)).

While *Gillie* has some factual differences, its premise is dispositive: the "specter of consumer confusion" is insufficient to state a claim under the FDCPA, *Gillie*, 136 S. Ct. at syllabus; and letterhead that "accurately conveys" the identity of the sender is "[n]ot fairly described as 'false or misleading.'" *Id.* at 1598.

As was true of the letters in *Gillie*, a document on Weltman letterhead, "it is no doubt true, gives the impression that it comes from" Weltman. *Law Offices of Eric A. Jones*, 785 F.3d at 1115 (Sutton, J., dissenting) (*cited approvingly by Gillie*, 136 S. Ct. 1594). But those "dunning letters ***do*** come from" Weltman. *Id.* "The FDCPA is not sensibly read to require" Weltman to "obscure that reality." *Gillie*, 136 S. Ct. at 1603. Weltman's letterhead and signature "accurately describe[] the relevant legal realit[y]." *Id.* at 1600. Weltman is a law firm

acting as a debt collector—that is the truthful legal reality.

In addition, there is nothing in Weltman's letters that implies any ***individual attorney*** was involved. Weltman's letters do not indicate that an attorney has reviewed the specific debtor's file, and they affirmatively state, as required by the FDCPA, that the letter is from a debt collector, which is a fact that matters. *See, e.g.*, *Daniels v. Solomon & Solomon, P.C.*, No. 17-0757, 2017 WL 3675400, at *4 (E.D. Pa. Aug. 25, 2017) (recognizing that a letter that is not signed by an attorney, does not reference attorney involvement, does not discuss ongoing law firm review, but does contain a disclaimer that the communication is from a debt collector "does not imply attorney involvement at all, let alone falsely imply it") (appeal pending). Perhaps most importantly, Weltman's letters are not signed by an attorney. Weltman's letters accurately identify who the letter is from—they cannot be characterized as false or misleading. *Moorer v. U.S. Bank NA*, No. 3:17-cv-56, 2018 WL 587319, at *19 (D. Conn. Jan 29, 2018) (following *Gillie* and dismissing claim that use of law firm letterhead was misleading).

Far from being misleading, Weltman's letters do exactly what the FDCPA requires. Weltman's form initial demand letter (the full text of which is set forth above) was designed by Weltman's lawyers to comply with FDCPA § 1692g, which requires "a debt collector to verify that its letters to the consumer accurately convey the information received from the creditor." *Walton v. EOS CCA*, Case No. 17-3040, Order at 4-5 (7th Cir. Mar. 21, 2018) (Exhibit 7 hereto). As the Seventh Circuit wrote just this week: "The verification assures the consumer that the creditor actually made the demand the debt collector said it did and equips the consumer to evaluate the validity of its claim." *Id.* at 5. Weltman's letters serve this purpose and do not mislead. Indeed, Weltman goes above and beyond what is statutorily required by accepting and responding to both verbal and written verification requests at any time during the collection

process, even though the FDCPA itself requires that a consumer must "notif[y] the debt collector in writing within [a] thirty-day period" that the debt is disputed. 15 U.S.C. 1692g(b). In other words, Weltman invites consumers, in the spirit of the law, to avail themselves of the FDCPA's protections at any stage, even if the consumer has not followed the statute to the letter.

Simply put, Weltman's letters are not false or misleading under either *Gillie* or any reasonable interpretation of the FDCPA. And the CFPB has not—and cannot—point to any actual harm to any consumer caused by the practices it claims to violate the law. Indeed, because there has been no harm, a consumer would likely not even have standing to bring this case. *See Hagy v. Demers & Adams*, 882 F.3d 616, 621-23 (6th Cir. 2018) (consumers did not have standing under the FDCPA where they had suffered no real harm and had shown only a bare procedural violation).

