**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WELTMAN, WEINBERG & REIS CO., L.P.A.,**<br><br>**Defendant.** | **Civil Action No. 1:17-cv-00817-dcn**<br><br>**Judge Donald C. Nugent**<br><br>**Magistrate Judge William H. Baughman, Jr.** |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii
I. INTRODUCTION ..... 1
II. ARGUMENT ..... 1
A. THE CFPB'S CLAIMS ARE TIME-BARRED ..... 1
1. The putative Tolling Agreement is unenforceable because it lacks consideration ..... 1
2. The FDCPA's one-year statute of limitations bars claims under the FDCPA ..... 4
3. The CFPB's CFPA claims are also time-barred ..... 7
B. THE CFPB'S CLAIMS FAIL UNDER *SHERIFF V. GILLIE* AS A MATTER OF LAW ..... 11
C. THE UNDISPUTED FACTS SHOW THAT THE CFPB IS NOT ENTITLED TO DISGORGEMENT DAMAGES ..... 13
III. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page**

CASES

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................14

*CFPB v. CashCall, Inc.*,
No. CV-15-07522, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018)....................15

*CFPB v. ITT Educational Services, Inc.*,
219 F.Supp.3d 878 (S.D. Ind. 2015)....................6

*CFPB v. Nationwide Biweekly Admin., Inc.*,
No. 15-cv-02106-RS, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017)....................9

*Collins v. Woodworth*,
109 F.2d 628 (6th Cir. 1940)....................1, 2

*Commerce Benefits Grp., Inc. v. McKesson Corp.*,
326 F. App'x 369 (6th Cir. 2009)....................4

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992)....................5

*Daniels v. Solomon & Solomon, P.C.*,
No. 17-0757, 2017 WL 3675400 (E.D. Pa. Aug. 25, 2017)....................12

*Fed. Trade Comm'n v. CompuCredit Corp.*,
No. 1:08-CV-1976, 2008 WL 8762850 (N.D.Ga. Oct 8, 2008)....................5, 6

*Gabelli v. SEC*,
568 U.S. 442 (2013)....................7

*Gillie v. Law Office of Eric A. Jones, LLC*,
785 F.3d 1091 (6th Cir. 2015)....................11

*HAD Enters. v. Galloway*,
948 N.E.2d 473 (Ohio Ct. App. 2011)....................4

*Hagy v. Demers & Adams*,
882 F.3d 616 (6th Cir. 2018) ....................16

*Harlan v. Transworld Sys., Inc.*,
No. 13-5882, 2014 WL 1414508 (E.D. Pa. April 14, 2014)....................12, 13

*Johnston v. MidFirst Bank*,
No. 5:14-CV-466, 2015 WL 5175147 (N.D. Ohio Sept. 3, 2015)....................6, 7

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)....................7, 8

*Moorer v. U.S. Bank N.A.*,
No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan. 29, 2018) ....................12

*Scadden v. Warner*,
677 Fed. Appx. 996 (6th Cir. 2017)....................15

*Sheriff v. Gillie*,
136 S. Ct. 1594 (2016)....................1, 11, 12, 13

*Stennett v. Midland Funding, LLC*,
No. 3:16-CV-00656, 2017 WL 1205589 (W.D. Ky. Mar. 30, 2017) ....................6

*United States v. Bertie Ambulance, Service Inc.*,
No. 2:14-cv-53, 2015 WL 5916691 (E.D.N.C. Oct. 8, 2015)....................3

**STATUTES**

12 U.S.C. § 5564(g) ....................7

15 U.S.C. § 1692e(9) ....................11, 12

15 U.S.C. § 1692k, *et. seq.*.................... passim

28 U.S.C. § 2462....................7

**OTHER AUTHORITIES**

S. Rep. 95-382....................11

# I. INTRODUCTION

The material facts underlying Weltman, Weinberg & Reis Co., LPA's ("Weltman") Motion for Summary Judgment ("Motion" or "Mot.") are undisputed. In its Memorandum in Opposition ("Opp."), the CFPB does not dispute the robustness of Weltman's processes and procedures for handling consumer debt collection, which are designed and enforced by lawyers to ensure compliance with the law and ethical obligations. Nor does the CFPB dispute that its former director Richard Cordray, while serving as Ohio Attorney General, twice retained Weltman's lawyers to collect debts owed to the State, using those same processes and procedures. Among the other undisputed facts are that the CFPB possessed the very Weltman letters it now says violate the law some five years before it filed the Complaint, that no specific consumer has been harmed by Weltman's debt-collection practices, and that the CFPB's own witness was unable to identify even a dollar of revenue that Weltman earned "unjustly."

