**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>WELTMAN, WEINBERG & REIS CO., L.P.A.,<br><br>Defendant. | Case No. 1:17 CV 817<br><br>Judge Donald C. Nugent<br><br>Magistrate Judge William H. Baughman, Jr. |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

SUMMARY OF THE ARGUMENT PRESENTED ..... 1

ARGUMENT ..... 2

I. The Material Facts Are Not in Dispute. ..... 2

II. WWR's Demand Letters Violate the FDCPA and the CFPA ..... 3

A. WWR's Firm-Signed Demand Letters Convey to Consumers that an Attorney Was Meaningfully Involved in Collecting their Debts. ..... 3

1. *Sheriff v. Gillie* did not overrule decades of case law establishing that letters like WWR's mislead consumers about meaningful attorney involvement. ..... 4

2. Dr. Goodstein's expert report further confirms that WWR's letters are misleading. ..... 6

3. WWR cites no other evidence or case law precluding summary judgment in the Bureau's favor. ..... 8

B. WWR Attorney Participation in its Client Onboarding Process Does Not Constitute the Meaningful Involvement Necessary to Make WWR's Form Demand Letters Not Misleading. ..... 9

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................... 9

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) .................... 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................... 11

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) .................... 14

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) .................... 5, 14

*Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173 (D. Minn. 2011) .......... 5, 6

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146 (6th Cir. 1995) .................... 3

*Daniels v. Solomon & Solomon, P.C.*, No. 17-0757, 2017 WL 3675400 (E.D. Pa. Aug. 25, 2017) .................... 6

*ECM BioFilms, Inc. v. FTC*, 851 F.3d 599 (6th Cir. 2017) .................... 7

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) .................... 9

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) .................... 8

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005) .................... 5, 16

*Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399 (6th Cir. 1992) .................... 3, 7

*Johnston v. MidFirst Bank*, No. 5:14-CV-466, 2015 WL 5175147 (N.D. Ohio Sept. 3, 2015) .................... 3, 11

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433 (6th Cir. 2008) .......... 5, 13

*Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993 (3d Cir. 2011) .................... 5, 6

*Miller v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913 (N.D. Ohio 2011) .................... 16

*Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86 (E.D.N.Y. 2009) .................... 13

*Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292 (2d Cir. 2003) .................... 12, 13

*Moorer v. U.S. Bank NA*, No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan. 29, 2018) .......... 6

*Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) .................... 5, 13, 14

*SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233 (11th Cir. 2012)........................................... 8

*Semper v. JBC Legal Grp.*, No. C04-2240L, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005). .... 5

*Sheriff v. Gillie*, 136 S. Ct. 1594 (2016) ........................................................................... 1, 4

*United States ex rel. Bibby v. Mort. Inv'rs Corp.*, No. 1:12-CV-4020-AT, 2017 WL 8218975 (N.D. Ga. Aug. 25, 2017)........................................................................................... 8, 12

*Young v. Citicorp Retail Servs., Inc.*, No. CIV 3:95CV1504 (AHN), 1997 WL 280508 (D. Conn. May 19, 1997) .......................................................................................... 14

**Statutes**

12 U.S.C. § 5531.................................................................................................................. 1
12 U.S.C. § 5536(a)(1)......................................................................................................... 1
15 U.S.C. § 1692e ............................................................................................................ 1, 2
15 U.S.C. § 1692e(3) ........................................................................................................ 1, 8
15 U.S.C. § 1692e(10) ...................................................................................................... 1, 8
15 U.S.C. § 1692g............................................................................................................. 2, 8

## SUMMARY OF THE ARGUMENT PRESENTED

The Consumer Financial Protection Bureau (Bureau) established in its motion for summary judgment that the form demand letters sent by defendant Weltman, Weinberg & Reis, Co., L.P.A. (WWR) falsely imply to consumers that WWR attorneys reviewed their accounts and formed a professional judgment that it was appropriate to send the letters, which violates the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e(3) and (10), and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a)(1). WWR's response does not demonstrate otherwise.

