# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>    Plaintiff<br><br>    v.<br><br>WELTMAN, WEINBERG & REIS CO., L.P.A.,<br><br>    Defendant. | Civil Action No. 1:17-cv-00817<br><br>Judge Donald C. Nugent<br><br>Magistrate Judge William H. Baughman, Jr. |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE RICHARD CORDRAY AS WITNESS AND OTHER EVIDENCE RELATING TO RETENTION AND WORK AS SPECIAL COUNSEL TO THE OHIO ATTORNEY GENERAL**

Plaintiff Consumer Financial Protection Bureau (Bureau) moves this Court for a pre-trial ruling to exclude certain testimony and other evidence relating to practices of Defendant that are different from the practices at issue in this case. Specifically, the Bureau moves to exclude Richard Cordray as a witness, as well as other evidence relating to the Ohio Attorney General's retention of Alan Weinberg, then a shareholder of Defendant Weltman, Weinberg, & Reis Co., L.P.A.'s (WWR), as special counsel in 2009 and 2010 to collect debts on behalf of the State of Ohio.

1

**INTRODUCTION**

WWR has indicated it will call Richard Cordray as a witness at trial. Mr. Cordray was the Attorney General of Ohio in 2009 and 2010 when that office retained Mr. Weinberg to collect debts owed to the State of Ohio (State) as special counsel. Mr. Cordray subsequently became the Director of the Bureau, where he authorized the filing of this lawsuit against WWR.

The prospect of Mr. Cordray testifying is problematic for several reasons. First, there is a significant risk of confusion, undue delay, or unfair prejudice if Mr. Cordray were to testify regarding WWR practices that are different from those at issue here. Assuming such evidence would even be relevant, Mr. Cordray's testimony regarding practices he encountered as Ohio Attorney General could easily be confused by the jury with the practices at issue here. The jury likewise could confuse evidence of WWR's alleged belief that its collection of the State's debts using different practices and different letters was compliant with the law to find either that WWR is not liable for its collection letters and practices in this action or that the amount of any civil money penalty should be reduced.

Second, at the deposition of Mr. Cordray, a lay witness, WWR's counsel asked questions regarding his opinion on whether collection letters on Ohio letterhead to collect the State's debts and the WWR letters at issue here mislead consumers, as well as questions that required an interpretation of the FDCPA and CFPA. Any attempt to elicit Mr. Cordray's opinion on these questions of law at trial should be rejected.

Finally, certain lines of questioning during Mr. Cordray's deposition also suggest that WWR intends to elicit testimony concerning Mr. Cordray's basis for authorizing both this action and the preceding investigation of WWR when he was Director of the Bureau. Evidence on these subjects, in addition to being irrelevant, is protected from disclosure by various privileges and

2

the attorney work product doctrine.

Therefore, the Court should exclude Mr. Cordray as a witness and bar WWR from introducing any evidence relating to Mr. Weinberg's work as special counsel to collect the State's debts.

## LEGAL STANDARD

Only relevant evidence—that which has "any tendency to make a fact more or less probable than it would be without the evidence"—is admissible. Fed. R. Evid. 401, 402. Although the standard for relevance is "extremely liberal," *United States v. Whittington*, 455 F.3d 736, 738-39 (6th Cir. 2006) (citation omitted), the Court nonetheless may exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Prod. Design Servs., Inc. v. Sutherland-Schultz*, No. 3:13-cv-338, 2015 WL 1879975, at *3 (S.D. Ohio Apr. 23, 2015) (citing Fed. R. Evid. 403).

With respect to a lay witness's opinion, Federal Rule of Evidence 701 limits such an opinion "to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." All three prongs of Rule 701 must be satisfied by the proponent of such testimony for the evidence to be admissible. *See United States v. Kilpatrick*, 798 F.3d 365, 379 (6th Cir. 2015) (citation omitted).

