IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,** <br><br> Plaintiff, <br><br> v. <br><br> **WELTMAN, WEINBERG & REIS CO., L.P.A.,** <br><br> Defendant. | Civil Action No. 1:17-cv-00817-dcn <br><br> Judge Donald C. Nugent <br><br> Magistrate Judge William H. Baughman, Jr. |

### DEFENDANT'S TRIAL BRIEF

In accordance with the Court's February 5, 2018 Civil Jury Trial Order, Defendant Weltman, Weinberg & Reis Co., LPA ("Weltman") hereby submits its Trial Brief in advance of the trial scheduled to begin on May 1, 2018.

### I.  INTRODUCTION

Weltman is a law firm that truthfully identifies itself as a law firm in communications to consumers when it collects debts on behalf of its clients.  Plaintiff the Consumer Financial Protection Bureau (the "CFPB") challenges this practice, alleging that Weltman's truthful identification of itself as a law firm violates the Fair Debt Collection Practices Act ("FDCPA") and the Consumer Financial Protection Act ("CFPA") because Weltman attorneys are not sufficiently involved in the collections process.  But while the CFPB's complaint asserts that Weltman's process is not enough, the CFPB does not identify the standard Weltman should meet—because (1) there is no universal standard and (2) what constitutes sufficient attorney involvement depends on the circumstances.  In any event, Weltman's attorneys design,

supervise, and participate in every step of the collections process. And the involvement of Weltman's attorneys is more than sufficient to satisfy the requirements of the law.

Prior to the filing of this Trial Brief, the CFPB represented to Weltman that it is abandoning Counts IV, V, and VI of the Complaint, each of which relates to Weltman's collection calls. The CFPB also represented to Weltman that it will no longer seek the remedy of disgorgement. In reliance on those representations, Weltman will not address the facts and law related to those issues here.

## II.   STATEMENT OF FACTS

### A.   Weltman's Robust Compliance Program

Weltman is a nearly ninety-year-old law firm headquartered in Cleveland, Ohio that focuses on creditors' rights. The firm is owned by its 25 shareholders (all of whom are attorneys) and managed by a Board of Directors, consisting of five of Weltman's most experienced shareholders. Weltman recognizes and embraces the importance of fulfilling its legal and ethical obligations under the requirements of stringent federal and state law governing debt collection. To that end, Weltman maintains a robust compliance management program operated through a Compliance Audit Department that is headed by an attorney shareholder with a staff including attorneys and with the capability of drawing upon the expertise of attorneys throughout the firm. Among the many services Weltman provides to its clients is collection of debts related to consumer credit legal obligations.

The Complaint focuses on one type of consumer debt collection—what Weltman refers to as "agency collection." These collections entail higher file volumes for large clients, many of which are heavily regulated financial institutions. Because Weltman is a law firm, all of its practices, processes, and procedures are designed and implemented under the constant supervision of experienced Weltman attorneys. Not only are these practices, processes, and

procedures consistent with the demands of the firm's sophisticated clients, but they must also adhere to the legal and ethical obligations of attorneys.  Moreover, Weltman's standard operating procedures are extensive, documented in writing, and evolve with changes in law and regulation.

In the agency collection context, Weltman begins its file evaluation and handling process with a series of conversations with the client.  In those conversations, Weltman attorneys and staff evaluate the characteristics of the accounts for which collection services are sought to make recommendations to the client about the appropriate collection activity.  During those discussions, Weltman requests examples of background documentation relating to the files.  Weltman's attorneys are recognized experts in debt collection; what they ask to review is based upon their professional judgment and the specific issues that relate to the types of files being handled.  For example, the handling of credit card matters involving a written contract or debt on an account could involve attorney analysis and evaluation of the terms and conditions that govern the credit card, the application that was provided to obtain the card, the last payment date on the account, and the availability of monthly account statements.  To identify any issues or concerns, the firm reviews a subset of accounts when a new client places a debt portfolio.  And an attorney from the Compliance Audit Department is always brought into conversations to address compliance issues at the outset.  If the client maintains individual customer account information electronically and can provide it to Weltman electronically (an "electronic placement"), Weltman's information technology support staff works with the client to facilitate electronic data transfers and test the data.

