**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 1:17 CV 817 |
| Plaintiff, | Judge Donald C. Nugent |
| v. | Magistrate Judge William H. Baughman, Jr. |
| WELTMAN, WEINBERG & REIS CO., L.P.A., | |
| Defendant. | |

**PLAINTIFF'S TRIAL BRIEF**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................... ii

**STATEMENT OF THE FACTS** ...................................................................................... 1

    I.    WWR Collects Consumer Debts and Is a Debt Collector. ............................. 2

    II.   WWR's Demand Letters Imply Meaningful Attorney Involvement. ............................. 2

    III.  WWR Attorneys Are Not Meaningfully Involved in Sending the Demand Letters. ....... 3

**DISCUSSION OF CONTROLLING LAW** ................................................................ 4

    I.    WWR Is a Debt Collector Under the FDCPA and a Covered Person Under the CFPA. 4

    II.   WWR's Demand Letters Falsely Imply Meaningful Attorney Involvement in the Collection of Consumer Debts in Violation of the FDCPA (Count I)............................ 5

      A.   WWR's Demand Letters Imply Meaningful Attorney Involvement in the Collection of Consumer Debts. .............................................................................. 6

      B.   WWR's Attorneys Are Not Meaningfully Involved in Collecting Consumer Debts. ..... 7

    III.  WWR's FDCPA Violation Constitutes a CFPA Violation (Count II)............................ 8

    IV.  WWR Engaged in Deceptive Acts or Practices in Violation of the CFPA (Count III). .. 8

    V.    The Assessment of Civil Money Penalties Is Required Upon a Showing of WWR's Liability.......................................................................................................... 10

    VI.  The Court May Also Order Injunctive Relief. .............................................. 10

    VII. The CFPA's 3-Year Statute of Limitations Triggered by the Date of Discovery of Each Violation Applies to the Bureau's Claims........................................................... 11

**DISCUSSION OF EVIDENTIARY ISSUES** ............................................................ 13

    I.    The Parties' Motions *in Limine* Are Pending. .............................................. 13

    II.   WWR's Refusal to Stipulate to Certain Facts Will Require the Bureau to Expend Significant Trial Time to Establish Them. .................................................... 14

    III.  WWR Should Be Precluded From Arguing an Absence of Evidence of Consumer Harm Is Relevant to Determination of its Liability............................................... 15

    IV.  The Bureau's Proposal for Handling Adverse Witnesses. ............................. 16

**CONCLUSION** ....................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996).........................................................6, 7, 15

*Badaracco v. C.I.R.*, 464 U.S. 386 (1984) ..................................................................12

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342 (N.D.
    Ga. 2015)......................................................................................................6, 12

*Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) .................................9, 11

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-CV-02106-RS, 2017
    WL 3948396 (N.D. Cal. Sept. 8, 2017)...............................................................10, 12

*Consumer Fin. Prot. Bureau v. Pension Funding, LLC*, No. SACV 15-1329-JLS, 2016 WL
    7644793 (C.D. Cal. July 11, 2016) .........................................................................11

*Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis, Co., L.P.A.*, No. 1:17-cv-817, 2017
    WL 4348916 (N.D. Ohio Sept. 29, 2017) ................................................................12

*E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456 (1924)..................................................12

*ECM BioFilms, Inc. v. FTC*, 851 F.3d 599 (6th Cir. 2017) ...........................................................9

*FTC v. CompuCredit Corp.*, No. 1:08-1976,2008 WL 8762850 (N.D. Ga. Oct. 8, 2008)...........12

*FTC v. Cyberspace.Com LLC*, 453 F.3d 1196 (9th Cir. 2006)......................................................9

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014)...............................................8, 15

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) ..................................................................9

*FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991)................................9

*Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360 (2d Cir. 2005) .....................................6

*Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433 (6th Cir. 2008) ........................6

*Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993 (3d Cir. 2011) ......................6, 7, 9

*Michalak v. LVNV Funding, LLC*, 604 F. App'x. 492 (6th Cir. 2015) .......................................... 12

*Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 965 (N.D. Ohio 2009), *modified on other grounds,* No. 3:08 CV 1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009) ................. 5, 6, 7

*Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86 (E.D.N.Y. 2009) ................................. 7

*Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) ............................................................ 6, 7, 8

*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131 (4th Cir. 1996) ........................................... 16

*Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323 (6th Cir. 2012) ........................................ 5

