# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>      Plaintiff,<br><br>      v.<br><br>WELTMAN, WEINBERG & REIS CO., L.P.A.,<br><br>      Defendant. | Civil Action No. 1:17-cv-00817<br><br>Judge Donald C. Nugent<br><br>Magistrate Judge William H. Baughman, Jr. |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE RICHARD CORDRAY AS WITNESS AND OTHER EVIDENCE RELATING TO RETENTION AND WORK AS SPECIAL COUNSEL TO THE OHIO ATTORNEY GENERAL

Richard Cordray served as the Ohio Attorney General from January 8, 2009 until January 9, 2011. During both of the years he served as the State's chief law enforcement officer, he appointed Weltman, Weinberg & Reis Co., L.P.A. ("Weltman") shareholder Alan Weinberg to serve as Special Counsel to collect debts owed to Ohio. Some six years later, as Director of the Consumer Financial Protection Bureau ("CFPB"), Mr. Cordray personally authorized the filing of this lawsuit, which alleges that Weltman uses misleading communications to collect consumer debt.

Discovery in this case has shown that Mr. Cordray has knowledge that is critical to Weltman's defense. His knowledge, and other evidence related to Weltman's retention as Special Counsel, is highly relevant to whether the CFPB's case is time-barred and whether

Weltman has acted in good faith. In its pending Motion in Limine ("Motion" or "Mot."), the CFPB moves to exclude all of this evidence from trial.

The CFPB raises a litany of arguments in support of the Motion, including that the evidence will confuse and mislead the jury, will waste trial time, will usurp the jury's function, and is protected by numerous claimed privileges. This scattershot approach reveals the Motion for what it is: a desperate attempt by the CFPB to keep evidence from the jury that (1) is utterly fatal to its attempt to paint Weltman as an unscrupulous debt collector and (2) shows the CFPB did not timely file this case. The CFPB's arguments are meritless, and the Motion should be denied in its entirety.

## I. BACKGROUND

### A. Weltman's work on behalf of Mr. Cordray

Before he told the CFPB to file this lawsuit, Richard Cordray knew Weltman's business well through his retention of the firm's services to collect the State's debts, using the same practices that Weltman uses for its consumer collections clients today and using letters materially indistinguishable from those at issue here.

Mr. Cordray's retention of Weltman began on July 1, 2009, when he signed a certificate appointing Mr. Weinberg as Special Counsel to the Ohio Attorney General to collect debts for the State of Ohio. (Deposition of Richard Cordray ("Cordray Dep."), 46:20-47:17, Dep. Ex. B.)[1] The process to obtain that appointment was a rigorous one, involving an 80-page response to a Request for Qualifications. (*Id.* at 55:8-20, Dep. Ex. C; Declaration of Eileen Bitterman ("Bitterman Decl."), ¶ 9, Att. 1.)[2] Weltman's response included the names and curriculum vitae

---

[1] Excerpts and exhibits from Mr. Cordray's deposition were attached as Exhibit C to Weltman's motion for summary judgment. (*See* ECF No. 45-3.)

[2] The Declaration of Eileen Bitterman was attached as Exhibit A to Weltman's motion for summary judgment. (*See* ECF No. 45-1.)

of each Weltman attorney that would assist in collecting debts, a "description of the scope of any past representation as Special Counsel," and a description of Weltman's experience and expertise in debt collection. (Cordray Dep. Ex. C at §§ II.8.a, Attachment 2; Bitterman Decl., Att. 1.)

