IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) | CASE NO.  1:17 CV 817 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| WELTMAN, WEINBERG & REIS CO., L.P.A., | ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) ) | |

This matter is before the Court subsequent to a four-day trial to the Court, with an advisory jury duly empaneled and sworn pursuant to Fed. R. Civ. Pro. 39(c)(1).   Following trial, the parties each submitted proposed findings of fact and conclusions of law.   The issues have now been fully presented and are ready for the Court's consideration.

## PROCEDURAL HISTORY

Plaintiff, the Consumer Financial Protection Bureau ("the Bureau"), filed this action on April 17, 2017, alleging that Defendant Weltman, Weinberg & Reis Co., L.P.A. ("Weltman")

violated Sections 807(3), 807(10 and 814(b)(6) for the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692e(3), (10), and 1692*l*(b)(6); and, Sections 1031(a), 1036(a)(1),

1054, and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C.

§§5531(a), 5536((a)(1), 5564, and 5565, by "misrepresenting the level of attorney involvement in

demand letters and calls to consumers. (ECF #1, ¶ 1, 2).  Following discovery both parties moved

for summary judgment.  (ECF # 44, 45).  Both of these motions were denied.  (ECF #61).

 Trial of this matter commenced on May 1, 2018, before an advisory jury, pursuant to Fed.

R. Civ. Pro. 39(c)(1).  Prior to the jury's empanelment, the Plaintiff voluntarily dismissed Counts

4, 5 and 6, with prejudice, and withdrew its request for disgorgement.  (ECF #79).  This left

Counts One through Three for trial.  Count One alleged that Weltman's demand letters

"misrepresented that the letters were from attorneys and that attorneys were meaningfully

involved, when in most cases the attorneys were not meaningfully involved in preparing and

sending the letters" in violation of Sections 807(3) and 807 (1) of the FDCPA, 15 U.S.C. §

1692e(3), (10).  Count Two alleged that the same letters violated Section 1036(a)(1)(A) of the

CFPA, 12 U.S.C. § 5536(a)(1)(A), for the same reason.  Count Three alleges that this also

constituted deceptive acts and practices in violation of Sections 1031(a) and 1036(a)(1)(B) of the

CFPA, 12 U.S.C. §§5531(a)(1) and 5536(a)(1)(B).

 At trial, the Plaintiff called three witnesses: (1) Ms. Eileen Bitterman; (2) Mr. David

Tommer; and, (3) Dr. Ronald Goodstein, and submitted exhibits.  Defendant called two

additional witnesses: (1) Chuck Pona; and, (2) Scott Weltman.  On May 4, 2018, after four days

of trial, the jury submitted their answers to the following interrogatories:

> 1.  Do you find that the Plaintiff proved by a preponderance of the evidence that the initial demand letter sent by Weltman contained any false, deceptive, or misleading representations or means in connection with the collection of a debt?  __YES__  (Enter "yes" or "no").
>
> If your answer to Interrogatory Number 1 is yes, continue to Interrogatory Number 2.  If your answer is no, your deliberations are finished and you should not answer any further questions.
>
> 2.  Do you find that the Plaintiff proved by a preponderance of the evidence that Weltman's lawyers were not meaningfully involved in the debt collection process.  __NO__  (Enter "yes" or "no").
>
> If your answer to Interrogatory Number 2 is yes, continue to Interrogatory 3.  IF your answer is no, your deliberations are finished and you should not answer any further questions.

After the advisory jury returned these findings, the parties were given a final opportunity to present their proposed findings of fact and conclusions of law.

The Court is not bound by the advisory jury's determination, but finds that their answer to Interrogatory Number 2 comports fully with the weight of the evidence presented at trial.  The jury's answer to Interrogatory Number 1, however, does not correctly reconcile the evidence presented with the Court's instructions or the standard of proof required of the Plaintiff in this case. Although there was some evidence presented in support of the idea that the letters could be misleading to certain consumers, that evidence came exclusively from an expert that the Court does not find credible.  Further, the Complaint relies solely on the assertion that the demand letters were misleading because they were sent from a law firm, and lawyers were not meaningfully involved in the debt collection process.  The jury's finding, adopted by this Court,

-3-

that lawyers were meaningfully involved disproves the Plaintiff's sole theory of liability, and precludes recovery under the Complaint.