**2. Weltman's Lawyers Are Sufficiently Involved**

Even if, post-*Gillie*, Weltman's use of law firm letterhead could be read to imply that a lawyer had some involvement in the letter, the facts demonstrate that Weltman's lawyers are sufficiently involved. Courts have interpreted § 1692e(3) to require "some degree of attorney involvement . . . before a letter will be considered 'from an attorney' within the meaning of the FDCPA." *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 301 (2d Cir. 2003) (Sotomayor, J.). But what constitutes sufficient involvement depends on the circumstances. The standard cannot be reduced to a bright line rule about what an attorney must know or review with respect to engaging in debt collection.

Writing for the Second Circuit, now-Justice Sotomayor explained that circumstances may exist where an "attorney's familiarity with the client's contracts and practices would negate the need to review some if not all of the documents plaintiff seeks to require" the attorney to review to establish that he was sufficiently involved. *Id.* at 304. As one court observed, the holdings of

cases like *Miller* "beg the question: what additional categories of information must an attorney review in order to establish a proper basis upon which to act? Given the variety of law firm policies and procedures, coupled with differences in long-standing client-attorney relationships, the answer to that question necessarily turns on a case-specific analysis." *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009).

The CFPB's motion does not engage in any case-specific analysis. The CFPB does not point to a document, type of document, or data point that it claims Weltman's lawyers do not sufficiently review. Nor does the CFPB point to any specific account, type of account, client, or type of client in which Weltman's lawyers are not sufficiently involved. Nor does the CFPB identify a particular consumer or group of consumers. Rather, the CFPB implies that the Court should disregard the need for specific facts that relate to a specific debt and create the bright line rule that Justice Sotomayor rejected. Notably, the CFPB does not identify where that line should be drawn. To sustain its burden of proof, the CFPB must do more.

Here, the CFPB cannot point to any specific instance in which Weltman lawyers failed to exercise professional judgment. As described above, Weltman lawyers are involved in and oversee every step of the collection process. Weltman lawyers communicate with clients to gather the information that the lawyers feel, in their professional judgment, is necessary to evaluate a portfolio of debt and verify the accuracy of representations that the client makes. Weltman lawyers review the various documents, data points, or exemplars that relate to that portfolio. They investigate the variances and determine, using their legal expertise, whether those variances are legally significant. Weltman lawyers develop collection strategy with clients. Weltman lawyers oversee the use of technology to identify accounts that should be treated differently. While Weltman lawyers do not routinely review the information associated with

every individual account before collection attempts are made, by the time those efforts are made, Weltman lawyers have satisfied themselves that collection activity is appropriate based on information at that stage of the process.

The CFPB's motion misses the point. It sets up a straw man and then takes him down. Weltman's comprehensive Compliance Management System, and its lawyers' involvement, is far more extensive than the skinny record the CFPB presents to the Court. The CFPB cannot establish that it is entitled to judgment as a matter of law on the incomplete record it has presented.

Further, what the CFPB asks of the Court is extraordinary. The CFPB attempts to portray this case as a run-of-the-mill attorney letter case. It is far from that, because what the CFPB is actually seeking is a vast expansion of the law. Even the cases cited by the CFPB and discussed above make plain that whether an attorney has been sufficiently involved in a communication for FDCPA purposes depends on case-specific circumstances; there is no bright-line rule. But the CFPB asks the Court to create one. And, though the CFPB does not explicitly say as much, the rule it seeks is that *every* firm-signed collection letter sent on law firm letterhead in *every* circumstance is misleading unless an attorney has reviewed all the account-level information related to each consumer's file. That is precisely the type of rule Justice Sotomayor rejected and no other court has adopted. The adoption of such a far-reaching rule would be especially inappropriate here, when the CFPB has failed to identify any specific circumstance where a Weltman attorney was not sufficiently involved.

### 3. The CFPB's Putative Expert Declaration Does Not Trump The Supreme Court's Holding in *Gillie*

Finally, the CFPB argues that Weltman's letters are misleading because the putative expert it hired says so. He bases his opinion on a survey he conducted. Setting aside the

admissibility of the putative expert's opinion, which will be the subject of a separate *Daubert* motion, the CFPB cannot undermine the Supreme Court's legal analysis of the FDCPA with a putative expert's contrary opinions.