Put another way, the facts are what Weltman said they were in the Motion. And the legal conclusions premised upon those facts that should dispose of this case have not changed: (1) the CFPB's case is time-barred; and (2) the CFPB's theory that truthful, milquetoast communications can mislead consumers cannot stand under *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016). Summary judgment is appropriate here.

# II. ARGUMENT

## A. THE CFPB'S CLAIMS ARE TIME-BARRED.

### 1. The putative Tolling Agreement is unenforceable because it lacks consideration.

The CFPB seems to concede that a tolling agreement is not enforceable unless it is supported by consideration. Though it states—in a footnote—that consideration *may* not be necessary, the case the CFPB cites, *Collins v. Woodworth*, 109 F.2d 628 (6th Cir. 1940), says no



NAI-1503572516v1

such thing. *Collins* stands for the unremarkable proposition that statutes of limitations may be *waived* without consideration. *Id.* at 629-30. Weltman did not waive its statute of limitations defense—it is patently pleaded in the Answer.

Weltman demonstrated in its Motion that the Tolling Agreement is unenforceable because it, like any contract, must be supported by consideration; there was no consideration exchanged between the CFPB and Weltman. (*See* Mot. at 9-10 and cases cited therein.) In response, the CFPB argues that the Tolling Agreement is supported by implied consideration because the CFPB "forestall[ed] litigation" of this case. (Opp. at 14.) The CFPB, however, never made that promise, and its own exhibit makes that much clear.

Attempting to show consideration, the CFPB cites an email exchange between its counsel and Weltman's attorney during the investigation that preceded this lawsuit. (*Id.*, Ex. 9.) In that exchange, the CFPB's counsel simply told Weltman, "If it does not appear that we can reach an agreement in a timely fashion, then we will prepare to litigate this matter." (*Id.*) Nowhere does the CFPB agree to delay filing the case in exchange for Weltman's execution of the Tolling Agreement. Indeed, the emails show that settlement discussions were already well underway, with the CFPB having already provided a draft consent order for Weltman's consideration, before it even raised the tolling agreement issue. (*Id.*) In other words, the emails show exactly what Weltman argued in the Motion: Weltman signed the putative Tolling Agreement, consistent with its cooperation throughout the investigation, in exchange for nothing.

The CFPB's "implied consideration" argument is laid bare by reflecting on what the CFPB promised that could have constituted consideration and under what circumstances it would have breached that promise. The CFPB does not identify any promise. Rather, it pronounces that it is "clear" that the agreement "was in exchange for the [CFPB's] prolonging the time

available to negotiate settlement and delaying litigation." (Opp. at 14.) Far from clear since that promise is nowhere to be found in the Tolling Agreement, what was the promise that Weltman could enforce? Did the CFPB promise to delay litigation during the tolling period? Does the fact that the CFPB filed suit a month before the Tolling Agreement expired mean that the CFPB breached its alleged promise to delay litigation? Indeed, if the CFPB made a promise and breached it by filing suit a month early, then the Tolling Agreement would not be enforceable due to the CFPB's material breach. *United States v. Bertie Ambulance, Service Inc.*, No. 2:14-cv-53, 2015 WL 5916691 (E.D.N.C. Oct. 8, 2015) (granting summary judgment where tolling agreement lacked consideration because government failed to perform its obligations under the agreement).

No matter how one looks at the Tolling Agreement, it is not enforceable.

The CFPB acknowledges as much by arguing, in the alternative, that promissory estoppel applies here. (Opp. at 15.) The CFPB recognizes, however, that to prevail on that theory it must show that it reasonably and foreseeably relied on a promise Weltman made and suffered an injury as a result of its reliance. (*Id.* (citing *Doe v. Case W. Reserve Univ.*, No. 1:17 CV 414, 2017 WL 3840418, at *13 (N.D. Ohio Sept. 1, 2017).)

The CFPB's argument boils down to this: the CFPB's lawyers insisted that Weltman sign a Tolling Agreement without consideration and, notwithstanding that consideration is a quintessential element of any contract, those lawyers now argue that it was reasonable to rely on a contract that is patently unenforceable.