Numerous courts have held that demand letters with certain references to the sender as a law firm or attorneys imply to consumers that an attorney is meaningfully involved in the collection of their debts, absent sufficient statements to the contrary in the communication. Such an implication is false where no attorney is involved. The undisputed facts are, as relevant here, that WWR's demand letters contain those references and that WWR's attorneys do not review individual accounts or make any determination that sending a demand letter to any particular consumer is appropriate. Thus, contrary to WWR's contention that the Bureau seeks a sweeping ruling that WWR "violates the law every time it sends a letter to a consumer on its firm letterhead," Def.'s Opp. to Pl.'s Mot. Partial Summ. J. 1 ("Def.'s Opp."), ECF No. 54, the Bureau's claims do no more than enforce longstanding case law holding that demand letters printed on law firm letterhead lead consumers to form the impression that an attorney is meaningfully involved. WWR's attempt to cast the Supreme Court's decision in *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)—a case that did not address whether a demand letter misleadingly implied attorney involvement—as an implicit repeal of that precedent is unpersuasive. Moreover, WWR's argument that its demand letters cannot violate § 1692e because some of the text of the

letters tracks a separate provision of the FDCPA (§ 1692g) does not hold water. Whether WWR complied with a separate FDCPA requirement has nothing to do with whether WWR falsely implied to consumers that attorneys were meaningfully involved in violation of § 1692e. And its contention that a consumer might not have standing to pursue these claims is wrong and not relevant to the Bureau's action. WWR does not and cannot challenge the Bureau's standing to enforce the FDCPA or the CFPA.

Finally, WWR's argument that its attorneys are meaningfully involved through review of portfolio-related information and oversight of the collection process is without merit. Not only have courts made clear that generalized review by attorneys is no substitute for an exercise of professional judgment with respect to particular consumer accounts, the record evidence WWR cites fails to support its assertions about the role its attorneys play in debt collection. And even if WWR properly substantiated its assertions, none of these facts creates a genuine dispute as to any material fact precluding summary judgment in favor of the Bureau. Even considering WWR's unsupported assertions, the end result is the same: WWR's debt collection letters convey to consumers that WWR attorneys are meaningfully involved in collecting the consumers' debt when that is not true. The Bureau is entitled to summary judgment in its favor as to liability on Counts I-III.

## ARGUMENT

### I. The Material Facts Are Not in Dispute.

None of the material facts underpinning the Bureau's claims are in dispute. WWR does not dispute, for example, that it is a debt collector under the FDCPA or a covered person under the CFPA, or that they collect consumer debt within the meaning of both statutes. Pl.'s Mot. Partial Summ. J. ("Pl.'s Mot."), Statement of Undisputed Facts ("SUF") ¶¶ 1-4, ECF No. 44.

Indeed, WWR's opposition does not dispute these and other material facts cited by the Bureau in support of its motion, and accordingly, those should be deemed admitted. *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992). Instead, WWR contends that the Bureau's motion paints an incomplete picture of the facts, Def.'s Opp. 1, but WWR is required to "produce evidence that results in a conflict of material fact to be solved by a jury" to defeat the Bureau's motion. *Johnston v. MidFirst Bank*, No. 5:14-CV-466, 2015 WL 5175147, at *3 (N.D. Ohio Sept. 3, 2015) (quoting *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995)). WWR has not done so here.

## II. WWR's Demand Letters Violate the FDCPA and the CFPA.[1]

### A. WWR's Firm-Signed Demand Letters Convey to Consumers that an Attorney Was Meaningfully Involved in Collecting their Debts.

In its opening papers, the Bureau established that WWR's form demand letters—which are printed on letterhead listing the firm's name, identify WWR as "ATTORNEYS AT LAW," are signed by the firm, and, in certain instances, refer to WWR as a "law firm"—convey as a matter of law to consumers that an attorney is meaningfully involved in collecting those consumers' debts. Pl.'s Mot. 12-14. WWR cannot credibly contend otherwise.

---

[1] WWR's opposition addresses the Bureau's CFPA claims under the "least sophisticated standard" applicable to the Bureau's FDCPA claim, asserting that the analysis is the same. Def.'s Opp. 8. Accordingly, the Bureau focuses its arguments in this reply memorandum on whether WWR's demand letters misrepresent to consumers that an attorney is meaningfully involved in the collection of those consumers' debts without distinguishing among its FDCPA and CFPA claims. The Bureau respectfully refers the Court to its motion for summary judgment for a more fulsome analysis of its stand-alone deception claim in Count III, including application of the reasonable consumer standard under the CFPA. *See* Pl.'s Mot. 16-18.