Privileged testimony should also be excluded. *See* Fed. R. Evid. 501 (providing that federal common law privileges generally apply in federal cases). The attorney-client privilege protects from disclosure confidential communications by a client to his attorney the purpose of which is to obtain legal advice. *See United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964)

3

(citing 8 Wigmore, Evidence § 2292, at 554 (1961)). The attorney work-product doctrine, which applies to attorney work product compiled in anticipation of litigation, "operates for a similar purpose [as the attorney-client privilege]: that is, that people should be free to make requests of their attorneys without fear, and that their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties." *In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006). The deliberative process privilege applies to information that is "predecisional and deliberative, prepared to assist an agency decision maker in arriving at his decision." *EEOC v. Presrite Corp.*, No. 11 CV 260, 2012 WL 4434055, at *3 (N.D. Ohio Sept. 24, 2012) (citation omitted).

## ARGUMENT

**I.  Evidence Relating to Mr. Weinberg's Appointment and WWR's Collection of the State's Debts Is Likely to Confuse and Mislead the Jury, Waste Time, and Unfairly Prejudice the Bureau.**

The Court should exercise its discretion to exclude evidence relating to Mr. Cordray's 2009 and 2010 appointments of Mr. Weinberg as special counsel when he was the Ohio Attorney General. This evidence relates to a different WWR unit than the one at issue in this action, different collection letters, and relates to conduct that occurred before the period covered by this action. Because this evidence will confuse the jury, unfairly prejudice the Bureau, and waste time, it should be excluded. The Court should likewise exclude evidence of the Ohio Attorney General's 2009-2010 collection practices, which WWR apparently wants to use to argue that its own post-2011 collection practices do not violate the FDCPA or CFPA. This evidence presents even more likelihood of juror confusion – this trial should be focused on WWR's practices since 2011, not the 2009-2010 practices of a non-party.

Courts apply Rule 403 to exclude evidence relating to different conduct, practices, or events because of the significant risk of confusion to the jury and of delay in the proceedings,

4

notwithstanding any limited probative value such evidence might have. In *In re Air Crash Disaster*, 86 F.3d 498, 530-31 (6th Cir. 1996), the Sixth Circuit held that the district court did not abuse its discretion in excluding under Rule 403 evidence relating to "different model flight directors used on heavier planes with different engines," because of the potential for jury confusion, even though the Court of Appeals disagreed with the district court's conclusion that the evidence was also inadmissible for impeachment purposes. Evidence of different events or conduct that occurred earlier in time than the ones in dispute likewise is inadmissible for similar reasons. *See Tate & Lyle Americas LLC v. Glatt Air Techniques, Inc.*, No. 13-2037, 2016 WL 9686135, at *7 (C.D. Ill. Dec. 10, 2016) (confirming, on defendant's motion for a new trial, that nothing at trial changed court's earlier decision to exclude evidence of a fire that "occurred 7 years apart, in [a] different location[], under very different circumstances" than the equipment fire at issue in the case); *Johnson v. Fed. Express Corp.*, No. CV-14-02428-PHX-DCG, 2016 WL 4448757, at *2 (D. Ariz. Aug. 24, 2016) (granting motion in limine to exclude marginally relevant evidence of "an alleged violation of a policy not at issue in this case, in a different office and region" because introduction of evidence would "consume valuable trial time" on unrelated issues); *DeAngelis v. City of Bridgeport*, No. 3:14-cv-01618 (JAM), 2018 WL 429156, at *4 (D. Conn. Jan. 15, 2018) (excluding evidence of disability-related discrimination occurring years earlier involving different supervisor and different factual allegations than those that formed the basis of gender discrimination case against employer).

These principles make clear that evidence relating to Mr. Weinberg's retention as special counsel in 2009 and 2010 should be excluded.