Weltman's attorneys, and staff supervised by attorneys, will continue to collect information from the client, review documentation, and test data until they are satisfied that the files are appropriate for collection.  When that process is completed, the electronic data is loaded

and a series of electronic "scrubs" take place both before collection activity is undertaken and throughout the collection process. Weltman's scrubs, designed by attorneys in accordance with governing law, identify bankruptcies, deaths, military service, and potential statute of limitations issues, because a "hit" on an account immediately affects the handling of that account based on the information that is received.

After Weltman has concluded this preliminary evaluation, an initial demand letter is generated from a template. The template is prepared by attorneys and approved by Weltman's Compliance Audit Department. That initial demand letter is calculated to advise the putative debtor that (1) the debt has been placed with Weltman for collection and (2) the consumer has specific rights under the FDCPA. This demand letter is sent on Weltman letterhead to accurately convey the facts that Weltman is a law firm that has been retained to collect the putative debt; no more, no less. The letter does not state that an attorney has reviewed the particular circumstances of the account, it does not mention any potential legal action, and it is not even signed by an attorney.

The template reads,[1] in its entirety:

> Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above. As of the date of this letter you owe the amount listed above. Therefore, it is important that you contact us at [phone number] to discuss an appropriate resolution for this matter.
>
> This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose. Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume the debt is valid. If you notify us in writing within the thirty (30) day period that the debt, or any

---

[1] An earlier version of this template, in effect no later than November 2013, read: "This law firm is a debt collector attempting to collect this debt for our client and any information will be used for that purpose."

portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to you. If you request in writing within the thirty (30) day period, we will provide you with the name and address of the original creditor if different from the current creditor.

Thank you for your attention to this matter.

Sincerely,

Weltman, Weinberg & Reis Co., L.P.A.

Most of the content of the letter comes from the FDCPA. The first two sentences provide the information required by 15 U.S.C. § 1692g(a)(1) and (2). The disclosure in the next paragraph that the communication is from a debt collector is nearly identical to the language of 15 U.S.C. § 1692e(11), and the rest of that paragraph contains the exact language required by § 1692g(a)(3)-(5). The only two sentences that are not required disclosures ask the recipient to contact Weltman and thank the recipient. The letter is milquetoast by design.

Weltman's reputation for creditors' rights representation has earned the trust of large clients in the private and public sectors for many years. Indeed, on July 1, 2009, Richard Cordray, the CFPB's former director, signed a certificate appointing Alan Weinberg of Weltman as Special Counsel to the Ohio Attorney General to collect debts for the State of Ohio. The process to obtain that appointment was a rigorous one, involving an 80-page response to a Request for Qualifications. Weltman's response included the names and curriculum vitae of each Weltman attorney that would assist in collecting debts, a "description of the scope of any past representation as Special Counsel," and a description of Weltman's experience and expertise in debt collection.

When he made his appointment, Mr. Cordray knew Weltman well. He knew that Weltman specialized in high volume placements, made innovative use of technology in its debt

- 5 -

NAI-1503615821v2

collection work, and had a non-attorney staff that was more than nine times the size of its attorney staff. Weltman truthfully represented to Mr. Cordray that, with approximately 100 attorneys, it attempted to collect nearly 730,000 debts in 2008. Mr. Cordray was aware that non-attorney collectors worked the files in tandem with Weltman's attorneys.

Following the same rigorous appointment process, Mr. Cordray appointed Mr. Weinberg again in 2010. And during the years Mr. Weinberg and Weltman collected debts on Mr. Cordray's behalf, their performance was reviewed quarterly by Mr. Cordray's office under a policy mandating nothing less than complete respect for the rights and reasonable expectations of the public.