*Young v. Citicorp Retail Servs., Inc.*, No. CIV. 3:95CV1504(AHN), 1997 WL 280508 (D. Conn. May 19, 1997) ........................................................................................................... 8

**Statutes**

12 U.S.C. § 5481 (15)(A)(i) ......................................................................................................... 5
12 U.S.C. § 5481(12)(H) ......................................................................................................... 8, 11
12 U.S.C. § 5481(14) ............................................................................................................... 8, 11
12 U.S.C. § 5481(15)(A)(x) ........................................................................................................ 8
12 U.S.C. § 5481(4) ..................................................................................................................... 8
12 U.S.C. § 5481(5)(A) ................................................................................................................ 5
12 U.S.C. § 5481(6)(A) ................................................................................................................ 5
12 U.S.C. § 5481(x) ..................................................................................................................... 5
12 U.S.C. § 5531(a) .................................................................................................................. 4, 8
12 U.S.C. § 5536(a)(1)(A) ........................................................................................................ 4, 8
12 U.S.C. § 5536(a)(1)(B) ........................................................................................................ 4, 8
12 U.S.C. § 5561(5) .................................................................................................................... 12
12 U.S.C. § 5564(a) .................................................................................................................... 11
12 U.S.C. § 5564(g)(1) .......................................................................................................... 11, 12
12 U.S.C. § 5565(a)(1) ................................................................................................................ 10
12 U.S.C. § 5565(a)(2)(G) .......................................................................................................... 11
12 U.S.C. § 5565(c)(1) ................................................................................................................ 10
12 U.S.C. § 5565(c)(2) ................................................................................................................ 10
12 U.S.C. § 5565(c)(2)(A) ........................................................................................................... 10
12 U.S.C. § 5565(c)(3) ................................................................................................................ 10
12 U.S.C. § 5565(c)(3)(C) ........................................................................................................... 16
12 U.S.C. § 5565(a)(2) ................................................................................................................ 10
15 U.S.C. § 1692a(3) .................................................................................................................... 5

iii

15 U.S.C. § 1692a(5) ............................................................................................. 5
15 U.S.C. § 1692a(6) ............................................................................................. 5
15 U.S.C. § 1692e(10) .............................................................................. 4, 5, 8, 16
15 U.S.C. § 1692e(3) ................................................................................... 4, 5, 8
15 U.S.C. § 1692*l*(c) .............................................................................................. 11

**Rules**

Fed. R. Civ. Proc. 26(a)(1) ................................................................................... 13
Fed. R. Civ. Proc. 26(e) ........................................................................................ 13
Fed. R. of Evidence 1006 ...................................................................................... 15

**Regulations**

12 C.F.R. § 1083.1 ................................................................................................ 10

Plaintiff Consumer Financial Protection Bureau (Bureau) provides the following information pursuant to the Court's Civil Jury Trial Order (ECF 39).[1]

## STATEMENT OF THE FACTS

Defendant Weltman, Weinberg & Reis Co., L.P.A. (WWR) is a law firm that collects debts by sending demand letters to consumers on law firm letterhead that prominently describe the firm as "ATTORNEYS AT LAW," assert that a particular balance is due and owing, and list the firm's name in the signature block. Certain letters identify WWR as a "law firm" and others reference "possible legal action" in the event the consumer does not pay the amount demanded. Dr. Ronald Goodstein, an expert in the field of consumer marketing and behavior, conducted a survey to test the perceptions consumers form upon reviewing WWR's initial demand letter. That survey confirms that nearly 40 percent of consumers who view WWR's initial demand letter believe an attorney reviewed their file before sending the letter.

Despite the fact that these letters are sent under the law firm's name, no WWR attorney reviews the letters before they are sent to consumers. And no attorney at WWR reviews the consumer's file or forms a professional judgment that the debt demanded is actually due and owing before the firm sends a demand letter on WWR letterhead to a consumer. The notable absence of WWR's attorneys from WWR's pre-litigation debt collection process renders misleading the impression created by the firm's demand letters that attorneys are meaningfully involved in the collection of a consumer's debts, in violation of the Fair Debt Collection Practices Act (FDCPA) and Consumer Financial Protection Act of 2010 (CFPA).

---

[1] The following are attached as exhibits to this memorandum: list of plaintiff's proposed witnesses with a brief description of the subject matter of the testimony of each witness (Exhibit 1); an index of all proposed exhibits with a brief description of each exhibit (Exhibit 2); proposed voir dire questions (Exhibit 3); proposed jury instructions (Exhibit 4); and proposed statement of disputed facts for the jury (Exhibit 5).