Through that application process, Mr. Cordray knew that Weltman specialized in "high volume placements," made "innovative use of technology" in its debt collection work, and had a non-attorney staff that was more than nine times the size of its attorney staff. (Cordray Dep. Ex. C at §§ II.3, 8(a)-(b).) Weltman truthfully represented to Mr. Cordray that, with approximately 100 attorneys, it attempted to collect nearly 730,000 debts in 2008. (*Id.* at 69:23-70:13, 73:7-20, Dep. Ex. C at § II.8(a)-(b).) Mr. Cordray was aware that non-attorney collectors worked the files in tandem with Weltman's attorneys. (*Id.*) Following the same rigorous appointment process, Mr. Cordray appointed Mr. Weinberg again in 2010. (Cordray Dep. 79:13-82:11, Dep. Exs. D, E.) And during the years Mr. Weinberg and Weltman collected debts on Mr. Cordray's behalf, their performance was reviewed quarterly by Mr. Cordray's office under a policy mandating "[nothing] less than complete respect for the rights and reasonable expectations of the public." (Cordray Dep. 85:17-86:5, 88:5-90:5, 92:7-93:24, Dep. Ex. F at Art. 3, § 5; Art. 5, § 19.)

During the representation, Mr. Cordray required that Mr. Weinberg use Ohio Attorney General letterhead to collect the State's debts. (*Id.* at 111:22-113:4, Dep. Ex. I; Bitterman Decl. ¶¶ 10-12, Att. 2.) Weltman drafted collection letters with that letterhead, and after approval by the firm's Compliance Audit Department, the letters were provided to and approved by Mr. Cordray's office for compliance with the law. (Deposition of Eileen Bitterman ("Bitterman Dep."), 255:12-256:15;[3] Cordray Dep. 111:22-113:4, Dep. Ex. I.) Mr. Cordray's name and the title "Ohio Attorney General" were centered in large font, and the letterhead provided the

---

[3] Excerpts and exhibits from Ms. Bitterman's deposition were attached as Exhibit B to Weltman's motion for summary judgment. (*See* ECF No. 45-2.)

website for the Ohio Attorney General. (Cordray Dep. Ex. I.) Each letter advised that Mr. Weinberg was acting for "Richard Cordray, Attorney General of Ohio, for purposes of collecting the above account balance due and owing to the State of Ohio." (*See, e.g.*, *id.*) The letters required that payment be made to "the State of Ohio." (*See id.*) No letter advised consumers that Mr. Cordray had not reviewed the particular circumstances of the consumer's account, even though Mr. Cordray did not review consumer accounts before a letter went out bearing his name. (Cordray Dep. 122:22-124:23, Dep Ex. I.)

After serving as Ohio Attorney General, Mr. Cordray was appointed chief of the CFPB's enforcement team in January 2011 and then its director in 2012. (*Id.* at 8:14-9:7.) And in April 2017, he personally authorized the CFPB to bring this case. (*Id.* at 9:19-10:3.)

**B.    The CFPB's motion**

Weltman disclosed in its pretrial disclosures that it may call Mr. Cordray to testify at trial and later served Mr. Cordray with a trial subpoena. (*See* ECF Nos. 53, 64.) The CFPB filed the Motion on April 20, 2018. Mr. Cordray himself has not moved to quash the subpoena.

**II.    LEGAL STANDARD**

All relevant evidence is admissible, subject to limited exceptions. Fed. R. Evid. 402. The standard for relevancy is "extremely liberal." *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (quoting *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009)). Indeed, evidence having "*any* tendency" to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant. Fed. R. Evid. 401. Under this standard, a district court "may not exclude . . . evidence if it has the slightest probative worth." *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996) (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir.1992)).

Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This power is "extraordinary and must be exercised sparingly." *United States v. Maga*, No. 3:08-CR-166, 2009 WL 1607739, at *6 (S.D. Ohio June 9, 2009). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *Robinson v. Runyon*, 149 F.3d 507, 515 (6th Cir. 1998) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). When considering admissibility under Rule 403, "the court should examine the evidence in the light favorable to the proponent, maximizing its probative value and minimizing prejudicial effect." *Maga*, 2009 WL 1607739, at *6 (citing *U.S. v. Love*, 254 Fed.Appx. 511, 518 (6th Cir. 2007)).