## ANALYSIS

1. Applicable law

Neither party disputes that Weltman is a debt collector to whom the FDCPA and the CFPA apply, or that Weltman's demand letters were sent in connection with the collection or attempt to collect debts. The question at issue in this case is whether Weltman's debt collection demand letters violated the FDCPA or the CFPA. The FDCPA and the CFPA were violated if the letters used "any false, deceptive, or misleading representation or means in connection with the collection of any debt," or if they falsely represent or imply that communication is "from an attorney." 15 U.S.C. §1692e and 1692e(3). A demand letter is not false or misleading for using letterhead that "accurately describes the relevant legal entities," had an accurate and truthful signature block, and includes a "conspicuous notation that the letter is sent by a debt collector." *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016).

The letters are alleged to have violated the FDCPA and the CFPA not because they contain false statements, but because they allegedly falsely imply that an attorney was meaningfully involved in the collection of the debts to which the letters relate. According to case law from various circuits, a demand letter indicating that it comes "from an attorney" can be found to be deceptive even if literally true, if the letter is not the product of an attorney's professional judgment, or if the attorney was not sufficiently involved in the collection of the debt or the drafting of the letter. *See, e.g., Nielsen v. Dickerson,* 307 F.3d 623 (7th Cir. 2002);

-4-

*Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 1003 (3d Cir. 2011); *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 364 (2d Cir. 2005); *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assoc., P.C.*, 114 F. Supp. 3d 1342, 1363 (N.D. Ga. 2015). In order to establish any of the violations alleged in the Complaint, the Plaintiff must show, by a preponderance of the evidence, that:

    1. The least sophisticated debtor would believe, based on the initial demand letter, that Weltman was acting as an attorney in the debt collection process;[1] and,

    2. Weltman's lawyers were not meaningfully involved in the debt collection process; and,

    3. The representation that Weltman was acting as an attorney in the debt collection process was material.

    The least sophisticated debtor is to be considered uninformed, naive, and trusting, but also possessing reasonable intelligence, and capable of making basic logical deductions and inferences. *Sanford v. Portfolio Recovery Assocs.*, LLC, NO. 12-11526, 2013 WL 3798285, at *12 (E.D. Mich. July 22, 2013)(citations omitted). It is not a requirement that the Defendant intended to mislead or deceive a consumer. This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor," *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999), but does not give credence to "frivolous

---

    [1] A violation of CFPA's prohibition against using deceptive acts or practices uses a "reasonable person" standard rather than a "least sophisticated consumer" standard. The elements otherwise mirror those in the FDCPA. Therefore, if an act or omission does not violate the FDCPA's provisions, it will not violate the less stringent standard under the CFPA. *See, e.g., Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014).

misinterpretations or nonsensical interpretations. . . ." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009).

There is no specific test for what constitutes "meaningfully involved." Cases have held that an attorney has sufficient personal involvement in the process if one reviews the file of the individual consumer to whom the letter was sent and/or exercises some "professional judgment as to the delinquency and validity of any individual debt" before the letter is issued. *See, e.g, Consumer Financial Protection Bureau v. Frederick J. Hanna & Assoc.*, P.C., 114 F.Supp. 3d 1342, 1363 (N.D. Ga. 2015); *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996); *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 999 (3d Cir. 2011). This is not necessarily a set requirement for meaningful involvement, however, as this is a question that must be determined based on the individual facts and totality of the circumstances in each case. *See, Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 304 (2d cir. 2003).

In order for a representation to be material, it must be likely to influence the least sophisticated debtor's decision on whether or not to pay a debt. *See, Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012). Creating a legitimate fear of the actual consequences of owing a valid debt is not misleading or deceptive under the act.