Courts have decided, as a matter of law, that letters signed by individual lawyers imply to consumers that the lawyer had some level of involvement. This is hardly a controversial statement—it is the crux of the CFPB's argument. (CFPB Mot. at 11-12.) The Supreme Court, in *Gillie*, disagreed, as a matter of law, finding that the Ohio Attorney General's letterhead and the identity of special counsel conveyed nothing more than the identity of the sender and the relationship between the Ohio Attorney General and special counsel.

In determining whether conduct is misleading or false under the FDCPA, the Sixth Circuit has applied the "least sophisticated consumer" standard. Although the standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor," *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999), it does not create a free-for-all. The standard "preserv[es] a quotient of reasonableness", prohibiting "frivolous misinterpretations or nonsensical interpretations of being led astray." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) (citing *Lamar*, 503 F.3d at 514). "The least sophisticated consumer 'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 919 (N.D. Ohio 2011) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)). The standard is hypothetical and, when the facts are not in dispute (or once they are determined by a fact finder), courts routinely determine whether a collection letter is misleading. Indeed, the Supreme Court made that determination in *Gillie*, as did the Sixth Circuit, and the district court judge, all without a survey that purported to

address whether the Ohio Attorney General's letterhead was misleading. The CFPB cites no case in which a court relies on survey data to determine whether a lawyer was sufficiently involved in sending out a letter. This survey data serves no purpose here. *See* Fed. R. Evid. 702 (requiring expert testimony to be relevant and reliable); *E.E.O.C. v. Dial Corp.*, No. 99 C 3356, 2002 WL 31061088, at *10 (N.D. Ill. Sept. 17, 2002) (excluding survey evidence because, among other reasons, the survey was not confined to relevant information, rendering it unreliable and not useful to the trier of fact).

Even if survey data could be useful, the questions that were asked in the CFPB's survey do not support the CFPB's argument and are irrelevant to this case. The CFPB's putative expert asked survey participants who reviewed Weltman's initial demand letter to assume they received it for a debt that was owed and then asked "who, if anyone, do you think reviewed your account before sending this letter?" (CFPB Mot. Ex. 24 at Ex. A, p. 29.) Only 17.6% answered "lawyer or attorney," but the report does not clarify whether that answer referred to a Weltman lawyer or a lawyer affiliated with the creditor. And there is no follow-up question in the report that is designed to identify the lawyer's affiliation. The survey also failed to ask what the participant believed the lawyer had done to "review[] your account before sending this letter." (*Id.*) Participants may have believed that the lawyer "reviewed your account" by doing no more than what Weltman's lawyers actually do. In that case, the putative expert would have to conclude that Weltman's letters did not falsely imply attorney involvement. Even if a survey could properly inform a court's legal analysis under the FDCPA, the one the CFPB's putative expert conducted does not address the relevant legal questions. For this reason, too, the survey serves no purpose.

For purposes of the CFPB's motion, the putative expert's opinions have no value.

## V. CONCLUSION

The CFPB's motion fails to establish that it is entitled to judgment as a matter of law. It should be denied.

Dated: March 23, 2018

Respectfully submitted,

s/ Ryan A. Doringo

James R. Wooley (0033850)
Tracy K. Stratford (0069457)
Ryan A. Doringo (0091144)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
Email: jrwooley@jonesday.com
tkstratford@jonesday.com
radoringo@jonesday.com

Attorneys for Defendant
Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum relating to a dispositive motion is no more than 20 pages in length, and, therefore, it conforms to the page limitation for standard track cases set forth in Local Rule 7.1(f).

s/ Ryan A. Doringo
One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Sarah Preis
Zol Rainey
Rebeccah Watson
Jehan Patterson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer
Financial Protection Bureau

s/ Ryan A. Doringo
One of the Attorneys for Weltman, Weinberg &
Reis Co., L.P.A.