What's worse, the CFPB turns the burden of proof on its head. It argues that it is entitled to rely on the doctrine of promissory estoppel and offers not a shred of evidence as to its reasonable reliance or how it was harmed. Instead of presenting evidence, the CFPB puts the

burden on Weltman. (Opp. at 15 ("WWR cannot credibly argue. . ." and "WWR surely understood . . .").) The CFPB thus wholly fails to meet its burden of proving every element of its promissory estoppel claim by clear and convincing evidence. *See, e.g.*, *HAD Enters. v. Galloway*, 948 N.E.2d 473, 481 (Ohio Ct. App. 2011) ("[T]he party who asserts the promissory-estoppel claim bears the burden of proving by clear and convincing evidence all the elements of the claim."); *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 374-75 (6th Cir. 2009) (same, applying Ohio law).

Even if the CFPB could show that it relied on Weltman's execution of the agreement, it has failed to show any detriment. The detriment it describes is that its purported reliance "would increase the risk that some claims could be deemed time-barred." (Opp. at 15.) But the CFPB also argues that there is no statute of limitations issue here, whether the Tolling Agreement is enforceable or not. (Opp. at 12.) If the CFPB believed that there was no statute of limitations issue, then it could not have relied to its detriment on any promises. The CFPB has not presented any evidence of reasonable, detrimental reliance. There is no promissory estoppel here.

**2. The FDCPA's one-year statute of limitations bars claims under the FDCPA.**

The CFPB refuses to take a position on which limitations period applies to its claims under the FDCPA. According to the CFPB, the CFPA's three-year limitations period "could apply." (Opp. at 6.) Failing that, the CFPB says, a five-year statute of limitations under a different statute may govern. (*Id.* at 7.) The only limitations period it categorically rejects is the one-year statute of limitations provided by the very statute under which it sued—the FDCPA.

The CFPB's indecision is telling. The simplest answer is usually best, and the limitations period expressly provided by the FDCPA is the one that applies to claims asserted under that statute. Indeed, § 1692k(d) states that "[a]n action to enforce ***any liability created by this subchapter*** may be brought . . . within one year from the date on which the violation occurs." 15

U.S.C. § 1692k(d) (emphasis added). The "subchapter" referred to here is Subchapter V, *i.e.*, the FDCPA. The statute thus unambiguously requires that *any* case to enforce FDCPA liability must be brought within a year. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992) (giving a statute its plain meaning is the "cardinal canon before all others"). The text speaks for itself and, contrary to the CFPB's arguments, draws no distinction between consumer and government plaintiffs. (*See* Mot. at 10-12.)

Further, to hold that § 1692k does not apply to the CFPB's cases, the Court would necessarily have to find that Congress intended to deprive debt collectors of the very statutory protections it deemed fit to give them when those debt collectors are faced with the full weight of the government's authority. Section 1692k provides other protections for defendants in FDCPA cases beyond the statute of limitations. In its Motion, Weltman pointed to one of those protections, the bona fide error defense under § 1692k(c), and noted that the CFPB has not argued, and no court has held, that the defense is unavailable in cases brought by a government agency. (Mot. at 11-12.) The CFPB glosses over that argument, saying in a footnote only that whether the bona fide error defense could apply "is not relevant" here. (Opp. at 6 n.7.) But it is relevant because, if the CFPB's interpretation is correct, then none of § 1692k's other defenses apply in cases brought by the government. Had Congress intended to deprive debt collectors of their statutory defenses in such cases, it would have said so.

As discussed, the CFPB also argues that the CFPA's three-year limitations period "could apply" to its FDCPA claims, and cites in support the reasoning in *Fed. Trade Comm'n v. CompuCredit Corp*., No. 1:08-CV-1976, 2008 WL 8762850, at *10 (N.D.Ga. Oct 8, 2008). (Opp. at 6-7.) For the reasons explained in Weltman's Motion, *CompuCredit* misreads the FDCPA and relies on a consumer versus government agency distinction that finds no basis in the

statute's text. (Mot. at 10-12.)