### 1. ***Sheriff v. Gillie* did not overrule decades of case law establishing that letters like WWR's mislead consumers about meaningful attorney involvement.**

WWR contends that, because its demand letters do not identify any individual attorney, do not expressly state that a lawyer reviewed the individual consumer's account, and are not signed by an attorney, its letters do no more than convey to consumers that a law firm sent a collection letter. Def.'s Opp. 9. WWR further argues that the Supreme Court's decision in *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016), "changed the landscape" by implicitly reversing ample case law from across the Circuits holding law firms liable for misrepresenting attorney involvement in collections communications. Def.'s Opp. 9.

WWR places more weight on the import of *Sheriff* than that case can bear. The question before the Court in *Sheriff* was whether a private law firm's use of the Ohio Attorney General's letterhead to collect the latter's debt in its capacity as special counsel falsely represented to consumers that the letter was from the Ohio Attorney General. 136 S. Ct. at 1600-01. In holding that the letters were not false or misleading in violation of § 1692e of the FDCPA, the Court observed that the letterhead truthfully identified the special counsel's affiliation to the Ohio Attorney General on whose behalf it sent the letters, noting that "the communication alerts the debtor to both the basis for the payment obligation and the official responsible for enforcement of debts owed to the State, while the signature block conveys who the Attorney General has engaged to collect the debt." *Id.* at 1601. The wholly distinct question whether a demand letter on law firm letterhead implies meaningful involvement by an attorney in the collection of that debt was not before the Court in *Sheriff*. Thus, WWR's contention that *Sheriff* "makes clear that a milquetoast letter on law firm letterhead does *nothing more* than identify the letter's sender," Def.'s Opp. 9 (emphasis added), extends *Sheriff* beyond its narrow holding.

Contrary to WWR's assertion that the Bureau's action seeks "a vast expansion of [FDCPA] law," Def.'s Opp. 14, courts categorically hold that, in the absence of any disclosures affirmatively stating otherwise, a demand letter on attorney or law firm letterhead implies that an attorney "has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action." *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002) (citations omitted); *see also Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005) ("A letter sent on law firm letterhead, *standing alone*, does represent a level of attorney involvement to the debtor receiving the letter."); *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 1003 (3d Cir. 2011); *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993); *Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173, 1177-78 (D. Minn. 2011); *Semper v. JBC Legal Grp.*, No. C04-2240L, 2005 WL 2172377, at *2 (W.D. Wash. Sept. 6, 2005). In *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, the Sixth Circuit likewise concluded that a demand letter from a law firm implied a certain degree of attorney involvement, although it remanded to the court below to consider whether references to non-attorney debt collectors undermined the impression conveyed by the letter's "repeated references to a law firm." 518 F.3d 433, 440-41 (6th Cir. 2008). There is no evidence that WWR's form demand letters contain any similar contradictory references, nor does WWR controvert the Bureau's evidence that WWR's letters are not meaningfully distinguishable from those held by other courts to imply that an attorney is meaningfully involved in the collection of those consumers' debts.[2] Indeed, WWR's opposition fails even to

[2] WWR appears to believe the fact that its letters "are not signed by an attorney" is dispositive of the Bureau's claims, Def.'s Opp. 11, but that argument overlooks cases cited by the Bureau that have held similar demand letters from *law firms* to imply individual attorney involvement in the (continued)

acknowledge the precedent cited by the Bureau, instead asking the Court to hold that *Sheriff* silently overruled decades of precedent on an issue that was not before the Supreme Court.

WWR cites no court (and the Bureau is not aware of any) that interprets *Sheriff* as implicitly overruling the well-established case law interpreting and applying § 1692e(3)'s prohibition on falsely implying that a communication is "from" an attorney. WWR's reliance on *Moorer v. U.S. Bank NA*, No. 3:17-cv-56, 2018 WL 587319 (D. Conn. Jan. 29, 2018), and *Daniels v. Solomon & Solomon, P.C.*, No. 17-0757, 2017 WL 3675400 (E.D. Pa. Aug. 25, 2017), misses the mark. The *Moorer* court, in evaluating the *pro se* plaintiff's allegation that the subject law firm "falsely represented that it was acting in an attorney's capacity, when it was, in fact, acting as a debt collector," held only that the subject law firm did not misrepresent its affiliation with the trust for which it was collecting debt or use a name other than its true name on its demand letter. 2018 WL 587319, at *19. The court did not, however, consider whether the demand letter falsely implied attorney involvement. And, unlike WWR's form demand letters, the demand letter in *Daniels* made no reference to attorneys and did not identify the defendant as a law firm. *See Daniels*, 2017 WL 3675400, at *4.