**A. Evidence regarding WWR's collection of the States debts in 2009 and 2010 would only confuse the jury because WWR used different practices and different letters not at issue in this action.**

To collect the State's debts, WWR utilized its AG Collection Program, a different unit than the agency collection unit that is the focus of this case. Ex. 1, Bitterman Dep. 253:16-18; Ex. 2, Pona Dep. 209:7-20. The AG Collection Program that collected debt for the State sent demand letters to consumers on Ohio Attorney General letterhead, prominently featuring Mr. Cordray's name and title as Ohio Attorney General, that were signed by Mr. Weinberg as special counsel, and with different content than the letters at issue in this case. Def.'s Mot. for Summ. J., ECF No. 45, Ex. A, Attach. 2; Ex. 3, Cordray Dep. Ex. I. Further, WWR's collection on behalf of the State in 2009 and 2010 involved demand letters and practices that preceded the period covered in this action, which is July 2011 forward.

So while the question for the jury is whether WWR's practices and collection letters that are the subject of this action violate the FDCPA and CFPA, WWR has made clear that it wants to redirect the jury to extraneous evidence relating to *other* practices and *other* letters that a different WWR unit used in 2009 and 2010. Any probative value of evidence relating to WWR's collection of the State's debts is significantly outweighed by the likelihood that the jury would confuse those letters and practices with the letters and practices at issue in this case. The Sixth Circuit has held in similar circumstances that exclusion under these circumstances is appropriate, notwithstanding any marginal relevance evidence. *See In re Air Crash Disaster*, 86 F.3d at 531 ("Though not irrelevant, the exhibits in question were of marginal probative value, because they related to different model flight directors used on heavier planes with different engines. The exhibits would have complicated the proceedings, and could easily have confused the jury.").

6

### B. Evidence regarding the Ohio Attorney General's collection practices is even further afield and would confuse the jury and waste time.

Somewhat relatedly, WWR may want to call Mr. Cordray to testify regarding the collection practices of the Ohio Attorney General itself, *see* Ex. 3, Cordray Dep. 124:20-23 and Ex. I, apparently to argue that if the office of the Ohio Attorney General's practices did not violate the FDCPA back in 2009 and 2010, then this must mean that WWR has also not violated the FDCPA since 2011. But any collection practices of the Ohio Attorney General to which Mr. Cordray could testify would be nearly a decade old by the time of trial. This testimony would only confuse the jury, which should be assessing whether *WWR's* collection practices since July 21, 2011, violate with the FDCPA and CFPA, not hearing testimony regarding the decade-old collection practices of a non-party.

And the relevance (if any) of evidence of the practices the Ohio Attorney General used to collect the State's debts is significantly outweighed by the likelihood that the jury would be confused as to whether the Ohio Attorney General's practices serve as a benchmark by which to measure WWR's compliance with either the FDCPA or CFPA. They do not. "[P]racticing within industry standards is not a defense to the FDCPA." *Boatley v. Diem Corp.*, No. CIV. 03-0762-PHX-SMM, 2004 WL 5315892, at *3 (D. Ariz. Mar. 24, 2004)).[1] Moreover, introducing evidence of the manner in which the Ohio Attorney General engaged in debt collection during Mr. Cordray's tenure nearly a decade ago would unduly delay the trial and waste time, especially because that evidence is irrelevant to the jury's consideration of WWR's consumer debt collection practices. *See Johnson*, 2016 WL 4448757, at *2 (acknowledging waste of "valuable

---

[1] Perhaps even more fundamentally, the Attorney General of Ohio is not a "debt collector" subject to the requirements of the FDCPA. *See* 15 U.S.C. § 1692e(6)(C) (excluding from the definition of "debt collector" any officer of any State to the extent that collecting debts is in the performance of his official duties).

trial time" as valid reason to exclude under Rule 403).

Calling Mr. Cordray to testify about the collection practices of the Ohio Attorney General will unnecessarily complicate the proceedings and risk confusing the jury. This testimony should be excluded. This is especially the case when this evidence is, at best, of questionable relevance.

### C. Evidence that the Ohio Attorney General did not identify concerns with WWR's collection practices in 2009 and 2010 would likewise only confuse the jury and should be excluded.