During the representation, Mr. Cordray required that Mr. Weinberg use Ohio Attorney General letterhead to collect the State's debts. Mr. Cordray's name and the title "Ohio Attorney General" were centered in large font, and the letterhead provided the website for the Ohio Attorney General. Each letter advised that Mr. Weinberg was acting for "Richard Cordray, Attorney General of Ohio, for purposes of collecting the above account balance due and owing to the State of Ohio." The letters required that payment be made to "the State of Ohio." None of the letters advised the recipient that Mr. Cordray had not reviewed the recipient's file prior to the letter being sent on his letterhead.

After serving as Ohio Attorney General, Mr. Cordray was appointed chief of the CFPB's enforcement team in January 2011 and then its director in 2012.

B.   The CFPB's Investigation of Weltman's Debt Collection Practices

Before filing the Complaint, the CFPB conducted an extensive investigation of Weltman's practices. That investigation began nearly four years ago, in August 2014. The CFPB's investigation entailed four comprehensive Civil Investigative Demands, and Weltman cooperated completely, expending substantial time and resources to provide the CFPB with

answers to numerous interrogatories, numerous specialized reports, hundreds of thousands of pages of documents, over a million call recordings, and the sworn testimony of two Weltman shareholders.

### C. The CFPB's Knowledge of Weltman's Debt Collection Practices

Outside of investigating Weltman's practices directly, the CFPB has also received and investigated complaints from consumers. The CFPB began accepting complaints in 2011 and uses the complaint data "to do a better job supervising companies, enforcing federal consumer financial laws and writing rules and regulations."[2] Since July 2011, Weltman has sent over four million collection letters. And since 2011, the CFPB has received only about 500 complaints that in any way reference Weltman, a ratio of about one complaint for every 8,000 letters. In those 500 complaints and the investigation leading to and discovery taken in this lawsuit, the CFPB has not identified even one consumer who was harmed by Weltman's practice of identifying itself as a law firm.

Among the consumer complaints received by the CFPB relating to Weltman, two are significant here. The first was received on May 10, 2012 and the second in October 2013. Both complaints attached collection letters on Weltman's standard letterhead identifying the firm as "Attorneys at Law." The earlier letter specifically identified Weltman as a law firm. The CFPB responded to that letter in August 2012, telling the consumer that the CFPB had reviewed the complaint based on the federal consumer financial protection laws within its authority.

### D. Mitigating Factors Relating to Statutory Damages

Weltman has never had a finding by any court or government agency that it has violated the law. It has acted at all times in good faith, putting the highest priority on compliance with

---

[2] *See, e.g.*, https://www.consumerfinance.gov/data-research/consumer-complaints/ (accessed Feb. 23, 2018).

the law, its ethical obligations, and in dealing fairly with debtors. There is no consumer that has been harmed by Weltman's collection practices—no consumer has paid a debt that was not owed, no consumer has been misled, no consumer has been confused. Weltman has incurred substantial expenses to cooperate with the CFPB's investigation and defend itself in this lawsuit. The fact of the lawsuit has deterred clients and potential clients from doing business with Weltman, causing the firm to sustain substantial losses since the lawsuit was filed. If the maximum statutory penalty were imposed (approximately $13,000,000), the firm would collapse.

### III. THE CONTROLLING LAW

The premise of the CFPB's case is straightforward: the CFPB believes the collection letters Weltman sends to consumers misrepresent the level of attorney involvement in the collections process. Though the CFPB asserts claims arising under both the FDCPA and CFPA, all of those claims rely on the same premise and the same alleged conduct. There are therefore only two narrow issues before the Court. First, can the mere fact that Weltman's letters truthfully identify Weltman as a law firm be misleading under the FDCPA and CFPA? That issue is one of law, as the Supreme Court held in *Sheriff v. Gillie*, --- U.S. ---, 136 S. Ct. 1594, 1598 (2016). Second, if it is possible that, *Gillie* notwithstanding, truthfully identifying Weltman as a law firm requires "some degree of attorney involvement" to avoid liability under the FDCPA and CFPA, can the CFPB prove that there is a specific instance—based on the facts and circumstances of the particular debt at issue—where Weltman's robust process of evaluating debt portfolios is insufficient to constitute attorney involvement?