I.      **WWR Collects Consumer Debts and Is a Debt Collector.**

WWR regularly collects or attempts to collect consumer-related debt, including debts from credit cards, installment loan contracts, mortgage loan deficiencies, and student loans. As relevant here, WWR sends demand letters to consumers to attempt to collect debt those consumers allegedly owe. WWR has sent consumers approximately 4.2 million demand letters since July 21, 2011.

II.     **WWR's Demand Letters Imply Meaningful Attorney Involvement.**

WWR has used several iterations of form demand letters to collect consumers' debts, with what it refers to as the "323 Initial Demand Letter" being the most commonly used version. These letters share several characteristics. First, they are printed on law firm letterhead, with the name of the firm appearing in all caps and in bold at the top with "ATTORNEYS AT LAW" printed directly beneath:

## WELTMAN, WEINBERG & REIS Co., LPA
### ATTORNEYS AT LAW
*Over 80 Years of Service.*

The letters list a balance due in the subject line and "Weltman, Weinberg & Reis Co., L.P.A." is listed as the signatory. The text of the letters refer to the "balance due and owing on [the] account," and tell consumers that, as of the letter's date "you owe the amount listed above." Another version of the demand letters alerts consumers to "possible legal action" if the consumer does not pay the amount demanded. Versions of the demand letters prior to July 5, 2013, stated, "This *law firm* is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose." (emphasis added).

Dr. Ronald Goodstein, an expert in the field of consumer marketing and behavior,

2

conducted a survey to test the perceptions consumers form upon reviewing WWR's 323 Initial
Demand Letter. Approximately 38.2% of consumers who viewed a letter modeled after WWR's
letter believed that a lawyer reviewed their account before sending the letter. Moreover, these
consumers were 2.5 to 4 times more likely to form this impression than consumers shown either
one of two letters modified by Dr. Goodstein to remove law-related references from WWR's
initial demand letter. These consumers were also 5.7 to 29 times more likely to respond that a
law firm or lawyer sent them the letter than those who viewed the modified letters.

**III.    WWR Attorneys Are Not Meaningfully Involved in Sending the Demand Letters.**

WWR's process to generate demand letters to send to consumers is largely automated
and outsourced, and is devoid of meaningful attorney involvement. When creditors place debts
electronically with WWR, they do so typically by providing a spreadsheet containing data for
each account in a portfolio. Individual accounts are listed on the spreadsheet, and the data
provided includes the consumers' names, addresses, and balance purportedly owed. To the extent
that creditors elect to provide any account-level documents at that point, they are generally not
reviewed by any WWR employee (much less an attorney) before WWR sends a firm-signed
form demand letter. The data is loaded into WWR's systems and checked to ensure that no data
provided from the creditor is lost in the transfer. The data is then scrubbed by a third-party
vendor to weed out consumers who should not automatically receive a collection letter due to
bankruptcy, death, or military status. Consumers whose accounts are not flagged in the
automated scrub process proceed through the rest of WWR's automated collection process. After
the accounts are scrubbed, a third-party vendor automatically generates, prints, and mails
demand letters populated with personal and account information to consumers. No WWR
attorney reviews the populated demand letters before the third-party vendor mails them to

consumers. WWR typically sends letters to consumers within two days of loading the data.

WWR does not have any policies requiring attorneys to review individual accounts before demand letters are mailed to consumers and, in practice, they do not. Indeed, WWR conceded during discovery that it cannot identify any particular account for which a WWR attorney reviewed account-level documentation before a demand letter was sent. As a result, WWR attorneys do not make any determination that the balance stated actually is due and owing and do not form a professional judgment that a demand letter is appropriate to send to a particular consumer.

## DISCUSSION OF CONTROLLING LAW

WWR's demand letters falsely imply to consumers that an attorney is meaningfully involved in the collection of their debts—when, in fact, no attorney is—in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e(3) & (10), and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1)(A), 5536(a)(1)(B).[2] As a result, the Court should order WWR to pay civil money penalties and enjoin WWR's violations of the FDCPA and CFPA.

**I.     WWR Is a Debt Collector Under the FDCPA and a Covered Person Under the CFPA.**

As a law firm that regularly collects or attempts to collect consumer debts, including debts that arise out of consumer credit, by sending demand letters to consumers in the mail, WWR is both a debt collector under the FDCPA and a covered person under the CFPA.