A court should exclude evidence in limine "only when evidence is clearly inadmissible on all potential grounds." *Davis v. Ineos ABS (USA) Corp.*, No. CV 09-773-JGW, 2011 WL 13202661, at *1 (S.D. Ohio Feb. 16, 2011) (internal citations omitted). "Absent such a showing of clear inadmissibility, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id*. (internal quotation marks and citations omitted).

### III. ARGUMENT

#### A. Mr. Cordray's testimony and other evidence relating to the Ohio Attorney General's retention of Weltman is highly probative of key issues.

Mr. Cordray's testimony and other evidence relating the Ohio Attorney General's retention of Weltman to collect the State's debts is highly probative of at least two issues in this

case: (1) whether the CFPB's claims are time-barred and (2) whether Weltman has acted in good faith.

### 1. Evidence about whether the CFPB's claims are untimely

The CFPA's three-year limitations period is subject to the discovery rule. 12 U.S.C. § 5564(g)(1). "Under the discovery rule, 'accrual is delayed until the plaintiff has 'discovered' his cause of action.'" *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 430 (6th Cir. 2015) (quoting *Gabelli v. SEC*, 568 U.S. 442, 449 (2013)). In *Merck & Co., Inc. v. Reynolds*, the Supreme Court addressed a statute that, similarly to the CFPA, provided that the statute of limitations is triggered by "the discovery of the facts constituting the violation." 559 U.S. 633, 638 (2010) (quoting 28 U.S.C. § 1658(b)). That statutory language means that a claim accrues when a plaintiff "first knows or with due diligence should know" a violation has occurred, placing a burden on the government to act with reasonable diligence to discover a violation. *Id.* at 646; *see also Gabelli*, 568 U.S. at 449 (a cause of action "is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered" (quoting *Merck*)).

In its opposition to Weltman's motion for summary judgment, the CFPB did not dispute—and therefore conceded—that Mr. Cordray's knowledge is its own for purposes of this case. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., ECF No. 52 at 11.) The CFPB similarly dodged the issue in its motion in limine.[4] Indeed, imputation of knowledge within the government follows traditional agency law. *See In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 796 (E.D. N.Y. 1984). Under the Restatement, "[e]xcept for knowledge acquired confidentially, the time, place, or manner in which knowledge is acquired by a servant or other agent is immaterial in determining the liability of his principal because of it." Restatement

---

[4] Citing nothing, the CFPB has made an untimely argument, buried in a footnote in its trial brief, that Mr. Cordray's knowledge "cannot be imputed as a matter of law." (ECF No. 69 at 13 n.3.) Not surprisingly, it cites no law for that statement because the law is otherwise.

(Second) of Agency § 276 (1958); *see also* Restatement (Second) of Agency § 272 (1958) ("[T]he liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information."). It follows that the knowledge Mr. Cordray developed about Weltman as the Ohio Attorney General is imputed to the CFPB here.

Mr. Cordray worked with Weltman and was familiar with the firm's collection practices some six years before the CFPB filed this case. When he appointed Mr. Weinberg in 2009, Mr. Cordray knew the volume of debts Weltman attempted to collect and the processes through which Weltman attempted to collect them. His office reviewed and approved collection letters that Weltman sent out on his behalf. And the contract between Weltman and Mr. Cordray's office expressly required Weltman to "comply with the same standards of behavior as set forth in the . . . Fair Debt Collection Practices Act." (Cordray Dep. Ex. F at 13.) Mr. Cordray's office reviewed Weltman's performance quarterly, and apparently satisfied with the way Weltman conducted its business, Mr. Cordray rehired the firm in 2010.

All of this evidence bears directly on whether the CFPB's claims are entirely, or at least partially, time-barred—a topic that the CFPB nowhere mentions in its Motion, even though it has recognized elsewhere that whether Mr. Cordray "discovered" Weltman's alleged violations is a fact the parties dispute and that must be resolved by the jury. (*See* (ECF No. 69 (CFPB Trial Brief) at 13.)