2. Stipulated Facts[2]

The parties stipulated to the following facts:

1. The Bureau (Plaintiff) is an independent agency of the United States that enforces and

---

[2] The stipulated facts were taken from the Parties' Stipulation of Facts (ECF #66), and from stipulations agreed to by the parties at trial, which were communicated to the Jury through the Court's jury instructions. (ECF #77 at 80-81).

issues regulations pursuant to federal consumer financial law, including the Fair Debt Collection Practices Act and the Consumer Financial Protection Act of 2010.

2. Weltman (Defendant) is an Ohio professional corporation organized under the laws of Ohio that operates as a law firm.

3. Weltman has maintained a website, www.weltman.com, from at least July 21st, 2011, to date.

4. Weltman is a debt collector under the Fair Debt Collection Practices Act and a covered person under the Consumer Financial Protection Act of 2010.


3. Evidence at Trial

Eileen Bitterman, the compliance officer and a shareholder of Weltman, is a lawyer licensed to practice law in Ohio.  She is responsible for creating policies and overseeing training.  (ECF #75 at 44).  She testified as follows.

Weltman is owned by shareholders, all of whom are attorneys.  (ECF #75 at 130).  Weltman is hired by creditors to collect a variety of types of consumer debt.  (ECF #75 at 44-45).  During the relevant time period, Weltman had up to 7,000 creditor clients.  (ECF #75 at 98).  Weltman has a consumer collection unit that is staffed by non-attorneys but is overseen by an attorney who is the business unit leader, and collections support attorneys.  (ECF #75 at 48).  They are paid on a contingency fee basis, based on the amount of money they are able to collect from consumers.  (ECF #76 at 94, 107).

In an attempt to collect on consumer debts, Weltman sends out letters that are generated from attorney-approved templates.  (ECF #75 at 50-51).  One of these templates is an initial

demand letter that includes the name of Weltman, Weinberg & Reis Co., L.P.A. and the words "Attorneys at Law," at the top of the letter. (ECF #75 at 57, 86). These letters are signed by Weltman, and are on Weltman letterhead. (ECF #75 at 57-58, 80, 86). Ms. Bitterman testified that 4.2 million demand letters, from these templates, were sent to consumers between July 21, 2011 and October 31, 2017. (ECF #75 at 91). She also testified that some templates for follow-up letters also state that "this law firm is a debt collector attempting to collect this debt for our client," or other references indicating that Weltman is a law firm, which are a truthful statements. (ECF #75 at 64-66).

Weltman does not contend that they are practicing law when they send demand letters. (ECF #76 at 96). They do not require an attorney to review every individual consumer account before a demand letter is sent. (ECF #75 at 98-99). Weltman attorneys do not form a professional judgment about the validity of a debt or the appropriateness of sending a demand letter before the letters are sent. (ECF #75 at 99). Weltman receives information from creditor clients about consumer accounts and data is loaded into Weltman's computer system. (ECF #75 at 73-74). The data is then "scrubbed." Scrubbing is a process by which outside vendors use criteria established by Weltman's lawyers to flag consumers who should not be sent collection letters. (ECF #75 at 102-103).

Some of Weltman's training manuals indicate that "because WWR is a law firm, a consumer may have the incorrect assumption that a legal action will be automatically filed against them" and that "certain consumers may have prioritized paying the debt because the law firm is in a better position to file suit than a collection agency." (ECF #75 at 108, 112). If a client wants advice on whether to pursue litigation, Weltman has non-attorney audit employees

review the consumer's information to see if the account is eligible.  These employees follow policies and procedures provided to them by Weltman attorneys.  (ECF #75 at 114).  If an account is flagged as not eligible for litigation, an attorney could then review the file, and before a lawsuit can be filed, an attorney must review the consumer's account.  (ECF #75 at 114).  Weltman has attorneys licensed in only seven states, but does nationwide debt collection.  If an account is elevated to litigation in a state where no Weltman attorney is licensed, Weltman may refer the case to a different law firm, who would then have to send another demand letter informing the consumer that the firm is acting as a debt collector.  (ECF #75 at 115-116).