The CFPB's efforts to distinguish *CFPB v. ITT Educational Services, Inc.*, which rejected the reasoning upon which *CompuCredit* is premised, also fail. 219 F.Supp.3d 878 (S.D. Ind. 2015). Interpreting statutory provisions nearly identical to those of the FDCPA, the *ITT* court found "no persuasive evidence that [the Truth in Lending Act's statute of limitations] governs only *private* civil actions," noting that "[t]he provision itself does not exclude actions in which a government agency is a plaintiff[.]" *Id.* at 922 (emphasis in original); *see also* Mot. at 11. The CFPB claims that the *ITT* court relied on statutory language that is not present in the FDCPA. (Opp. at 7-8.) But the court did not base its decision on that language. Rather, the crux of the opinion was (1) that the statute did not draw a distinction between private litigants and the government and (2) that applying a one-year limitations period would give effect to Congress's demonstrated "concern that a creditor not face limitless liability in terms of time[.]" *ITT*, 219 F.Supp.3d at 922. The court's reasoning applies equally here, meaning that the FDCPA's limitations period—not another statute's—applies in this case.

The CFPB next claims that, even if the FDCPA's statute of limitations does apply, its claims are not time-barred because Weltman's alleged violations "continue to this day." (Opp. at 8.) In other words, the CFPB asks the Court to apply a "continuing violation" theory to its FDCPA claims. That theory has, however, been rejected by the Sixth Circuit and this Court in the FDCPA context. Indeed, "this Circuit has never applied the continuing-violation doctrine to FDCPA claims . . . ." *Johnston v. MidFirst Bank*, No. 5:14-CV-466, 2015 WL 5175147, at *6 (N.D. Ohio Sept. 3, 2015) (Nugent, J.) (citing *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed.Appx. 249, 258 (6th Cir. 2014); *see also Stennett v. Midland Funding, LLC*, No. 3:16-CV-00656, 2017 WL 1205589, at *3 (W.D. Ky. Mar. 30, 2017) ("[T]he continuing-violation doctrine

does not apply to FDCPA claims.").

Under § 1692k(d), "the statute of limitations begins to run at the moment the alleged violation occurs, without regard to when the plaintiff gained knowledge of the cause of action." *Johnston*, 2015 WL 5175147, at *6. Here, the CFPB's case relies on the singular practice—which the CFPB itself says dates back to 2011—of Weltman identifying itself as a law firm in form or template communications when an attorney has not been "meaningfully involved" in making the communication. (*See* Compl. at ¶¶ 14, 16-26, 32-36.) The CFPB's claims under the FDCPA, asserted more than five years after Weltman's alleged violation, are simply too late.

Finally, the CFPB argues that, if neither the FDCPA's nor the CFPA's statutes of limitations apply to its FDCPA claims, then the five-year limitations period under 28 U.S.C. § 2462 may govern. (Opp. at 7.) 28 U.S.C. § 2462 provides, "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture . . . shall not be entertained unless commenced within five years from the date when the claim first accrued." By its plain text, the statute has no application here. An "Act of Congress," namely the FDCPA, *does* otherwise provide for a limitations period on the CFPB's claims—one year. The Court therefore need not reach this issue, because the entirety of the CFPB's case is time-barred under the FDCPA and, as discussed below, by the CFPA's three-year statute of limitations.

**3. The CFPB's CFPA claims are also time-barred.**

The CFPA's three-year statute of limitations is subject to the discovery rule. 12 U.S.C. § 5564(g). Under that rule, a claim accrues when a plaintiff "first knows or with due diligence should know" a violation has occurred. *Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010); *see also Gabelli v. SEC*, 568 U.S. 442, 449 (2013) (a cause of action "is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered" (quoting *Merck*)).

Thus, the clock on the CFPB's claims under the CFPA began running when the CFPB did discover or a reasonably diligent plaintiff would have discovered the facts constituting the alleged violation, whichever came first. *Merck*, 559 U.S. at 653.