**2. Dr. Goodstein's expert report further confirms that WWR's letters are misleading.**

Though the Court need not even consider it to find WWR's letters misleading, Dr. Goodstein's expert report reinforces why courts have held as a matter of law that demand letters on law firm letterhead like WWR's imply to consumers that an attorney reviewed their debt. Dr. Goodstein carefully designed a survey to isolate and identify the impact of "certain law-identifying aspects of the letter, such as the use of 'LPA' and 'Attorneys at Law'" on WWR's

---

collection of those debts. *See, e.g.*, *Lesher*, 650 F.3d at 1003; *Cordes*, 789 F. Supp. 2d at 1178 n.6.

form demand letters. *See* Pl.'s Mot. Ex. 24, Ex. A at 39. Approximately 38.2% of respondents who viewed a letter modeled after WWR's initial demand letters believed that an attorney reviewed their account before sending the letter, while approximately 22.6% of consumers who viewed the same letter believed an attorney sent them the letter.[3] Pl.'s Mot. SUF ¶¶ 33, 35. WWR presents no evidence calling into question these conclusions or suggesting consumers receiving WWR's letters are not led to believe that an attorney is involved in collecting the consumer's account. Accordingly, the Court should accept these facts as uncontroverted—not to mention consistent with the ample case law on which the Bureau relies—on the question whether WWR's form demand letters lead consumers to believe that the letters are from an attorney and that an attorney has reviewed their debts. *See Guarino*, 980 F.2d at 410.

WWR's argument that Dr. Goodstein's consumer survey failed to address "the relevant legal questions" to "conclude that [WWR's] letters did not falsely imply attorney involvement," Def.'s Opp. 16, faults Dr. Goodstein for failing to opine on matters beyond the scope of his report. Specifically, WWR's complaint that the Bureau "cites no case in which a court relies on survey data to determine whether a lawyer was sufficiently involved in sending out a letter," Def.'s Opp. 16, ignores the survey's purpose. The Bureau offers Dr. Goodstein because he is an expert in consumer surveys and constructed a consumer survey demonstrating that a significant minority of consumers form the impression, upon reviewing WWR's letter, that an attorney reviewed their account and sent them the letter. *See ECM BioFilms, Inc. v. FTC*, 851 F.3d 599, 611-12 (6th Cir. 2017) (accepting consumer survey as substantial evidence supporting FTC's

[3] In fact, over 50% of respondents who reviewed the same letter believed that a legal entity—whether law firm, attorney, or legal services organization—sent the letter. Pl.'s Mot. Ex. 24, Ex. A ¶ 46.

finding that entity's representation conveyed an implied claim to consumers). The Court should therefore reject WWR's argument.

**3. WWR cites no other evidence or case law precluding summary judgment in the Bureau's favor.**

WWR's remaining arguments are unavailing. WWR contends its demand letters are not misleading because portions of the text of those letters track § 1692g of the FDCPA, a provision imposing certain obligations on debt collectors to validate debts. 15 U.S.C. § 1692g. But whether WWR complies with § 1692g has no bearing on the Bureau's claims that WWR's demand letters imply to consumers that an attorney sent them the letter in violation of § 1692e(3) and (10). And its argument that "a consumer would likely not even have standing to bring this case," Def.'s Opp. 12 (citation omitted), is false and elides the "important distinction … between … a private enforcement action" to recover damages and a government action to enforce violations of the law and vindicate the public interest. *See SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012).[4] The Bureau does not need to show consumer harm to prevail on its claims. *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) (holding that FTC was not required to prove consumers were deceived to prevail on misrepresentation claim in part because agency