Finally, evidence that the Ohio Attorney General never identified any concerns with WWR's collection practices or demand letters in 2009 or 2010 when Mr. Weinberg was special counsel likewise should be excluded. *See* Ex. 3, Cordray Dep. 84:21-85:3, 96:13-19. Even assuming WWR's letters and practices to collect the State's debts were the same as the letters and practices at issue here (and they are not), the approval of a state official "is irrelevant to the operation of [a] federal regulatory scheme." *See Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1144 (9th Cir. 1978). And, in any event, "representations or assurances by state or local officials lack the authority to bind the federal government" to interpretations of federal law. *United States v. Ormsby*, 252 F.3d 844, 851 (6th Cir. 2001) (citation omitted). Moreover, WWR has pointed to no evidence suggesting that the Attorney General of Ohio (or any official) approved the WWR practices or letters at issue in this action.

Further, there is a significant risk that evidence regarding the Ohio Attorney's failure to express concerns with WWR's practices in 2009 or 2010 will mislead the jury to interpret the Ohio Attorney General's silence as an "imprimatur of government approval," and thus place on it "greater weight than [it] should otherwise be accorded, thus usurping the role of the jury as a factfinder." *Roberts v. Wal-Mart Stores, Inc.*, No. 95-0059-H, 1997 WL 38138, at *2 (W.D. Va. Jan. 28, 1997) (excluding Equal Employment Opportunity Commission determination letter); *see also Miller v. Tyco Electronics, Ltd.*, No. 1:10-cv-2479, 2012 WL 5509710, at *2 (M.D. Pa. Nov.

8

14, 2012) (excluding state agency's finding of no probable cause to prosecute plaintiff's discrimination charge because "[w]hether plaintiff suffered unlawful discrimination … are issues within the province of the jury" and not the state agency).

And to the extent that the Ohio Attorney General's lack of objection to WWR's collection practices is evidence of WWR's belief that its practices comply with the FDCPA, *see* Ex. 3, Cordray Dep. 121:23-122:4 (WWR counsel: "If you do things exactly the way the Attorney General said was fine and they never tell you to change it, how in the world can [the Bureau] establish we engaged in intentional misconduct?"), the jury is likely to be confused as to whether WWR's purported belief is competent evidence regarding the "good faith" factor that would mitigate any civil money penalty in this action. 12 U.S.C. § 5565(c)(3)(A) (including evidence of defendant's "good faith" as a mitigating factor in the assessment of CMPs). But there is a risk of confusion if WWR points to evidence in support of its purported belief that it complied with the FDCPA when it collected the State's debts in 2009 and 2010, which could lead a jury to believe such evidence could also support a good faith belief that the demand letters at issue here did not mislead consumers.[2] *See Volvo Trucks N. Am., Inc. v. United States*, No. Civ. 1:01CV00416, 2003 WL 223421, at *4 (M.D.N.C. Jan. 30, 2003) (instructing that good faith must be assessed against plaintiff's compliance with a particular obligation imposed by a regulation, rather than "compliance generally" with the law). Accordingly, any probative value is significantly outweighed by the danger that the jury will improperly consider evidence of WWR's alleged good faith with respect to its collection of the State's debts to recommend a

---

[2] The CFPA did not go into effect until July 21, 2011, so WWR cannot credibly argue that the Attorney General's failure to articulate concerns regarding WWR's debt collection practices in 2009 or 2010 means that WWR is entitled to assume that its practices also complied with the CFPA. Accordingly, the risk of jury confusion by this evidence substantially outweighs its probative value.

9

reduction in civil money penalties assessed for WWR's misrepresentations and deceptive conduct in this action.

Accordingly, the Court should exclude evidence of Mr. Weinberg's retention as special counsel and any testimony from Mr. Cordray under Rule 403.