#### A. The Fair Debt Collection Practices Act

Congress enacted the FDCPA in response to reports of abusive practices by third-party collectors of consumer debts. *Gillie*, 136 S. Ct. at 1598. In so doing, Congress aimed not only "to eliminate abusive debt collection practices" and "protect consumers," but also to "insure that

those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). The FDCPA was not enacted to excuse consumers who amass unpaid debt. The FDCPA "bars debt collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts." *Gillie*, 136 S. Ct. at 1603.

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." And under FDCPA § 1692e(3), a debt collector may not falsely represent or imply that any communication is "from an attorney."[3]

The Sixth Circuit has applied a "least sophisticated consumer" standard to determine whether a debt collector's practice is deceptive or misleading under § 1692e. This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor," *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999), but it does not create a free-for-all. The standard "preserv[es] a quotient of reasonableness, prohibiting 'frivolous misinterpretations or nonsensical interpretations of being led astray.'" *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) (citing *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 514 (6th Cir. 2007)). The hypothetical least sophisticated consumer is "'uninformed, naive, and trusting, but possesses . . . reasonable intelligence, and is capable of making basic logical deductions and inferences.'" *Sanford v. Portfolio Recovery Assocs., LLC*, No. 12-11526, 2013 WL 3798285, at *12 (E.D. Mich. July 22, 2013) (quoting *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007)).

---

[3] The CFPB alleges that Weltman violated § 1692e(10)—which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt"—*because* Weltman allegedly violated § 1692e(3). Weltman will therefore not separately discuss § 1692e(10) here, since the determination of liability under § 1692e(3) will also resolve any questions under subsection (10).

Only material violations of Section 1692e can result in liability under the FDCPA. *Miller*, 561 F.3d at 596.  A technically false representation is "material" under the FDCPA only if it would mislead or confuse the least sophisticated consumer.  *See Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012).  A representation that would not influence the least sophisticated consumer's decision to pay a debt in response to a collection communication is not "material" and does not violate the FDCPA—even if it is false in some technical sense. *See, e.g.*, *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018); *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 627 (7th Cir. 2009); *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 969 (N.D. Ohio 2009), *modified on other grounds on reconsideration*, No. 3:08CV1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009).

The mere fact that a letter is written on law firm or attorney letterhead does not violate the FDCPA.  (ECF No. 61 at 4.)  Indeed, the United States Supreme Court recognized that and more when it reversed the Sixth Circuit's decision in *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091 (6th Cir. 2015), *rev'd by Sheriff v. Gillie*, 136 S. Ct. 1594 (2016).  In *Law Office of Eric A. Jones*, the Sixth Circuit reviewed an order granting summary judgment for the defendant law firm debt collector accused of sending misleading letters to consumers because of the letterhead that was used.  The Ohio Attorney General had retained the law firm as "special counsel" to collect the State's debts, and required the law firm to use the Attorney General's letterhead in communicating with consumers.

The defendant moved for summary judgment and the Sixth Circuit articulated the questions before it as (1) "whether an unsophisticated consumer could reasonably be misled into thinking she was being contacted by the Ohio Attorney General due to an independent contractor's use of OAG letterhead" and (2) "[i]f she could, we must also determine whether

there is a genuine dispute of material fact as to any confusion that could be created by this debt collection practice under the particular circumstances of this case." *Id.* at 1106. The Sixth Circuit determined that using the Attorney General's letterhead could be misleading and remanded the case for a jury to determine whether the letters were actually confusing to the least sophisticated consumer, over Judge Sutton's dissent. *Id.* at 1110.

In reaching its decision, the Sixth Circuit relied on *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), which relies on *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993). *Clomon*, *Avila*, and their progeny stand for the proposition that when an attorney signs a letter on law firm letterhead, the consumer is misled into believing the attorney reviewed the consumer's account. Invoking *Avila*, the Sixth Circuit in *Law Office of Eric A. Jones* concluded that using the Ohio Attorney General's letterhead was misleading because it suggested the letter was from the Ohio Attorney General.