Under the FDCPA, a "debt collector" is any person who uses "the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or

---

[2] The Bureau intends to move to voluntarily dismiss Counts IV-VI of the complaint and will not pursue its demand for disgorgement.

4

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt" refers to "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5). A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." *Id.* 1692a(3).

Under the CFPA, a "covered person" is "any person that engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6)(A). A "consumer financial product or service" includes, as relevant here, the collection of debt that arises from credit extended to consumers primarily for personal, family, or household purposes. 12 U.S.C. § 5481(5)(A), (15)(A)(i), (x).

## II. WWR's Demand Letters Falsely Imply Meaningful Attorney Involvement in the Collection of Consumer Debts in Violation of the FDCPA (Count I).

It is a violation of the FDCPA for a debt collector, in connection with the collection of any debt, to falsely represent or imply that "any communication is from an attorney," 15 U.S.C. § 1692e(3), or use "any false representation or deceptive means to collect or attempt to collect a debt." *Id.* § 1692e(10). The representation must be made in connection with the collection of a debt, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 965 (N.D. Ohio 2009), *modified on other grounds,* No. 3:08 CV 1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009), and be materially false or misleading. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (citation omitted). The Court considers whether a communication is false, deceptive, or misleading from the perspective of the "least-sophisticated-consumer," an objective standard that "protects naïve consumers [and] … prevents liability for bizarre or idiosyncratic

interpretations of collection notices by preserving a quotient of reasonableness and … [a] willingness to read with care." *Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433, 438-39 (6th Cir. 2008) (citation omitted).

### A. WWR's Demand Letters Imply Meaningful Attorney Involvement in the Collection of Consumer Debts.

A letter on law firm or attorney letterhead implies to the least sophisticated consumer that an attorney is meaningfully involved in the collection of the debts to which the communication relates. *See Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 1003 (3d Cir. 2011) (holding that collection letters on law firm letterhead or that included the phrase "law offices" and instructing consumer to make payments to the firm conveyed the impression "that an attorney, acting as an attorney" was involved in collecting the debt); *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 364 (2d Cir. 2005) (observing that a "letter sent on law firm letterhead, *standing alone*, does represent a level of attorney involvement to the debtor receiving the letter"); *Nielsen v. Dickerson*, 307 F.3d 623, 636 (7th Cir. 2002); *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996); *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1363 (N.D. Ga. 2015) ("[A] 'communication' that is literally from an attorney … may still violate § 1692e(3) if the attorney was not meaningfully involved in drafting the communication."). In particular, a letter from an attorney implies the attorney "reached a considered professional judgment that the debtor is delinquent and is a candidate for legal action." *Nielsen*, 307 F.3d at 635 (citation omitted).

A representation is material if it "might influence a person's decision on a matter." *Midland Funding*, 644 F. Supp. 2d at 969. "Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency." *Avila*, 84 F.3d at 229.

Here, WWR's demand letters that it uses to collect or attempt to collect debts are printed

on law firm letterhead, identify WWR as "ATTORNEYS AT LAW," and are signed by the firm. WWR tells consumers that there is a balance "due and owing" and direct the consumers to contact the firm to discuss the debt. Certain letters identify WWR as a "law firm" and refer to potential legal action. Thus, these letters are on par with those held by other courts to convey to consumers that an attorney is meaningfully involved in collecting the debt. *See, e.g., Lesher*, 650 F.3d 1003. Such representations are material and influence whether and when the consumer chooses to pay the debt demanded by WWR. *See Avila*, 84 F.3d at 229 ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up."); *Midland Funding*, 644 F. Supp. 2d at 969.

### B.  WWR's Attorneys Are Not Meaningfully Involved in Collecting Consumer Debts.

WWR's attorneys do not engage in the individualized assessment of the consumer's debt, rendering the representation or implication that an attorney was involved false or misleading. Courts have consistently held that, to be meaningfully involved in collecting the debt, an attorney must engage in an "independent review of a *particular* case prior to the issuance of a debt collection letter," *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 102 (E.D.N.Y. 2009), and exercise some "professional judgment as to the delinquency and validity of any individual [] debt," *Nielsen*, 307 F.3d at 636.

WWR attorneys do not review individual accounts, do not make any determination that the balance stated is actually due and owing, and do not form a professional judgment that it is appropriate to send a demand letter to a particular consumer. Indeed, WWR attorneys have no involvement in the automated process WWR employs to generate and send demand letters to consumers, and no WWR attorney reviews individual demand letters before they are sent to consumers. Though WWR has an automated process where it loads data and conducts "scrubs"

7

to exclude certain consumers from receiving letters, this automated process is not the exercise of

an attorney's professional judgment and does not constitute "meaningful attorney involvement."