### 2. Evidence about Weltman's good faith

If the jury decides that Weltman has violated the law and the Court determines that a statutory penalty is appropriate, the CFPA requires the Court to consider a number of mitigating factors. 12 U.S.C. § 5565(c)(3)(A)-(E). Chief among those is Weltman's "good faith." 12

U.S.C. § 5565(c)(3)(A). Evidence relating to Weltman's retention by Mr. Cordray (and other Ohio Attorneys General) is highly probative of the good faith issue, and excluding that evidence would gravely prejudice Weltman's ability to present its case as to what damages, if any at all, would be appropriate.

The simple fact is this: Weltman collected debts on behalf of the State of Ohio in precisely the same way it collects debts on behalf of its consumer collections clients today. Mr. Cordray, once Ohio's chief law enforcement officer, twice retained Weltman to collect the State's debts, with full knowledge of how Weltman conducts its business. That Weltman willingly gave Ohio's top law enforcement official an unobstructed view of precisely how Weltman collected consumer debt is highly probative of Weltman's confidence that it was complying with the law. Those records became *public* records. Weltman's good faith is further reflected by its willingness to open its doors to the public—or any other enforcement body—by making its submissions public records. That the Ohio Attorney General was satisfied with Weltman's process gave Weltman comfort that its own beliefs that it was complying with the law were correct. Finally, as noted, Weltman had to go through a rigorous application process to obtain the Special Counsel appointment, meaning that Weltman's materials would have been vetted and compared against the applications of other firms in the industry. Weltman went through that process twice while Mr. Cordray oversaw the Attorney General's office, and the fact that it was chosen twice to collect the State's debts suggests that Weltman's practices reflect best industry practice.

In sum, this evidence is crucial to the question of whether Weltman has collected debts in a good faith attempt to comply with the law and absent any intent to violate the FDCPA. And it is evidence Weltman must be allowed to present at trial, especially when the CFPB insists that

civil money penalties of nearly $14 million—a sum that would doom the firm—should be imposed in this case. (*See* ECF Nos. 69 (CFPB's Trial Brief) at 10, 69-4 (CFPB's Proposed Jury Instructions) at 22 (disclosing that the CFPB is seeking $13,979,081 in civil money penalties under the CFPA).

  **B.**  **The CFPB has failed to show that the evidence should be excluded.**

  Given the highly probative nature of the evidence relating to Weltman's retention by the Ohio Attorney General's office, the CFPB faces an extraordinarily high burden to show that the evidence should be excluded in limine. *See, e.g.*, *Logan v. Cooper Tire & Rubber Co.*, No. 10-3-KS, 2011 WL 3360666, at *2 (E.D. Ky. Aug. 3, 2011) ("Rule 403 is an extraordinary remedy and carries a strong presumption in favor of admissibility."); *Long v. Procter & Gamble Mfg. Co.*, No. 03-1097-T-AN, 2005 WL 8156559, at *2 (W.D. Tenn. Dec. 28, 2005) (noting that the Sixth Circuit has warned against "orders in limine that exclude broad categories of evidence"). The CFPB comes nowhere near to meeting that bar.

  The CFPB's primary argument for exclusion under Rule 403 is that Weltman used "different practices" and "different letters" to collect debts on Mr. Cordray's behalf, which, the CFPB argues, may confuse the jury. (Mot. at 6.) But all the CFPB actually offers in support of that argument is the deposition testimony of Weltman employees stating that the collections program created to handle accounts for Mr. Cordray had a different name. (Mot. at 12 (citing Bitterman Dep. 253:16-18; Pona Dep. 209:7-20).) The name given to the group handling Mr. Cordray's matters is irrelevant.[5] The salient point remains that Weltman used the same practices to collect debt on behalf of the Ohio Attorney General's office that it uses on behalf of its clients