Weltman has a formal compliance program that is developed and approved by attorneys, including the shareholders and the Board.  (ECF #130-131).  It has hundreds of policies and procedures for delegating, educating, and supervising staff, for auditing compliance across the business units and ensuring compliance with client processes and procedures as well as Weltman's processes and procedures.  (ECF #75 at 127-129, 132-134, 180; ECF #76 at 10-36).  These are drafted by attorney shareholders, go through several layers of attorney review, and are eventually approved by attorney Board members.  (ECF #75 at 128-130, 132, 182-183; ECF #76 at 10-36).  They are also enforced by attorneys.  (ECF #76 at 11-35).  Attorneys are involved in bringing clients to the firm, drafting client contracts, checking their reputation, interacting with the client, and discussing the available data and documentation, the history of their portfolio and types of accounts, which consumers are represented by attorneys, any asset reviews that have occurred, and arbitration or bankruptcy information, reviewing the clients procedures and policies, and evaluating whether the client is a trustworthy and legally compliant creditor.  (ECF #75 at 149-150, 167-169; ECF #76 at 72-73).  Attorneys assess issues that may arise with

statutes of limitations, arbitration clauses, choice of law issues, how interest is calculated, last

date of payment, deceased debtors and other legal questions. (ECF # 153-54; ECF #76 at 8-9)).

Many of these issues must be addressed by an attorney before a demand letter ever goes out.

(ECF #75 at 157). Using their legal knowledge the attorneys create procedures for analysis that

can be taught to non-attorney employees or programmed for automated implementation or

programming of the "scrubbing" criteria. (ECF #75 at 157-159).

      Ms. Bitterman also testified that these same procedures used in the processes

complained of in this lawsuit, including electronic communication and automated scrubbing

processes were previously approved by the Ohio Attorney General and used by the firm when

working as special counsel for the collection of debts owed to the State of Ohio. (ECF #76 at 43-

44, 58-59). The evidence showed that Richard Cordray, who was the head of Plaintiff, CFPB

when this lawsuit was filed, was the Ohio Attorney General when Defendant Weltman was hired

to collect those state debts. When collecting for the State of Ohio, Attorney General Cordray, the

same person ultimately responsible for the filing of this lawsuit, directed Weltman to use the

Ohio Attorney General's letterhead on Weltman's demand letters for the state. He also required

Weltman to state in the letter that they were "special counsel," and to use the words "Attorney at

Law" and "collections enforcement special counsel" on the demand letter. (ECF #76 at 52-54).

      Ms. Bitterman testified that as a Weltman attorney, in charge of compliance, having

talked to debtors and having access to the complaint log, she is not aware of any complaints

given directly to the firm stating that their letters were confusing due to their identification as a

law firm. (ECF #76 at 62-64). She also stated that she is not aware of any holding from any court

finding that Weltman had misled a consumer. (ECF #76 at 89, 105). She acknowledged,

however, being aware of multiple lawsuits, in both state and federal courts, filed against the firm alleging that their demand letters were misleading for implying that there is meaningful attorney involvement in the demand letters. (ECF #76 at 86-89). She testified she is also unaware of any person who prioritized payment, or paid a debt not owed, because the demand letters came from a law firm, rather than identifying simply as a debt collector. (ECF #76 at 63-64). Weltman provided "over a million recorded consumer phone calls," none of which were cited by the Plaintiff as evidence of confusion, materiality, or harm stemming from the alleged misrepresentation in this case. (ECF #76 at 67-68).

Mr. Tommer, the director of consumer collections and a non-attorney, also testified at trial. He testified that he works with law firm attorneys to develop workflow strategies for the collection of consumer debts. (ECF #76 at 114-115). He testified that the supervisors in the "agency unit," which falls under the consumer collection business unit, are not attorneys. (ECF #76 at 117-119). He reports to Chuck Pona, who is an attorney, and who oversees the consumer collection unit. (ECF #76 at 139). He also testified that no attorneys work "directly under " the agency collections group. (ECF # 76 at 120). When accounts are taken in by Weltman, Weltman load the data, scrub the electronic data, and then if the files survive the scrub, and there is a valid address, a demand letter is generated and sent within two to three days from intake. (ECF #76 at 129-130). This entire process is automated. (ECF #76 at 130). Attorneys develop the scrub process, but Mr. Tommer was unaware of any other role attorneys would have in the scrub process. (ECF #76 at 130).