The material facts underlying Weltman's argument that the CFPB's claims under the CFPA are time-barred are undisputed. The CFPB does not (and cannot) dispute any of the following: (1) the CFPB received and reviewed consumer complaints attaching Weltman collection letters that were submitted to the CFPB in May 2012 and October 2013 (Mot. at 8); (2) the CFPB's former Director Richard Cordray, while serving as the Ohio Attorney General, twice retained a Weltman shareholder, Alan Weinberg, as Special Counsel to collect debts on behalf of the State of Ohio (*id.* at 6); (3) Weltman collected debts on Mr. Cordray's behalf using the same processes and procedures the CFPB now claims to violate the law (*id.* at 6-7 14-15); (4) Mr. Cordray knew that Weltman specializes in "high-volume placements," making "innovative use of technology" (*id.* at 6); (5) at the time Mr. Cordray hired Weltman to collect debts on the State's behalf, Weltman's non-attorney staff was more than nine times the size of its attorney staff (*id.*); (6) with approximately 100 attorneys, Weltman attempted to collect nearly 730,000 debts in 2008 (*id.*); (7) Mr. Cordray's office reviewed Mr. Weinberg's and Weltman's performance quarterly under a policy mandating "[nothing] less than complete respect for the rights and reasonable expectations of the public" (*id.* at 6-7); and (8) Mr. Corday required Weltman to use his Ohio Attorney General letterhead on letters approved by his office that Weltman sent to consumers, even though Mr. Cordray did not review the consumer's accounts before Weltman sent those letters and the letters did not advise consumers that no such review had occurred (*id.* at 7, 15).

Despite all this, the CFPB maintains that it did not discover (or could not have

discovered) its causes of action more than three years before filing its April 2017 Complaint. That argument cannot stand under the law and in light of the undisputed record.

The CFPB first argues that its receipt and review of consumer complaints attaching Weltman letters in May 2012 and October 2013 have no bearing on whether the statute of limitations began to run.[1] (Opp. at 9-11.) In support, it cites *CFPB v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017). (*Id.* at 9.) In *Nationwide*, the CFPB received a consumer complaint on March 3, 2012 and filed its CFPA claims on May 11, 2015. 2017 WL 3948396, at *10. That is, the CFPB received the consumer complaint just two months before the date that was three year prior to the filing of its complaint. On those facts, the court found that the record did not show that "a reasonably diligent plaintiff" would have discovered the facts constituting its cause of action in the two months between March and May 2012. *Id.*

The facts in *Nationwide* are far removed from those here. The CFPB received a consumer complaint attaching a Weltman collection letter in May 2012—five years before filing the Complaint. (Mot. at 8.) In October 2013—three and a half years before the Complaint—the CFPB received another Complaint attaching a Weltman letter. (*Id.*) Those letters truthfully identified Weltman as a law firm and contained the same language the CFPB now claims violates the law. (*Id.*) It is not the case here, as in *Nationwide*, that the CFPB failed to exercise diligence for a handful of weeks; years passed during which the CFPB ostensibly did nothing, even though it had received and reviewed the very letters with which it now takes issue.

On top of that, the knowledge of Mr. Cordray had been imputed to the CFPB from the

[1] The CFPB argues that Weltman "mischaracterized" the CFPB's review of the May 2012 consumer complaint, as memorialized in its August 2012 response to the consumer, because the CFPB "does not opine on the legality of underlying practices when it handles consumer complaints." (Opp. at 10-11.) But the CFPB's response to the consumer speaks for itself. The response confirms that a "Specialist in Consumer Response reviewed your complaint based on the federal consumer financial protection laws within the CFPB's authority." (Mot. at 8 (citing Bitterman Decl., Att. 4).)

moment he assumed his position there in 2011. The CFPB does not dispute that Mr. Cordray's detailed knowledge of Weltman's practices is imputed to the CFPB. Nor does it dispute that Weltman collected debts on Mr. Cordray's and the State's behalf using the very same processes and procedures that the CFPB now claims violate the law. All the CFPB offers in response to these facts is a citation to deposition testimony in which a Weltman employee testified that a specific group was created to handle accounts for Mr. Cordray on behalf of the State. (Opp. at 12 (citing Pona Dep. 209:7-20.) Regardless of what the group handling Mr. Cordray's matters was named, the fact remains that Weltman used the same practices to collect debt on his behalf that it uses on behalf of its clients today for consumer collections. Because Mr. Cordray's knowledge is the CFPB's knowledge, the CFPB had all of the facts it needed to "discover" its causes of action under the CFPA as early as 2011, when Mr. Cordray assumed his role at the CFPB. Or, at the very least, any reasonably diligent plaintiff, equipped with the same facts, would have discovered the CFPB's claims long before the CFPB filed the Complaint some six years later.