[4] During discovery, WWR objected on relevance grounds (among others) to producing information in response to the Bureau's interrogatories about consumers to whom WWR sent demand letters. *See* Pl.'s Mot. Ex. 23 (Def.'s Amended Responses to Interrogs. 4-6); *Id.* Ex. 13 (Def.'s Amended Response to Interrog. 2) ("WWR attorneys do not routinely review individual accounts before an initial demand letter is issued … Thus, the Bureau does not need access to the millions of consumer debts on which WWR has attempted collection."). Now, WWR seeks to defeat summary judgment by arguing that the Bureau did not point to any individual consumer harmed by WWR's violations. Def.'s Opp. 12. The Court should not permit WWR to wield against the Bureau the absence of evidence it now contends is relevant resulting from its refusal to produce the requested information in discovery. "To allow otherwise would create something akin to the sword/shield problem that arises in the context of privilege disputes … This would be deeply unfair." *United States ex rel. Bibby v. Mort. Inv'rs Corp.*, No. 1:12-CV-4020-AT, 2017 WL 8218975, at *2 (N.D. Ga. Aug. 25, 2017) (citation omitted).

action "serves a public purpose") (citations omitted); *see also FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 633 (6th Cir. 2014) (noting that FTC is not required to show actual consumer deception to prove deceptive act or practice in violation of section 5 of FTC Act).

### B. WWR Attorney Participation in its Client Onboarding Process Does Not Constitute the Meaningful Involvement Necessary to Make WWR's Form Demand Letters Not Misleading.

The evidence is undisputed that WWR attorneys do not review account-level information or determine that the balance stated is due and owing for any particular debt. Pl.'s Mot. 14 (citing Pl.'s Mot. SUF ¶¶ 27, 29-31). Nor do they form a professional judgment that sending a demand letter to any particular consumer is appropriate or make the decision to send demand letters to individual consumers. *Id.* Moreover, WWR is unable to identify any particular account for which its attorneys may have reviewed account-level documentation before sending a demand letter. *Id.* Further, the Bureau established that attorney oversight of WWR's collection process (including creation of its collection policies and procedures) and the use of automated processes to exclude certain accounts from collection were not adequate substitutes for the requirement that an attorney be meaningfully involved in the collection of an individual consumer's debt to avoid running afoul of the FDCPA's proscription against falsely representing that a demand letter is from an attorney. *Id.* at 15-16.

The Bureau's facts are undisputed. WWR has not and cannot point to contrary evidence in the record "for a jury to return a verdict" in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). Rather, WWR's opposition asserts that the Bureau is not entitled to summary judgment because the factual record regarding the lack of involvement by WWR attorneys in sending demand letters to consumers is incomplete. Def.'s Opp. 14. WWR cites no case law to support its argument that an "incomplete" factual record warrants a denial of

summary judgment for the Bureau. The Bureau's opening motion established facts supporting each element of its claims. WWR's opposition makes clear that there is no dispute as to those facts.

The crux of WWR's arguments is—while not challenging the facts that its attorneys are not meaningfully involved at the account level—that its attorneys are sufficiently involved because they created the processes for debt collection and participate in high-level client intake discussions that sometimes take place years before collection activity on certain accounts. *See* Ex. 1, Pona Dep. 152:22-25; 169:18-25.[5] Specifically, WWR contends its attorneys' "professional judgments about groups of accounts that share certain characteristics that are central to the potential legal issues relevant to the portfolio in question," Def.'s Opp. 4, constitute sufficient involvement. But the additional facts WWR introduced concerning attorney oversight of the collection process and evaluation of certain characteristics at the portfolio level are both immaterial and do not create a genuine dispute as to the undisputed fact that WWR "lawyers do not routinely review the information associated with every individual account before collection attempts are made." Def.'s Opp. 13-14. For example, WWR argues that its "lawyers oversee the use of technology to identify accounts that should be treated differently," Def.'s Opp. 13, in reference to an automated scrub process performed by a third party vendor to identify certain account characteristics—such as whether the consumer has filed for bankruptcy, is deceased, or is active military—for which WWR typically halts collection activity. Pl.'s Mot. SUF ¶¶ 14-15. But attorney oversight of the scrub process does not create "a conflict of material fact" regarding the lack of discretionary judgment in the automated process WWR uses to identify the

[5] Deposition transcripts are cited as "[Witness Name] Dep. [Page #]" and the exhibits include relevant excerpts. Full citations to deposition testimony are included in the exhibit list.

consumers who will not receive demand letters. *Johnston*, 2015 WL 5175147, at *3 (citation and internal quotations omitted). Nor does that oversight suggest the exercise of professional judgment over the debts for which WWR does send demand letters.