**II.     Mr. Cordray's Opinion of WWR's Demand Letters or Whether WWR's Attorneys Are Sufficiently Involved Is Inadmissible Under the Lay Witness Rule.**

During this litigation, WWR has argued that Mr. Cordray's opinion of the legality of WWR's demand letters to collect the State's debts is relevant to the disposition of the Bureau's claims. Def.'s Opp. to Pl.'s Mot. for Protective Order 8, ECF No. 22; *see also id.* 10 ("[WWR] is also entitled to inquire whether the letters that serve as the basis for the Bureau's complaint are any different."). During Mr. Cordray's deposition, WWR also sought to elicit Mr. Cordray's opinion of whether WWR's attorneys are required to review individual accounts prior to WWR's issuance of a demand letter to avoid liability under the FDCPA and CFPA. *See* Ex. 3, Cordray Dep. 79:1-5 ("[W]as it appropriate for someone to send out letters on your letterhead with your name on it without a lawyer having looked at the account level detail?"). Any opinion testimony by Mr. Cordray would violate the lay witness rule.

"The function of lay opinion testimony is to 'describ[e] something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event.'" *Kilpatrick*, 798 F.3d at 379 (quoting *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013)). Nor may "[a] witness, lay or expert, … form conclusions for a jury that they are competent to reach on their own." *Freeman*, 730 F.3d at 597 (citing *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988)). In *Freeman*, the Sixth Circuit held that the district court abused its discretion by admitting the testimony of a government agent who "effectively spoon-fed his interpretations of

10

… even ordinary English language" to the jury, thus infringing "upon the role of the jury to decide what to infer from the evidence." *Id.* at 597-98.

Those considerations warrant preclusion of Mr. Cordray's opinion testimony regarding whether the letters to collect the State's debts or the letters at issue in this action are misleading, or whether the lack of review by WWR attorneys of any individual accounts before sending demand letters violates the law. His opinion on whether WWR's demand letters lead consumers to believe that a WWR attorney was meaningfully involved in the collection of the consumer's debt would require him to construe ordinary English language references to WWR as a law firm comprising attorneys and discuss the import of WWR's name or the title of Ohio Attorney General on the letterhead. But Mr. Cordray's interpretation of the demand letters would not rely on his "sensory and experiential observations that were made as a first-hand witness" and thus would invade the province of the jury by making inferences the jury is competent to draw from WWR's letterhead and text of the demand letters, particularly from the perspective of the least sophisticated consumer. *See id.* at 595, 597-98 (citation omitted); *see also Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (observing that least sophisticated consumer standard applies to evaluating whether debt collector's communications are false, deceptive, or misleading).

Indeed, the significance of Mr. Cordray's opinion on whether WWR's practice not to have an attorney review individual accounts is appropriate under the FDCPA and CFPA rests not on his perception, Fed. R. Evid. 701, but rather on his former positions as both the Ohio Attorney General and the Bureau's Director. Those titles imply "an aura of expertise and authority [that] increases the risk that the jury will be swayed improperly by [his] testimony, rather than rely on its own interpretation of the evidence." *Freeman*, 730 F.3d at 599 (citation omitted); *see also*

*McClain v. Norfolk S. Rwy. Co.*, No. 3:07CV2389, 2009 WL 2004372, at *1 (N.D. Ohio June 29, 2009) (holding inadmissible lay opinion testimony by past and current railway workers on safety issue because "[t]he jury will see photos and hear from the plaintiff as to what happened. It, not lay witnesses, can and will draw the appropriate conclusion from the direct evidence."). The Court should thus exclude under Federal Rule of Evidence 701 Mr. Cordray's opinion testimony concerning whether he finds WWR's demand letters misleading and whether he believes WWR's collection practices violate the law.

### III. Evidence Relating to Mr. Cordray's Decision to Authorize the Bureau's Investigation of and Action against WWR is Privileged and Should Be Excluded at Trial.