In a unanimous decision authored by Justice Ginsberg, the Supreme Court reversed in *Gillie*. Citing Judge Sutton's dissent, the Supreme Court found nothing misleading about letters whose letterhead "accurately describes the relevant legal entities," had a signature block that truthfully represented the relationship between the Attorney General and special counsel, included a "conspicuous notation that the letter is sent by a debt collector," and, as a whole, alerted the debtor to "both the basis for the payment obligation and the official responsible for enforcement of debts." *Gillie*, 136 S. Ct. at 1600-01. Because the Supreme Court decided the first question, *i.e.*, whether an unsophisticated consumer could reasonably be misled, in the negative, and no fact relevant to that inquiry was disputed, the Court held that the district court had properly entered summary judgment in the law firm's favor. *Id.* at 1603 n.7.

In short, under *Gillie*, the speculative "specter of consumer confusion" is insufficient to state a claim under the FDCPA, *Gillie*, 136 S. Ct. at syllabus; and letterhead that "accurately conveys" the identity of the sender is "[n]ot fairly described as 'false or misleading.'" *Id.* at 1598. In *Moorer v. U.S. Bank N.A.*, the court recognized this to be *Gillie*'s mandate, and applied *Gillie* to dismiss a claim that a law firm's use of its letterhead was misleading when the firm was, as the firm's letters (like Weltman's) accurately disclosed, acting in a "debt collector's" capacity. No. 3:17-cv-56, 2018 WL 587319, at *19 (D. Conn. Jan. 29, 2018); *see also Daniels v. Solomon & Solomon, P.C.*, No. 17-0757, 2017 WL 3675400, at *4 (E.D. Pa. Aug. 25, 2017) (appeal pending) (dismissing claim under § 1692e(3) when letter included a disclaimer that the letter was from a debt collector attempting to collect a debt).

If, following *Gillie*, a communication *could* be misleading, the question becomes whether there has been "some degree of attorney involvement . . . before a letter will be considered 'from an attorney' within the meaning of the FDCPA." *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 301 (2d Cir. 2003) (Sotomayor, J.). But what constitutes sufficient involvement depends on the circumstances. The standard cannot be reduced to a bright line rule about what an attorney must know or review with respect to engaging in debt collection.

Writing for the Second Circuit, now-Justice Sotomayor explained that circumstances may exist where an "attorney's familiarity with the client's contracts and practices would negate the need to review some if not all of the documents plaintiff seeks to require" the attorney to review to establish that he was sufficiently involved. *Id.* at 304. As one court observed, the holdings of cases like *Miller* "beg the question: what additional categories of information must an attorney review in order to establish a proper basis upon which to act? Given the variety of law firm policies and procedures, coupled with differences in long-standing client-attorney relationships,

the answer to that question necessarily turns on a case-specific analysis." *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009).

It follows that to prevail on its claims under the FDCPA, the CFPB must prove that there is a specific instance—based on the facts and circumstances of the particular debt at issue—where Weltman's robust process of evaluating debt portfolios was insufficient to constitute attorney involvement.

B.  **The One-Year Statute of Limitations under the FDCPA**

The FDCPA is subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d). Specifically, § 1692k(d) states that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). And, as this Court has held, "the plain language of § 1692k(d) provides that the statute of limitations begins to run at the moment the alleged violation occurs, without regard to when the plaintiff gained knowledge of the cause of action." *Johnston v. MidFirst Bank*, No. 5:14-CV-466, 2015 WL 5175147, at *6 (N.D. Ohio Sept. 3, 2015) (Nugent, J.).

C.  **The Consumer Financial Protection Act**

The CFPA prohibits "any unfair, deceptive, or abusive act or practice" regarding consumer products or services. 12 U.S.C. § 5536(a)(1)(B). The standard under § 5536(a)(1)(B) of the CFPA "is the same as the standard under § 5(a) of Federal Trade Commission Act . . . , which prohibits unfair or deceptive acts or practices in or affecting commerce." *CFPB v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1369–70 (N.D. Ga. 2015) (internal citation omitted).