*See Nielsen*, 307 F.3d at 636 ("categorical" exclusion of consumers meeting broad criteria was

not meaningful involvement because it did not call "for an individualized, discretionary

assessment by" the attorney); *see also Young v. Citicorp Retail Servs., Inc.*, No. CIV.

3:95CV1504(AHN), 1997 WL 280508, at *6 (D. Conn. May 19, 1997) (rejecting argument that

computerized account review was a valid substitute for attorney's personal review).

### III.     WWR's FDCPA Violation Constitutes a CFPA Violation (Count II).

The CFPA prohibits "covered persons" from, among other things, collecting debt relating

to any consumer any financial product or service not in conformity with a Federal consumer

financial law, or from committing any act in violation of any Federal consumer financial law,

including, as relevant here, the Fair Debt Collection Practices Act. 12 U.S.C. §§ 5536(a)(1)(A);

5481(12)(H), (14), (15)(A)(x). A consumer refers to any individual. *Id.* § 5481(4).

WWR's demand letters falsely imply that an attorney is meaningfully involved in

collection of consumers' debts in violation of the FDCPA, 15 U.S.C. § 1692e(3), (10). This is a

separate and distinct violation of the CFPA.

### IV.     WWR Engaged in Deceptive Acts or Practices in Violation of the CFPA (Count III).

It is a violation of the CFPA for any covered person to engage in deceptive acts or

practices in connection with, among other things, collecting debt relating to any consumer

financial product or service. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). An act or practice is deceptive

if: "(1) there was a representation; (2) the representation was likely to mislead consumers acting

reasonably under the circumstances; and (3) the representation was material." *FTC v. E.M.A.*

*Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. 2014) (citations omitted) (analyzing deception

8

claim under FTC Act); *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1193-93 n.7 (9th Cir. 2016) (applying FTC standard to CFPA claims).

Courts consider the overall net impression that a communication makes on a "significant minority of reasonable consumers" in determining whether a communication implies a message that misleads consumers. *ECM BioFilms, Inc. v. FTC*, 851 F.3d 599, 610-611 (6th Cir. 2017) (citations omitted) (relying on binding precedent interpreting the FTC Act and affirming deception claim where representation misled 10% of consumers). A representation "is material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1206 (9th Cir. 2006) (citation omitted). The Bureau does not need to demonstrate any consumers were actually deceived or relied upon the representation to prevail on a deceptive act or practice claim. *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) ("It is well established [under FTC Act] … that proof of individual reliance by each purchasing customer is not needed."); *see also FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991) (holding that FTC did not need to prove reliance by each consumer to prevail on deceptive act or practices claim).

Here, WWR's demand letters are printed on law firm letterhead, identify WWR as "ATTORNEYS AT LAW," and are signed by the firm. The letters refer to the balance "due and owing" by the consumer. Certain letters identify WWR as a "law firm" and refer to potential legal action. The letters imply that an attorney reviewed the consumer's account and formed a professional judgment that the consumer owed the balance sought. *See Lesher*, 650 F.3d at 1003-04. That "a significant minority of reasonable consumers" understand WWR's demand letters to imply that an attorney sent them the letter and is meaningfully involved in collecting their debts

is reinforced by the findings in Dr. Goodstein's expert report.

**V.     The Assessment of Civil Money Penalties Is Required Upon a Showing of WWR's Liability.**

The CFPA authorizes the Court to order any appropriate equitable relief including injunctive relief and civil money penalties. 12 U.S.C. §§ 5565(a)(1) and (2); 5565(c)(1). An award of civil money penalties is mandatory for any violation of Federal consumer financial law. *See* 12 U.S.C. § 5565(c)(1) ("Any person that violates, through any act or omission, any provision of Federal consumer financial law shall forfeit and pay a civil penalty."). The CFPA requires the imposition of civil money penalties based on three tiers, which contain increasing amounts depending on the scienter of the person. 12 U.S.C. § 5565(c)(2). Here, the Bureau is seeking Tier 1 penalties, which do not require any scienter, of $5,639 per day. The Bureau seeks these penalties for July 21, 2011 forward, which is each day during which WWR's violations occurred. *See* 12 U.S.C. § 5565(c)(2)(A); 12 C.F.R. § 1083.1 (adjusting civil money penalty amounts for inflation); *see also Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-CV-02106-RS, 2017 WL 3948396, at *13 (N.D. Cal. Sept. 8, 2017) (imposing first tier penalties for every day during which the conduct occurred).