---

[5] Indeed, as Weltman's Rule 30(b)(6) witness testified, though certain groups may be compartmentalized for organizational or payroll purposes, all of the firm's business units are interactive with respect to any debt placed at Weltman and all Weltman attorneys support the firm's collection efforts. (*See* Exhibit 1 hereto (Excerpts from Bitterman Dep.), 32:10-14, 37:20-25.)

today for consumer collections. And, as demonstrated above, the letters Weltman sent on Mr. Cordray's behalf are materially indistinguishable from those the CFPB targets in this case.

In any event, the CFPB cannot show that the danger of jury confusion "substantially outweighs" the highly probative nature of the evidence relating to Weltman's retention by the Ohio Attorney General. The CFPB relies primarily on *In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996) to support its Rule 403 argument. (Mot. at 5.) In that case, the Sixth Circuit held that the district court did not abuse its discretion in excluding certain exhibits "related to different model flight directors used on heavier planes with different engines" than those that were at issue at trial. *In re Air Crash Disaster*, 86 F.3d at 530. In other words, the court was concerned that the jury would have to master rocket science to decipher the differences between the models. Looking at letters to decide if they are misleading is not rocket science. Nor is the process of collecting debts by sending letters. There is no reason to believe that, even if there were a distinction between the letters and practices Weltman used on Mr. Cordray's behalf, the jury would be so confused as to render a decision "in a manner that is somehow unfair or inappropriate." *Logan*, 2011 WL 3360666, at *2 (quoting *In re Air Crash Disaster*, 86 F.3d at 538). It is well within the jury's ability to hear the evidence and give it the weight it believes it deserves.

The CFPB also contends that evidence concerning pre-July 21, 2011 conduct is irrelevant, likely to confuse the jury, and not worth the Court's time. (Mot. at 7-8.) But the CFPB took a decidedly different view of that subject during discovery when it told Weltman this: "Because the Court must consider the history of prior violations in evaluating the amount of civil money penalties . . . evidence of prior violations before this time period . . . are [sic] relevant to determining the appropriate amount of civil money penalties in this matter." (Exhibit

2 hereto (Sept. 6, 2017 Letter from Sarah Preis), at 1.) Now that discovery is over and there is *no* evidence of any "prior violations" but there is *abundant* evidence of Weltman's enduring good faith and legal compliance, the CFPB sings a different tune as trial draws near. The Court should reject the CFPB's argument, because it is both plainly opportunistic and plainly wrong.

Finally, the CFPB argues that allowing the jury to hear evidence about how Mr. Cordray's office never identified any concerns with Weltman's collection practices could "mislead the jury" into giving that evidence greater weight than it deserves. (Mot. at 8-9.) But the facts are what they are. Mr. Cordray used Weltman to collect debts for Ohio in the same way it collects debts for consumer collections clients, and he never took issue with the way Weltman conducts its business. In fact, Mr. Cordray did quite the opposite when he reappointed Mr. Weinberg in 2010 based on his "highest confidence in [Mr. Weinberg's] legal expertise, integrity, and ability." (Cordray Dep. Ex. D.) There is nothing about those facts that is "misleading," and they go directly to Weltman's good faith and past compliance with the law. The CFPB's true objection is that the facts are damaging to its case, which is no basis upon which to grant the Motion. "The truth may hurt, but Rule 403 does not make it inadmissible on that account." *Logan*, 2011 WL 3360666, at *2 (quoting *In re Air Crash Disaster*, 86 F.3d at 538).

    **C.    The CFPB's objections to particular lines of questioning are premature and baseless.**

Citing to portions of Mr. Cordray's deposition transcript, the CFPB speculates about certain lines of questioning that may arise at trial and moves to exclude them. (*See* Mot. at 10-13.) Among the questions the CFPB objects to are those relating to "Mr. Cordray's opinion of the legality of [Weltman's] demand letters to collect the State's debts" and "his decision to authorize this action." (*Id.* at 11, 12.)