When initial demand letters don't result in payment, clients may reclaim the files or the files may go to the audit department to be assessed for additional actions, including the filing of a

suit.  (ECF #76 at 133).  The suit audit department gathers information to give to the attorneys to make this determination.  (ECF #76 at 133-134).

Mr. Tommer testified that attorneys are meaningfully involved in a debt collection before the consumer is mailed an initial demand letter.  (ECF #76 at 141).  They run the firm, and every day he and his team interact with or take direction from an attorney while doing their jobs.  (ECF #76 at 141-142).  The demand letters were written by Eileen Bitterman, an attorney, and her team.  (ECF #76 at 142).  Attorneys make the decision whether to take on a client, and perform the reviews of potential clients' documents, legal terms and conditions relating to the debt.  (ECF #76 at 143-144).  Attorneys are involved at the onset of the scrubbing process for the high volume clients.  (ECF #76 at 144).  Attorneys also look at and oversee any alterations and changes in internal processes, implementation of any new letter, and procedures and policies utilized on a day to day basis, scripting for collectors, and training materials.  (ECF #76 at 146-147).

The Plaintiff also called Dr. Ronald Goldstein, an associate marketing professor at the McDonough School of Business at Georgetown University, who was asked to assess whether consumers believe a lawyer is involved in reviewing an account, and the decision to send demand letters.  (ECF #76 at 154-155).  He was offered and accepted as an expert witness.  (ECF #76 at 162).

Dr. Goldstein testified that he gave a field study survey to 634 people from the "relevant population," defined as "people who had used their credit card in the last five years for personal or household reasons" or "had borrowed money in the last five years for personal, household reasons," but not from a friend or family.  (ECF #76 at 177-180).  He stated that he did not want

to survey anyone who actually received Weltman's demand letter, any lawyers, or any marketing researchers because they would be biased, but he did not take any action to determine if anyone in the survey group had actually ever received a Weltman letter. (ECF #76 at 178-180, 195-196). He used three groups. One was shown the Weltman demand letter, and one was given a letter that purported to be from Weltman, Weinberg & Reis Ltd. , used the phrase "collection services" rather than "attorneys at law." The third group used the name WW&R, rather than "Weltman, Weinberg & Reis, Ltd. (ECF #76 at 182 -183). Dr. Goldstein then asked a series of questions which led him to the finding that 40% of the first group believed a lawyer reviewed the account, 20% of the second group believed a lawyer reviewed the account, and 13% of the third group believed that a lawyer reviewed the account. (ECF #76 at 191-192). No definition was provided for what it means to "review the account." (ECF #76 at 202). He also tested the question "who sent the letter" and found that 50% of the people with the original letter believed it was sent by a law firm or lawyer. He himself testified that simply the use of the name Weltman, Weinberg & Reis, without any reference to a legal indicator, such as L.P.A. or "attorney at law," was perceived as sounding like a law firm. (ECF #76 at 195).

Dr. Goldstein also testified that while he designed the survey, he did not conduct the initial interviews; did not recruit the people who were surveyed; did not design the technological programming; delegated work to a research team; and, hired graphic designers to make changes to the letters. Nonetheless he testified that he was "meaningfully involved" in conducting the survey because all of the other people were working under his guidance and supervision. (ECF #76 at 199).