The CFPB also argues that the fact that Weltman sent out letters on Mr. Cordray's Attorney General letterhead, instead of its own, makes a difference. (Opp. at 12.) It does not. The letters sent on Mr. Cordray's behalf were materially indistinguishable from those the CFPB targets here (Mot. at 15), and they did not advise consumers that Mr. Cordray did not review the circumstances of the consumer's account before the letter was sent out bearing his name (*id.*). Mr. Cordray was of course aware of these facts; it was he who required Weltman to use his letterhead and his office that approved the templates Weltman used to generate letters to consumers. (Mot. at 15.)

In sum, the CFPB—based on its review of Weltman's letters and the knowledge of Mr.

Cordray that is imputed to it—discovered or should have discovered the facts underlying its claims well over three years before it filed this case. Summary judgment should be granted on this basis alone.

### B. THE CFPB'S CLAIMS FAIL UNDER *SHERIFF V. GILLIE* AS A MATTER OF LAW.

The CFPB's response to Weltman's argument under the Supreme Court's unanimous decision in *Gillie* is to essentially ignore it.[2] The reasoning in *Gillie* does not matter, the CFPB argues, because the Supreme Court did not there consider claims under §§ 1692e(3) or (10) of the FDCPA. (Opp. at 16.) The CFPB focuses on surface, not substance. At issue in *Gillie* was § 1692e(9), which prohibits communications that "simulate[] or . . . falsely represent" that they are "authorized, issued, or approved by any court, official, or agency of the United States or any State." 15 U.S.C. § 1692e(9). That provision is particularly relevant to this Court's interpretation of § 1692e(3), because § 1692e(9) was passed for the same reason as § 1692e(3): preventing debt collectors from "impersonating public officials and attorneys." S. Rep. 95-382.

In *Gillie*, the Supreme Court reversed a decision of the Sixth Circuit that was premised on the same reasoning the CFPB relies on in this case. The Sixth Circuit had found that a letter sent by special counsel on Ohio Attorney General letterhead is "intended to induce a higher rate of repayment by intimating that the State of Ohio is in fact sending the letter, which may lead the naïve consumer to prioritize this debt above all others for no good reason." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1108 (6th Cir. 2015). That is precisely what the CFPB argues when it claims that Weltman's letters are misleading because a consumer who receives a collection letter from a law firm "'knows the price of poker has just gone up.'" (*See* ECF No. 44-1 at 17-18 (quoting *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).)

[2] The CFPB also wrongly characterizes Weltman's argument under *Gillie* as having already been addressed by this Court. (*See* Opp. at 17.) Not so. It's true that Weltman raised the argument in its motion for judgment on the pleadings, but the Court did not address the argument when it ruled on that motion.

And it is that theory of FDCPA liability the Supreme Court discredited in *Gillie*: "The Sixth Circuit raises the specter of consumer confusion and the risk of intimidation from special counsel's use of the Attorney General's letterhead, but its exposition is unconvincing." *Gillie*, 136 S. Ct. at syllabus. The CFPB's theory—regardless of whether applied in an attempt to show liability under § 1692e(3) or § 1692e(9)—has been soundly rejected.

In short, under *Gillie*, the entirely speculative "specter of consumer confusion" is insufficient to state a claim under the FDCPA, *Gillie*, 136 S. Ct. at syllabus; and letterhead that "accurately conveys" the identity of the sender is "[n]ot fairly described as 'false or misleading.'" *Id.* at 1598. In *Moorer v. U.S. Bank N.A.*, the court recognized this to be *Gillie*'s mandate, and applied *Gillie* to dismiss a claim that a law firm's use of its letterhead was misleading when the firm was, as the firm's letters (like Weltman's) accurately disclosed, acting in a "debt collector's" capacity. No. 3:17-cv-56, 2018 WL 587319, at *19 (D. Conn. Jan. 29, 2018); *see also Daniels v. Solomon & Solomon, P.C.*, No. 17-0757, 2017 WL 3675400, at *4 (E.D. Pa. Aug. 25, 2017) (appeal pending) (dismissing claim under § 1692e(3) when letter included a disclaimer that the letter was from a debt collector attempting to collect a debt). The CFPB attempts to distinguish *Moorer* by arguing that "[t]he court did not address whether attorneys were meaningfully involved in sending the subject demand letters." (Opp. at 16 n.15.) But the CFPB misses the point: a court need not reach the question of whether attorneys were "meaningfully involved" when a collection letter cannot mislead *as a matter of law*.[3]