Indeed, there is no genuine dispute as to the following material facts (among others):

- WWR does not maintain policies requiring attorneys to review individual accounts prior to sending demand letters. Pl.'s Mot. SUF ¶ 26.

- WWR attorneys do not review demand letters populated with consumers' information before those letters are sent to consumers. *Id.* ¶ 28.

- WWR attorneys do not make any individual determination that the balance stated is due and owing before WWR sends demand letters to consumers. *Id.* ¶ 29.

- WWR attorneys do not form a professional judgment that a demand letter is appropriate for the particular account before WWR sends demand letters to consumers. *Id.* ¶ 30.

- WWR attorneys do not make decisions to send demand letters to individual consumers. *Id.* ¶ 31.

- During the client intake process in which new clients place debt with the firm or similar processes in which existing clients place debts with certain new characteristics, WWR attorneys review account-level documents for only a few accounts. They do not review account-level documents for any accounts that are not part of this subset. *Id.* ¶¶ 8-10.[6]

- WWR cannot defend this action by identifying any account that WWR's attorneys did review before the firm sent a demand letter. *Id.* ¶ 27.

- WWR does not require clients to provide account-level documentation for each account, nor do WWR attorneys review individual accounts to confirm whether information provided by clients for accounts placed electronically is accurate,

[6] WWR appears to dispute these facts as "simply untrue, if not self-contradictory," Def.'s Opp. 1, but it offers no "specific facts showing that there is a genuine issue [of material fact]" necessary to defeat summary judgment as to whether its attorneys form a professional judgment about accounts that are not part of the subset for which they review account-level documents. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Indeed, WWR agrees with the Bureau that its attorneys or staff review only "a subset of individual accounts …." Def.'s Opp. 3. Accordingly, the Court should treat those facts as uncontroverted.

> including whether the balance stated is due and owing, before WWR sends demand letters to consumers. *Id.* ¶ 11-12. WWR asserts that its attorneys "routinely review and base their professional judgments" on various data points and documentation, including account-level documents, Def.'s Opp. 4, but none of the record cites on which it relies supports an inference that WWR attorneys review account-level documents for any other than a small subset of accounts at the time of onboarding.[7]

WWR's opposition makes clear that the parties disagree not about the material facts, but rather about the legal import of those facts. Specifically, WWR argues that, without a bright-line rule articulated by courts about what constitutes meaningful attorney involvement, the Bureau cannot rely on WWR's concession that its attorneys do not review individual account information before collection efforts are made to establish that WWR's demand letters falsely imply that its attorneys are meaningfully involved.[8] Def.'s Opp. 12-13 (citing *Miller v. Wolpoff*

---

[7] *See* Ex. 2, Bitterman Dep. 26:24-27:13; 74:5-24 (clients may provide account-level documents at onboarding, an example of which is a credit card agreement); Ex. 1, Pona Dep. 70:18-71:11 (clients required to have—but not necessarily provide to WWR—certain account-level documentation); Ex. 3, Tommer Dep. 66:12-67:2 (referring to types of documents clients may provide when onboarding); Ex. 4, Head Dep. 58:10-60:6 (description of placement process for existing clients); 65:2-68:1 (discussing account-level documents clients may provide to WWR on request); 84:7-20 (referring to account-level review of subset of accounts); 149:20-151:21 (same). WWR also cites to a declaration by Eileen Bitterman, Def.'s Opp. 4, but neither her declaration attached to WWR's motion for summary judgment, ECF 45 at Ex. A, nor her September 25, 2017, declaration produced in discovery in this action, Pl.'s Mot. Ex. 7, supports WWR's contention that its attorneys routinely review various account-level data and documents.