In this litigation, WWR has suggested that the basis for Mr. Cordray's decision to authorize this action is relevant. *See e.g.*, Ex. 3, Cordray Dep. 104:10-12 ("What do you recall about the letters … that you found to be illegal behavior?"). Mr. Cordray's testimony and other evidence responsive to these lines of questions are protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the attorney work product doctrine.

During his deposition, Mr. Cordray testified that his approval of the Bureau's complaint in this action was based "on a recommendation memo that would have laid out [the Bureau's attorneys'] understanding … of the facts they had investigated in the matter and their understanding of … how the law stands in terms of what the significance of those facts are." Ex. 3, Cordray Dep. 101:16-102:1. Any evidence that WWR seeks to introduce regarding the Bureau's attorneys' understanding of the facts and the application of the law to those facts, as well as their legal advice to Mr. Cordray concerning how to proceed against WWR, falls squarely within the scope of the attorney-client privilege, which protects "communications necessary to obtain legal advice," *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986),

12

and the deliberative process privilege, *Presrite*, 2012 WL 4434055, at *3 ("Conclusions, interpretations, impressions, or recommendations formulated by the investigator are subject to the privilege." (citation and internal quotations omitted)). WWR also attempted to elicit information from Mr. Cordray concerning his mental impressions and the Bureau's preparation of the filing this action. *See* Ex. 3, Cordray Dep. 105:1-3 ("Is there anything … about the sending of the letters that isn't set forth in the complaint?"). Moreover, evidence concerning whether and why Bureau did not include facts discovered during its investigation in the complaint against WWR, implicates the Bureau's litigation strategies and thus is shielded from disclosure by the attorney work product doctrine.[3]

Accordingly, the Court should hold inadmissible privileged information relating to Mr. Cordray's decision to authorize this action against WWR.

## Conclusion

For the reasons set forth above, the Bureau's motion in limine should be granted and the Court should exclude Richard Cordray as a witness and evidence relating to WWR's practices and work relating to the firm's collection of the State's debts. Should the Court permit Mr. Cordray to testify, the Court should hold inadmissible privileged information regarding his decision to authorize the Bureau's action against WWR.

---

[3] Further, if in seeking evidence related to information acquired by the Bureau during the investigation that preceded this lawsuit, WWR seeks information related to the Bureau's law enforcement techniques and procedures, that information may also be protected by the law enforcement privilege. *See In re Dep't of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988) (observing that law enforcement privilege prevents "disclosure of law enforcement techniques and procedures, … preserve[s] the confidentiality of sources, … and otherwise … prevent[s] [the] interference with an investigation." (citation omitted)).

Dated: April 20, 2018

    Respectfully submitted,

    Attorneys for Plaintiff
    Consumer Financial Protection Bureau

    KRISTEN A. DONOGHUE
    Enforcement Director

    DEBORAH MORRIS
    Deputy Enforcement Director

    MICHAEL G. SALEMI
    Assistant Litigation Deputy

    /s/ Jehan A. Patterson
    Sarah Preis
    1700 G Street NW
    Washington, DC 20552
    Phone: (202) 435-9318
    Facsimile: (202) 435-9346
    Email: sarah.preis@cfpb.gov
    Zol D. Rainey
    Phone: (202) 435-9483
    Facsimile: (202) 435-9346
    Email: zol.rainey@cfpb.gov
    Rebeccah G. Watson
    Phone: (202) 435-7895
    Facsimile: (202) 435-9346
    Email: rebeccah.watson@cfpb.gov
    Jehan A. Patterson
    Phone: (202) 435-7264
    Facsimile: (202) 435-9346
    Email: jehan.patterson@cfpb.gov

    *Enforcement Counsel*

**Certificate of Service**

      I hereby certify that on April 20, 2018, a copy of the foregoing Motion in Limine and supporting papers was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

                                            /s/ Jehan A. Patterson
                                            Jehan A. Patterson
                                            1700 G Street NW
                                            Washington, DC 20552
                                            Phone: (202) 435-7264
                                            Facsimile: (202) 435-9346
                                            Email: jehan.patterson@cfpb.gov