To establish liability for allegedly deceptive practices under the CFPA, the CFPB must prove "(1) there was a representation; (2) the representation was likely to mislead [consumers] acting reasonably under the circumstances, and (3) the representation was material." *Id.* at 1370

(quotation omitted) (applying FTC Act standard to CFPA claims); *see also F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (applying same standard to claims under Section 5 of the FTC Act). When determining whether a representation is likely to mislead a consumer under the FTC Act (and, correspondingly, the CFPA), courts apply a "reasonable consumer" standard. *See, e.g.*, ECF No. 61 at 3; *E.M.A. Nationwide*, 767 F.3d at 631.

Similarly to the FDCPA standard, a false representation is material only if it would be likely to influence a reasonable consumer to pay a debt. *See, e.g.*, *Fanning v. F.T.C.*, 821 F.3d 164, 173 (1st Cir. 2016) (considering whether consumers "altered their behavior" and whether a representation would "influence" a consumer's decision in evaluating the materiality element under Section 5 of the FTC Act); *see also F.T.C. v. Johnson*, 96 F. Supp. 3d 1110, 1133 (D. Nev. 2015); *F.T.C. v. Renaissance Fine Arts, Ltd.*, No. 1:94-CV-0157, 1994 WL 543048, at *7 (N.D. Ohio Sept. 1, 1994).

**D.    The CFPA's Three-Year Statute of Limitations**

A three-year statute of limitations applies under the CFPA. 12 U.S.C. § 5564(g)(1). The CFPA's three-year limitations period is subject to the discovery rule. *Id*. "Under the discovery rule, 'accrual is delayed until the plaintiff has 'discovered' his cause of action.'" *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 430 (6th Cir. 2015) (quoting *Gabelli v. SEC*, 568 U.S. 442, 449 (2013)). In *Merck & Co., Inc. v. Reynolds*, the Supreme Court addressed a statute that provided, similarly to the CFPA, that the statute of limitations is triggered by "the discovery of the facts constituting the violation." 559 U.S. 633, 638 (2010) (quoting 28 U.S.C. § 1658(b)). That statutory language means that a claim accrues when a plaintiff "first knows or with due diligence should know" a violation has occurred, placing a burden on the government to act with reasonable diligence to discover a violation. *Id.* at 646; *see also Gabelli*, 568 U.S. at 449 (a

cause of action "is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered" (quoting *Merck*, 559 U.S. at 645)).

### E. Damages under the CFPA

The CFPB seeks civil money penalties under the CFPA, which is among the relief the Court "may include" under 12 U.S.C. § 5565(a)(2).[4] If the Court finds that a civil money penalty is appropriate, § 5565(c) sets forth caps on permissible penalties as well as mitigating factors that the Court must consider. The CFPA provides a three-tiered penalty system. These tiers permit a court to impose penalties of (1) up to $5,000 per day for a violation of the law, (2) up to $25,000 per day for any person who "recklessly engages" in a violation of the law, and (3) up to $1,000,000 per day for any person who "knowingly" violates the law. 12 U.S.C. § 5565(C)(2)(a)-(c).[5] Only the first tier is relevant to this case, because there is no evidence of any "reckless" or "knowing" violation.

In determining the amount of any civil money penalty, the CFPA requires the Court to consider a number of mitigating factors. These factors are:

> (1) the size of financial resources and good faith of the person charged;
>
> (2) the gravity of the violation or failure to pay;
>
> (3) the severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided;
>
> (4) the history of previous violations; and
>
> (5) such other matters as justice may require.

12 U.S.C. § 5565(c)(3)(A)-(E).

---

[4] The CFPB confirmed in discovery that it would not seek restitution damages in this action, and as noted above, the CFPB also represented to Weltman that it is no longer seeking disgorgement.

[5] The civil money penalty amounts under the CFPA have been adjusted for inflation by regulation. 12 C.F.R. § 1083.1.