The CFPA requires the Court to consider certain mitigating factors, including the size of financial resources and good faith of the person charged, the gravity of the violation or failure to pay, the severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided, the history of previous violations, and other matters as justice may require. 12 U.S.C. § 5565(c)(3).

**VI.     The Court May Also Order Injunctive Relief.**

The Court should order injunctive relief enjoining WWR from violating the FDCPA or CFPA, including by prohibiting WWR from implying in its demand letters to consumers that an

attorney is meaningfully involved in the collection of those debts when that is not the case. *See* 12 U.S.C. § 5565(a)(2)(G) (allowing court to impose "limits on the activities or functions of the person" for violations of Federal consumer financial law). Injunctive relief is appropriate where, as here, WWR's violative demand letter practices "[are] ongoing or likely to recur." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1197 (9th Cir. 2016) (affirming injunction where lower court "specifically found that Gordon presented an ongoing risk to consumers.") (citation omitted); *Consumer Fin. Prot. Bureau v. Pension Funding, LLC*, No. SACV 15-1329-JLS, 2016 WL 7644793, at *7 (C.D. Cal. July 11, 2016) (entering permanent injunction for violations of CFPA). The Bureau intends to renew its request in its post-trial briefing that the Court award appropriate injunctive relief.

## VII. The CFPA's 3-Year Statute of Limitations Triggered by the Date of Discovery of Each Violation Applies to the Bureau's Claims.

The Bureau's claims, including the Bureau's sole claim arising under the FDCPA asserted in Count I, are subject to the three-year discovery-based statute of limitations provided by the CFPA. Subtitle E of the CFPA authorizes the Bureau to "commence a civil action against" "any person [who] violates a Federal consumer financial law," which includes the FDCPA. *See* 12 U.S.C. § 5564(a); *see also* 12 U.S.C. § 5481(12)(H), (14) (providing that the FDCPA is a "Federal consumer financial law"). That same section provides, as relevant here, that "no action may be brought under this title [the CFPA] more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). This limitations provision applies to the Bureau's claims under the CFPA. It also applies to the Bureau's claim under the FDCPA. The FDCPA provides that, for purposes of enforcement by the Bureau, "a violation of any requirement imposed under [the FDCPA] shall be deemed to be a violation of" the CFPA. *See* 15 U.S.C. § 1692*l*(c). Because CFPA violations are subject to the statute of

11

limitations in 12 U.S.C. § 5564(g)(1) and because FDCPA violations are "deemed" CFPA

violations for purposes of enforcement by the Bureau, the statute of limitations in 12 U.S.C.

§ 5564(g)(1) applies to those claims as well. *Cf. FTC v. CompuCredit Corp.*, No. 1:08-

1976,2008 WL 8762850, at \*10 (N.D. Ga. Oct. 8, 2008) (holding that similar provision

deeming FDCPA violation to be violation of Federal Trade Commission Act meant that statute

of limitations governing FTC's FDCPA claims "is that provided under the FTC Act"); *see also*

*Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis, Co., L.P.A.,* No. 1:17-cv-817, 2017

WL 4348916, at \* 6-7 (N.D. Ohio Sept. 29, 2017) (finding the reasoning of *CompuCredit*

persuasive); *Frederick J. Hanna and Assoc.*, 114 F. Supp. 3d at 1380.

    The Court must strictly construe this three-year discovery-based statute of limitations in

favor of the Bureau. *See Badaracco v. C.I.R.*, 464 U.S. 386, 391-92 (1984) (noting that the

Supreme Court "long ago pronounced the standard [that] '[s]tatutes of limitation sought to be

applied to bar rights of the Government, must receive a strict construction in favor of the

government'" (*quoting E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924))).

    For the statute of limitations to begin running under the CFPA, the Bureau "would have

to be in possession of sufficient facts to file suit." *Nationwide Biweekly Admin.*, 2017 WL

3948396, at \*10 n.22.

    Under the CFPA, the Bureau cannot "discover[]" violations that Defendant has not yet

committed. A "violation" is "any act or omission that, if proved, would constitute a violation of

any provision of Federal consumer financial law." 12 U.S.C. § 5561(5). Each time Defendant

sent a letter that falsely implied meaningful attorney involvement when there was none,

Defendant committed a separate, new violation of the FDCPA and CFPA. *See Michalak v.