As an initial matter, these objections are premature and inappropriate for a motion in limine. *See, e.g.*, *Hensley v. Methodist Healthcare Hosps.*, No. 13-2436-STA-CGC, 2015 WL 5076982, at *1 (W.D. Tenn. Aug. 27, 2015) (denying motion in limine and refusing to make an advance ruling, noting that the court "will entertain evidentiary objections to . . . hypothetical questions during the trial."); *Scheel v. Harris*, No. CIV. A. 3:11-17-DCR, 2012 WL 3879279, at *8 (E.D. Ky. Sept. 6, 2012) (denying motion in limine seeking to prohibit questions that may elicit inadmissible testimony and instructing party to make objections at trial). If the CFPB has an objection to a specific question, it can object at trial, rather than improperly asking the Court to exclude hypothetical testimony by motion.

In any event, the CFPB's objections are meritless. The CFPB relies on *United States v. Freeman*, 730 F.3d 590 (6th Cir. 2013) to argue that the Court should preclude under Rule 701 Mr. Cordray's "opinion testimony" about whether Weltman collected the State's debts ethically and in compliance with the law. In *Freeman*, the Sixth Circuit held that the district court erred in admitting an FBI agent's testimony that offered his personal impressions of a criminal defendant's recorded phone conversations. Relying on a line of cases prohibiting agents from interpreting phone calls, the court found that the government did not establish a sufficient foundation for the agent's testimony and noted that the agent "never specified personal experiences that led him to obtain his information but, instead, repeatedly relied on the general knowledge of the FBI and the investigation as a whole." *Id.* at 596. The circumstances of this case are far removed from those in *Freeman*. Mr. Cordray *used* Weltman's services to collect debt. His knowledge of Weltman's practices is based on his personal knowledge and experiences with the firm, and it is upon that knowledge that his opinions would be based. That

evidence is directly relevant to Weltman's statute-of-limitations and good faith defenses, and it is admissible under Rule 701.

As for the CFPB's privilege objections, those objections should, again, be raised at trial if the CFPB believes a question would elicit privileged information. Moreover, if Mr. Cordray provided deposition testimony the CFPB now thinks is privileged, the privilege as to those issues has been waived. *See, e.g.*, *Daniels v. Hadley Mem'l Hosp.*, 68 F.R.D. 583, 587 (D.D.C. 1975) (concluding that answering questions concerning privileged communications during deposition waived a party's privilege over the communications at trial). And the CFPB's invocation of the "deliberative process privilege" is misplaced, since—as the very case cited by the CFPB shows—that doctrine does not protect "factual information pertaining to the [CFPB]'s claims, factual information gathered and obtained by the [CFPB's] investigator[s], and factual information about the activities the [CFPB] conducted." *E.E.O.C. v. Presrite Corp.*, No. 11 CV 260, 2012 WL 4434055, at *3 (N.D. Ohio Sept. 24, 2012).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated: April 27, 2018                                  Respectfully submitted,

s/ Ryan A. Doringo
James R. Wooley  (0033850)
Tracy K. Stratford  (0069457)
Ryan A. Doringo  (0091144)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:     216.586.3939
Facsimile:     216.579.0212
Email:         jrwooley@jonesday.com
               tkstratford@jonesday.com
               radoringo@jonesday.com

Attorneys for Defendant
Weltman, Weinberg & Reis Co., L.P.A.

# CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Zol Rainey
Sarah Preis
Rebeccah Watson
Jehan Patterson
1700 G Street NW
Washington, DC 20552

Counsel for Plaintiff, Consumer Financial Protection Bureau

s/ Ryan A. Doringo
One of the Attorneys for Weltman, Weinberg & Reis Co., L.P.A.

NAI-1503632585v1