Defendant called Charles Pona to testify. He is an attorney who is currently managing the

consumer collections department at Weltman, is a shareholder in the firm, and is on the management committee. (ECF #76 at 216-217). There are currently 20-25 attorneys in the consumer collections department. (ECF #76 at 222). The attorneys are continuously available to any non-attorney members of the unit to answer questions and give advice. They hold weekly meetings with the managers, and invite people from the client services area, human resources and IT staff to participate. (ECF #76 at 224). All attorneys are involved in compliance issues, but about 8-10 years ago a full time compliance department was started to focus on compliance with state and federal laws. (ECF #76 at 224). All written procedures and policies are sent to the attorneys on the management committee by a steering committee which includes compliance members. (ECF #76 at 225). Mr. Pona also testified that the firm has never been found to have violated any law related to debt collection practices, and that he is not aware of any ethical violations that have ever been found against the firm in any state. (ECF #76 at 227).

Mr. Pona testified that attorneys are involved in client acquisition and due diligence; IT requirements; contracting, including obtaining warranties as to the validity of the debts put forth for collection; sampling documentation and terms from collection accounts, including calculation of interest rates, analyzing default provisions, reviewing statutes of limitations, and determining when arbitration is required; reviewing for responsible parties; debtor asset review; permissible fees; develop criteria for scrubs that weed out non-collectible accounts; and, drafting the demand letters. (ECF #76 at 230-256).

Mr. Scott Weltman was also called by the defense. He is also an attorney who is currently the managing shareholder of the Weltman firm. (ECF #77 at 28). There are currently 25 attorney shareholders in the firm, and approximately 60 attorneys overall. (ECF #77 at 34).

At times the firm has had up to 120-140 attorneys at a time. (ECF #77 at 34). Mr. Weltman testified that the firm has never been found to have violated any law, and that none of the firm's lawyers have ever been found to have committed ethical violations. (ECF #77 at 39). When working for the Ohio Attorney General the firm was chosen and continuously audited and the state never had a complaint with how they managed their debt collection practices. (ECF #77 at 40). He also testified that Ms. Bitterman and Mr. Pona correctly testified as to the involvement that attorneys have in the debt collection processes at Weltman. (ECF #77 at 41-42). Mr. Weltman testified that everything in the demand letter is truthful. (ECF #77 at 62).

## FINDINGS OF FACT/CONCLUSIONS OF LAW

The Court makes the following findings of fact and conclusions of law based upon the evidence presented at trial:

1. This Court has subject-matter jurisdiction over this matter under 12 U.S.C. §5565(a)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

2. Weltman regularly collects or attempts to collect consumer debts and, therefore, is a "debt collector" as defined under the FDCPA.

3. Weltman collects debt related to consumer credit, and is, therefore, a "covered person" as defined under the CFPA.

4. Weltman is a legal professional association operating as a law firm, with a fully integrated collection agency. The firm is owned exclusively by attorney shareholders and the Board of Directors consists of five such shareholders.

5. Weltman also employs non-attorneys in the debt collection units.

-15-

6. Weltman sends out letters that are generated from attorney created and attorney approved templates.   One of these templates is an initial demand letter printed on law firm letterhead, with the name of the firm appearing in all caps and in bold at the top with "ATTORNEYS AT LAW" printed directly beneath.  "Weltman, Weinberg & Reis Co., L.P.A." is listed as the signatory on these letters.

7. The demand letters accurately describe the identity and legal description of the entity sending the letter.  As such, it cannot be fairly described as false or misleading simply for correctly identifying Weltman as a law firm, and as the signatory.

8. The initial demand letter advises the putative debtor (1) that the debt has been placed with Weltman for collection and (2) that the consumer has specific rights under the FDCPA.  These representations are both truthful.

9. The demand letter is sent on Weltman's letterhead, and accurately conveys the fact that Weltman is a law firm that has been retained to collect the putative debt.  The letter does not state that an attorney has reviewed the particular circumstances of the account, does not mention any potential legal action, and is not signed by an attorney.

10. The demand letter template, used to generate the demand letters sent by Weltman reads as follows:

> Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above.  As of the date of this letter you owe the amount listed above.  Therefore, it is important that you contact us at [phone number] to discuss an appropriate resolution for this matter.
>
> This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose.  Unless you dispute the validity of this debt, or any portion

thereof, within thirty (30) days after receipt of this letter, we will assume the debt is valid. If you notify us in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to you. If you request in writing within the thirty (30) day period, we will provide you with the name and address of the orginal creditor if different from the current creditor.