The CFPB also argues that neither the FDCPA, which requires Weltman to use its true

[3] It is somewhat ironic that the CFPB pushes so hard to narrow the Supreme Court's interpretation of the FDCPA. To the extent that the CFPB feels strongly that a particular practice is misleading or that an alternative practice would be more consumer-friendly, it has the ability to effectuate its views through regulation. As courts have recognized, the FDCPA does not by it terms "'provide much guidance to debt collectors'" and the outcome of litigation under the FDCPA can be unpredictable. *Harlan v. Transworld Sys., Inc.*, No. 13-5882, 2014 WL 1414508, at *11 (E.D. Pa. April 14, 2014), quoting *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). More explicit regulation is the solution. *Id.* Yet, the CFPB chooses to engage instead in litigation that "only proves that neither consumers nor debt collectors know their rights ex ante, and not entirely through fault of their own." *Id.* at *11 n.6.

name, nor the Ohio Rules of Professional Conduct, which similarly require Weltman to truthfully identify itself, mandate that Weltman use the words "Attorneys at Law" in its letters or otherwise tell consumers that the communication is from a law firm. (Opp. at 18-19.) In other words, the CFPB argues that Weltman's letters would, in its view, *not* be misleading if they obscured the fact that Weltman is a law firm. Not only is this a nonsensical reading of the FDCPA, what the CFPB asks of Weltman—to obscure the legal reality that it is a law firm—is prohibited by *Gillie*.

For that reason, the CFPB's assertions that its "claims do not conflict with" *Gillie* cannot stand. (Opp. at 17.) The CFPB argues that the "reality" obscured by Weltman's letters is that the firm itself, and not a specific lawyer, "has handled the consumer's account." (*Id.*) Just the opposite is true. Weltman's letters, which are not signed by a lawyer and which truthfully disclose that Weltman is a law firm, imply nothing more than the reality that the letter is sent from a law firm retained to collect a debt. And, as the undisputed record shows, the law firm has in fact conducted a review and concluded that beginning collections activities is appropriate. (*See* Mot. at 2-6.) *Gillie* is dispositive here, and summary judgment in Weltman's favor should be granted.

### C. THE UNDISPUTED FACTS SHOW THAT THE CFPB IS NOT ENTITLED TO DISGORGEMENT DAMAGES.

The CFPB does not dispute that its Rule 30(b)(6) deposition witness testified that he had "no idea" whether any portion of Weltman's revenue was ill-gotten. (Mot. at 20 (citing Deposition of M. Heidari ("Heidari Dep") 21:22-23).) Nor does it offer any shred of evidence to show that any portion of Weltman's revenue was ill-gotten. Instead, the CFPB opts to argue that Weltman "misunderstands the [CFPB's] burden of proof with respect to disgorgement." (Opp. at 19.) But the CFPB at least concedes that it must prove *something*. (*Id.* ("The Bureau must show that the disgorgement calculation 'reasonably approximated' WWR's unjust gains."). And it has

failed to offer any "specific facts showing that there is a genuine issue [of material fact] for trial" on the disgorgement issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Attempting to salvage its disgorgement argument, the CFPB says that "a unit within [Weltman's] Consumer Collection Business Unit . . . generated revenue from [Weltman's] demand letter and collection call services." (Opp. at 20.) The CFPB apparently believes this is all it needs to survive summary judgment, but this bare assertion fails to show how any portion of Weltman's revenue could conceivably be characterized as ill-gotten.

Tellingly, nowhere does the CFPB identify the amount of disgorgement it is seeking. Nor does it attempt to show how that number was calculated, how that number is causally tied to any collection letter or phone call, or how its calculation would "reasonably approximate" the amount of Weltman's alleged ill-gotten gains. The reason why the CFPB has nothing to say on these points is because its 30(b)(6) witness was similarly at a loss. Not only did that witness admit that he had no idea what part of Weltman's revenue was ill-gotten or partly ill-gotten, he also admitted: (1) he would "have no idea" whether the financial reports he reviewed showed revenue for each business unit or whether they showed consolidated revenues allocated back down to the business units (Heidari Dep. 18:12-18),[4] (2) he "wouldn't know" whether the revenue figure he looked at included collections on accounts other than consumer debt (*id.* at 18:19-19:5), (3) he "wouldn't know" whether that same revenue figure included collections for debts that were collected in compliance with the law or not in compliance with the law (*id.* at 19:9-16), (4) he took no facts into account in making his calculation (*id.* at 46:3-9), and (5) he could not say whether even one dollar of the number he calculated was paid by a consumer (*id.* at 47:17-23).