[8] WWR's argument that the Bureau "does not point to a document, type of document, or data point that it claims [WWR's] lawyers do not sufficiently review … [or] to any specific account, type of account, client, or type of client in which [WWR's] lawyers are not sufficiently involved," Def.'s Opp. 13, ignores that it objected to producing this information on the grounds that it was not relevant. *See* Pl.'s Mot. Ex. 13 (Def.'s Amended Responses to Interrogs. 4-6); *Id.* Ex. 13 (Def.'s Amended Response to Interrog. 2). As explained in footnote 4, the Court should reject this argument. *Cf. Bibby*, 2017 WL 8218975, at *2 (refusing to allow defendants to use entity's "purported dealings with other companies to attack Relators' veil-piercing allegations, while precluding Relators from inquiring into those dealings under the 'shield' of irrelevance."). At any rate, the Bureau presented undisputed evidence of WWR's *practices* establishing that there is no meaningful attorney involvement. This, coupled with WWR's admission that it (continued)

*& Abramson, LLP*, 321 F.3d 292, 301 (2d Cir. 2003)). This argument rests on a misreading of *Miller* and its progeny. The *Miller* court declined to adopt a rule specifying the account-level documents attorneys are required to review because the attorney may have adopted practices making review of any particular document unnecessary. 321 F.3d at 311 (reversing summary judgment for defendant law firm and remanding the case for further proceedings, including discovery). "For example, an attorney and client could have established a practice whereby the attorney has specified that the entire payment history is to be included in the summary provided by a client." *Id*. at 304. Nonetheless, the Second Circuit observed that some involvement by an attorney *with a consumer's file* is necessary before a demand letter is "in compliance with" § 1692e(3) and § 1692e(10). *Id*. at 307 (citing *Nielsen*, 307 F.3d at 638). And on remand, the district court made clear that attorney review of portfolio-related information and oversight of automated processes of the sort that WWR describes, *see* Def.'s Opp. 13-14, does not cure a demand letter's misleading or deceptive representation stemming from "an attorney's failure to conduct an independent review of the particular circumstances of an individual debt collection letter." *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 102 (E.D.N.Y. 2009) (citation omitted).

Although WWR insists the holdings of the cases cited by the Bureau turn on "case-specific circumstances," Def.'s Opp. 14, courts assessing whether an attorney is "meaningfully involved" focus on whether those circumstances indicate "the sufficiency of the attorney's independent review of a *particular* case prior to the issuance of a debt collection letter." *See Miller*, 687 F. Supp. 2d at 102 (emphasis added); *see also Kistner*, 518 F.3d at 440 (attorney "did

---

cannot defend this action by pointing to any particular account that its attorneys did review, is dispositive.

not review [the consumer's] file, did not determine whether particular letters should be sent, and did not know the identities of the persons to whom the letters were sent"); *Clomon*, 988 F.2d at 1320 (attorney did not review letter or consumer's file ); *Nielsen*, 307 F.3d at 632, 636 (focusing on "individualized, discretionary assessment" by the attorney and finding that "none of the information that [the attorney] reviewed enlightened him as to the particular circumstances of a debtor and his account before he sent a delinquency letter to that debtor.") (citation omitted); *Young v. Citicorp Retail Servs., Inc.*, No. CIV 3:95CV1504 (AHN), 1997 WL 280508, at *5 (D. Conn. May 19, 1997) (finding that attorney did not review consumer's file or demand letter before it was mailed and rejecting argument that computerized account review was a valid substitute for attorney's personal review). Broadly speaking, courts require attorneys to exercise some professional judgment as to the delinquency and validity of the debt by reviewing the particular consumer's case to be "meaningfully involved."

Accordingly, the kind of portfolio-level oversight WWR claims its attorneys perform does not constitute meaningful attorney involvement. And even if the Court were inclined to consider any portfolio-level review as being relevant, WWR's description of its attorneys' involvement in its collection process is largely unsubstantiated and cannot be used to defeat the Bureau's summary judgment motion. Def.'s Opp. 13-14; *see Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) ("The court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence.") (citation omitted). For example, WWR's conclusory statement that its attorneys exercise professional judgment to "evaluate a portfolio of debt and verify the accuracy of representations that the client makes," Def.'s Opp. 13, is undermined by the record. At the time a portfolio is onboarded, WWR's review is limited to determine whether the debt is