## IV. WELTMAN'S PROPOSED WITNESSES

1. **Eileen M. Bitterman** – Ms. Bitterman is Weltman's Compliance Officer and has worked for Weltman for 22 years in that and other capacities. Ms. Bitterman will testify to the Compliance Audit Department's structure and operation and to how the Compliance Audit Department and Weltman's attorneys ensure that Weltman collects consumer debts in compliance with laws, regulations, and Weltman's internal policies, practices, and procedures. Ms. Bitterman will also testify to Weltman's collection of debts on behalf of the Ohio Attorney General.

2. **Charles G. Pona** – Mr. Pona manages Weltman's Consumer Collections Business Unit. He will testify to how that unit, in compliance with the law, collects and attempts to collect consumer debts, how Weltman attorneys work with every consumer collections client to create a compliant collections program tailored to the client's needs, and how Weltman attorneys and non-attorney staff supervised by attorneys work with clients to conduct a strategic and legal review of the debt portfolios placed with Weltman for collection.

3. **Scott Weltman** – Mr. Weltman is Weltman's managing shareholder. He will testify about how the firm is managed and operated; the importance of compliance at the firm; and the effects of this lawsuit on the firm.

4. **Richard A. Cordray** – (On cross examination). Weltman expects Mr. Cordray to testify that while serving as the Ohio Attorney General, he twice appointed a Weltman shareholder to collect debts on behalf of the State of Ohio. Weltman also expects to elicit testimony from Mr. Cordray about his knowledge of Weltman's collection practices, as developed during his retention of Weltman as Special Counsel.

V. **WELTMAN'S PROPOSED EXHIBITS**

Please see Attachment 1 hereto.

VI. **EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL**

Weltman does not currently anticipate evidentiary issues to arise at trial other than those addressed in Weltman's motions in limine and in the CFPB's motion in limine relating to evidence of Weltman's retention by the Ohio Attorney General. (*See* ECF No. 62 (Weltman's Motion in Limine to Exclude Testimony of Plaintiff's Putative Expert Ronald Goodstein); ECF No. 63 (Weltman's Motion in Limine to Exclude Testimony Relating to Other Lawsuits Filed against Defendant); ECF No. 67 (CFPB's Motion in Limine to Exclude Richard Cordray as Witness and Other Evidence Relating to Retention and Work as Special Counsel to the Ohio Attorney General)).

VII. **WELTMAN'S PROPOSED VOIR DIRE QUESTIONS**

Please see Attachment 2 hereto.

VIII. **WELTMAN'S PROPOSED JURY INSTRUCTIONS**

Please see Attachment 3 hereto. The parties have a fundamental disagreement about the law that is reflected in their respective proposed jury instructions. Should the Court resolve that disagreement prior to the charge conference, Weltman expects that the parties could reach agreement on the language of those instructions. At this time, no agreements have been reached, with the exception that the CFPB has represented to Weltman that it agrees to Weltman's proposed instruction number 12. Because of their fundamental disagreement about what the law requires, the parties also have not reached agreement about the "disputed issues of fact which are to be submitted to the jury." (ECF No. 39 at 5.) Weltman's statement of disputed facts is reflected in the interrogatories incorporated into its proposed jury instructions.

Dated: April 26, 2018

Respectfully submitted,

s/ Ryan A. Doringo

James R. Wooley  (0033850)
Tracy K. Stratford  (0069457)
Ryan A. Doringo (0091144)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:    216.586.3939
Facsimile:    216.579.0212
Email:        jrwooley@jonesday.com
              tkstratford@jonesday.com
              radoringo@jonesday.com

Attorneys for Defendant
Weltman, Weinberg & Reis Co., L.P.A.

- 18 -

NAI-1503615821v2

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Sarah Preis
Zol Rainey
Rebeccah Watson
Jehan Patterson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer
Financial Protection Bureau

                                          s/ Ryan A. Doringo
                                          One of the Attorneys for Weltman, Weinberg &
                                          Reis Co., L.P.A.