LVNV Funding, LLC*, 604 F. App'x. 492, 493 (6th Cir. 2015) (explaining that each dunning

letter may constitute a separate violation of the FDCPA). In other words, each demand letter is

an "act" that, if proved, constitutes a separate "violation" of law. Thus, even if there were

evidence from which the trier of fact could find that the Bureau had sufficient facts in 2012 to

file suit regarding, for example, a letter Defendant sent that year, that cannot mean that the

Bureau also "discovered" violations at that time based on letters Defendant sent after that date.

Likewise, any discovery Richard Cordray could have made as then-Ohio Attorney General of

WWR's violations (and for the reasons set forth in the Bureau's motion *in limine* (ECF No. 67),

he made no such discovery) cannot preclude the Bureau from obtaining relief for the violations

it discovered within the three years before this action was filed.[3]

## DISCUSSION OF EVIDENTIARY ISSUES

### I.     The Parties' Motions *in Limine* Are Pending.

The Bureau filed two pending motions *in limine*, one to exclude Robert Weltman because

WWR failed to timely identify him as a potential witness under Rule 26(a)(1), and a second to

exclude Richard Cordray as witnesses and to exclude evidence relating to the Ohio Attorney

General's appointment of WWR shareholder Alan Weinberg as special counsel to collect debts

on behalf of the state of Ohio in 2009 and 2010. (ECF Nos. 65, 67).

The Bureau seeks to exclude Mr. Weltman because WWR failed to disclose him as a

witness during discovery pursuant to Rule 26(a)(1) and (e) and WWR's failure is neither justified

---

[3] In any event, Mr. Cordray's knowledge of WWR's practices as Ohio Attorney General cannot be imputed as a matter of law to the Bureau, as WWR urges. Adoption of this principle would wreak havoc on the application of discovery-based statute of limitations precedent if knowledge of all the facts to which a government official might have had access in a prior agency, office, or government were imputed to the official's new agency, office, or government. That principle would be unworkable given the fluidity with which government officials move between agencies and positions. Moreover, imputing such knowledge to a new employer could also undermine various government privileges and legal restrictions applying to disclosure of information to which government officials are subject.

nor harmless. (ECF No. 65). The Bureau understands from WWR's counsel that this motion may be moot as WWR no longer intends to call Mr. Weltman.

The Bureau seeks to exclude Mr. Cordray and other evidence relating to WWR's collection of the state of Ohio's debts because the evidence would confuse the jury on the issues of WWR's liability and the amount of civil money penalty WWR must pay if the jury finds it to have violated either the FDCPA or CFPA. (ECF No. 67).

WWR filed two motions *in limine*. The first seeks to exclude Dr. Goodstein on the grounds that his testimony is unnecessary to aid the jury, not relevant, and that its probative value is outweighed by the danger of undue prejudice and confusion to the jury. (ECF No. 62). The second motion *in limine* seeks to exclude evidence relating to other lawsuits filed against WWR on the basis that its prejudicial value outweighs its relevance. (ECF No. 63).

## II.     WWR's Refusal to Stipulate to Certain Facts Will Require the Bureau to Expend Significant Trial Time to Establish Them.

In an effort to streamline the presentation of issues at trial and in accordance with the Court's civil trial order (ECF No. 39), the Bureau requested WWR to stipulate to approximately 30 form, model, or template demand letters from which demand letters to consumers are generated. WWR declined to stipulate to the letters' authenticity despite the fact that WWR admitted in response to a request for admission that the letters were "examples of form, model, or template Demand Letters from which letters to Consumers are generated." Def.'s Response to Plaintiff's First Requests for Admission No. 11 (ECF No. 44, Ex. 9). As a result, the Bureau will need to spend time at trial to obtain witness identification of each letter for the purposes of introducing the exhibits into evidence.

Admission of these letters into evidence is also important to establish that, since July 21, 2011, WWR has sent approximately 4.2 million demand letters generated using these templates.

14

This number was calculated from a table WWR produced in response to Amended Interrogatory 2(d) of Plaintiff's First Set of Interrogatory Requests. That table provided the number of demand letters WWR sent to consumers in each state in which it collects debts each year from 2011 to 2017. WWR declined to stipulate that the number of letters listed in its response to Amended Interrogatory 2(d) totaled approximately 4.2 million. The Bureau tabulated the entries in a separate Excel spreadsheet and intends to introduce the spreadsheet at trial pursuant to Federal Rule of Evidence 1006, which permits the proponent of evidence to "use a summary, chart, or calculation to prove the content of voluminous writings … that cannot be conveniently examined in court."