Thank you for your attention to this matter.

Sincerely,

Weltman, Weinberg & Reis Co., L.P.A.

11. Most of the content of the letter follows the language of the FDCPA. The first two sentences provide the information required by 15 U.S.C. §1692g(a)(1) and (2). The disclosure in the next paragraph that the communication is from a debt collector is nearly identical to the language of 15 U.S.C. §1692e(11), and the rest of that paragraph contains the exact language required by 15 U.S.C. §1692g(a)(3)-(5).

12. Weltman is not practicing law when they send demand letters.

13. Weltman's demand letters can be interpreted to imply that an attorney is "meaningfully involved" in the debt collection process.

14. Weltman does not require an attorney to review every individual consumer account before a demand letter is sent, and Weltman attorneys do not form a professional judgment about the validity of a debt or the appropriateness of sending a demand letter before the letters are sent.

15. Weltman obtains information from creditor clients about consumer accounts, and data is loaded into Weltman's computer system. Attorneys are involved in bringing clients to the firm, drafting client contracts, checking their reputation, interacting with the client, and

discussing the available data and documentation, the history of their portfolio and types accounts, which consumers are represented by attorneys, any asset reviews that have occurred, and arbitration or bankruptcy information, reviewing the clients procedures and policies, and evaluating whether the client is a trustworthy and legally compliant creditor. This takes place before demand letters are sent.

16. Attorneys obtain warranties as to the validity of the debts put forth for collection; sampling documentation and terms from collection accounts, including calculation of interest rates, analyzing default provisions, reviewing statutes of limitations, and determining when arbitration is required; reviewing for responsible parties; debtor asset review; and the validity of fees.

17. The data provided by Weltman's clients is "scrubbed." Scrubbing is a process by which outside vendors use criteria established by Weltman's lawyers to flag consumers who should not be sent collection letters. Attorneys, using their legal knowledge create procedures and criteria for analysis that can be taught to non-attorney employees or programmed for automated implementation or programming of the "scrubbing" criteria. This takes place before demand letters are sent.

18. Weltman has a formal compliance program that is developed and approved by attorneys, including the shareholders and the Board.

19. Weltman has hundreds of policies and procedures for collecting debts, as well as educating, and supervising staff.

20. Weltman's policies and procedures are drafted by attorney shareholders, go through several layers of attorney review, and are eventually approved by attorney Board members. They

are also enforced by attorneys.

21.  Weltman conducts routine audits for compliance across the business units and ensures compliance with client's processes and procedures as well as Weltman's internal processes and procedures.

22.  Attorneys assess issues that may arise with statutes of limitations, arbitration clauses, choice of law issues, how interest is calculated, last date of payment, deceased debtors and other legal questions.  Many of these issues must be addressed by an attorney before a demand letter is sent.

23.  Attorneys draft the demand letter templates, and they are approved by the attorneys in Weltman's Compliance Audit Department.

24.  Attorneys and non-attorney staff work together on a daily basis, and interact in weekly meetings.  Weltman attorneys oversee all departments and are responsible for the training and oversight of all non-attorney staff.

25.  Weltman reviews cases for litigation and litigates collection actions in the states where its attorneys are licensed.

26.  There has never been a finding in any jurisdiction that Weltman's letters or any other of its statements contain falsehoods or misrepresentations.

27.  Weltman collected debts for the State of Ohio using substantially similar demand letters to the ones at issue in this case, and following the same processes and procedures it follows for all other debt collection clients.  The Ohio Attorney General, Richard Cordray, approved of these letters and with full knowledge of their content approved the use of these letters for the State of Ohio's collection efforts.

28.  Despite requiring similar indications and disclosures of attorney involvement in the debt collection letters used on behalf of the State of Ohio, Richard Cordray, when he became head of the CFPB, authorized this lawsuit against Weltman for truthfully identifying themselves as a lawfirm and as attorneys, and for signing their demand letters with the firm name.