Simply put, Weltman has shown on an undisputed record that the CFPB cannot establish

[4] Excerpts from the Deposition of M. Heidari are attached as Exhibit 1.

any unjust gains, and the CFPB has offered no *facts* that would support its argument that all of Weltman's revenue from a particular department reasonably approximates "unjust gains" associated with the conduct at issue in the Complaint. A motion for summary judgment challenges the non-moving party "to put up or shut up on a critical issue." *Scadden v. Warner*, 677 Fed. Appx. 996, 1000 (6th Cir. 2017) (internal quotation marks omitted). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 1001 (internal quotation marks omitted). The CFPB set forth no facts at all, specific or otherwise. To the contrary, the CFPB's "only witness . . . specifically admitted that he did not make any attempt to determine" an appropriate disgorgement amount because he had no facts. *CFPB v. CashCall, Inc.*, No. CV-15-07522, 2018 WL 485963, at *13-14 (C.D. Cal. Jan. 19, 2018). And the CFPB points to no facts, from any source, in its brief. The result is that the CFPB has "failed to present any evidence that its proposed [disgorgement] approximates [Weltman's alleged] unjust gains." *Id.* Weltman is entitled to summary judgment on the CFPB's request for disgorgement.

Though the CFPB offers no legal rationale for its position, its argument may be that it presented no facts because it is not required to tie alleged "unjust gains" to the violations for which it seeks a remedy. It cites no case for that proposition, which is directly contrary to the court's holding in *CashCall*. More fundamentally, though, the notion that the CFPB is entitled to simply declare what revenue constitutes "unjust gains" flies in the face of Article III of the United States Constitution, an issue we address briefly here so that it is forever laid to rest.

As the Sixth Circuit recently explained in an FDCPA case, Article III extends the "'judicial Power' only to concrete 'Cases' and 'Controversies.'" *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018) (quoting U.S. Const. art. III, § 2). The "irreducible constitutional

minimum" for standing requires (1) a particular and concrete injury (2) caused by the defendant and (3) redressable by the courts. *Id.* "Congress has some leeway 'to define injuries and articulate chains of causation.'" *Id.* at 622 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring)). But "Congressional leeway cannot mean judicial abdication. . . . Congress may not say that *anything* is an injury, and by saying so expect the federal courts to agree." *Id.* at 623. Following that rationale, the Sixth Circuit determined that a consumer lacked standing to bring a claim under the FDCPA where there was no dispute that the defendant violated the FDCPA but where that violation created no injury in fact. *Id.* To the extent that the CFPB is trying to say that the CFPA permits it to seek disgorgement without any demonstrable injury or chain of causation, that argument is constitutionally flawed. *Id.* ("Because Congress made no effort to show how a letter like this would create a cognizable injury in fact and because we cannot see any way in which that could be the case, we must dismiss this claim for lack of standing.").

In sum, to recover "disgorgement," the CFPB must prove ill-gotten gains causally connected to the alleged violations. The facts are undisputed here—there is no factual basis on which to premise disgorgement. Weltman is entitled to judgment as a matter of law on the CFPB's request for disgorgement.

## III. <u>CONCLUSION</u>

The CFPB has failed to show that there is a triable issue of fact. Its claims are time-barred and, in any event, meritless under *Gillie*. The Court should enter summary judgment in Weltman's favor.

Dated: March 30, 2018

Respectfully submitted,

s/ Ryan A. Doringo

James R. Wooley (0033850)
Tracy K. Stratford (0069457)
Ryan A. Doringo (0091144)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
Email: jrwooley@jonesday.com
tkstratford@jonesday.com
radoringo@jonesday.com

Attorneys for Defendant
Weltman, Weinberg & Reis Co., L.P.A.

# CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum relating to a dispositive motion is no more than 20 pages in length, and, therefore, it conforms to the page limitation for standard track cases set forth in Local Rule 7.1(f).

s/ Ryan A. Doringo
One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Sarah Preis
Zol Rainey
Rebeccah Watson
Jehan Patterson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer
Financial Protection Bureau

s/ Ryan A. Doringo

One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.