time-barred, the identity of the consumer is correct, and that the balance information provided by WWR's client is loaded correctly into the firm's systems, and attorneys do not perform this review. *See* Ex. 3, Tommer Dep. 58:10-14, 59:17-60:4, 60:9-21, 61:17-20. Further, WWR's argument that its lawyers "review the various documents, data points, or exemplars that relate" to a portfolio and "us[e] their legal expertise" to determine whether any "variances are legally significant," Def.'s Opp. 13, is likewise unsupported. In fact, one of its witnesses testified that the shared characteristics of accounts in a portfolio are limited to information about the balance and the consumer attached to each account. Ex. 3, Tommer Dep. 77:5-11; *see also* Ex. 1, Pona Dep. 68:3-8 (stating that debts in portfolio do "[n]ot usually" share the same characteristics).

Thus, even without a bright-line rule, the record is clear that WWR's attorney involvement in the debt collection process falls short of what courts require to avoid liability under the FDCPA and CFPA. WWR does not maintain policies requiring attorneys to review individual accounts prior to sending demand letters. Pl.'s Mot. SUF ¶ 26. WWR attorneys do not review demand letters populated with consumers' information before those letters are sent to consumers. *Id*. ¶ 28. WWR attorneys do not make any individual determination that the balance stated is due and owing before WWR sends demand letters to consumers. *Id*. ¶ 29. WWR attorneys do not form a professional judgment that a form demand letter is appropriate for the particular account before WWR sends demand letters to consumers. *Id*. ¶ 30. And WWR attorneys do not make decisions to send demand letters to individual consumers. *Id*. ¶ 31.

WWR complains that the Bureau urges the "adoption of … a far reaching rule" that would require its attorneys to review "*all* the account-level information related to each consumer's file." Def.'s Opp. 14 (emphasis added). But the Bureau simply seeks to enforce established precedent requiring WWR's attorneys to review information for each account

sufficient to form a professional judgment that sending a demand letter is appropriate or to include a clear and prominent disclaimer that no attorney has reviewed the consumer's account. *Greco*, 412 F.3d at 365; *Miller v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 923 (N.D. Ohio 2011) (Nugent, J.) (holding § 1692e(3) claim lacked merit where law firm letter included "clear disclaimer of attorney evaluation."). Indeed the undisputed facts here establish that, save for a small subset of accounts in certain circumstances, WWR's attorneys generally do not review *any* individual account-level documents before WWR sends demand letters that do not disclaim attorney involvement to consumers. And WWR further concedes that it cannot defend this action by identifying "any particular account for which a WWR attorney may have reviewed account-level documentation before a demand letter was sent…." Pl.'s Mot. SUF ¶ 27. These undisputed facts establish that WWR's demand letters mislead and deceive consumers that attorneys are meaningfully involved in the collection of individual consumers' debts, in violation of the FDCPA and the CFPA.

Accordingly, the Court should grant summary judgment to the Bureau on Counts I-III of its complaint.

## CONCLUSION

For the reasons stated above, the Bureau's Motion for Partial Summary Judgment should be granted.

Dated: March 30, 2018

Respectfully submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau

KRISTEN A. DONOGHUE
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

/s/ Jehan A. Patterson

Jehan A. Patterson
Phone: (202) 435-7264
Facsimile: (202) 435-9346
Email: jehan.patterson@cfpb.gov
Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov
Zol D. Rainey
Phone: (202) 435-9483
Facsimile: (202) 435-9346
Email: zol.rainey@cfpb.gov
Rebeccah G. Watson
Phone: (202) 435-7895
Facsimile: (202) 435-9346
Email: rebeccah.watson@cfpb.gov

*Enforcement Counsel*

**Certificate of Compliance**

I hereby certify that this case has been assigned to the standard track. Pursuant to LR 7.1(f), this Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment adheres to the 20-page limitation set for memoranda relating to dispositive motions in standard track cases.

/s/ Jehan A. Patterson

Jehan A. Patterson
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-7264
Facsimile: (202) 435-9346
Email: jehan.patterson@cfpb.gov

## Certificate of Service

I hereby certify that on March 30, 2018, a copy of the foregoing Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and supporting papers was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Jehan A. Patterson

Jehan A. Patterson
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-7264
Facsimile: (202) 435-9346
Email: jehan.patterson@cfpb.gov