WWR likewise refused to stipulate that its demand letter templates shared certain features relevant to this action, including the firm's name and "ATTORNEYS AT LAW" at the top of the letterhead, the signature block, and, in some letters, references to WWR as a "law firm." The Bureau will need to elicit witness testimony to establish these shared characteristics.

**III.  WWR Should Be Precluded From Arguing an Absence of Evidence of Consumer Harm Is Relevant to Determination of its Liability.**

WWR argued in its opposition to the Bureau's motion for summary judgment that the Bureau "has not … point[ed] to any actual harm to any consumer" caused by WWR's practices. ECF No. 54 at 12. As an initial matter, WWR is wrong that there is no consumer harm associated with its violations. "Consumers are inclined to more quickly react" to a demand letter from an attorney "who is better positioned to get the debtor's knees knocking" than a non-attorney debt collector. *Avila*, 84 F.3d at 229. This reality is likely to cause consumers to prioritize debts collected by a "lawyer" over other debts and expenses. The Bureau, however, is not required to show actual harm to consumers to prevail on its claims. *See E.M.A. Nationwide, Inc.*, 767 F.3d at 633 (noting that FTC is not required to show actual consumer deception to prove deceptive act or

15

practice in violation of section 5 of the FTC Act); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) ("[T]he test is the capacity of the statement to mislead; evidence of actual deception is unnecessary" in FDCPA claim under 15 U.S.C. § 1692e(10)). Thus, the Bureau is not presenting evidence on these issues.

WWR should not be permitted to argue to the jury that the absence of evidence of consumer harm or actual deception bears on whether WWR violated the FDCPA or CFPA. Instead, the Bureau respectfully requests the Court to provide an instruction to the jury limiting its consideration of WWR's argument to mitigation of the amount of civil money penalties it recommends the Court impose. *See* 12 U.S.C. § 5565(c)(3)(C) (mitigating factor includes "the severity of the risks to or losses of the consumer").

## IV.   The Bureau's Proposal for Handling Adverse Witnesses.

The Bureau plans to call three WWR employees—Eileen Bitterman, Charles Pona, and David Tommer—in its case-in-chief. *See* Ex. 1 (Plaintiff's List of Proposed Witnesses). Because these witnesses hold managerial positions with WWR, the Bureau intends to request leave from the Court to treat them as adverse and use leading questions on direct examination. Accordingly, should the Court grant the Bureau's request, WWR's counsel should use non-leading questions with these witnesses on cross-examination.

Further, WWR's pre-trial disclosures provide that it intends to call Ms. Bitterman and Mr. Pona as witnesses, and reserve the right to call any witness named by the Bureau. (ECF No. 53). Thus, for ease of administration and to ensure a clean trial record, the Bureau respectfully requests that the Court order WWR's counsel to specify the point at which WWR intends to adopt these WWR witnesses as its own witnesses and commence its direct examinations. Accordingly, the Bureau's direct examination of WWR's witnesses would be followed first by WWR's cross-examination and then direct examination. The Bureau would then conduct its

cross-examination and re-direct examinations, and WWR could conclude by conducting a re-direct examination.

## CONCLUSION

For the reasons stated above, the Bureau will be entitled to a jury verdict (or directed verdict) in its favor on Counts I-III of the complaint, including its claim for civil money penalties and injunctive relief.

Dated: April 26, 2018

Respectfully submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau

KRISTEN A. DONOGHUE
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

/s/ Jehan A. Patterson
Sarah Preis
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9318
Facsimile: (202) 435-9346
Email: sarah.preis@cfpb.gov
Zol D. Rainey
Phone: (202) 435-9483
Facsimile: (202) 435-9346
Email: zol.rainey@cfpb.gov
Rebeccah G. Watson
Phone: (202) 435-7895
Facsimile: (202) 435-9346
Email: rebeccah.watson@cfpb.gov
Jehan A. Patterson
Phone: (202) 435-7264
Facsimile: (202) 435-9346
Email: jehan.patterson@cfpb.gov


*Enforcement Counsel*

## **Certificate of Service**

I hereby certify that on April 26, 2018, a copy of the foregoing Plaintiff's Trial Brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Jehan A. Patterson

Jehan A. Patterson
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-7264
Facsimile: (202) 435-9346
Email: jehan.patterson@cfpb.gov