29.  Plaintiff offered no evidence to show that any consumer was harmed by Weltman's practice of identifying itself as a law firm in their demand letters.

30.  Plaintiff offered no evidence to show that any consumer did or would be inclined to prioritize payment for the debts referenced in Weltman's demand letters over any other debt they may have owed.

31.  Plaintiff offered no evidence to show that any consumer did or would be inclined to pay the amount sought in Weltman's demand letters even if they did not owe the debt.

32.  Plaintiff's expert witness did not present credible evidence from which the fact finder could infer that any consumer's were misled by Weltman's demand letter.

33.  The expert testified that his research showed that 40% of the people who read the letter would think that a lawyer had "reviewed " the account.

34.  His testimony also showed, however, that 20% of people thought a lawyer "reviewed" the account even when no mention of a law firm, or attorney was made in the letter.

35.  His survey did not ask what a consumer meant when they said a lawyer "reviewed" the account; did not ask whether a consumer could have been biased based on collection actions they may have experienced or other criteria; did not ask whether consumers would have felt misled or confused if they knew an attorney was involved in the debt collection process to the same extent that Weltman attorneys were shown to have been involved; and, did not ask whether

a perceived attorney review would have influenced their decisions about whether and when to pay the debt reference in the letter.

36. The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. This includes using any "false representation or deceptive means to collect or attempt to collect any debt," and making "false representation or implication that . . . any communication is from an attorney." 15 U.S.C. § 1692e(3), (10).

37. This determination must be made from the point of view of the "least sophisticated consumer." *Kistner v. Law Offices of Michael P. Margalefsky LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

38. The CFPA prohibits any violation of the FDCPA, as well as "any unfair, deceptive, or abusive practice" in connection with consumer products or services. 12 U.S.C. §§ 5481(12)(H), (14); 5531(a); 5536(a)(1)(A), (B). The standard under the CFPA is the same as the standard under the FDCPA, but is viewed from the perspective of reasonable consumers.

39. If there is no violation under the FDCPA in this case, there can be no violation under the CFPA.

40. Courts have held that when an attorney signs a letter on law firm letterhead, the least sophisticated consumer may believe that the attorney was involved in the debt collection process. Thus, they have concluded that if the attorney is not meaningfully involved in that process, the letter may be deceptive or misleading under the FDCPA.

41. Weltman's demand letters were truthful on their face.

42. Weltman attorneys were meaningfully and substantially involved in the debt

-21-

collection process both before and after the issuance of the demand letters.

43. Plaintiff did not prove by a preponderance of the evidence that Weltman's letters were false, misleading, or deceptive.

44. A misleading representation is only actionable under the FDCPA if it is material. *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. 2014).

45. A representation is material under the FDCPA if it would influence the least sophisticated consumer's decision on whether and when to pay a debt. *See, e.g., Boucher v. Fin. Sys. Of Green Bay, Inc.* , 880 F.3d 362, 366 (7th Cir. 2018).   Under the CFPA, a false representation is material if it is likely to influence a reasonable consumer to pay a debt. *See Fanning v. F.T.C.*, 821 F.3d 164, 173 (1st Cir. 2016).

46. Even if Weltman's letters had misrepresented the level of attorney involvement, Plaintiff could not prevail because there is no evidence that any consumer's decision on when and whether to pay a debt was influenced by the inclusion of the attorney identifiers in Weltman's demand letters.

47. In light of the above factual findings and conclusions of law, the Court finds that Plaintiff has failed to prove its case by a preponderance of the evidence.


## CONCLUSION

For the foregoing reasons this Court finds that Plaintiff failed to prove by a preponderance of the evidence its claims in Counts One, Two, and Three of the Complaint. Therefore, judgment is entered in favor of the Defendant, Weltman, Weinberg & Reis Co., L.P.A.  and against Plaintiff, Consumer Financial Protection Bureau, on all of its remaining

claims.  All costs are assessed to the Plaintiff.  This case is hereby terminated.  IT IS SO
ORDERED.

Judge Donald C. Nugent

DATED: July 25, 2018